# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

CITIZENS FOR RESPONSIBILITY AND    :
ETHICS IN WASHINGTON,              :
                                   :
       Plaintiff,         :
                                   :
    v.                           :    Civil Action No. 07-0964 (CKK)
                                   :
OFFICE OF ADMINISTRATION,          :
                                   :
       Defendant.         :
_____:

## PLAINTIFF'S MOTION TO MODIFY ORDER AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION

### STATEMENT

Over two months ago plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") filed a Freedom of Information Act ("FOIA") request with defendant Office of Administration ("OA") seeking documents that would shed light on the White House's loss of over five million emails from the electronic record-keeping systems of the Executive Office of the President ("EOP"). Although the OA granted CREW's request for expedition, based on the compelling and urgent need to inform the public about the missing White House emails and the problems with the White House's record-keeping practices, it refused to specify a date for processing the request. As a result, CREW filed suit and a motion for a preliminary injunction to compel the OA to process and disclose the requested documents within 10 days. Rather than litigate its motion fully, however, CREW agreed to a court-ordered time-table for processing CREW's request. Under that schedule, the OA was to make its first response on June 21, 2007.

Regrettably, the OA's June 21 response does not come close to advancing any of the issues raised by this lawsuit or informing the public on a matter of great urgency. Perhaps the

single most illuminating thing to emerge from that response is that the OA has 504 pages of potentially responsive documents, of which it has withheld 454 pages in their entirety.  Beyond that, we know nothing about the withheld documents -- the OA has provided no identification of their nature beyond the most generic description.  The OA has also failed to identify for which categories of documents CREW requested it has responsive documents and the volume of responsive documents for each category.  Equally as troubling, the OA enumerated three exemptions that it claimed applied, but failed to identify anything about any of the responsive documents that purportedly fall within those exemptions or offer any information whatsoever that would shed any light on why any particular document is exempt.  Finally, the OA claimed to be responding to CREW's FOIA request "as a matter of administrative discretion," ignoring completely that this Court has ordered it to respond.

These actions undermine the Court conclusions that based on the negotiated processing schedule, the issues raised in CREW's emergency motion "have been resolved."  Order of June 4, 2007.  Quite simply, the OA's actions do not advance either CREW's FOIA request or this litigation.  As a result, CREW requests that the Court modify its Order to require the OA to provide the Court and the plaintiff with sufficient information to ascertain the nature of the withheld documents and the reasons for the withholdings.

<u>**BACKGROUND**</u>

CREW initially filed a FOIA request with the OA on April 17, 2007 (Exhibit A to Complaint), and supplemented that request a day later (Exhibit B to Complaint).  The supplemented request sought documents in four categories, all related to the email records management systems for the EOP.  <u>Id.</u>  For both requests, CREW sought expedition based on the

compelling public need for information about the over five million missing White House email and the implications for the administration under the Presidential Records Act.  Id. and Exhibit A to Complaint.

The OA granted CREW's request for expedited processing, but claimed it could not respond even within the time-frame mandated by the FOIA for non-expedited requests (20 business days).  See Exhibit C to Complaint.  Accordingly, on May 23, 2007, CREW filed the complaint in this action as well as a motion for a preliminary injunction that requested an order requiring the OA to process CREW's request and disclose responsive documents within 10 days.

Thereafter, with the Court's assistance, the parties negotiated a time-frame for processing CREW's request in lieu of CREW going forward with its emergency motion.  CREW, for its part, clarified more specifically the documents it is seeking and delineated six categories of documents to be given the greatest priority for purposes of the OA's processing and response. See Order of June 4, 2007.  The OA, for its part, agreed to review all electronic and paper records that are responsive to categories 1-4 of the newly clarified and prioritized request and to produce any responsive, non-exempt documents by June 21, 2007.  Id.  Those four categories include the following:  (1) histograms that were prepared between October 2005 and January or February 2006, that provide a day-to-day detailed numeric count of the archived emails on the EOP servers; (2) analyses of the data performed during that same time period (i.e. October 2005 through January or February 2006), including spreadsheets and workbooks; (3) the recovery plan developed in response to the email problem, including a January 2006 written power-point presentation; and (4) all emails discussing or referring to these three categories of documents from September 2005 to the present. Id.

In addition, the Court ordered the OA to process by June 21 all paper documents responsive to the fifth category in CREW's request, which seeks an assessment of the then-current email system prepared in approximately October 2002 , and all iterations of the assessment, including the one presented to then-White House Counsel Alberto Gonzales.  Order of June 4, 2007.  The OA was also ordered to process all documents responsive to the sixth category of CREW's request that are currently within the OA's possession, which includes all statements of work, proposals and requests for quotes that the OA issued, or that were issued on behalf of the OA, for the analyses, request, implementation and support of EOP's email records management systems.  CREW explained that with respect to this category, its first priority was documents from January 2003 through July 2006.  Id.  The parties also agreed to additional deadlines for satisfying the rest of CREW's request, as memorialized in the Court's order.

On June 6, 2007, the OA moved for clarification of the Court's June 6 Order to correct an error in the time-frame for category four of CREW's clarified request and to clarify that the OA's obligation was to process and respond to CREW's FOIA requests.  By Order dated June 7, 2007, the Court granted the OA's motion to clarify.

By letter dated June 21, 2007, the OA provided its first response.  Letter from Carol Ehrlich, FOIA Office, OA, to Anne L. Weismann, June 21, 2007 (attached as Exhibit 1).  First, the OA stated it was processing CREW's FOIA request "as a matter of administrative discretion" based on its claim that, "on occasion," the OA provides direct administrative support to the President.  Id.

Second, the OA claimed it had located 504 pages "that *may* be responsive to CREW's requests . . ." Id. (emphasis added).  The only description of these potentially responsive

documents was as follows:  "[s]uch documents include emails, spreadsheets, procurement-related documents, and internal guidance."  Id.

Third, the OA claimed that "approximately 454 pages" are exempt from disclosure in their entirety or because they otherwise do not contain reasonable segregable, releasable portions.  Id.  The only explanation the OA offered for the withholdings in the "potentially responsive documents" was that they are exempt "in whole or in part" under three enumerated exemptions:  Exemption 2 (to prevent circumvention of statute, regulation or internal security matters); Exemption 5 (attorney work product, attorney client and deliberative process privileges); and Exemption 6 (to protect identities of federal employees from "threats and harassment").  Id.

Fourth, the OA claimed to be releasing 48 pages in their entirety and two "that are partially released . . ."  Id.[1]  In fact, however, the OA released 51 pages of documents.  Nine pages are part of a document entitled "Exchange-ARMS Interface Requirements for the Executive Office of the President," dated November 12, 2002.  See Exhibit 2.  Twenty-six pages are part of a document entitled "EOP Electronic Communications Records Management System Statement of Work," dated June 24, 2003, with a July 2005 amendment and an interagency agreement dated September 24, 2004.  Id.  The final 15 pages are part of a document titled "E-Mail Archive Retrieval System Statement of Work,"dated September 21, 2004.  Id.  Nowhere in its June 21 response did the OA identify to which of the six requested categories the released documents correspond.

---

[1] The released documents are attached as Exhibit 2.

## ARGUMENT

**THE OA SHOULD BE ORDERED TO PROVIDE ADDITIONAL INFORMATION THAT WOULD ASSIST THE PARTIES AND THE COURT IN ADVANCING CREW'S FOIA REQUEST AND THIS LITIGATION.**

Having failed to comply with the statutory time-frames for responding to CREW's expedited FOIA requests, the OA is now subject to this Court's jurisdiction over its processing of CREW's FOIA request.  Toward that end, the Court has already ordered the OA to process the request and produce non-exempt documents by specified dates, all in the interest of resolving the issues raised in CREW's motion for a preliminary injunction.  The Court's Orders[2] also impose certain obligations on the plaintiff, including the obligation to make a determination whether the OA's productions are "fully responsive to "Categories 1 through 4" for purposes of determining whether an additional search is required.  Order of June 4, 2007, ¶ 3.  CREW's counsel has also been ordered to "craft a list of search terms that CREW believes will lead to the identification of documents responsive to Category 4 . . ."  Id. at ¶ 4.

The Court's Orders appear to be based on the premise that the OA would, at a minimum, provide sufficiently meaningful information to enable the plaintiff to ascertain the completeness of the OA's production.  Yet, the OA's June 21 response does not provide plaintiff with anything it did not already know when it first filed its FOIA request.  Indeed, the OA's generic description of the broad categories of documents it has located -- "emails, spreadsheets, procurement-related documents, and internal guidance" -- is even less specific and descriptive then CREW's FOIA requests describing the categories of documents it seeks.

---

[2] References herein to "Orders" include both the June 4 and the June 7 Orders.

The OA's June 21 response as to the bases for its withholdings is equally as unenlightening. Simply listing three generic exemptions that apply to some or all of the documents, as the OA has done, reveals nothing about any particular withholding. At this point in time CREW and the Court have absolutely no idea what particular documents are at issue and what the nature of the dispute over those documents may be.

More fundamentally, the OA has not even committed to having identified responsive documents. Instead, it asserts that it has located documents that "may be responsive to CREW's requests," and describes the exemptions as applying to "potentially responsive documents" that the OA has located. The conditional nature of this response raises the question of whether the OA has fairly complied with the Court's Orders, which require the OA to process and respond to CREW's request, not merely locate potentially responsive documents.

Under these circumstances, the Court should modify its Orders to require the OA to provide the following information for both the documents accounted for in its June 21 response as well as any additional documents it processes: (1) a description of the withheld documents that permits the Court and the plaintiff to ascertain the nature of the document, to which category in CREW's request it is responsive and whether CREW's request has been fully satisfied; and (2) an identification of the exemption being claimed for each withheld document including, where appropriate, the nature of the exemption (e.g. attorney-client, deliberative process, etc.). Providing this information at this stage will permit CREW to fulfill its obligations under the Orders and will result in a "more efficient and fair approach." Keeper of Mountains Found. v. U.S. Dep't of Justice, No. 06-cv-00098, 2006 WL 1666262, at *3 (W.D. W.Va. June 14, 2006) (explaining why court was granting plaintiff's request for a Vaughn index prior to agency's

dispositive motion).

The government will likely argue that CREW is essentially asking for a <u>Vaughn</u> index, which the government should be required to provide only as part of its summary judgment motion.  Although courts have recognized that an agency need not provide a <u>Vaughn</u> index at the administrative processing stage,[3] this matter is now in litigation, CREW having placed at issue the lawfulness of the OA's failure to produce responsive documents as the FOIA requires.  The interests to be served at this juncture are those of the Court and the parties, and include consideration of the most efficient use of their time and resources.

Moreover, CREW is not seeking a <u>Vaughn</u> index per se.  Rather CREW requests only that the OA be ordered to provide the requested information in a format of the OA's choosing, whether it be by index, agency declaration, narrative description, or some other format.  CREW has followed this approach in a significant percentage of the FOIA cases it has litigated and its experience uniformly is that when an agency provides this information during the earlier stages of litigation it significantly reduces, or eliminates altogether, the need for lengthy litigation. There is every reason to believe that adopting that approach here will streamline the litigation and aid both the Court and the parties.

Finally, CREW has significant concerns about the pace at which the OA has processed CREW's request, the output of its efforts to date and its recent claim that it is responding only as a matter of "administrative discretion."  During a conference call with the Court, the OA's counsel represented that the OA had gathered approximately 30,000 emails and additional paper documents as potentially responsive and initially suggested the OA needed several months to

---

[3] <u>See</u>, <u>e.g.</u>, <u>Judicial Watch, Inc. v. Clinton</u>, 880 F.Supp. 1, 11 (D.D.C. 1995).

complete its production (in addition to the month it had already consumed). Yet, the OA's June 21 response accounts for only 504 pages of potentially responsive documents. The disparity between the OA's earlier representations to the Court about the volume of responsive documents and what it now identifies as the universe of potentially responsive documents coupled with the lack of information in its June 21 response and its latest position that it is under no legal obligation to process CREW's request all raise a serious question about the government's compliance with the law.

The FOIA was intended to provide a measure of government accountability by letting the public know what its government is up to. Halpern v. FBI, 181 F.3d 279, 284-85 (2d Cir. 1999). As Congress recognized when it amended the FOIA, delay in complying with FOIA requests may be "tantamount to denial." H. Rep. No. 876, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin. News, 6267, 6271. The pace at which the OA has been responding to plaintiff's request suggests an "indifference to the commands of FOIA, and fails to afford accountability of government that the act requires. If the documents are more of an embarrassment than a secret, the public should know . . ." ACLU v. Dep't of Defense, 339 F.Supp. 2d 501, 504 (S.D. N.Y. 2004).

## CONCLUSION

Under these circumstances, granting the requested relief is both necessary and appropriate. Accordingly, for the foregoing reasons, CREW respectfully requests that the Court modify its Orders to require the OA to provide within ten days: (1) a description of the withheld documents that permits the Court and the plaintiff to ascertain the nature of the document, to which category in CREW's request it is responsive and whether CREW's request has been fully

satisfied; and (2) an identification of the exemption being claimed for each withheld document including, where appropriate, the nature of the exemption (e.g. attorney-client, deliberative process).

      Pursuant to LCvR 7(m) counsel for CREW conferred with counsel for the OA on July 2, 2007, who advised CREW that the OA opposes this motion.

                            Respectfully submitted,

                          _____/s/_____
                          Anne L. Weismann
                          (D.C. Bar No. 298190)
                          Melanie Sloan
                          (D.C. Bar No. 434584)
                          Citizens for Responsibility and Ethics
                           in Washington
                          1400 Eye Street, N.W., Suite 450
                          Washington, D.C.  20005
                          Phone: (202 408-5565
                          Fax: (202) 588-5020

                          Attorneys for Plaintiff

Dated: July 2, 2007

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

CITIZENS FOR RESPONSIBILITY AND :
ETHICS IN WASHINGTON,            :
                                 :
            Plaintiff,           :
                                 :
    v.                           :      Civil Action No. 07-0964 (CKK)
                                 :
OFFICE OF ADMINISTRATION,        :
                                 :
            Defendant.           :
_____:

## [PROPOSED] ORDER

Upon consideration of plaintiff's motion to modify order, defendant's opposition thereto and the entire record herein it is hereby

ORDERED that plaintiff's motion is GRANTED, and it is further

ORDERED that the defendant shall, within 10 days of this order, provide the plaintiff with a description of all documents withheld to date that is sufficiently detailed to permit the Court and the plaintiff to ascertain (1) the nature of the withheld document; (2) the category of the plaintiff's request to which the withheld document is responsive; and (3) whether the plaintiff's request is fully satisfied; and it is further

ORDERED that for each document the defendant is now withholding, the defendant shall within 10 days of this order identify for the plaintiff which exemption under the Freedom of Information Act the defendant is invoking and, to the extent the defendant is relying on Exemption 5, the nature of the exemption the defendant is claiming (e.g., attorney-client, deliberative process, etc.); and it is further

ORDERED that for all documents the defendant processes and withholds in the future it

shall provide all of the information outlined above at the time the defendant provides its further

response to the plaintiff's FOIA request.


DATED: _____          _____

                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge

**EXHIBIT 1**

**EXECUTIVE OFFICE OF THE PRESIDENT**
**OFFICE OF ADMINISTRATION**
**WASHINGTON, D.C. 20503**

June 21, 2007

Ms. Anne Weismann
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, NW, Suite 450
Washington, DC 20005

RE: Freedom of Information Act Request

Dear Ms. Weismann:

Pursuant to the Court's Order of June 4, 2007, this letter responds in part to the pending FOIA requests of Citizens for Responsibility and Ethics in Washington ("CREW"). Specifically, this provides the response, due by June 21, as specified in the Court's June 4, 2007 Order with respect to the six categories of documents quoted at pages 1-2 of the Order, from CREW's May 29, 2007 letter to OA. This includes the response with respect to categories 1-4 (paragraphs 1 and 2 of the Court's Order beginning on page 3); with respect to category 5 (paragraph 1 of the Court's Order beginning on page 2); and with respect to category 6 (paragraph 1 of the Court's Order at the top of page 4). It also responds to category 6, paragraph 2 of the Court's Order at the top of page 4.

OA provides common administrative support and services to components within the EOP, including certain administrative support and services in direct support of the President. Because OA, on occasion, provides such direct support to the President, OA is not within the definition of an "agency" and therefore, elects to process this FOIA request as a matter of administrative discretion.

OA has located 504 pages that may be responsive to CREW's requests described above. Such documents include emails, spreadsheets, procurement-related documents, and internal guidance. After reviewing the documents, following consultation with the OA General Counsel and current and former Deputy General Counsel, I determined that approximately 454 pages are exempt from disclosure in their entirety or do not contain reasonably segregable portions that OA could release. There are 48 pages that are released in their entirety and 2 that are partially released; these documents are enclosed. The documents are exempt from release in whole or in part under the following FOIA provisions:

(1) Title 5 U.S.C. § 552(b)(2) [High 2], exempts documents from disclosure when the disclosure would risk circumvention of a statute or an organization regulation or internal security matters. OA has located potentially responsive documents that fall within those categories;

(2) Title 5 U.S.C. § 552(b)(5) exempts inter-agency/intra-agency communications and records that fall within the Attorney Work Product, Attorney Client and Deliberative Process

Privileges.  OA has located potentially responsive documents that fall within those categories; and

(3) Title 5 U.S.C. § 552(b)(6) [Personal Privacy Matters] protects the identities of Federal employees who may be potential targets of threats and harassment.  As such, there is a heightened interest in the identity and duty locations of current and former employees that is concurrent with the increased security awareness demanded in this time of national emergency. OA has located potentially responsive documents that fall within those categories.

Since this matter is in litigation, please contact Jean Lin at 202-514-3716 if you have any questions.

Sincerely,

Carol Ehrlich
Freedom of Information Act Officer

**EXHIBIT 2**

Exchange-ARMS Interface Requirements
Executive Office of the President

# *Exchange-ARMS Interface*

# *Requirements*

### *For*

### *The Executive Office of the President (EOP)*

# **Microsoft Exchange**

E-Mail System



## **Office of Administration**

## **Information Systems & Technology Division**

*November 12th, 2002*

Exchange-ARMS Interface Requirements
Executive Office of the President

# Introduction

The Executive Office of the President (EOP) is required by law to manage and store the records of the daily business of the government, including communications conducted through email systems.

As related to email, there are two specific records-management goals:

- Search – to respond to requests for information by searching stored records
- Archive – to format records for eventual submittal to the National Archives and Records Administration (NARA)

The primary email system at EOP is Lotus Notes, which uses a custom application to submit email records to the Automated Record Management System (ARMS), also a custom application.  ARMS fulfills both the search and archive records-management goals.

The EOP is currently deploying Microsoft Exchange with the expectation that Exchange and Notes will co-exist and interoperate for the foreseeable future.

(b)(2),(b)(5)

Exchange-ARMS Interface Requirements
Executive Office of the President

**EOP Environment**



# General Project Requirements

The EOP expects that in general any solution will meet the following requirements.

- The RSS must be installable by EOP personnel, and therefore all necessary software and installation instructions must be provided.

- There must be sufficient documentation that EOP personnel can understand and manage the RSS.

- The RSS must provide sufficient reporting and administration tools such that EOP personnel can be satisfied of correct operation on an ongoing basis.

# Functional RSS Requirements

The general functional requirements of the RSS are described in the following table.

| Requirement | Description |
|---|---|
| Exchange Interface | Retrieves email from Exchange. |
| Formatting | Formats records in ARMS-ready format. |
| Active Directory Interface | Retrieves name and agency information from Active Directory |
| ARMS-Ready Repository | Contains formatted data on disk awaiting submittal to ARMS |
| ARMS Interface | Submits data to ARMS |
| Retention | Data needs to be removed from the repository |

Exchange-ARMS Interface Requirements
Executive Office of the President

Each of these functions is described in further detail below.

## Exchange Interface

The RSS must obtain all email records in Exchange, including but not limited to:

- Standard email
- Non-delivery receipts
- Read receipts
- Calendar-related email

In addition, the RSS must obtain BCC information for emails. As installed, Exchange does not preserve BCC information. The EOP has implemented a custom MAPI field that contains BCC information. This method may change. The RSS will need to collect this BCC information.

## Formatting

The RSS must format email according to a specific format. Within this document, this format is referred to as the ARMS-ready format and is specified below.

## Active Directory Interface

The RSS must interface with the Active Directory hosting Exchange. This is necessary to resolve email addresses to human-readable names whenever possible, and also to include EOP agency designation for each user, which is stored in Active Directory.

## ARMS-Ready Repository

The ARMS-Ready Repository consists of data on disk ready to be submitted to ARMS. It consists of a structure of directories and files. This directory structure is described below under ARMS-Ready Format.

## ARMS Interface

The RSS must submit data to ARMS on a regular basis. This is further described below under ARMS Submittal Process.

# ARMS-Ready Format

## *ARMS-Ready Repository*

Records formatted for ARMS must be placed in the ARMS-Ready Repository, which is simply a directory on disk structured as follows.

Within the repository there are three levels of directories, which for purposes of this discussion will be referred to as level 1, level 2, and level 3. The highest level, level 1, consists of a series of directories named in the form YYYYMMDDHHMMSS, such that the directory name is derived from a date and time associated with the email contained within, or alternatively associated with the time the level 1 directory was created. In the diagram below these level 1 directories are referred to as *Level-1-Dir-1*, *Level-1-Dir-2*, and *Level-1-Dir-3*, but these are

Exchange-ARMS Interface Requirements
Executive Office of the President

placeholders:  the actual directories on disk must be the 14-character numeric names described above.

The second level of directories, the level 2 directories, consists of three directories in each of the level 1 directories.  The level 2 directories are named ATTACH, HEADER, and MESSAGE.

The third level of directories, the level 3 directories, consists of one hundred directories in each of the level 3 directories, named in the format D$n$, where $n$ is a number from 0 to 99.

The following diagram depicts the directory structure:

*Level-1-Dir-1*
    ATTACH
        D0
        D1
        …
        D99
    HEADER
        D0
        D1
        …
        D99
    MESSAGE
        D0
        D1
        …
        D99
*Level-1-Dir-2*
…
*Level-1-Dir-n*

## ARMS-Ready Files

A single email is broken up into some number of files, as follows:

    A single header file
    A single message file
    Zero or more attachment files

## Header File Names

The header file is named as follows:

    *Email-Identifier*.hdr

Exchange-ARMS Interface Requirements
Executive Office of the President

Where *Email-Identifier* is a filename guaranteed to uniquely identify a single email within the formatting server within its lifetime of operation. A possible solution would be to generate the *Email-Identifier* by a combination of a YYYYMMDDHHMMSS time stamp and a sequential component.

## Message File Names

The message file is named as follows:

>   *Email-Identifier*.msg

Where *Email-Identifier* is as specified above.

## Attachment File Names

Attachment files are named as follows:

>   *Email-Identifier_File-Extension.Counter*

Where

| | |
|---|---|
| *Email-Identifier* | – is as specified above |
| *File-Extension* | – is the zero or more characters to the right of the right-most period (.) in the original attachment file name |
| *Counter* | – is a three-digit string from the series 001 … 999. As an example, an email with 3 attachments would use 001, 002, and 003. |

## *Relationship between files and directories within the ARMS-Ready Repository*

A given email is broken up into its component parts as described above. Within the level-1 directory associated with that email, the component parts will be placed within the level-2 and level-3 directories such that attachments, header files, and message files are under the corresponding ATTACH, HEADER, and MESSAGE level-2 directories, and all the components of a single email reside within level-3 directories of the same name.

Within all of the level-3 directories associated with a single level-1 directory, emails are placed in the level-3 directories in round-robin fashion in the order D0, D1 . . . D99.

## *ARMS-Ready File Structures*

## Attachment Files

ARMS-ready attachment files contain on a one-for-one basis the attachments from the original email. The contents are the same, although the file names change.

## Header Files

ARMS-ready header files contain all information associated with an email such as the sender, the recipient list, the subject, and all other email information, as well as information such as the attachment and message file names.

Exchange-ARMS Interface Requirements
Executive Office of the President

The header file is a single file composed of a series of fields described in the table below.

| Field Name | Length (bytes) | Type | ARMS Value/Format |
|---|---|---|---|
| Header Length | 4 | 4 byte unsigned | Size of header in bytes |
| Host Message Filename | 256 | String | Nserver:[dirname.dx]messagefilename<br><br>N: the literal character "N"<br><br>server:  name of server<br><br>dirname:  MESSAGE<br><br>dx:  D0…D99<br><br>messagefilename:  file name of the associated message<br><br>Note:  padded with spaces to 256 characters |
| Message Time | 16 | String | YYYYMMDDHHMMSSHH<br><br>The time contained in the MAPI field PR_MESSAGE_DELIVERY_TIME expressed in the format above.  HH (hundredths of seconds) may be 00.  There must be a method of dealing with emails with a blank or non-existent PR_MESSAGE_DELIVERY_TIME. |
| Record Type | 1 | Char | "F" |
| Body Type | 1 | Char | "E" |
| Transaction Type | 1 | 1 byte unsigned | A single byte with the value of 1<br><br>Note:  not the character "1" |
| Source Identification | 2 | 2 byte unsigned | A two-byte value as follows: |
|  |  |  | 450 (MS Mail)<br><br>451 (MS Delivery Receipt)<br><br>452 (MS Waves Request)<br><br>453 (MS Non-Delivery)<br><br>454 (MS Calendar) |
| Filler | 39 | String | Filled with spaces |
| TAG_CREATOR | 1 | 1 byte unsigned | A single byte with the value of 111 |
| TAG_CREATOR Length | 2 | 2 byte unsigned | Length of From field |
| From | TAG_CREATOR Length | String | IntelligentName (Address [ Agency ])<br><br>Intelligent Name – human-readable name resolved from AD, if unresolveable specify as Unknown.<br><br>Address – address string from email<br><br>Agency – Agency code resolved from AD, if unresolvable, use "Unknown".<br><br>Note that in the construct "[ Agency ]" there is a space before and a space after the agency code. |

Exchange-ARMS Interface Requirements
Executive Office of the President

| Field Name | Length (bytes) | Type | ARMS Value/Format |
|---|---|---|---|
| TAG_SUBJECT | 1 | 1 byte unsigned | A single byte with the value 108 |
| TAG_SUBJECT Length | 2 | 2 byte unsigned | Length of Subject field.  If no subject, a length of 1. |
| Subject | TAG_SUBJECT Length | String | The subject from the email.  If no subject, a single space. |
| TAG_TO_ADDRESSEE | 1 | 1 byte unsigned | A single byte with the value 105 |
| TAG_TO_ADDRESSEE Length | 2 | 2 byte unsigned | Length of SendTo field |
| SendTo | TAG_TO_ADDRESSEE Length | String | IntelligentName (Address [ Agency ])  See the From field |
| TAG_CC_ADDRESSEE | 1 | 1 byte unsigned | 106 |
| TAG_CC_ADDRESSEE Length | 2 | 2 byte unsigned | Length of CopyTo field |
| CopyTo | TAG_CC_ADDRESSEE Length | String | IntelligentName (Address [ Agency ])  See the From field |
| TAG_BCC_ADDRESSEE | 1 | 1 byte unsigned | 110 |
| TAG_BCC_ADDRESSEE Length | 2 | 2 byte unsigned | Length of BlindCopyTo field |
| BlindCopyTo | TAG_BCC_ADDRESSEE Length | String | IntelligentName (Address [ Agency ])  See the From field |
| TAG_ATT_FILENAME | 1 | 1 byte unsigned | 107 |
| TAG_ATT_FILENAME Length | 2 | 2 byte unsigned | Length of Host Attachment Filename field |
| Host Attachment Filename | TAG_ATT_FILENAME Length | String | Nserver:[dirname.dx]attachfilename  N: the literal character "N"  server:  identifier of server  dirname:  ATTACH  dx:  D0…D99  attachfilename:  file name of the associated attachment |
| TAG_DONE_ATT | 1 byte | 1 byte unsigned | 112 |
| TAG_DONE_ATT Length | 1 byte | 2 bytes unsigned | 4 |
| Done | 4 bytes | String | The literal string "DONE" |

The fields described in the table above are organized within the file into a fixed part and a variant part.  The fixed part comes first in the file and is comprised of the following fields:  Header Length, Host Message Filename, Message Time, Record Type, Body Type, Transaction Type,

Exchange-ARMS Interface Requirements
Executive Office of the President

Source Identification, and Filler. These fields are always present, are always at the beginning of the file, and are always in this order.

The remainder of the fields comprise the variant part. Each field in the variant part is only present if needed. For instance, if a particular email has CC recipients then the fields TAG_CC_ADDRESSEE, TAG_CC_ADDRESSEE Length, and CopyTo will be present. If there are no CC recipients then the fields are omitted. Note that fields having to do with the sender and the subject, while technically variable, will in practice always be present. The fields in the variant part can be repeated as many times as needed. For instance, f there are five CC recipients then the TAG_CC_ADDRESSEE, TAG_CC_ADDRESSEE Length, and CopyTo fields will be repeated five times. In general, the fields in the variant part should be in the order listed in the table.

The last three fields listed in the table above, TAG_DONE_ATT, TAG_DONE_ATT Length, and Done, should only be present if there are attachment fields, and should follow all attachment fields.

Finally, in the table above, the Type column specifies what data type for each field. Note that the data types listed are either one-, two-, or four-byte numbers, or strings. Strings are a series of characters, without a termination character, with the length of the string taken from the previous field.

## ARMS Submittal Process

On some interval, such as daily, the RSS must submit the contents of zero or more first-level directories to the ARMS system. This is accomplished by copying the contents of each submitted first-level directory into a local directory path which is mapped to the ARMS system. The submittal must be logged, so that all first-level directories successfully copied are logged as such, any directories which fail to copy in their entirety are noted, and any directories that copy partially are noted, including what copied and what failed to copy.

Each email must be copied such that the message and attachment portions are copied first, and the header portion is copied last.

Each email must be copied as an atomic transaction such that if the header fails to copy the email is considered to have failed to copy.

## Data Retention

At some point, data in the repository which has been successfully received by ARMS must be deleted.

# EOP ELECTRONIC COMMUNICATIONS RECORDS MANAGEMENT SYSTEM

## STATEMENT OF WORK



THE EXECUTIVE OFFICE OF THE PRESIDENT
OFFICE OF ADMINISTRATION
OFFICE OF THE CHIEF INFORMATION OFFICER

JUNE 24, 2003

# DOCUMENT STATUS

| | |
|---|---|
| DOCUMENT ID | EOP-OA-OCIO-ECRMS-SOW |
| VERSION | v06 |
| FILE NAME | EOP-OA-OCIO-CR&SE-ECRMS-SOW - v06 |
| REVISION DATE | Tuesday, June 24, 2003 - 4:07:00 PM |
| OWNER | The Executive Office of the President<br>Office of Administration<br>Office of the Chief Information Officer |
| DESCRIPTION | EOP Electronic Communications Records Management System Statement of Work |

# TABLE OF CONTENTS

1.0    Introduction ........................................................................................................... 1
       1.1    Identification ......................................................................................... 1
       1.2    Organization .......................................................................................... 1
              1.2.1    The Executive Office of the President ....................................... 1
              1.2.2    The Office of Administration ................................................... 1
              1.2.3    The Office of Chief Information Officer .................................... 1
       1.3    Background ........................................................................................... 2
       1.4    Current System ...................................................................................... 2
       1.5    Need for Change .................................................................................... 3
       1.6    Target System ....................................................................................... 3

2.0    Statement of Work ................................................................................................ 7
       2.1    Scope .................................................................................................... 7
       2.2    Statement of Work ................................................................................ 8
              2.2.1    Task 1 – Project Plan of Action .............................................. 8
              2.2.2    Task 2 – Requirements Specification and Analysis .................. 8
              2.2.3    Task 3 – Market Survey and Candidate Solution Analysis ........ 9
              2.2.4    Task 4 – Solution Design ...................................................... 10

3.0    Project Management and Description of Deliverables ............................................. 11
       3.1    Status Reporting .................................................................................. 11
       3.2    Work Effort Earned-Value Status Reporting ......................................... 11
       3.3    Form and Format of Deliverables ......................................................... 12
       3.4    Delivery and Review Process ............................................................... 12

4.0    Constraints and Other Administrative Considerations ........................................... 13
       4.1    Period of Performance .......................................................................... 13
       4.2    Authorities of Government Personnel .................................................... 13
       4.3    Place of Performance ........................................................................... 13
       4.4    Non-Disclosure .................................................................................... 13
       4.5    Contractor Personnel ............................................................................ 14
       4.6    Government Furnished Equipment (GFE) ............................................... 14
       4.7    Advertising of Award ........................................................................... 15
       4.8    Ownership of Documentation, Source Code and Data ............................ 15
       4.9    Privacy and Security Safeguards ........................................................... 15
       4.10   Computer Security ................................................................................ 16
       4.11   Limited Distribution and Use of Information ......................................... 16
       4.12   Standards of Conduct ........................................................................... 17
       4.13   Federal Government Holidays ............................................................... 17
       4.14   Disclosure of Concurrent Work Efforts ................................................. 18
       4.15   Potential Conflicts of Interest ............................................................... 18
       4.16   Invoice Requirements ........................................................................... 18
       4.17   Travel and Charges .............................................................................. 18

# 1.0 INTRODUCTION

### 1.1 Identification

This document is the Statement of Work for Executive Office of the President (EOP) Electronic Communications Records Management System (ECRMS).

### 1.2 Organization

### 1.2.1 The Executive Office of the President

The Executive Office of the President (EOP) was formally established in 1939 by Executive Order 8248. The current organizational structure of the EOP is a group of organizations that provide policy and administrative support to the President of the United States.

Each component of the EOP has a unique mission and goals, which supports the activities, policies and priorities of the President. Because of the nature of the organization, no formal hierarchical structure exists. In most cases, each agency and office within the EOP has its own director, mission and budget. The priorities of each are consistent with the policies and priorities of the President. The Office of Administration is responsible for providing common administrative support and services to all components of the EOP.

### 1.2.2 The Office of Administration

The Office of Administration (OA) was formally established by Executive Order 12028 on December 12, 1977. Its mission is to provide common administrative support and services to all units within the EOP, except for services provided primarily in support of the President. OA will assist the White House Office in performing its role of providing those administrative services which are primarily in direct support of the President. The Director of the OA has overall management responsibilities for OA, which includes coordination of policies and priorities.

### 1.2.3 The Office of Chief Information Officer

Within the OA, all information technology (IT) support for the EOP is provided by the Chief Information Officer's (CIO) Organization. The Office of the CIO is organized into three directorates, Information Assurance (IA), Concepts, Requirements, and System Engineering (CRSE), and Information Systems and Technology (IS&T). These directorates handle IT security, new systems architecture & engineering, and development & sustainment of the production IT environment across all offices of the EOP and others as assigned by the Director of the Office of Administration.

## 1.3    Background

The Automated Records Management System (ARMS) is the system currently in use by the EOP for the management of electronic records. This system was implemented in 1994 as a solution for the retention and management of electronic communications (primarily E-mail messages) for the EOP. The purpose of the ARMS system was to meet the requirements set forth in the Presidential Records Act (PRA), the Federal Records Act (FRA) and various Federal court decisions. The current system was created to get it operational as quickly as possible. Many technology and design decisions were made based on the technical expertise, tools and systems that were present-at-hand within the EOP at that time.

The current electronic records management environment was developed and deployed to meet an urgent need to preserve E-mail records. The system was never intended to be the long-term strategic solution. Because it was not the ultimate system, decisions were made to accept additional operational risks, recognizing that these risks would be addressed in the implementation of the ultimate system. The analysis and review of the operational risk factors of the current environment resulted in the decision by the OA to replace the system with a more appropriate, stable and expandable solution.

## 1.4    Current System

The ARMS system is a key component of the current overall electronic records management approach of the EOP. Other systems and system components have been implemented to provide the transport and interface mechanisms from other record producing systems (E-mail systems) to ARMS. This compliment of systems is used for the collection, retention and processing of E-mail messages that originate or are received by the EOP.

The EOP ARMS system was designed to manage, store, search, monitor, retrieve and dispose of electronic records, primarily E-mail messages and attachments. Separate system components have been designed to capture all inbound E-mail messages received by EOP staff and to capture all E-mail messages originated by EOP staff. The categorization of an E-mail message as Presidential record or Federal record is determined by the agency or office of the originator and recipient of the message. The system is intended to support the storage of the retained records for an extended period of time (e.g. a two-term administration) and to support the physical separation in the storage of Presidential and Federal records.

ARMS and its associated systems are installed on various servers within the EOP E-mail systems environment and data center server environment. The current functions of these systems (ARMS and the associated supporting systems) include:

- Retention of all in-bound E-mail messages that are received by EOP users from sources external to the EOP
- Retention of all EOP staff originated E-mails messages (created in the Lotus Notes E-mail environment and other E-mail environments that include an interface for ARMS)
- Collecting and reformatting of retained E-mail messages for storage in the system
- Cataloging and separation of the retained E-mail messages by an EOP office (for the effective separation of presidential records and federal records)
- Long-term storage of the retained records
- Monitoring of the records in the system
- Retrieval of records stored in the system to satisfy various types of search and retrieval requests (Freedom of Information Act (FOIA), subpoena, congressional)
- Creation of magnetic tapes for the transfer of records to the National Archives and Records Administration (NARA)

The EOP currently uses two E-mail platforms, Lotus Notes and Microsoft Outlook/Exchange. The current ARMS implementation supports the retention and processing of E-mail records from the Lotus Notes E-mail environment. A project is currently underway to provide an interface from the Microsoft Outlook/Exchange E-mail platform to the ARMS environment.

The current electronic records management system includes ARMS and a number of ancillary systems to provide data to ARMS. These are installed on servers within the EOP E-mail and data center server environment. The system is managed and maintained by staff members of the Office of the Chief Information Officer with the day-to-day operations support provided by data center operations contract personnel. The system processes between 1 and 1.5 million E-mail messages per month with an aggregate total size of between 150 and 200 GB.

## 1.5    Need for Change

Several factors have caused this examination of the current electronic records management capabilities of the EOP are numerous. The most significant of these include:

- A more focused awareness of the operating risks of the current system
- The need for greater flexibility in supporting other types of electronic records
- New requirements and procedures that have been or will be promulgated by NARA and the need to have the ability and flexibility to support these requirements
- Increase availability of Commercial-Off-The-Shelf (COTS) products that may meet many of the electronic records management requirements of the EOP
- Desired alignment with the new EOP IT Strategy and Enterprise Architecture (EA)

The EOP is required to support a complex and unique set of electronic records management requirements. Although the current EOP electronic records management environment may provide support for many of these requirements, it does not support them in a manner that is consistent with current systems engineering principles and practice. This situation, along with new requirements and the increasing use of electronic communications and electronic documents within the EOP requires action to be taken to ensure that adequate support is provided to meet the electronic management needs of the EOP.

## 1.6    Target System

The new Electronic Communications Records Management Systems (ECRMS) will be implemented to support the legal, regulatory and policy requirements regarding the collection, management and use, and disposal of electronic records within the EOP and the White House. The primary goal of this effort is to provide an efficient and effective solution to meet the current Electronic Records Management requirements of the EOP.

At a high level the target system shall include, or account for, the following desired features:

- Commercial Off-The-Shelf (COTS) solution is the preferred. A custom-developed solution will be used only when warranted and justified (or when COTS solutions are not available)
- Support for the collection and records management of all inbound, outbound and internal electronic messages
- Implemented on a commercially trusted platform
- Flexible environment that allows for the addition of new types of electronic records
- Use of industry standard data mechanisms (e.g. XML)

- Flexible integration with various types of systems that are the source of the electronic records

- Support for various types of electronic records (E-mail, E-mail with attachments, electronic document, instant messaging, image, audio and video, etc.)

- Support for various types of electronic formats including all word processor, spreadsheet, presentation and other widely used document formats (Microsoft Word, Excel, PowerPoint, Adobe PDF, Postscript, etc.)

- Flexible web-based user interface for administration, searching and reporting

- Efficient search mechanism for simple and advanced searches, including the searching of attachments

- Acceptable performance for processing retrieval requests

- Management reporting capabilities

- Robust production quality operational model that provides effective operations support mechanisms and processes to ensure the completeness of the retained records

- Security architecture that is compliant with the EOP Information Assurance Security Policy and industry best practices

- Policy and role based system access and authorization support to provide fine-grained access support to users and user groups

- A standard platform that is consistent with the EOP Enterprise Architecture principles and standards and aligned with related Capital Investment Plan (CIP) projects

- Complete data and activity audit trail support

- Extraction and electronic data transfer features that allow for the delivery of specific records to satisfy retrieval requests

- Scalable platform that will support the increasing volume of electronic records

- DoD 5015.2 Certified platform

- Integrated system recovery and rollback capabilities

- Support for a high-availability, fault-tolerant and intrusion-tolerant environments.

- Support for the business resumption and disaster recovery environment of the EOP

These high-level features are only a representative set of the features, requirements and constraints of the electronic records management environment for the EOP. Information related to the EOP Information Assurance Security Policy and the EOP Enterprise Architecture will be provided for use during this engagement. The detailed definition and analysis of the legal, regulatory and business requirements of the system, as well as the assignment of priorities for these requirements will be determined during the requirements analysis process.

The following is a high level context model of the significant components and functions of the system. It is not intended to be a complete representation of the system. A complete contact model will be completed as part of the system design process.



A COTS (or GOTS) solution is the preferred solution. The reasons for this position include:

- Custom-developed solutions are used only when warranted and justified (or when COTS solutions are not available)

- COTS solutions provide wider platform support and increase platform stability

- COTS vendors provide better and more timely support of changes and upgrades to underlying server, operating system and database platforms

- COTS vendors specialize in application development and provide more thorough testing of the products and tend to provide better support for industry standard technologies, and interface and integration mechanisms

- The selection of certain certified COTS products (e.g. DoD 5015.2) often times enables us to satisfy NARA and other requirements

- The use of COTS products, which comply with the EOP Enterprise Architecture and the technical direction of the EOP, may significantly reduce the effort required to develop, test, and deploy the system.

If it is determined that COTS products cannot provide the all the critical functionality necessary to address the necessary requirements, then additional analysis, requirements and product review and system design may be necessary to address the deficiencies.

The selection of a COTS solution does not eliminate the need for development and testing resources. In this work effort, careful consideration must be given to the time and skills needed to integrate COTS components into the environment. This includes design, implement, test and documentation of the software that will support COTS integration.

# 2.0   STATEMENT OF WORK

## 2.1    Scope

The goal of this work effort is to provide a complete proposed solution design for the EOP Electronic Records Management System. The scope of this work effort DOES NOT include the implementation of the solution. The implementation of this proposed solution will be completed as a separate work effort. The procurement process for the implementation of the solution will occur after a thorough and complete review of the solution had been completed.

The major tasks for this work effort include:

- Definition of approach and a project plan of action

- Complete a thorough requirements gathering, analysis and synthesis process to develop a complete set of requirements (user, functional, non-functional, system, legal and policy) for the implementation of a new electronic records management system

- Perform a market survey to identify viable candidate COTS/GOTS solutions that will be able to meet the defined requirements

- Complete a detailed analysis of at least three viable candidate solutions to determine best-fit and best value for the Government

- Work with the Government to select the single proposed solution

- Complete a detailed solution design that will be used for the implementation of the solution

To reiterate, the implementation of the proposed solution is not within the scope of this effort. There may be a significant gap of time between the completion of this work effort and the initiation of the implementation phase of the proposed solution. This gap is required because of the extensive review and acceptance of the solution by numerous stakeholders within the EOP and other external agencies.

At the completion of this effort, the Government may request that the Contractor submit a proposal for the implementation of the proposed solution. At its sole discretion, the Government may accept the Contractor's proposal, compete the award of the Phase II implementation, or complete the effort with Government resources.

The kickoff meeting for this work effort will occur after all key Contractor personnel have received EOP security clearances.

Associated with each task in this Statement of Work is a proposed schedule/duration. This schedule is designed to complete all the tasks and deliverables within a 6 month period. Variations to this schedule can be proposed by the Contractor as part of the proposal.

## 2.2    Statement of Work

### 2.2.1    Task 1 – Project Plan of Action

The Contractor shall define the Project Plan of Action that will specify and define all the activities to be performed by the Contractor in support of this work effort. This Project Plan of Action document shall define in detail the Contractor's approach and methodology. Existing Contractor methodology support material should be included to support the chosen methodology. The project plan shall include a work breakdown structure (WBS level 3) of all tasks and milestones included in the effort, the dependencies between tasks, the estimated duration of each task and the resources assigned to each task. The Project Plan of Action shall also include a detailed description of the form and contents proposed for each deliverable set forth in this statement of work.

| | |
|---|---|
| Deliverable: | 1 |
| Description: | Draft Project Plan of Action Document and Project Plan |
| Target Delivery: | 5 business days after Project Kickoff Meeting |

| | |
|---|---|
| Deliverable: | 2 |
| Description: | Final Project Plan of Action Document and Project Plan |
| Target Delivery: | 3 business days after receipt of Government's comments on Draft Project Plan of Action Document and Project Plan |

### 2.2.2    Task 2 – Requirements Specification and Analysis

The Contractor shall perform a complete and thorough requirements gathering and analysis process in order to capture all the requirements of the system, as well as all constraints (system, legal, policy) that are placed on the system. The deliverable of this task is a complete and defined set of user, system, functional and non-functional requirements. The use of industry accepted standards and practices for the specification of system requirements is expected. The Contractiing Officer's Technical Representative (COTR) will assist the Contractor in the scheduling of all meetings and interview with key stakeholders necessary for the efficient and effective completion of this task by the Contractor.

| | |
|---|---|
| Deliverable: | 3 |
| Description: | Draft System Requirements Specification |
| Target Delivery: | 35 business days after acceptance of Project Plan of Action and Project Plan |

The Contractor shall conduct a face-to-face detailed walk-through and inspection of the Draft System Requirements Specification. This shall be appropriately scheduled to ensure key Government stakeholder participation. The comments, issues and concerns that are the result of this walk-through and the review of other stakeholders shall be taken under consideration and review by the Contractor and, when appropriate, the Contractor shall address these in the final deliverable.

| Deliverable: | 4 |
|---|---|
| Description: | Final System Requirements Specification |
| Target Delivery: | 5 business days after walk-through and inspection of Draft System Requirements Specification |

### 2.2.3   Task 3 – Market Survey and Candidate Solution Analysis

The Contractor shall perform a market survey to identify viable candidate COTS/GOTS solutions that will be able to meet the defined requirements. From the results of this survey the Contactor shall define at least three viable candidate solutions and complete a detailed analysis to determine best-fit and best value for the Government.

The task shall include (but is not limited to) validation of requirements with each solutions, analysis of total cost of ownership (initial startup costs and ongoing support and maintenance) of the solution, review and assessment of financial viability of COTS vendor, trade-off analysis of the solution against the requirements, the stability and installed base of the COTS product and the technology fit in the EOP enterprise infrastructure.

| Deliverable: | 5 |
|---|---|
| Description: | Draft Market Survey and Solution Analysis |
| Target Delivery: | 25 business days after the completion of the System Requirements Specification |

The Contractor shall conduct a face-to-face detailed walk-through and review of the Draft Market survey and Solution Analysis. This shall be appropriately scheduled to ensure key Government stakeholder participation. The comments, issues and concerns that are the result of this walk-through and the review of other stakeholders shall be taken under consideration and review by the Contractor and, when appropriate, the Contractor shall address these in the final deliverable.

| Deliverable: | 6 |
|---|---|
| Description: | Final Market Survey and Solution Analysis |
| Target Delivery: | 5 business days after the walk-through and review of the Draft Market Survey and Solution Analysis |

The Government shall notify the Contractor regarding the Government's decision of the solution selection. In the case where no solution is suitable, Task 4 will not be executed by the Contractor.

EOP ELECTRONIC COMMUNICATIONS RECORDS MANAGEMENT SYSTEM - STATEMENT OF WORK

### 2.2.4    Task 4 – Solution Design

The Contractor shall complete a solution design based upon the Government's solution selection decision. The design shall be consistent with the EOP Systems Development Life Cycle and industry accepted system design practices

| Deliverable: | 7 |
|---|---|
| Description: | Draft Solution Design |
| Target Delivery: | 25 business days after the notification of the Government's decision of the solution selection |

| Deliverable: | 8 |
|---|---|
| Description: | EOP Electronic Records Management Solution Design |
| Target Delivery: | 5 business days after the walk-through and review of the Draft Solution Design |

The solution design will be used for the implementation of the solution. It should clearly identify the areas of customization and the magnitude of customization effort that is required for the implementation of the solution.

# 3.0    PROJECT MANAGEMENT AND DESCRIPTION OF DELIVERABLES

### 3.1    Status Reporting

The Contractor shall provide weekly written status reports to the Government to report activities completed during the reporting period, the planned near term activities for the next reporting period and to track issues and action items necessary for the effective management of the work effort.

The status report shall include the following:

   a. List and description of accomplishments that occurred during the reporting period

   b. Planned work for the next reporting

   c. List and status of all outstanding project management issues, problems and action items

   d. All known changes to the project schedule

The reporting period shall be from Monday through Sunday. The weekly status report shall be delivered every Monday by 12:00 Noon and the reporting period shall be for the week that was just completed. If the report delivery date falls on a holiday, the report shall be delivered on the first business day after the holiday. The report shall be delivered via E-mail to the Contracting Officer and the Contracting Officer's Technical Representative.

### 3.2    Work Effort Earned-Value Status Reporting

The Contractor will provide the following information, in the format prescribed below. This should be reported on a calendar month basis and should be delivered by the 5th day of the subsequent month. The report shall be delivered via E-mail to the Contracting Officer and the Contracting Officer's Technical Representative.

The Contractor will provide the following (in graph form):

   a. Graph #1 – Work Effort Hours - The budgeted work hours to be performed allocated across the current work effort schedule; and on the same graph the actual work hours performed allocated across the current work effort schedule.

   b. Graph #2 – Work Effort Costs - The budgeted cost of work to be performed allocated across the work effort schedule; and on the same graph the actual cost of work performed allocated across the work effort schedule.

In the event the actual cost or hours of work performed exceeds the budgeted cost or hours of work to be performed at any time, the Contractor will provide an estimate to complete for both the hours and dollars.

For information, the following is provided:

   a. The budgeted work to be performed is the amount of hours and dollars awarded under the contract to accomplish the effort required under the contract. It does not include the dollars or hours associated with unexercised options or any anticipated but not awarded work.

   b. The actual work performed is the amount of hours and dollars incurred by the Contractor to accomplish the required effort under the contract.

   c. The estimate to complete is the hours and dollars required to complete the remaining work effort required by the contract.

### 3.3    Form and Format of Deliverables

All deliverables shall meet the following standards of form and format:

a. The Microsoft Office suite of products is the primary desktop office-automation environment in use within the Office of the CIO. All documents, spreadsheets, presentation material and graphics images should be compatible with that environment. Specifically:

- All text document and reports shall be delivered in Microsoft Word 2000 or 2002 format (.doc). The document file should not be password protected.

- All spreadsheet deliverables shall be delivered in Microsoft Excel 2000 or 2002 format (.xls).

- All presentation slides shall be delivered in Microsoft PowerPoint 2000 or 2002 format.

- All graphics shall be delivered in formats that are compatible with the Microsoft Windows (NT, 2000 and XP) desktop computing environments. Microsoft Visio is the preferred graphics application for the EOP.

b. All documents shall be paginated and include a cover page that includes a title that clearly identifies the deliverable and the actual date of delivery. All text documents shall also include a table of contents.

c. All documents shall be written in American English, at a college reading level.

d. All deliverable shall be accurate in presentation, technical content, and adherence to generally accepted elements and principles of style.

e. All deliverables shall be clear and concise. All diagrams shall be easy to understand and be relevant to the supporting narrative.

f. Prior to the initiation of the development of each deliverable, the Contractor shall define and proposed the exact structure and format of the deliverable. This must be approved by the Government prior to the initiation of the work effort. In some cases the Government may provide existing templates for use by the Contractor.

g. All text documents, spreadsheets, presentations and diagrammatic files shall be editable by the Government. The files shall not be copy protected or password protected.

### 3.4    Delivery and Review Process

Along with each deliverable, the Contractor shall provide a cover letter to the Contracting Officer's Technical Representative (COTR). A copy of the cover letter shall be sent to the Contract Officer. The cover letter shall include the title of the deliverable, the actual delivery date, the due date for Government response and the Contractor's point of contact for the deliverable.

The Government shall have 10 business days, or a mutually agreed upon amount of time, for the review of the deliverable. This period shall be reflected in the project plan. The Government shall identify any deficiencies of the deliverable in writing and forward this list to the Contractor's point of contact. The Contractor shall have 5 business days, or a period mutually agreed upon to take corrective actions and deliver the corrected deliverable to the Government. The Government has to right to review the corrected deliverable following the schedule outlined above.

The contractor shall deliver three printed copies and one electronic copy (on CD-ROM) of each deliverable.

# 4.0 CONSTRAINTS AND OTHER ADMINISTRATIVE CONSIDERATIONS

## 4.1    Period of Performance

The period of performance for this effort is from the date of award for a 6 month (180 calendar days) period.

Within one week of award, the Contractor shall conduct an orientation briefing for the Government. The Government does not desire an elaborate orientation briefing nor does it expect the Contractor to expend significant resources in preparation for this briefing. Rather, the intent of the briefing is to initiate the communication process between the Government and the Contractor by introducing key task order participants and explaining their roles, reviewing communication ground rules, and assuring a common understanding of task order requirements and objectives.

The Orientation briefing will be held at the Government's facility and both parties will mutually agree upon the date and time. The goals of this briefing is to provide a means for the introduction of both Contractor and Government personnel performing work on this effort and to all the Contractor to demonstrate their understanding of the work to be accomplished under this Statement of Work.

## 4.2    Authorities of Government Personnel

Notwithstanding the Contractor's responsibility for total management during the performance, the administration of the delivery order will require maximum coordination between the EOP and the Contractor. The COTR will monitor all technical aspects of the work effort. The types of actions within the purview of the authority of the COTR are to assure that the Contractor performs the technical requirements of the contract, and to notify both the Contractor and the Contracting Officer of any deficiencies observed. A letter of designation will be issued to both the COTR and the Contractor at the time of delivery order award setting forth the responsibilities and limitations of the COTR.

It is important to note that while the COTR will be responsible for administering performance of work under this delivery order, in no event will any understanding, agreement, modification, change order, or other matter deviating from the terms of this delivery order be effective or binding upon the Government unless proper, formal contractual documents are executed by the Contracting Officer prior to completion of the delivery order.

## 4.3    Place of Performance

Some of the tasks for this work effort may be performed at the offices and facilities of the Contractor. For those tasks that require the direct participation by EOP staff, the principal places of performance is the White House complex (the White House, Eisenhower Executive Office Building (EEOB), New Executive Office Building (NEOB)), other offices located in the vicinity of the White House and the EOP Data Center facility located in the Washington DC metropolitan area. Reasonable office space will be provided by the government to support the on-site contract personnel necessary to support the performance of this work effort.

## 4.4    Non-Disclosure

The Contractor will complete non-disclosure agreements and abide by EOP rules for non-disclosure of information. The EOP will consider any unauthorized disclosure of information as a breach of this contract and justification for legal action by the government. The contractor must comply with Privacy Act safeguards for the protection of all personal information under contractor control.

### 4.5    Contractor Personnel

All data and information that is required in the performance of this task is unclassified. However, access to the White House Complex (including the New Executive Office Building and the Eisenhower Executive Office Building) requires approval by the EOP Security Office. Approval is granted after suitability is determined by considering the results from a name check performed by the Federal Bureau of Investigation (FBI). Contractors must allow at least ten working days prior to the projected start date for a name check to be processed and approved by the Security Office, though the process could take longer. It is the Contractor's responsibility to provide personnel who will meet EOP personnel security requirements and to ensure that access requirements are satisfied in a timely manner. All Contractor personnel must be 18 years of age and U.S. citizens. Contractor personnel who require access to the complex for longer than 90 days MAY also be required to undergo a full field FBI investigation, and other background investigations as deemed appropriate. Contractors must provide information to complete the full field background investigation within 2 weeks after their start date at the White House Complex or within 2 weeks of being notified that their work will extend for longer than a 90 day period. Permanent access (access beyond 90 days) is only granted when results of the investigations are reviewed and approved by officials within the EOP Security Office. Contractor personnel must provide all information requested to ensure that background investigations are properly processed.

Contractors are responsible for ensuring that all staff adheres to EOP check out procedures when access is no longer required. Departing personnel must return building passes to the EOP Security Office where they will obtain instructions for checking out of the complex.

The Contractor will complete non-disclosure agreements and abide by EOP rules for non-disclosure of information. The EOP will consider any unauthorized disclosure of information as a breach of this contract and justification for legal action by the government. The contractor must comply with Privacy Act safeguards for the protection of all personal information under contractor control.

### 4.6    Government Furnished Equipment (GFE)

The Office of the CIO will furnish telephone service, faxes, copiers, computing workstations and operating/office supplies as required for the performance of on-site work efforts. Government equipment shall be handled in accordance with Federal Acquisition Regulations (FAR) guidance.

## 4.7    Advertising of Award

The Contractor shall not refer to this award in commercial advertising, or similar promotions in such a manner as to state or to imply that the product or services provided is endorsed, preferred, or is considered superior to other products or services by the Executive Office of the President, the Office of Administration, the Office of the Chief Information Officer, or the White House.  This includes advertising or similar promotions, in all forms or electronic, broadcast, and print media.

In addition, the Contractor is strictly prohibited from reproducing the image(s) of the EOP in any form of commercial advertising or similar promotion.  This includes images of official seals and buildings. The reproduction of official seals and the images of buildings is a matter controlled by regulation and Executive Order.  Any proposed usage of such symbols must be brought to the attention of the Contracting Officer.

## 4.8    Ownership of Documentation, Source Code and Data

All documentation, source code and data generated, created, or initiated by any means under this contract is the property of the Federal Government, including copyright unless otherwise provided in writing. Relevant copies of code, data, and documents will be provided in electronic format to the COTR at completion of the related task, and at the close out of this work effort.

## 4.9    Privacy and Security Safeguards

The contractor shall conform to standards of privacy and security as follows:

a.  The details of any safeguards the Contractor may design or develop under this work effort are the property of the Government and shall not be published or disclosed in any manner without the Contracting Officer's express written consent.

b.  The details of any safeguards that may be revealed to the Contractor by the Government in the course of performance under this work effort shall not be published or disclosed in any manner without the Contracting Officer's express written consent.

c.  The Government shall be afforded full, free, and uninhibited access to all facilities, installations, technical capabilities, operations, documentation, records, and databases for the purpose of carrying out a program of inspection to ensure continued efficacy and efficiency of safeguards against threats and hazards to data security, integrity, and confidentiality.

d.  If new or unanticipated threats or hazards are discovered by either the Government or the Contractor, or if existing safeguards have ceased to function, the discoverer shall immediately bring the situation to the attention of the other party.  Mutual agreement shall then be reached on changes or corrections to existing safeguards or institutions of new safeguards, with final determination of appropriateness being made by the Government. The Government's liability is limited to an equitable adjustment of cost for such changes or corrections, business, damage to reputation, or damages of any other kind arising from discovery of new or unanticipated threats or hazards, or any public or private disclosure thereof.

## 4.10  Computer Security

All contractors accessing EOP systems shall be required to comply with all computer security policies and practices of the EOP. In addition, contractor personnel who are granted special access privileges to perform system administrator functions will be required to sign a Special Access Privileges Agreement. This agreement ensures that privileges will not only be used for required functional purposes.

Contractors will also ensure that the design, development, maintenance and operation of any system they are tasked to support is conducted in compliance with regulatory and EOP procedural requirements. For system development projects, a system specific security plan must be prepared and presented to the COTR and Information Assurance for approval prior to implementation.

Unless approved by the COTR and the Director of Information Assurance, the Contractor will not:

a. Load commercial off-the-shelf (COTS) products, custom-developed software, shareware, freeware, or other software onto any EOP workstation or server. Modifications to the standard software configurations must be approved by the IS&T Change Management Committee prior to implementation.

b. Load or implement any network monitoring or scanning tools.

c. Make any modification to EOP network perimeter controls (firewalls, routers, security servers, modems, etc.).

Through the COTR, the Contractor should consult with Information Assurance when there is any question concerning EOP computer security policies and procedures.

## 4.11  Limited Distribution and Use of Information

The contractor shall conform to standards of privacy and security as follows:

a. Performance of this effort may require the Contractor to have access to and use of data and information which may be considered proprietary by others, or which may otherwise be of such a nature that its dissemination or use, other than in performance of this effort, would be adverse to the interests of the Government and others.

b. The Contractor agrees that Contractor personnel will not divulge or release data or information developed or obtained in connection with the performance of this delivery order until made public by the Government, except to authorized Government personnel, or upon written approval of the Contracting Officer. To the extent of the work under this delivery order requires access to business confidential or financial data of others, the Contractor shall protect data so acquired from unauthorized use and disclosure and agrees not to use it for any purpose other than the performance of this delivery order. This data may be in various forms, such as documents, raw photographic prints, computer printouts or it may be interpretative results derived from analysis, investigation or study efforts. Regardless of the form of this data, the Contractor agrees that neither it nor any of its employees shall disclose other Contractor business confidential or financial data or derivatives thereof, to third parties except as may be required in the performance of this work effort. Further, the Contractor shall not use nor copy any of this data or derivations thereof, for the purpose other than as may be necessary in the performance of this delivery order.

c.  The Contractor shall establish policies and procedures to implement the substance of this Clause at the individual employee level which will assure that affected employees are made aware of the delivery order provisions and the Contractor's implementing policies and procedures. Particular attention will be given to keeping employees advised of the statues and regulations applicable to the handling of other Contractor business confidential of financial data.

d.  Except as may be otherwise agreed to with a data owner, the Contractor further agrees it will not use, disclose or reproduce proprietary data belonging to others and which bears a restrictive legend, other than as required in the performance of this delivery order; provided, however, that nothing herein shall be construed as: precluding the use of any such data independently acquired by the Contractor without such limitation; or prohibiting an agreement at no cost to the Government between the Contractor and the data owner that provides for greater rights to the Contractor.

e.  The Contractor shall include the above clauses in all subcontracts.

## 4.12    Standards of Conduct

The contractor shall conform to standards of conduct as follows:

a.  Contractor employees shall, at all times, dress appropriately for a professional office environment.

b.  No contractor employees shall solicit new business while performing work under this contract on Government premises.

c.  The contractor and contractor employees shall refrain from discussion with unauthorized persons any information obtained in the performance of work under this contract.

d.  The contractor and his/her employees shall conduct only such business as covered by this contract during periods paid by the Government. Business not directly related to this contract shall not be conducted on Government premises.

e.  Use of Government furnished equipment or records for company or personal use is strictly prohibited. Use of Government telephones to make personal, long distance phone calls at the Government's expense is prohibited.

f.  While the contractor's employees are at the Government facility, the contractor is responsible for compliance with all laws, rules, and regulations governing conduct with respect to health, safety, and use of Government property. This relates not only to the health and safety of contractor employees and agents, but also that of Government personnel and other individuals. While on Government premises or at home and in the possession of Government property, the contractor is responsible for such property and damages thereto.

g.  Contractor employees are expected to adhere to the high professional ethical standards to which Government personnel in a comparable position would be expected to adhere. In addition, contractor employees must comply with the pertinent provisions of the Office of Federal Procurement Policy Act Amendments of 1987, Pub. L. 101-189, 41 U.S.C. 423.

## 4.13    Federal Government Holidays

The following Government holidays are normally observed by Government personnel: New Years Day, Martin Luther King's Birthday, Presidential Inauguration Day (metropolitan DC area only), President's Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veteran's Day, Thanksgiving Day, Christmas Day and any other day designated by Federal Statute, executive Order, and/or Presidential Proclamation.

**4.14    Disclosure of Concurrent Work Efforts**

If during the course of proposing on or performing this effort, the contractor hires employees, consultants or subcontractors that are concurrently performing other work for the EOP, they shall notify the Contracting Officer of the contract, order or agreement and provide a listing of employees already performing on EOP efforts.

**4.15    Potential Conflicts of Interest**

The Contractor's employees assigned to work on this contract have an affirmative obligation to disclose to the Contracting Officer any personal or business relationship with Government personnel, or financial interests, which could present the appearance of an existing or potential conflict of interest. Failure to do so, if such becomes known by other means, could result in a determination of non-responsibility prior to award or termination of contract after award.

**4.16    Invoice Requirements**

The Contractor shall submit invoices no more than once monthly for work completed, to the following address:

        &lt;Name&gt;
        &lt;Organization&gt;
        &lt;Address 1&gt;
        &lt;Address 2&gt;
        Office:  &lt;Phone Number&gt;
        FAX:    &lt;Fax Number&gt;

Invoices shall be submitted to the Government office designated in the delivery order to receive invoices. To constitute a proper invoice, the invoice must include the following information and/or documentation:

  a.  Name of business concern and invoice date

  b.  Delivery order number or other authorization for delivery of property or services

  c.  Description, price, and quantity of goods/services actually delivered or rendered for each item billed

  d.  Shipping and payment terms

  e.  Name (where practicable, title, phone number, and complete mailing address of responsible official to whom payment is to be sent). The "remit to" address must correspond to the remittance address in the contract

  f.  Other substantiating documentation or information as required by the contract

The Contractor shall only charge the Government for "Productive Direct Labor Hours'. This is defined as those hours expended by contractor personnel in performing work under this contract. This does not include sick leave, vacation, Government or contractor holidays, jury duty, military leave or any other kind of administrative leave.

**4.17    Travel and Charges**

There is no anticipated travel expense associated with this work effort. All travel to and from the place of performance is deemed to be local travel and will not have material charges associated with it nor accrue any personnel time charges.

In the event that unforeseen travel outside of the local area is required, the contractor shall inform the COTR of all anticipated charges 5 days before such travel occurs. Travel and per diem subsistence is reimbursed in accordance with Federal Government travel regulations.

OMB Approved 2700-0042

## AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| | | 1. CONTRACT ID CODE | PAGE | OF PAGES |
|---|---|---|---|---|
| | | | 1 | 1 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| 0036 | See Block 16C | CIG24012 | |

| 6. ISSUED BY | CODE | 7. ADMINISTERED BY (If other than Item 6) | CODE |
|---|---|---|---|
| GovWorks/Department of Interior<br>381 Elden Street, MS-2500<br>Herndon, Virginia 20170-4817 | | Rob V. Roberts<br>Contracting Officer (Address Same as Block 6)<br>Telephone: (703) 787-1493 | |

| 8. NAME AND ADDRESS OF CONTRACTOR (No. Street, county, State and ZIP Code) | (✓) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|
| Unisys Corporation               DUNS: 150780674<br>117220 Plaza America Drive        TIN: 380387840<br>Tower 3, 11ᵗʰ Floor<br>Reston, VA 20190-4757<br>Attn: Judy Williams    Email: Judy.Williams@unisys.com<br>Voice: (703) 439-5703 Fax: (703) 439-3393 | | 9B. DATED (SEE ITEM 11) |
| | X | 10A. MODIFICATION OF CONTRACT/ORDER NO.<br>DCA200-02-D-5014/ 71359 |
| | | 10B. DATED (SEE ITEM 11)<br>April 04, 2003 |

| CODE | FACILITY CODE |
|---|---|

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers  ☐ is extended.  ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning one (1) copy of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATA SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA (If required) |
|---|
| 05-5B-2500-R57 OC:252J  Obligate $275,230.95 |

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (✓) | | |
|---|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority)  THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. | |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation data, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). | |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:<br>52.212-4(c) | |
| | D. OTHER (Specify type of modification and authority) | |

E. IMPORTANT: Contractor __ is not, _X_ is required to sign this document and return __1__ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The purpose of this modification is to increase the level of effort for the ECRMS task.

A. The cost proposal dated 23 June 2005 in the amount of $275,230.95 which provides follow on work for the EOP Electronic Communications Records Management System (ECRMS) is hereby incorporated into the subject task order.

B. Increase total funded order amount from $27,399,840.88 to $27,675,071.83; a net increase of $275,230.95.

C. Increase total Not-to-Exceed (NTE) order amount from $70,443,931.66 to $70,719,162.61; a net increase of $275,230.95.

D. Please note the 4% award fee of $10,895.92 for this project has not been obligated but will be paid separately subject to the approval of the Award Fee Board which meets on a quarterly basis.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|
| Judy H. Williams, Manager, Contracts | ROBERT V. ROBERTS | |

| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
|---|---|---|---|
| *(Signature of person authorized to sign)* | 6/27/05 | BY *(Signature of Contracting Officer)* | 07/07/2005 |

| NSN 7540-01-152-8070 | 30-105 | STANDARD FORM 30 (REV. 10-83) |
|---|---|---|
| PREVIOUS EDITION UNUSABLE | Computer Generated | Prescribed by GSA<br>FAR (48 CFR) 53.243 |

SEP-24-2004  07:44        PROCUREMENT                    202 395 3982    P.02

| INTERAGENCY AGREEMENT | 1. IAA NO. CIG24012 | | | PAGE 1 | OF 2 |
|---|---|---|---|---|---|

| 2. ORDER NO. | 3. REQUISITION NO. RCI24236 | 4. SOLICITATION NO. |
|---|---|---|

| 5. EFFECTIVE DATE 09/24/2004 | 6. AWARD DATE 09/24/2004 | 7. PERIOD OF PERFORMANCE |
|---|---|---|

| 8. SERVICING AGENCY | 9. DELIVER TO |
|---|---|
| Department of Interior<br>GOVWORKS<br>381 Elden Street, MS 2510<br>Herndon VA 20170-4817<br><br><br>POC Katherine Valitos<br>TELEPHONE NO. 703787-1349 | GSD-RDF-PC#<br>GSA Supply Center<br>6810 Loisdale Road<br>Bldg A Door 17<br>ATTN:<br>Springfield VA 22150 |

| 10. REQUESTING AGENCY | 11. INVOICE OFFICE |
|---|---|
| Office of Administration/OCIO<br>725 17th Street, NW<br>Washington DC 20503<br><br><br>POC Mack Bayne<br>TELEPHONE NO. 202-395-6487 | OA/IS&T/CIP<br>FAX INVOICES TO:<br>(202) 395-6236<br>FOR VENDOR INVOICE INQUIRIES,<br>PLEASE CALL (202) 395-7259. |

| 12. ISSUING OFFICE | 13. LEGISLATIVE AUTORITY |
|---|---|
| Office of Administration<br>COO/Procurement Branch<br>(202) 395-3314<br>Washington DC 20503 USA | SECTION 403, P.L. 103-356 |
| | 14. PROJECT ID |
| | 15. PROJECT TITLE |

| 16. ACCOUNTING DATA |
|---|

| 17. ITEM NO. | 18. SUPPLIES OR SERVICES | 19. QUANTITY | 20. UNIT | 21. UNIT PRICE | 22. AMOUNT |
|---|---|---|---|---|---|
| | Delivery: 09/29/2004<br>FY: X2004 INDEX: 0A3600734D22 Object: 253000<br>Project: CI430 Sub-Project: 001 | | | | |
| 0001 | Please send funding to GovWorks for the<br>implementation of the E-Mail Archive Retrieval<br>System. See Statement of Work attached dated<br>September 21, 2004. | 1.00 | LO | 401,800.00 | 401,800.00 |
| 0002 | 2% GovWorks Fee | 1.00 | LO | 8,200.00 | 8,200.00 |
| | POC IS STEVE MCDEVITT AT 202-395-6403.<br>Continued ... | | | | |

| 23. PAYMENT PROVISIONS Servicing Agency to IPAC the Receiving Agency | 24. TOTAL AMOUNT $410,000.00 |
|---|---|

| 25a. SIGNATURE OF GOVERNMENT REPRESENTATIVE(SERVICING) *Mary J. Carver, Contracting Officer* | 25c. SIGNATURE OF GOVERNMENT REPRESENTATIVE(REQUESTING) *Lynnae C. Roscoe* |
|---|---|
| 25b. NAME AND TITLE *Mary J. Carver* | 25c. DATE 9-24-04 | 25d. CONTRACTING OFFICER LYNNAE C. ROSCOE | 25e. DATE 9-24-04 |

cmg 9-24-04

SEP-24-2004  07:44     PROCUREMENT                          222 395 3982     P.03

| IAA NO.<br>CIG24012 | ORDER NO. | | PAGE<br>2 |

GOVWORKS SHALL IPAC OA FUNDS IN THE AMOUNT OF
$410,000 AS FOLLOWS:

Servicing Agency DUNS # 161559646
OA DUNS # 031649358
OA AGENCY LOCATION CODE # 11 01 0005
OA APPROPRIATION CODE: 11 X 0038

STANDARD GENERAL LEDGER:
DEBIT: 4700 COMMITMENTS
CREDIT: 4801 UNDELIVERED ORDERS UNPAID

Total amount of award: $410,000.00.

**CONTRACT/**
**ORDER NO.:** 71359 mod 36
**COST** ~~$272398.01~~ 275,230.95
**FEE** ~~$5,447.96~~ $5,504.62
**NOTE** 2% Fee

| INTERAGENCY AGREEMENT | 1. IAA NO. CIG24012 | | PAGE 1 | OF 2 |
|---|---|---|---|---|

| 2. ORDER NO. | 3. REQUISITION NO. RCI24236 | 4. SOLICITATION NO. |
|---|---|---|

| 5. EFFECTIVE DATE 09/24/2004 | 6. AWARD DATE 09/24/2004 | 7. PERIOD OF PERFORMANCE |
|---|---|---|

| 8. SERVICING AGENCY | 9. DELIVER TO |
|---|---|
| Department of Interior<br>GOVWORKS<br>381 Elden Street, MS 2510<br>Herndon VA 20170-4817<br><br>POC Katherine Valltos<br>TELEPHONE NO. 703787-1349 | GSD-RDF-PO#<br>GSA Supply Center<br>6810 Loisdale Road<br>Bldg A Door 17<br>ATTN:<br>Springfield VA 22150 |

| 10. REQUESTING AGENCY | 11. INVOICE OFFICE |
|---|---|
| Office of Administration/OCIO<br>725 17th Street, NW<br>Washington DC 20503<br><br>POC Mack Bayne<br>TELEPHONE NO. 202-395-6487 | OA/IS&T/CIP<br>FAX INVOICES TO:<br>(202) 395-6236<br>FOR VENDOR INVOICE INQUIRIES,<br>PLEASE CALL (202) 395-7259. |

| 12. ISSUING OFFICE | 13. LEGISLATIVE AUTORITY |
|---|---|
| Office of Administration<br>COO/Procurement Branch<br>(202) 395-3314<br>Washington DC 20503 USA | SECTION 403, P.L. 103-356 |
| | 14. PROJECT ID |
| | 15. PROJECT TITLE |

**16. ACCOUNTING DATA**

| 17. ITEM NO. | 18. SUPPLIES OR SERVICES. | 19. QUANTITY | 20. UNIT | 21. UNIT PRICE | 22. AMOUNT |
|---|---|---|---|---|---|
| | Delivery: 09/29/2004<br>FY: X2004 INDEX: OA3600734D22 Object: 253000<br>Project: CI430 Sub-Project: 001 | | | | |
| 0001 | Please send funding to GovWorks for the implementation of the E-Mail Archive Retrieval System. See Statement of Work attached dated September 21, 2004. | 1.00 | LO | 401,800.00 | 401,800.00 |
| 0002 | 2% GovWorks Fee | 1.00 | LO | 8,200.00 | 8,200.00 |
| | POC IS STEVE MCDEVITT AT 202-395-6403.<br>Continued ... | | | | |

| 23. PAYMENT PROVISIONS Servicing Agency to IPAC the Receiving Agency | 24. TOTAL AMOUNT $410,000.00 |
|---|---|

| 25a. SIGNATURE OF GOVERNMENT REPRESENTATIVE(SERVICING) | 26a. SIGNATURE OF GOVERNMENT REPRESENTATIVE(REQUESTING) *Lynnae C. Roscoe* |
|---|---|
| 25b. NAME AND TITLE | 25c. DATE | 26B. CONTRACTING OFFICER LYNNAE C. ROSCOE | 26c. DATE 9-24-04 |

| IAA NO.<br>CIG24012 | ORDER NO. | PAGE<br>2 |
|---|---|---|

GOVWORKS SHALL IPAC OA FUNDS IN THE AMOUNT OF
$410,000 AS FOLLOWS:

Servicing Agency DUNS # 161559646
OA DUNS # 031649358
OA AGENCY LOCATION CODE # 11 01 0005
OA APPROPRIATION CODE: 11 X 0038

STANDARD GENERAL LEDGER:
DEBIT: 4700 COMMITMENTS
CREDIT: 4801 UNDELIVERED ORDERS UNPAID

Total amount of award: $410,000.00.

# E-MAIL ARCHIVE RETRIEVAL SYSTEM

# STATEMENT OF WORK



THE EXECUTIVE OFFICE OF THE PRESIDENT
OFFICE OF ADMINISTRATION
OFFICE OF THE CHIEF INFORMATION OFFICER

SEPTEMBER 21, 2004

EOP-OA-OCIO-A&E - FOR OFFICIAL USE ONLY

# DOCUMENT INFORMATION

| | |
|---|---|
| DOCUMENT ID | EOP-OA-OCIO-EARS-SOW |
| VERSION | v01 |
| FILE NAME | EARS SOW v02 |
| REVISION DATE | Tuesday, September 21, 2004 - 10:39:00 PM |
| OWNER | The Executive Office of the President
Office of Administration
Office of the Chief Information Officer |
| DESCRIPTION | E-mail Archive Retrieval System Statement of Work |

# DOCUMENT REVISION HISTORY

| VERSION | DATE | AUTHOR | DESCRIPTION |
|---|---|---|---|
| v02 | 09/13/2004 | McDevitt | Initial Draft |
| | | | |
| | | | |
| | | | |

## TABLE OF CONTENTS

**1.0    E-mail Architeve Retrieval (EARS) Statement of Work** .................................................. **1**
    1.1    Background ..................................................................................................... 1
    1.2    Statement of Work .......................................................................................... 1
        1.2.1    Task 1 – Project Plan (NTE 2 weeks) ................................................ 1
        1.2.2    Task 2 – Requirements Specification and Analysis (NTE 2 weeks) ............ 1
        1.2.3    Task 3 – Solution Design (NTE 4 weeks) ........................................... 1
        1.2.4    Task 4 – System Implementation (NTE 6 weeks) ................................ 1
        1.2.5    Task 5 – Testing and Security Documentation (NTE 2 weeks) ................ 1
        1.2.6    Task 6 – Production System Implementation (NTE 6 weeks after successful
                completion of testing) ................................................................... 1

**2.0    Project Management and Description of Deliverables** .................................................. **1**
    2.1    Status Reporting ............................................................................................. 1
    2.2    Work Effort Earned-Value Status Reporting .................................................... 1
    2.3    Form and Format of Deliverables .................................................................... 1
    2.4    Delivery and Review Process .......................................................................... 1

## 1.0    E-MAIL ARCHITEVE RETRIEVAL (EARS) STATEMENT OF WORK

### 1.1    Background

The goal of this work effort is to implement the E-mail Archive Retrieval System (EARS) to support the archive and retrieval of E-mail for EOP staff and other EOP personnel. The primary goal of this engagement is to provide EOP staff with a solution that allows them to archive, manage, search and retrieve E-mail they may want to store and preserve on a long-term basis.

This project is related to the Electronic Communications Records Management System (ECRMS) in that this project will utilize the same Commercial off the Shelf (COTS) products as ECRMS. This project will also commence after the implementation of ECRMS is completed.

The scope of this work includes the requirements analysis, design, implementation, testing, certification and accreditation, and user/administrator.

The major tasks for this work effort include:

- Definition of approach and a project plan of action
- Complete a thorough requirements gathering, analysis and synthesis process to develop a complete set of requirements (user, functional, non-functional, system, legal and policy)
- Validate these requirements in light of the capabilities of the identified COTS solution.
- Complete a detailed solution design that will be used for the implementation of the solution

The kickoff meeting for this work effort will occur after all key Contractor personnel have received EOP security clearances.

Associated with each task in this Statement of Work is a proposed schedule/duration. This schedule is designed to complete all the tasks and deliverables within a 4 month period. Variations to this schedule can be proposed by the Contractor as part of the proposal.

### 1.2    Statement of Work

The Government requires that the contractor document the system in keeping with the System Development Life Cycle (SDLC) documentation deliverable templates to be provided by the EOP. Security-related documentation templates are described in the EOP Certification and Accreditation Handbook available from the OCIO Information Assurance (IA) Directorate. The contractor is also required to establish and install the necessary system environments to support development, testing and production using government furnished equipment. The contractor will implement the solution in the EOP's production environment after developing Test Scripts/Cases for and conducting Unit, System, Interface, Stress/Load, Section 508 and Security testing to ensure that all of the requirements documented in the Requirements Traceability Matrix are satisfied. The contractor is also required to develop User Acceptance Test Scripts/Cases for the government to use in the final User Acceptance testing to be conducted prior to implementation in the production environment. The contractor is also required to setup and configure the system

security settings based on users and groups that are to be defined during the design and development phases.

The total implementation engagement is Not-To-Exceed (NTE) 24 weeks from project kick-off. The schedule for the migration and conversion of the photographs stored in the current system will be determined at the initiation of that task.

The tasks for this engagement are:

| | |
|---|---|
| **Task 1.** | **Project Plan (NTE 2 weeks)** |
| **Task 2.** | **Requirements Specification and Analysis (NTE 2 weeks)** |
| **Task 3.** | **Solution Design (NTE 4 weeks)** |
| **Task 4.** | **System Implementation (NTE 6 weeks)** |
| **Task 5.** | **Testing and Security Documentation (NTE 2 weeks)** |
| **Task 6.** | **Production Implementation and Training (NTE 4 week after successful completion of testing)** |

## 1.2.1   Task 1 – Project Plan (NTE 2 weeks)

The Contractor shall define the Project Plan that will specify and define all the activities to be performed by the Contractor in support of this work effort. This Project Plan document shall define in detail the Contractor's approach and methodology. Existing Contractor methodology support material should be included to support the chosen methodology. The project plan shall include a MS Project timeline/schedule with Gantt chart and work breakdown structure (WBS level 3) of all tasks and milestones included in the effort, the dependencies between tasks, the estimated duration of each task and the resources assigned to each task. The timeline/schedule will also be updated weekly by the contractor to indicate percentages completed on all tasks throughout the project. The Project Plan shall also include a detailed description of the form and contents proposed for each deliverable set forth in this statement of work. Beyond this, the contractor is required to develop the following documentation deliverables in this phase (working concurrently on these deliverables as appropriate):

| Deliverable: | 1 |
| --- | --- |
| Description: | Draft E-mail Archive Retrieval System (EARS) Project Plan |
| Target Delivery: | 5 business days after Project Kickoff Meeting |

| Deliverable: | 2 |
| --- | --- |
| Description: | Draft E-mail Archive Retrieval System (EARS) Risk Management Plan document |
| Target Delivery: | 2 business days after the formal acceptance of the Final Project Plan document and Project Plan by the Government |

| Deliverable: | 3 |
| --- | --- |
| Description: | Final E-mail Archive Retrieval System (EARS) Project Plan |
| Target Delivery: | 5 business days after walk-through and inspection of draft Project Plan |

| Deliverable: | 4 |
| --- | --- |
| Description: | Final E-mail Archive Retrieval System (EARS) Risk Management Plan document |
| Target Delivery: | 2 business days after walk-through and inspection of draft Risk Management Plan document |

### 1.2.2   Task 2 – Requirements Specification and Analysis (NTE 2 weeks)

The Contractor shall perform a complete and thorough requirements gathering and analysis process in order to capture all the requirements of the system, as well as all constraints (system, legal, policy) that are placed on the system. The deliverable of this task is a complete and defined set of user, system, functional and non-functional requirements. The use of industry accepted standards and practices for the specification of system requirements is expected. The Contracting Officer's Technical Representative (COTR) will assist the Contractor in the scheduling of all meetings and interview with key stakeholders necessary for the efficient and effective completion of this task by the Contractor.

| Deliverable: | 5 |
|---|---|
| Description: | Draft E-mail Archive Retrieval System (EARS) System Requirements Specification document |
| Target Delivery: | 10 business days after acceptance of Project Plan |

The Contractor shall conduct a face-to-face detailed walk-through and inspection of the Draft System Requirements Specification. This shall be appropriately scheduled to ensure key Government stakeholder participation. The comments, issues and concerns that are the result of this walk-through and the review of other stakeholders shall be taken under consideration and review by the Contractor and, when appropriate, the Contractor shall address these in the final deliverable.

| Deliverable: | 6 |
|---|---|
| Description: | Final E-mail Archive Retrieval System (EARS) System Requirements Specification document |
| Target Delivery: | 5 business days after walk-through and inspection of Draft System Requirements Specification |

### 1.2.3   Task 3 – Solution Design (NTE 4 weeks)

The Contractor shall complete a system design based upon the Government's solution selection decision. The design shall be consistent with the EOP System Development Life Cycle and industry accepted system development practices. These documents shall clearly identify the areas of customization (if any) and the magnitude of the customization effort required for the implementation of the solution.

| Deliverable: | 7 |
|---|---|
| Description: | Draft E-mail Archive Retrieval System (EARS) System Design document |
| Target Delivery: | 15 business days after the notification of the Government's decision on the solution selection |

| Deliverable: | 8 |
|---|---|
| Description: | Final E-mail Archive Retrieval System (EARS) System Design document |
| Target Delivery: | 5 business days after the walk-through and review of the Draft System Design document |



E-MAIL ARCHIVE RETRIEVAL SYSTEM - STATEMENT OF WORK

### 1.2.4   Task 4 – System Implementation (NTE 6 weeks)

The system shall be implemented based on the design defined in the Final E-mail Archive Retrieval System (EARS) System Design document.  All the hardware and software necessary for this implementation will be government furnished.  During this phase, the contractor will install, setup, configure and perform initial system testing. The contractor will be required to work closely with government staff to complete the timely installation and configuration of hardware and software.  The contractor is also required to work with the Information Assurance (IA) Directorate of the OCIO to develop the certification and accreditation documents and to develop and implement an EOP approved security model for system.  Beyond this, the contractor is required to develop the following documentation deliverables in this phase (working concurrently on these deliverables as appropriate):

| Deliverable: | 9 |
|---|---|
| Description: | Draft E-mail Archive Retrieval System (EARS) Training Plan document |
| Target Delivery: | 15 business days after acceptance of the E-mail Archive Retrieval System (EARS) Design Document |

| Deliverable: | 10 |
|---|---|
| Description: | Draft E-mail Archive Retrieval System (EARS) Test Plan document |
| Target Delivery: | 15 business days after acceptance of the E-mail Archive Retrieval System (EARS) Design Document |

| Deliverable: | 11 |
|---|---|
| Description: | Draft E-mail Archive Retrieval System (EARS) System Security Plan document |
| Target Delivery: | 15 business days after acceptance of the E-mail Archive Retrieval System (EARS) Design Document |

| Deliverable: | 12 |
|---|---|
| Description: | Draft E-mail Archive Retrieval System (EARS) User Manual document |
| Target Delivery: | 15 business days after acceptance of the E-mail Archive Retrieval System (EARS) Design Document |

| Deliverable: | 13 |
|---|---|
| Description: | Draft E-mail Archive Retrieval System (EARS) Operator's Manual document |
| Target Delivery: | 15 business days after acceptance of the E-mail Archive Retrieval System (EARS) Design Document |

| Deliverable: | 14 |
|---|---|
| Description: | Final E-mail Archive Retrieval System (EARS) Test Plan document |
| Target Delivery: | 5 business days after the walk-through and review of the Draft Test Plan document |

| Deliverable: | 15 |
|---|---|
| Description: | Final E-mail Archive Retrieval System (EARS) System Security Plan document |
| Target Delivery: | 5 business days after the walk-through and review of the Draft System Security Plan document |

| Deliverable: | 16 |
|---|---|
| Description: | Final E-mail Archive Retrieval System (EARS) User Manual document |
| Target Delivery: | 5 business days after the walk-through and review of the Draft User Manual document |

| Deliverable: | 17 |
|---|---|
| Description: | Final E-mail Archive Retrieval System (EARS) Operator's Manual document |
| Target Delivery: | 5 business days after the walk-through and review of the Draft Operator's Manual document |

## 1.2.5    Task 5 – Testing and Security Documentation (NTE 2 weeks)

The contractor will develop sufficient Test Scripts/Cases (System, Interface, Stress/Load, Section 508 and initial Security testing) to ensure that all of the requirements documented in the Requirements Traceability Matrix are satisfied. The contractor is required to conduct the actual tests outlined in the Test Scripts/Cases and ensure that all tests pass, taking corrective action as required. Prior to implementation in the production environment, the contractor is required to develop User Acceptance Test Scripts/Cases for the government to use in the User Acceptance testing to be conducted prior to implementation in the production environment. The User

Acceptance Test Scripts/Cases must cover all major functionality described in the System Design Description and be detailed enough to give the government an acceptable level of confidence that the system operates as intended and designed. Beyond this, the contractor is required to develop the following documentation deliverables in this phase (working concurrently on these deliverables as appropriate):

| Deliverable: | 18 |
|---|---|
| Description: | Draft E-mail Archive Retrieval System (EARS) Test Scripts/Cases documents |
| Target Delivery: | 20 business days after acceptance of the E-mail Archive Retrieval System (EARS) Design Document |

| Deliverable: | 19 |
|---|---|
| Description: | Draft E-mail Archive Retrieval System (EARS) Security Test and Evaluation Plan document |
| Target Delivery: | 20 business days after acceptance of the E-mail Archive Retrieval System (EARS) Design Document |

| Deliverable: | 20 |
|---|---|
| Description: | Draft E-mail Archive Retrieval System (EARS) Test Analysis Report document |
| Target Delivery: | 20 business days after acceptance of the E-mail Archive Retrieval System (EARS) Design Document |

| Deliverable: | 21 |
|---|---|
| Description: | Final E-mail Archive Retrieval System (EARS) Test Scripts/Cases documents |
| Target Delivery: | 5 business days after the walk-through and review of the Draft Test Scripts/Cases documents |

| Deliverable: | 22 |
|---|---|
| Description: | Final E-mail Archive Retrieval System (EARS) Security Test and Evaluation Plan document |
| Target Delivery: | 5 business days after the walk-through and review of the Draft Security Test and Evaluation Plan document |

| Deliverable: | 23 |
| --- | --- |
| Description: | Final E-mail Archive Retrieval System (EARS) Test Analysis Report document |
| Target Delivery: | 5 business days after the walk-through and review of the Draft Test Analysis Report document |

### 1.2.6   Task 6 – Production System Implementation (NTE 6 weeks after successful completion of testing)

Following the successful completion of User Acceptance testing by the government in the development/test environment and having received government approval to proceed, the contractor will migrate the solution to the production environment and ensure that the solution is operating correctly by conducting a subset of Test Scripts/Cases as a cutover test. The Test Scripts/Cases to be used for the cutover testing will be identified by the government at the conclusion of the Testing Phase. The contractor must ensure that the system passes the final Security Testing and Evaluation and obtain IA approval before the system goes live. The contractor is also required to provide individualized training for the users and administrators/operators (system, security, network and database) for the system as outlined in the Training Plan developed in the Project Planning Phase. Training will be provided to all system users and administrators/operators in the 2 weeks proceeding implementation in the production environment.

The training will be provided on-site at various EOP locations in the greater Washington, D.C. metropolitan area. It will be provided to individuals and/or groups of related personnel using government furnished equipment in a non-production environment. The training environment must be accessible from employees' own workstations at the various EOP locations. The contractor is also required to develop a Training Manual for users and administrators/operators (including IA, IS&T and other OCIO personnel) corresponding to the training as provided. The Training Manual (in both hard and soft copy) is to be provided to each employee receiving training prior to the training being conducted by the contractor. The contractor is required to multiple training sessions to accommodate approximately 20 users and administrators at EOP facilities and at an off-site photo lab in the Washington, DC metropolitan area.

| Deliverable: | 24 |
|---|---|
| Description: | Draft E-mail Archive Retrieval System (EARS) Training Manual for Users and Administrators |
| Target Delivery: | 5 business days after the successful completion of testing |

| Deliverable: | 25 |
|---|---|
| Description: | Final E-mail Archive Retrieval System (EARS) Training Manual for Users and Administrators |
| Target Delivery: | 10 business days after the successful completion of testing |

| 2.0 | PROJECT MANAGEMENT AND DESCRIPTION OF DELIVERABLES |
|---|---|

## 2.1    Status Reporting

The Contractor shall provide weekly written status reports to the Government to report activities completed during the reporting period, the planned near term activities for the next reporting period and to track issues and action items necessary for the effective management of the work effort.

The status report shall include the following:

    a.  List and description of accomplishments that occurred during the reporting period

    b.  Planned work for the next reporting

    c.  List and status of all outstanding project management issues, problems and action items

    d.  All known changes to the project schedule

The reporting period shall be from Monday through Sunday.  The weekly status report shall be delivered every Monday by 12:00 Noon and the reporting period shall be for the week that was just completed.  If the report delivery date falls on a holiday, the report shall be delivered on the first business day after the holiday.  The report shall be delivered via E-mail to the Contracting Officer and the Contracting Officer's Technical Representative.

## 2.2    Work Effort Earned-Value Status Reporting

The Contractor will provide the following information, in the format prescribed below.  This should be reported on a calendar month basis and should be delivered by the 5th day of the subsequent month.  The report shall be delivered via E-mail to the Contracting Officer and the Contracting Officer's Technical Representative.

The Contractor will provide the following (in graph form):

    a.  Graph #1 – Work Effort Hours - The budgeted work hours to be performed allocated across the current work effort schedule; and on the same graph the actual work hours performed allocated across the current work effort schedule.

    b.  Graph #2 – Work Effort Costs - The budgeted cost of work to be performed allocated across the work effort schedule; and on the same graph the actual cost of work performed allocated across the work effort schedule.

In the event the actual cost or hours of work performed exceeds the budgeted cost or hours of work to be performed at any time, the Contractor will provide an estimate to complete for both the hours and dollars.

For information, the following is provided:

    a.  The budgeted work to be performed is the amount of hours and dollars awarded under the contract to accomplish the effort required under the contract.  It does not include the dollars or hours associated with unexercised options or any anticipated but not awarded work.

b. The actual work performed is the amount of hours and dollars incurred by the Contractor to accomplish the required effort under the contract.

c. The estimate to complete is the hours and dollars required to complete the remaining work effort required by the contract.

## 2.3    Form and Format of Deliverables

All deliverables shall meet the following standards of form and format:

a. The Microsoft Office suite of products is the primary desktop office-automation environment in use within the Office of the CIO. All documents, spreadsheets, presentation material and graphics images should be compatible with that environment. Specifically:

   - All text document and reports shall be delivered in Microsoft Word 2000 or 2002 format (.doc). The document file should not be password protected.

   - All spreadsheet deliverables shall be delivered in Microsoft Excel 2000 or 2002 format (.xls).

   - All presentation slides shall be delivered in Microsoft PowerPoint 2000 or 2002 format.

   - All graphics shall be delivered in formats that are compatible with the Microsoft Windows (NT, 2000 and XP) desktop computing environments. Microsoft Visio is the preferred graphics application for the EOP.

b. All documents shall be paginated and include a cover page that includes a title that clearly identifies the deliverable and the actual date of delivery. All text documents shall also include a table of contents.

c. All documents shall be written in American English, at a college reading level.

d. All deliverable shall be accurate in presentation, technical content, and adherence to generally accepted elements and principles of style.

e. All deliverables shall be clear and concise. All diagrams shall be easy to understand and be relevant to the supporting narrative.

f. Prior to the initiation of the development of each deliverable, the Contractor shall define and proposed the exact structure and format of the deliverable. This must be approved by the Government prior to the initiation of the work effort. In some cases the Government may provide existing templates for use by the Contractor.

g. All text documents, spreadsheets, presentations and diagrammatic files shall be editable by the Government. The files shall not be copy protected or password protected.

## 2.4    Delivery and Review Process

Along with each deliverable, the Contractor shall provide a cover letter to the Contracting Officer's Technical Representative (COTR). A copy of the cover letter shall be sent to the Contract Officer. The cover letter shall include the title of the deliverable, the actual delivery date, the due date for Government response and the Contractor's point of contact for the deliverable.



The Government shall have 10 business days, or a mutually agreed upon amount of time, for the review of the deliverable. This period shall be reflected in the project plan. The Government shall identify any deficiencies of the deliverable in writing and forward this list to the Contractor's point of contact. The Contractor shall have 5 business days, or a period mutually agreed upon to take corrective actions and deliver the corrected deliverable to the Government. The Government has to right to review the corrected deliverable following the schedule outlined above.

The contractor shall deliver two bound printed copies and one electronic copy (on CD-ROM) of each deliverable.