IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZEN FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) Plaintiff, ) ) v. ) ) OFFICE OF ADMINISTRATION, ) ) Defendant. ) ) ) ) | Civil Action No: 1:07-CV-00964 (CKK) |

**DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO MODIFY ORDER**

Defendant, the Office of Administration ("OA"), hereby opposes the motion of plaintiff, Citizens for Responsibility and Ethics in Washington ("CREW"), to modify this Court's Orders of June 4 and June 7, 2007 ("Court's Orders"). In those Orders, this Court set forth an agreed-upon schedule for OA to "process and respond to CREW's FOIA requests (as defined in CREW's May 29, 2007 letter to counsel for OA)." Order of June 7, 2007. Those Orders reflect significant efforts by the Court and the parties to arrive at a mutually agreeable, phased approach to the processing of CREW's FOIA requests. Pursuant to that Court-ordered schedule, OA made its first response and production on June 21, 2007.

CREW now moves to impose new obligations on OA, requesting that OA provide detailed justifications for each document withheld in connection with its June 21 response, as well as for any additional document OA may process and withhold in the future. *See* Pl. Mot. at 8. This transparent attempt to obtain *Vaughn* indexes from OA at this early juncture and on an on-going basis, even as OA's processing of CREW's requests continues, is legally insupportable

and contrary to the interest of judicial economy.  Accordingly, the Court should deny CREW's motion.

## BACKGROUND

Defendant OA is a component of the Executive Office of the President ("EOP") whose primary function is to provide common administrative and support services for the various agencies and offices of the EOP, including the President.  *See* 5 C.F.R. § 2502.3.  On April 17, 2007, CREW sent OA a FOIA request seeking records relating to the potential loss of emails from the EOP email records system.  *See* Ex. A to Compl.  The letter requested four categories of records within specified time periods ranging from one to two years.  *Id.*  The next day, April 18, 2007, CREW sent OA another FOIA request, which CREW characterized as a clarification and supplementation of the April 17 request.  *See* Ex. B to Compl. at 1.  The second request is much broader in scope, both in terms of the type of records sought and the time frame.  It requested records covering a period of more than six years for three of the categories, and placed no time limit on the fourth category.  *Id.*

OA promptly acknowledged receipt of CREW's FOIA requests on April 27, 2007, and simultaneously granted CREW's separate requests for expedition and fee waiver.  *See* Ex. C to Compl.; *see also* 5 U.S.C. § 552(a)(6)(E)(ii)(I).  Pursuant to FOIA, which requires that an expedited FOIA request be moved to the front of the processing queue and thereafter be processed "as soon as practicable," 5 U.S.C. § 552(a)(6)(e)(iii), OA moved CREW's FOIA requests to the front of its FOIA processing queue.[1]  Moreover, because CREW requested an

---

[1] As explained in the Senate Report accompanying the FOIA amendments which inserted the expedited processing procedures, the intent of the expedited processing provision was to give certain requests <u>priority</u>, not to require that such requests be processed within a specific period of time.  *See* S. Rep. 104-272, 1996 WL 262861, *17 (May 15, 1996) ("[Once] the request for

extensive list of records spanning more than six years, OA proposed, in its April 27, 2007 letter, that CREW either limit the scope of its requests so that they might be processed within the FOIA time limits or arrange an alternate processing schedule.  *See* Ex. C to Compl.

On April 30, 2007, CREW refused OA's proposal.  *See* Ex. D to Compl.  Despite the plain language in its April 18 request seeking records from "January 21, 2001 to April 13, 2007" for categories 1 and 2, and from "January 21, 2001" to the present for category 3, CREW also denied that it was seeking "records that span a six-year period."  *Id.*  According to CREW's April 30 letter, for two of the categories it was seeking records prepared over a one-year period, and for the remaining two categories it was seeking records prepared over a two-year period.  *Id.*

On May 24, 2007, less than six weeks after CREW submitted its first FOIA request, and while OA was in the process of seeking to clarify the contradictory temporal scopes of plaintiff's FOIA requests, CREW filed the present action and a motion for preliminary injunction seeking to compel OA to process immediately the requested records and to disclose such records within 10 days.

This Court held a telephone conference on May 24, 2007, and, at the Court's urging, CREW specified, in a letter dated May 29, 2007, six categories of records to be given priority for purposes of CREW's emergency motion.  This Court thereafter resolved CREW's emergency motion by holding several telephone conference calls with the parties to facilitate the parties' reaching an agreed-upon schedule for OA's processing of those six categories.  The Court memorialized that agreement in a June 4, 2007 Order, and upon OA's consent motion, clarified

---

expedited processing is granted, the agency must then proceed to process the request 'as soon as practicable.'  No specific number of days for compliance is imposed by the bill since depending on the complexity of the request, the time needed for compliance may vary.  The goal is not to get the request processed within a specific time period, but to give the request priority in processing more quickly than would otherwise occur.").

3

three days later that "OA's obligation under the June 4, 2007 Order is to process and respond to CREW's FOIA requests (as defined in CREW's May 29, 2007 letter to counsel for OA), which includes the production of any responsive, non-exempt documents by the deadlines set forth in the Order."  Order of June 7, 2007.

The first processing deadline was June 21, 2007, by which time OA was ordered to review some 30,000 emails already culled by OA in response to previous requests and to process those materials responsive to Categories 1 through 4.  *See* Order of June 4, 2007 at 2-3; Order of June 7, 2007.  Specifically, whereas those 30,000 emails covered a five year period, from January 2001 to February 3, 2006, OA was to locate and process only those e-mails and documents previously gathered covering the period from September 2005 to February 3, 2006.  *See* June 1, 2007 Conference Call Tr. at 6-11, attached as Ex. 1; *see also* Order of June 4, 2007 at 3.  In addition, OA was to locate and process paper documents responsive to Category 5 and documents in its possession responsive to Category 6.  *Id.* at 3-4.

As scheduled, on June 21, 2007, OA produced 48 pages of records in their entirety and 2 additional partially-redacted pages.  *See* Ex. 1 to Pl.'s Mot.  In her cover letter, OA's FOIA Officer informed CREW that OA is withholding approximately 454 pages of potentially responsive documents because she determined, in consultation with OA's General Counsel and current and former Deputy General Counsel, that those pages are exempt from disclosure and do not contain reasonably segregable portions that OA could release.  *Id.* at 1.  She informed CREW that these pages include emails, spreadsheets, procurement-related documents and internal guidance, and fall within FOIA exemptions (b)(2) [High 2], (b)(5), and (b)(6).  *See id.* at 1; *see also* 5 U.S.C. § 552(b)(2), (5), (6).  She further informed CREW of the relevant privileges (attorney work product, attorney client, deliberative-process privileges) for OA's exemption

4

(b)(5) claim; and the precise basis for its exemption (b)(6) claim, which is that OA has withheld the identities of federal employees who may be potential targets of threats and harassment. *See id.* at 2.

OA is currently working towards meeting the Court's second deadline of August 24, 2007. The Court's Orders also state that CREW is to craft a list of search terms that CREW believes will lead to the identification of documents responsive to Category 4 and dated between March 1, 2006 and the present. *See* Order of June 7, 2007; Order of June 4, 2007 at 3  OA must thereafter conduct searches upon receipt of a list of appropriate search terms from CREW. *See* Order of June 4, 2007 at 3. There is currently no deadline as to when that must be completed. In fact, while OA continues to process CREW's request pursuant to this Court's Orders for purposes of CREW's emergency motion, it remains unclear whether CREW still intends OA to process CREW's FOIA requests as originally submitted on April 17 and 18, 2007.

Despite OA's good faith efforts to respond to CREW's FOIA requests, and its full compliance with the Court's Orders thus far in this litigation, CREW nonetheless seeks to impose new obligations on OA that are without any legal basis.

## ARGUMENT

## PLAINTIFF'S MOTION IS WITHOUT BASIS IN STATUTE OR CASE LAW

OA has fully complied with the Court's Orders of June 4 and 7, 2007, which reflect the parties' agreement on a time schedule for processing material potentially responsive to CREW's requests. For that reason alone, CREW's motion should be denied. Relying on an unpublished memorandum opinion and order from the Southern District of West Virginia, CREW nevertheless argues that this Court should compel OA to provide detailed justifications for its withholding now and on an on-going basis. But review of FOIA's statutory framework

5

demonstrates that CREW's motion is untenable.

As an initial matter, despite CREW's protestation to the contrary, it is clear that CREW seeks to compel OA to prepare a *Vaughn* index.² *See Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973). CREW protests that it is not, claiming that it is "only" asking OA to provide the requested information "in a format of OA's choosing." Pl. Mot. at 8. A *Vaughn* index, however, need not have any specific format as long as it provides the reviewing court a reasonable basis to review the agency's claim of exemption. *See Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994) ("whether that evidence comes in the form of an *in camera* review of the actual documents, something labeled a 'Vaughn Index,' a detailed affidavit, or oral testimony cannot be decisive"). As the D.C. Circuit has repeatedly held, "'it is the function, not the form, of the index that is important.'" *Judicial Watch v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006) (quoting *Keys, v. U.S. Dep't of Justice,* 83 F.2d 337, 349 (D.C. Cir. 1987)).

CREW's efforts to avoid characterizing what it seeks as a *Vaughn* index are unavailing. Indeed, CREW admits that it wants the information to determine "what particular documents are at issue and what the nature of the dispute over those documents may be." Pl. Mot. at 7. Its obvious goal, therefore, is to contest, in piecemeal fashion, OA's decisions to withhold certain records, even while OA continues to process CREW's requests pursuant to the Court's Orders.³

---

² CREW's motion requests with respect to each document OA has withheld to date and any additional document OA processes and withholds in the future: (1) "a description of the document that permits the Court and the plaintiff to ascertain the nature of the document"; (2) "to which category in CREW's request the document is responsive"; (3) "whether CREW's request has been fully satisfied"; and (4) "an identification of the exemption being claimed . . . including where appropriate, the nature of the exemption (e.g. attorney-client, deliberative process, etc)." *See* Pl. Mot. at 7.

³ In any event, CREW's counsel was advised on July 2, 2007 that once processing is complete and the parties are ready to brief dispositive motions, OA will reconsider the possibility

There is, however, no basis for imposing such an unprecedented obligation on OA at this early juncture. CREW cannot seriously dispute that OA's June 21, 2007 response (including its production of potentially responsive, nonexempt documents) complied with this Court's Orders. Equally obvious, OA's response fully followed FOIA's statutory framework.[4] Under FOIA, a denial of a request in whole or in part must be accompanied by an estimate of the volume of material withheld or redacted; the reasons for the withholding/redaction; the name and title of each person responsible for the decision to withhold or deny; and where relevant, the right to appeal. *See* 5 U.S.C. § 552(a)(6)(A)(i), (C)(i), (F). OA's June 21 response letter provided such specific information and went further to identify the basis for OA's assertion of FOIA exemption (b)(6) and the relevant privileges for OA's exemption (b)(5) claim.[5]

Additionally, prevailing caselaw interpreting relevant portions of the FOIA belies CREW's contention that it is entitled to a detailed, document-by-document *Vaughn*-type index at this stage of OA's processing of CREW's FOIA requests. Under *Vaughn*, 484 F.2d 820, specific justifications for the withholding of responsive documents will be required only when OA seeks summary judgment in this case. *See also* 5 U.S.C. § 552(a)(4)(B). Requiring such detailed information is premature at earlier stages of FOIA processing, whether or not the requester has filed suit. *See, e.g., Schwarz v. Department of Treasury*, 131 F. Supp.2d 142, 147 (D.D.C. 2000) ("there is no requirement that an agency provide a . . . '*Vaughn*' index on an initial request for

---

of providing some information to CREW in advance in order possibly to narrow the scope of its dispositive motion.

[4] Although OA often defers to the FOIA provisions as advisory guidance and has processed requests for information as a matter of administrative discretion, it is not an "agency" within the meaning of FOIA and is thus not obligated to comply with those statutory provisions.

[5] OA's June 21 response letter appropriately did not refer to any administrative appellate process since the matter was already in litigation.

7

documents" ); *Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1, 11 (D.D.C. 1995) ("The only statutory requirement applicable to an administrative agency under FOIA is that it inform the requester of its decision to withhold, along with the underlying reasons."); *United States Committee on Refugees v. Department of State*, No. 91-3303, 1992 WL 35089, *1 (D.D.C. Feb. 7, 1992) ("the preparation of a *Vaughn* index is unwarranted before the filing of dispositive motions in FOIA actions because the filing of a dispositive motion, along with detailed affidavits, may obviate the need for indexing the withheld documents") (internal quotation marks and citation omitted); *Stimac v. U.S. Dep't of Justice*, 620 F. Supp. 212, 213 (D.D.C. 1985) ("the preparation of a *Vaughn* Index would be premature before the filing of dispositive motions").

This case is far from approaching the dispositive motions phase that would require preparation of a *Vaughn* index. As OA continues to process the remaining requirements of the Court's Orders, it does not know whether CREW still intends OA to process those portions of its FOIA requests of April 17 and 18, 2007 that are not subject to the Court's Orders. At this time, it is impossible to predict when processing will be complete, given the breadth of those two requests and the volume of material potentially implicated by them. There is simply no basis for requiring OA to prepare a *Vaughn* index now.

For substantive support of its position, CREW cites only an unpublished decision from the Southern District of West Virginia, where the court ordered a *Vaughn* index prior to submission of defendant's dispositive motion. *See Keeper of Mountains Foundation v. U.S. Dep't of Justice*, No. 2:06-cv-00098, 2006 WL 1666262, at *3 (S.D.W.Va. June 14, 2006). That case, however, does not help CREW. In fundamental distinction to the instant case, the plaintiff in *Keeper of Mountains* moved for a *Vaughn* index only after the defendant's administrative

processing of the FOIA request was virtually complete.[6] *See id.* at *1-*2. Here, in contrast, OA's processing of CREW's FOIA requests continues. Moreover, as noted above, there is currently no end in sight because it is unclear whether CREW still requests OA to process its April 17 and 18, 2007 requests as originally submitted.

Aside from the lack of legal basis for CREW's motion, the outcome CREW seeks will not have the benefits it claims. Contrary to CREW's assertion, no efficiency can be gained by granting CREW's motion now. As indicated above, granting CREW's motion would require OA to generate multiple, successive *Vaughn* indexes before it even completes processing CREW's FOIA requests. Inevitably, it would also lead to piecemeal litigation of this case, with multiple *Vaughn* indexes affording CREW repeated opportunities to challenge the asserted exemptions.

CREW contends that the requested information is necessary to "permit CREW to fulfill its obligations under the Orders." Pl. Mot. at 7. Presumably, CREW is referring to its obligation to craft a list of search terms that CREW believes will lead to the identification of documents responsive to Category 4. *See* Order of June 7, 2007; Order of June 4, 2007 at 3. The Court's Orders, however, implement the fundamental FOIA requirement that CREW, as the requestor, is obligated to describe to OA the records it is seeking. The Court's Orders do not support an obligation that OA provide a *Vaughn* index now. Assertion of such an obligation would be fundamentally at odds with the legal framework of FOIA and the cases in this jurisdiction.

Finally, in support of its motion CREW makes several unfounded accusations and assertions. OA briefly addresses a few of them. First, CREW accused OA and its counsel of misrepresenting, during a conference call with this Court, the volume of potentially responsive

---

[6] Twelve documents that originated from another government agency and thus were referred to a different office for review had not been fully processed. *See Keeper of Mountains Foundation*, 2006 WL 1666262, at *1-*2.

documents, and the amount of time OA needed to complete its production.  *See* Pl. Mot. at 9.  In the June 1, 2007 conference call, however, OA made clear to the Court that it had previously gathered 30,000 plus emails as potentially responsive to prior FOIA requests; that those emails related to a more than <u>five-year</u> time frame; and that OA could review and process by June 21, 2007 the emails within that universe covering the nearly <u>six-month</u> period from September 2005 to February 3, 2006.  *See* June 1, 2007 Conf. Call Tr. 7-11 (Ex. 2).  The potential delay OA discussed during the telephone conference with this Court related to the fact that, if OA were instead required to conduct an electronic search for responsive documents for the period September 2005 to February 3, 2006, it would take some time because OA has no control over the priorities for electronic searches within the White House complex.  *Id.* at 6-10.  Ultimately, the parties agreed that such electronic search need not be conducted because it would be less efficient.  There was no misrepresentation on the part of OA, as CREW's motion suggests.

Second, CREW argues that OA's "pace" of responding to plaintiff's request "suggests an indifference to the commands of FOIA and fails to afford accountability of government that the act requires."  Pl. Mot. at 9 (internal quotation marks omitted).  Since the parties reached an agreement on the processing schedule, there has been only one deadline, which OA has met.  While OA did grant CREW expedited processing and was required under FOIA to process CREW's requests "as soon as practicable," at the time CREW filed this action, OA was in the midst of seeking clarification regarding the plainly contradictory temporal scopes of CREW's requests.  There was no delay in processing CREW's FOIA requests, and certainly none that would justify CREW's alleged entitlement to a *Vaughn* index now.

In sum, there is no basis for granting CREW's motion.

## **CONCLUSION**

For all the foregoing reasons, plaintiff's motion to modify this Court's Orders of June 4 and June 7, 2007 should be denied.

Dated: July 19, 2007

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

JOHN R. TYLER
Senior Trial Counsel

         */s/* Jean Lin
JEAN LIN  (NY#4074530)
Federal Programs Branch, Civil Division
United States Department of Justice
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
Tel: (202) 514-3716
Fax: (202) 616-8407
E-mail: jean.lin@usdoj.gov

Attorneys for Defendants

**EXHIBIT 1**

1

```
 1                  UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3
           CITIZENS FOR RESPONSIBILITY AND
 4         ETHICS IN WASHINGTON,

 5                       Plaintiff,

 6              v

 7         OFFICE OF ADMINISTRATION,

 8                  Defendant.      Civil Action No. 1:07-cv-00964

 9                                  June 1, 2007

10                                  10:00 a.m.
              - - - - - - - - - - - - - - - - - - - - - - -
11
                      TRANSCRIPT OF CONFERENCE CALL
12            BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
                      UNITED STATES DISTRICT JUDGE
13

14         APPEARANCES:

15         For the Plaintiffs:      ANNE L. WEISSMAN, ESQ.
                                    1400 Eye Street, N.W.
16                                  Suite 450
                                    Washington, D.C. 20005
17                                  (202) 408-5565

18         For the Defendants:      JEAN LIN, ESQ.
                                    U.S. Department of Justice
19                                  20 Massachusetts Avenue, N.W.
                                    Suite 7218
20                                  Washington, D.C. 20530
                                    (202) 514-3716
21
           For the Defendants:      KEITH ROBERTS, ESQ.
22                                  Office of Administration
                                    Executive Office of the
23                                   President
                                    1800 G Street
24                                  Washington, D.C.

25
```

1  order?

2           MR. ROBERTS: Yes, I have.

3           THE COURT: If I can ask, we've been discussing the
4  first four categories of information, and my question
5  initially to you is which would be quicker to respond to and
6  would provide a response of -- would respond to the request
7  that CREW has made? Going through the 30,000 plus e-mails
8  that evidently having culled out that cover the period of
9  January 2001 to I believe it's February 3rd of 2006, or to
10 do a new, a new search that would cover the more limited
11 time period, which is what CREW is interested in, which is
12 September of 2005. Let's start with through February the
13 3rd of 2006 or what they wanted, which was the end of
14 February. Which process would be the quickest process and
15 also responsive to their request?

16          MR. ROBERTS: If we can through the documents that
17 we already have assembled we could -- it would be quicker
18 than doing a search, doing an electronic search. However,
19 if we still have to do an electronic search for February
20 2006 it's not going to save us much time. In fact, it's
21 kind of a duplication of effort if we have to manually go
22 back through what we have and then wait for service to be
23 done as well.

24          THE COURT: Let me see if I understand. I'm not
25 quite sure I understand whether going through what you've

1  already pulled out looking for these dates is quicker or
2  actually doing a new search.
3       MR. ROBERTS: Well, going through what we currently
4  have would be quicker through the 3rd of February of 2006.
5       THE COURT: Okay. And can you explain to me why it
6  would be quicker?
7       MR. ROBERTS: Because we've already gone through
8  those documents -- we've already gone to individuals who we
9  believe would have information relative to these requests,
10  to this request last year, and so it's the universe of those
11  records is already compiled and we just need to go back
12  through them and look for documents that CREW wants as
13  opposed to what we looked for before.
14       THE COURT: Okay. So I take it then that these
15  individuals you contacted have had their own databases and
16  that's what you've been looking at?
17       MR. ROBERTS: That is correct.
18       THE COURT: And so what you would have culled out
19  of these databases is this 30,000 plus e-mails covering the
20  January 2001 up to February 3rd, is it, am I correct in
21  that?
22       MR. ROBERTS: That's correct.
23       THE COURT: So at this point your view is that it
24  would be faster to use what you've got and do the search on
25  the documents you've already pulled as opposed to initiating

1  a new one, is that accurate?

2       MR. ROBERTS:  That's correct.

3       THE COURT:  And I take it if I've understood your

4  explanation is because you have to start, go back to the

5  individuals and look at their databases to do the narrower

6  search?

7       MR. ROBERTS:  If we have to do the narrower search

8  about half to two-thirds of those people are no longer here

9  so we're going to have to do an electronic search and that's

10 where we get into other ongoing searches with higher

11 priority, the priority established outside this office that

12 it's going to take a while to do.

13      THE COURT:  All right.  And as I understand it, in

14 terms of culling through or going through the 30,000 plus

15 e-mails and whatever paper documents you have, you would be

16 able to do that by June 21st?

17      MR. ROBERTS:  That's correct, ma'am.

18      THE COURT:  Now, the CREW has also requested that

19 if documents are completed in terms of the review, whether

20 their complete review is -- whether the Office of

21 Administration would release them at that point as opposed

22 to waiting until they're all collected at the end and then

23 release them in one, you know, large group, are you willing

24 to -- and understanding that you would be able to do

25 whatever review you need to do to figure out that this is a

1   document that has been completely considered and is ready to
2   be released, but are you willing to do that on a rolling
3   basis under those circumstance?
4           MR. ROBERTS:  Your Honor, our preference is to do
5   the June 21st, the reason being that we're a small office
6   and it's just more efficient use of we have one employee
7   officer and then I review them from a practical standpoint.
8   It's just more efficient for us to review the whole universe
9   of the records than to review them at one time that we could
10  have done by June 21st.
11          THE COURT:  All right.  Then let me ask the next
12  question.  In terms of the, they have requested, CREW have
13  requested that it be done through the end of February of
14  2006.  To add that additional, from February 3rd to the
15  28th.  What is involved in that?
16          MR. ROBERTS:  We have to do, the Office of
17  Administration, our mission is to provide a common
18  administration throughout the deputy office of the president
19  complex so part of that involves we own all the information
20  technology system and we do -- we maintain all electronic
21  databases, all the e-mails, and we also do all the searches
22  from the complex.  The priority for those searches we do not
23  establish and there are ongoing searches, I'm not sure you
24  read the numbers, and lots of the things that are going on
25  relative to people that we serve, offices that we serve, and

```
 1   right now because of priority has been established we would
 2   not be able to complete a new search until around the 24th
 3   of August to do that four-month period.
 4           THE COURT:  All right.  In terms of looking, I take
 5   it you're familiar with, relatively familiar with the 30,000
 6   e-mails in the sense of what it is that's being collected
 7   from the databases; is that correct?
 8           MR. ROBERTS:  Yes, ma'am.
 9           THE COURT:  In terms of the four categories that
10   have been looked at did you think that there is material
11   that after February 3rd, 2006, in other words, why did you
12   stop?  Maybe I'm asking two questions, but let me ask the
13   first one.  In terms of through from the 3rd to the end of
14   February do you know whether there would be likely to be
15   anything responsive to these four categories, or can you
16   answer that?
17           MR. ROBERTS:  I can, and I do not believe there
18   would be.  Based upon what CREW's asking for the universe of
19   those records existed in early February of last year.
20   Anything after that would have been, for example, they're
21   asking about histograms and stuff, I mean, they were
22   already, they were already done by that point.  I personally
23   don't think that search and taking an effort through the
24   24th of August is going to produce anything more responsive.
25           THE COURT:  Was there a particular reason why the
```

1   search that was done for the 30,000 plus from January 2001,
2   you stopped it February 3rd of 2006, was that cutoff date
3   significant in some way?
4           MR. ROBERTS:  We had some other requests for
5   information and that was the date of the request, which is
6   what we use for the cutoff date.
7           THE COURT:  And is the request generally in the
8   same type of request that CREW is making in terms of what
9   you would have looked at?
10          MR. ROBERTS:  Yes, ma'am.
11          THE COURT:  Okay.  Ms. Weismann, is there anything
12  else that you want the Court to request?  It seemed to me
13  these are the areas that we wanted to have some information
14  on, at least as to the first four.
15          MS. WEISMANN:  Yes, your Honor.  There are two.
16  And one is an issue that I flagged for Ms. Lin yesterday
17  morning in a letter.  I had not understood until our
18  conference call the other day that the vast majority of
19  documents they were talking about were electronic documents,
20  and that was because, as you can see from our request, most
21  of the documents we're asking for were originally created as
22  paper documents, and so the issue I flagged is what search
23  terms did they view to locate these documents, because it is
24  my understanding that the e-mail system they have requires
25  very precise search terms and there's no flexibility.  It's

```
 1                    C E R T I F I C A T E
 2
 3
 4         I, Jacqueline M. Sullivan, Official United States
 5   Court Reporter in and for the District of Columbia, do
 6   hereby certify that the foregoing proceedings were taken
 7   down by me in shorthand at the time and place aforesaid,
 8   transcribed under my personal direction and supervision, and
 9   that the preceding pages represent a true and correct
10   transcription, to the best of my ability and understanding.
11
12
13              [signature: Jacqueline M Sullivan]
14              Jacqueline M. Sullivan, RPR
15              Official U.S. Court Reporter
16
17
18
19
20
21
22
23
24
25
```