# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTON, )
)
              Plaintiff, )
)
              v. )      Civil Action No: 1:07-CV-00964 (CKK)
)
OFFICE OF ADMINISTRATION, )
)
              Defendant. )
)
)
)

## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND MEMORANDUM IN SUPPORT

# TABLES OF CONTENTS

PAGE(S)

PRELIMINARY STATEMENT.................................................................................. 1

BACKGROUND. ....................................................................................................... 2

    A.    The Establishment of the Office of Administration and Its Function.................... 2

    B.    The Office of Administration's Organizational Structure. ..................................... 3

    C.    CREW's FOIA Action and the Procedural history. ................................................ 4

ARGUMENT. ............................................................................................................. 6

DEFENDANT IS ENTITLED TO JUDGMENT ON THE PLEADINGS
BECAUSE THE OFFICE OF ADMINISTRATION DOES NOT MEET
FOIA'S DEFINITION OF "AGENCY". ..................................................................... 6

I.      STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS. ...................... 6

II.     THE OFFICE OF ADMINISTRATION IS NOT AN "AGENCY" AS
DEFINED IN FOIA. ........................................................................................ 7

    A.    A Component of the Executive Office of the President Must Wield
"Substantial Independent Authority" to Qualify As An "Agency"
Under FOIA. .................................................................................................... 7

    B.    The office of Administration Does Not Have Substantial Independent
Authority. ....................................................................................................... 12

    C.    Application of the *Meyer* Three-Part Confirms that the Office of
Administration Is Not An "Agency" Under FOIA................................................. 15

          1.    The office of administration has a self-contained structure. ...................... 16

          2.    The office of administration's proximity to the president confirms
That it is more like the President's immediate personal staff. .................. 17

          3.    The nature of the office of administration's delegated authority
confirms that it does not have substantial independent authority. ............ 18

    D.    The Office of Administration's Past Conduct Does Not Preclude It
From Asserting That It is Not An "Agency" Subject to FOIA. ............................. 19

CONCLUSION. ......................................................................................................... 20

## TABLE OF AUTHORITIES

### CASES

PAGES(S)

Armstrong v. EOP,
    90 F.3d 553 (D.C. Cir. 1996). ................................................................... passim

Bell Atl. Corp. v. Twombly,
    127 S.Ct. 1955 (2007). ........................................................................ 6

Covad Communications Co. v. Bell Atlantic Corp.,
    407 F.3d 1220 (D.C. Cir. 2005). ....................................................... 7

Department of Justice v. Tax Analysts,
    492 U.S. 136 (1989). .......................................................................... 7

EEOC v. St. Francis Xavier Parochial Sch.,
    117 F.3d 621 (D.C. Cir. 1997). .......................................................... 7

Fay v. Perles,
    484 F. Supp. 2d 12 (D.D.C. 2007). ................................................... 6

Kaempe v. Myers,
    367 F.3d 958 (D.C. Cir. 2004). .......................................................... 7

Kissinger v. Reporters Committee for Freedom of the Press,
    445 U.S. 136 (1980). ..................................................................... passim

Meyer v. Bush,
    981 F.2d 1288 (D.C. Cir. 1993). ................................................... passim

National Security Archive v. Archivist of the United States,
    909 F.2d 541 (D.C. Cir. 1990). ....................................................... 10

Pacific Legal Found. v. Council on Envtl. Quality,
    636 F.2d 1259 (D.C. Cir. 1980). ......................................................... 9

Peters v. Nat'l Railroad Passenger Corp.,
    966 F.2d 1483 (D.C. Cir. 1992). ....................................................... 6

Rodriguez-Ortiz v. Margo Caribe, Inc.,
    490 F.3d 92 (1st Cir. 2007). ............................................................... 6

Rushforth v. Council of Economic Advisers,
    762 F.2d 1038 (D.C. Cir. 1985). ............................................................... 10

Schuchart v. La Taberna Del Alabardero, Inc.,
    365 F.3d 33 (D.C. Cir. 2004). ..................................................................... 6

Sierra Club v. Andrus,
    581 F.2d 895 (D.C. Cir. 1978), *rev'd on other grounds*, 442 U.S. 347
    (1979). ............................................................................................... 10, 14

Soucie v. David,
    448 F.2d 1067 (D.C. Cir. 1971). ........................................................ 8, 9, 14

Sweetland v. Walters,
    60 F.3d 852 (D.C. Cir. 1995). ............................................................ passim

Thompson v. Dist. of Columbia,
    478 F. Supp. 2d 5 (D.D.C. 2007). ................................................................ 7

Thompson v. Dist. of Columbia,
    428 F.3d 283 (D.C. Cir. 2005). ................................................................... 6

Voinche v. EOP,
    No. 06-cv-1272, 2007 U.S. Dist. LEXIS 42268 (D.D.C. June 12, 2007). ........ 7

Wise v. Glickman,
    257 F. Supp. 2d 123 (D.D.C. 2003). ............................................................ 7

## STATUTES AND REGULATIONS

3 U.S.C. § 107(b). ......................................................................................... 3

3 U.S.C. § 113 .............................................................................................. 14

5 U.S.C. § 552 .................................................................................... 1, 7, 8, 16

15 U.S.C. § 1023. .......................................................................................... 10

42 U.S.C. § 4342. .......................................................................................... 14

42 U.S.C. § 6612. .......................................................................................... 14

32 C.F.R. §§ 2101-2103 (1993). ................................................................... 19

## **FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 12(c). ................................................................................................. 1, 6

Fed. R. Civ. P. 56. ...................................................................................................... 6

## **LEGISLATIVE MATERIAL**

H.R. Conf. Rep. No. 1380, 93d Cong., 2d Sess. 14 (1974). ........................................... 8

S. Conf. Rep. No. 1200, 93d Cong., 2d Sess. 15 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6293.   8

## **MISCELLANEOUS**

Reorganization Plan No. 1 of 1977, 42 Fed. Reg. 56101, 91 Stat. 1633. .............................passim

Executive Order No. 12028, 42 Fed. Reg. 62895 (Dec. 12, 1977)........................................passim

Executive Order No. 12122, 44 Fed. Reg. 11197 (Feb. 26, 1979)........................................passim

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,  )<br><br>)<br>Plaintiff,  )<br><br>)<br>v.  )<br><br>)<br>OFFICE OF ADMINISTRATION,  )<br><br>)<br>Defendant.  )<br><br>)<br>)<br>) | Civil Action No: 1:07-CV-00964 (CKK) |

## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND MEMORANDUM IN SUPPORT

### PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 12(c), defendant the Office of Administration ("OA"), Executive Office of the President ("EOP"), moves for judgment on the pleadings in this action filed by plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  As we demonstrate below, CREW has failed to state a claim against OA because OA is not an "agency" as defined in FOIA, and thus, is not subject to FOIA's disclosure requirements.

The law is settled that an EOP unit, such as OA, whose sole function is to advise and assist the President, and which has no substantial independent authority, is not a FOIA agency. *See Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980); *Armstrong v. EOP*, 90 F.3d 553, 558 (D.C. Cir. 1996).  Created by Executive Order and headed by the President, OA functions solely to provide administrative and support services to EOP

entities, including direct support to the President.  The only EOP units that the D.C. Circuit has held "to be subject to FOIA [have] wielded substantial authority independently of the President." *Sweetland v. Walters*, 60 F.3d 852, 854 (D.C. Cir. 1995).  But neither the President nor Congress has delegated to OA any independent authority.  Not only does OA lack any program or policy responsibilities, but pursuant to Executive Order, OA is subject to presidential supervision and approval even with respect to the performance of its purely administrative functions. Accordingly, OA wields no authority, let alone substantial authority, independent of the President.  It is, therefore, not a FOIA "agency" and is entitled to judgment on the pleadings.

## BACKGROUND

### A.      The Establishment of the Office of Administration and Its Function

The Office of Administration was established as a unit within the EOP by President Carter's Reorganization Plan No. 1 of 1977.  *See* Reorganization Plan No. 1 of 1977 ("Reorganization Plan"), § 2, 42 Fed. Reg. 56101, 91 Stat. 1633.  Under the Reorganization Plan, OA "shall be headed by the President," and "shall provide components of the [EOP] with such administrative services as the President shall from time to time direct."  *Id*.

President Carter further set forth OA's specific duties and responsibilities in Executive Order No. 12028, 42 Fed. Reg. 62895 (Dec. 12, 1977), *as amended by* Executive Order No. 12122, 44 Fed. Reg. 11197 (Feb. 26, 1979).  Section 3 of Executive Order No. 12028 states that OA shall provide "all types of administrative support and services that may be used by, or useful to, units within the [EOP]," including, but not limited to, personnel management services; financial management services; data processing, including support and services; library, records, and information services; and office services and operations, including mail, messenger, printing

2

and duplication, graphics, word processing, procurement, and supply services.  In addition, the

Executive Order specified that OA "shall, upon request, assist the White House Office in

performing its role of providing those administrative services."  *Id.*, § 3(a).

### B.    The Office of Administration's Organizational Structure

The President appoints a Director as the chief administrative officer of OA, *see*

Reorganization Plan, § 2, who in turn "report[s] to the President" through senior White House

officials, Exec. Order No. 12028, § 2.  The current Director carries the additional official title of

Special Assistant to the President, as did some of his predecessors.  *See* Office of the Federal

Register, Nat'l Archives and Records Admin., *The United States Government Manual 2006/2007*

at 91 (2006) ("U.S. Govn't Manual) (available at http://origin.www.gpoaccess.gov/gmanual/).

The Director organizes OA, contracts for supplies and services, and "do[es] all other things that

the President, as head of the Office of Administration, might do."  Exec. Order No. 12122,

§ 4(a).  Thus, for example, the Director performs the function of the President under 3 U.S.C.

§ 107(b) regarding the employment of OA personnel and the fixing of OA employees' pay.  *See*

Exec. Order No. 12122, § 4(a).

The Director's central responsibility, however, is to "ensur[e] that [OA] provides units

within the [EOP] common administrative support and services."  Exec. Order No. 12028, § 2.

Consistent with OA's administrative role, the Executive Order specifies that the OA Director is

"not accountable for the programs and management responsibilities of units within the EOP."

Exec. Order No. 12122, § 4(d).  Rather, "the head of each unit [] remain[s] responsible for those

functions."  *Id.*  In addition, consistent with the OA Director's role as a Special Assistant to the

President, the Executive Order further specifies that the OA Director's performance of his duties

3

and responsibilities is "subject to such direction or approval as the President may provide or require." Exec. Order No. 12122, § 4(a). OA does not have any role outside the EOP.

In its Fiscal Year 2008 budget submission to Congress, OA described the following organizational lines: Office of the Director; Office of the Chief Operating Officer; Office of the Chief Financial Officer; Office of Security and Emergency Preparedness; and Office of the Chief Information Officer. *See* Executive Office of the President, Office of Administration, Fiscal Year 2008 Budget ("FY 2008 Budget") (attached as Exhibit 1), at OA-3. The Office of the Director, in turn, includes the office of the General Counsel and the Equal Employment Opportunity Office. *See id.* Since at least 2005, OA has maintained a staff of more than 200 employees. *See* Executive Office of the President, Office of Administration, Fiscal Year 2007 Budget (attached as Exhibit 2), at OA-8; *see also* FY 2008 Budget, at OA-3.

### C.    CREW's FOIA Action and the Procedural History

In the fall of 2005, OA learned of an issue with the EOP's electronic email capturing process, and commenced an examination of that issue. *See* Compl., ¶ 19; Answer, ¶ 19. On April 17 and 18, 2007, CREW sent two FOIA requests to OA primarily seeking documents or materials relating to the potential loss of emails from the EOP email records system. *See* Compl., Ex. A & B. On April 27, 2007, OA acknowledged receipt of CREW's FOIA requests and simultaneously granted expedition and fee waiver. *See* Compl., Ex. C.

On May 24, 2007, while OA was in the process of seeking clarification of the scope of CREW's FOIA requests, CREW filed the instant action and a motion for preliminary injunction, seeking to compel OA to process the requested materials within ten days. This Court resolved CREW's emergency motion and memorialized, in an Order dated June 4, 2007, the parties'

4

agreed-upon schedule for OA's processing of six categories of documents specified by CREW to be prioritized for purposes of the emergency motion. The Court later modified the June 4 Order in an Order dated June 7, 2007 to correct an error in the time frame as to one of the categories, and to clarify that OA's obligations under the June 4 Order are to process and respond to CREW's FOIA requests, which includes the production of responsive, nonexempt materials.

Pursuant to the Court's Orders of June 4 and 7, 2007, OA made its first response and production on June 21, 2007. In its determination letter, OA informed CREW that OA is not an "agency" within the meaning of FOIA, and that it was making the production as a matter of administrative discretion. *See* Ex. 1 to Pl. Mot. to Modify (dkt no. 12). In its Answer filed on June 25, 2007, OA specifically denied that it is an "agency" subject to FOIA. *See* Answer, ¶ 7. OA also asserted, among other things, that the Court lacks jurisdiction over the subject matter of CREW's complaint because no agency records have been improperly withheld, and that the complaint fails to state a claim upon which relief can be granted. *See* Answer at 7.

On July 27, 2007, the parties submitted a Joint Proposed Schedule in which OA stated its intention to move to dismiss this action on the ground that it is not subject to FOIA. Despite CREW's objection, this Court found on August 7, 2007 that "whether OA is an agency subject to FOIA is, in fact, a dispositive issue," Order of Aug. 7, 2007 at 3, and set forth a briefing schedule, pursuant to which OA now files this motion.

**ARGUMENT**

**DEFENDANT IS ENTITLED TO JUDGMENT ON THE PLEADINGS BECAUSE THE OFFICE OF ADMINISTRATION DOES NOT MEET FOIA'S DEFINITION OF "AGENCY"**

**I.      STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS**

Fed. R. Civ. P. 12(c) provides that a party may move for a judgment on the pleadings after the close of pleadings.  The standard of review for Rule 12(c) motions is essentially the same as that for motions to dismiss under Rule 12(b)(6).  *See Schuchart v. La Taberna Del Alabardero, Inc.,* 365 F.3d 33, 35 (D.C. Cir. 2004); *Fay v. Perles*, 484 F. Supp. 2d 12, 14 (D.D.C. 2007).  The Court views the facts presented in the pleadings and the inferences that may be drawn from them in a light most favorable to the opposing party.  *Peters v. Nat'l Railroad Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992); *see also Thompson v. Dist. of Columbia*, 428 F.3d 283, 284 (D.C. Cir. 2005).  As the Supreme Court recently held, to survive a motion to dismiss (or here, a Rule 12(c) motion), a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1967 (2007); *see also id.* at 1968-69 (disavowing the oft-quoted language that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" because the "no set of facts" language, if taken literally, would impermissibly allow for the pleading of "a wholly conclusory statement of [a] claim"); *accord Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 -96 (1st Cir. 2007).[1]

_____

[1]  Although, generally, a motion shall be treated as one for summary judgment and disposed of under Fed. R. Civ. P. 56 when matters outside of the pleadings are presented to and not excluded by the court, a court may under Rule 12(c) take judicial notice of matters of public

## II.     THE OFFICE OF ADMINISTRATION IS NOT AN "AGENCY" AS DEFINED IN FOIA

### A.     A Component of the Executive Office of the President Must Wield "Substantial Independent Authority" to Qualify As An "Agency" Under FOIA

The Freedom of Information Act requires that "[e]ach agency" make available to the public non-exempt agency records, 5 U.S.C. § 552, and grants the district court "jurisdiction to enjoin the *agency* from withholding agency records and to order the production of any agency records improperly withheld . . . ." *Id.,* § 552(a)(4)(B) (emphasis added).[2]  As revised in 1974,

---

record.  *See Covad Communications Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Thompson v. Dist. of Columbia*, 478 F. Supp. 2d 5, 11 n.2 (D.D.C. 2007) (Leon, J.) ("Courts may take judicial notice of public documents, even if they are not included in, or attached to the complaint.") (internal quotations omitted); *Wise v. Glickman*, 257 F. Supp. 2d 123, 130 n.5 (D.D.C. 2003) (Robertson, J.) ("The Court is allowed to take judicial notice of matters in the general public record . . . ) (internal quotations omitted).  Here, OA has cited to OA's budget submissions to Congress regarding OA's mission and organizational structure, and to the U.S. Government Manual regarding the OA Director's official title, all of which are matters of public record.  Accordingly, those citations do not transform OA's Rule 12(c) motion into a summary judgment motion.

   [2]  The D.C. Circuit has held that in a FOIA case, the issue of an EOP component's "agency" status under FOIA goes to whether the plaintiff has stated a claim upon which relief can be granted, and not the court's subject matter jurisdiction.  *See Sweetland v. Walters*, 60 F.3d 852, 855 (D.C. Cir. 1995).   That holding, however, appears to be in tension with Supreme Court precedent.  In *Kissinger*, the Supreme Court held that "federal jurisdiction [under FOIA] is dependent upon a showing that *an agency* has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'"  445 U.S. at 150 (emphasis added).  "Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies."  *Department of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989).  Thus, it would appear that if a FOIA request is not directed at an "agency" as defined by FOIA, the jurisdictional conditions are not satisfied, and the court has no jurisdiction to hear it.  Another judge in this Court has so held in a recent case involving a FOIA request directed at the EOP.  *See Voinche v. EOP*, No. 06-cv-1272, 2007 U.S. Dist. LEXIS 42268 at *4 (D.D.C. June 12, 2007) (Leon, J.) (where a FOIA requester has not "direct[ed] his request towards . . . a discrete agency subject to FOIA . . . the Court is [] without subject matter jurisdiction" over the FOIA claim).

FOIA defines the term "agency" to

> include[] any executive department, military department,
> Government corporation, Government controlled corporation, or
> other establishment in the executive branch of the Government
> (including the Executive Office of the President), or any
> independent regulatory agency.

5 U.S.C. § 552(f). The Conference Committee Report accompanying the 1974 amendments to

FOIA, which added the reference to the "Executive Office of the President," explains that the

term "Executive Office of the President" is "not to be interpreted as including the President's

immediate personal staff or units in the Executive Office whose sole function is to advise and

assist the President." S. Conf. Rep. No. 1200, 93d Cong., 2d Sess. 15 (1974), *reprinted in* 1974

U.S.C.C.A.N. 6293; H.R. Conf. Rep. No. 1380, 93d Cong., 2d Sess. 14 (1974) (same). Citing

this "unambiguous" legislative history, the Supreme Court held in *Kissinger v. Reporters*

*Comm. for Freedom of the Press* that the "'Executive Office' does not include the Office of the

President" and that "'the President's immediate personal staff or units in the Executive Office

whose sole function is to advise and assist the President' are not included within the term

'agency' under the FOIA." 445 U.S. at 156 (quoting H.R. Conf. Rep. No. 93-1380, at 15

(1974)); *accord Meyer v. Bush*, 981 F.2d 1288, 1293 n.3 (D.C. Cir. 1993) (FOIA excludes "at

least those approximately 400 individuals employed in the White House Office" who are the

President's immediate personal staff).

　　　The legislative history also makes clear that Congress intended to codify the D.C.

Circuit's decision in *Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971). *See* 1974 U.S.C.C.A.N.

6293; H.R. Conf. Rep. No. 1380, 93d Cong., 2d Sess. 14 (1974) ("with respect to the meaning

of the term 'Executive Office of the President' the conferees intend the result reached in *Soucie*

*v. David*, 448 F.2d 1067"); *see Armstrong*, 90 F.3d at 558 ("That the Congress intended to

codify *Soucie* is clear enough."); *accord Meyer*, 981 F.2d at 1291. *Soucie* involved whether the

Office of Science and Technology ("OST"), an EOP component now known as the Office of

Science and Technology Policy ("OSTP"), was an "agency" subject to FOIA. The D.C. Circuit

held that it was, because, beyond its duties of advising the President, OST also had "the

independent function of evaluating federal [scientific] programs." *Soucie*, 448 F.2d at 1075.

When the OST inherited that function from one of its predecessor organizations, the court

further noted, both Congress and the President contemplated that Congress would "retain

control over information on federal programs accumulated by the OST, despite any confidential

relation between the Director of the OST and the President." *Id.* OST was found to be a FOIA

agency because it did not have the "sole function" of advising and assisting the President, and

instead, had "substantial independent authority in the exercise of specific functions." *Id.* at

1073.

Because Congress drew on and codified the sole function test articulated in *Soucie*,

subsequent D.C. Circuit cases addressing an EOP unit's "agency" status under FOIA have

focused on whether the entity possessed "substantial independent authority." And, as the D.C.

Circuit has observed, "every one of the EOP units that [it] found to be subject to FOIA has

wielded substantial authority independently of the President." *Sweetland*, 60 F.3d at 854. For

example, in *Pacific Legal Found. v. Council on Envtl. Quality*, 636 F.2d 1259, 1262-63 (D.C.

Cir. 1980), the D.C. Circuit held that the Council on Environmental Quality ("CEQ") is an

agency for FOIA purposes because it has independent authority to coordinate federal

environmental regulatory programs, issue guidelines for preparing environmental impact

statements, and promulgate regulations – legally binding on the agencies – for implementing the procedural provisions of the National Environmental Policy Act.  Similarly, in *Sierra Club v. Andrus*, 581 F.2d 895 (D.C. Cir. 1978), *rev'd on other grounds*, 442 U.S. 347 (1979), the D.C. Circuit found that the Office of Management and Budget ("OMB") is a FOIA agency because it has a statutory duty to provide budget information to Congress, along with "numerous other statutory duties."  *Id.* at 902 and n.25.

By contrast, the D.C. Circuit has consistently refused to hold that EOP components that lack substantial independent authority but serve only to advise or assist the President are subject to FOIA.  In *Rushforth v. Council of Economic Advisers*, 762 F.2d 1038 (D.C. Cir. 1985), for example, the court found that the Council of Economic Advisers ("CEA") is not a FOIA agency because each of its enumerated statutory duties is directed at providing advice and assistance to the President,[3] and neither the governing statute nor any executive order gives CEA any regulatory power.  *Id.* at 1043; *see*, *also, National Security Archive v. Archivist of the United States*, 909 F.2d 541, 545 (D.C. Cir. 1990) (the White House Counsel's Office is not a FOIA agency).  In contrast to the Council on Environmental Quality, "CEA had no similar power to issue formal legally authoritative commands to entities or persons within or without the executive branch."  *Meyer*, 981 F.2d at 1292.

Similarly, in *Armstrong v. EOP*, the D.C. Circuit found that the National Security

---

[3]  The CEA's governing statute, 15 U.S.C. § 1023, authorizes the CEA to (1) assist and advise the President in the preparation of the Economic Report; (2) gather, compile and submit to the President timely and authoritative information concerning economic developments and economic trends; (3) appraise the various programs and activities of the Federal Government and make recommendations to the President; (4) develop and recommend to the President national economic policies to foster and promote free competitive enterprise; and (5) make and furnish whatever material and President may request on matters of Federal economic policy.

Council ("NSC") is not an "agency" under FOIA because neither the President nor Congress has delegated any function to the NSC other than that of advising and assisting the President. 90 F.3d 553. Although NSC is authorized, among other things, to review and provide guidance and direction for the conduct of intelligence activities, and to provide overall policy direction for the information security program, *see id.* at 561, there was no showing that the "NSC exercises meaningful non-advisory authority." *Id.* at 565. As the Court found, "to the extent that the NSC assists the President in coordinating the activities of the various agencies with national security responsibilities, it exercises no authority of its own." *Id.* at 561.

Likewise, in *Meyer v. Bush*, the D.C. Circuit found the President's *ad hoc* Task Force on Regulatory Relief exempt from FOIA, even though the Executive Director of the Task Force (who was the Director of the OMB) had the authority, among other things, to review regulatory impact analyses ("RIAs") and to issue guidelines both for filing the RIAs and for identifying major rules. 981 F.2d at 1290. In fact, the Executive Order creating the Task Force also gave the OMB Director – subject to the Task Force's guidance – the authority (1) to designate regulations as major rules; (2) to require agencies to seek additional information in connection with a regulation; (3) to require interagency consultation designed to reduce conflicting regulations; (4) to develop procedures for estimating the annual social costs and benefits of regulations; and (5) to prepare recommendations to the President for changes in agency statutes. *See* Exec. Order No. 12291, § 6. Nevertheless, the D.C. Circuit found that the Task Force lacked "substantial independent authority to direct executive branch officials." *Meyer*, 981 F.2d at 1297. As the court noted, the Executive Order creating the Task Force specified that the Order was "intended only to improve the internal management of the Federal Government . . . ."

11

*Id.* at 1290 (internal quotation marks omitted).

And in *Sweetland v. Walters*, the D.C. Circuit held that the staff of the Executive Residence, which was analogized by the court to an EOP unit for purposes of a FOIA analysis, is not an "agency" under FOIA because the staff's functions are "exclusively dedicated to assisting the President in maintaining his home and carrying out his various ceremonial duties." 60 F.3d at 854. As the court analyzed, "[t]he staff does not oversee and coordinate federal programs, as does the Office of Science and Technology, or promulgate binding regulations, as does the Council on Environmental Quality." *Id.* Even though the staff is charged by statute with specific obligations regarding the public property and furniture in the White House, *see id.* at 855, and is to "perform such official duties as the President may prescribe," *id.* (quoting 3 U.S.C. § 105(b)(1)), those duties are required to be carried out "under the direction" or "with the approval of the President." *Id.* (quoting 3 U.S.C. §§ 109, 110). The court concluded that, "[i]n short, neither Congress nor the President has delegated independent authority to these employees." *Id.* Thus, D.C. Circuit precedent is clear that an EOP unit is an "agency" under FOIA if and only if it has substantial independent authority.

## B. The Office of Administration Does Not Have Substantial Independent Authority

Under the foregoing precedent, it is plain that OA lacks the type of "substantial independent authority" that would render it an "agency" for purposes of FOIA. OA was created to "provide components of the [EOP] with such administrative services as the President shall from time to time direct." Reorganization Plan, § 2. Executive Order No. 12028 provides that OA "shall provide all types of administrative support and services that may be used by, or

useful, to units within the [EOP]," and "shall upon request, assist the White House Office in performing its role of providing those administrative services." Exec. Order No. 12028, § 3. In other words, OA is an entity that exists solely to advise and assist the President, including providing administrative services to EOP units, which, in turn, support the President.

OA has no role outside the EOP, but rather, provides administrative support and services only to units within the EOP, including direct support to the President. And even then, the President has specified that OA "shall not be accountable for the program and management responsibilities" of those EOP units, but rather, "the head of each unit shall remain responsible for those functions." Exec. Order No. 12028, § 4(d), *as amended by* Exec. Order No. 12122. As OA explains it in its most recent budget report to Congress, its mission is to provide the necessary administrative support for the staff of the EOP "so that policy-making staff elsewhere in the EOP can focus on national policy decisions without having the distractions caused by routine administrative services." *See* Executive Office of the President, Office of Administration, Fiscal Year 2006 Budget (excerpt attached as Exhibit 3), at 69.

To the extent that OA or its Director is delegated any authority in order to carry out OA's administrative mission, *see* Exec. Order No. 12028, § 4(a) (authorizing OA Director to "organize [OA], contract for supplies and services; and do all other things that the President, as head of [OA] might do"), the exercise of that authority is specifically "subject to such direction or approval as the President may provide or require," *id.*, which is much like the staff of the Executive Residence being subject to Presidential direction and approval in its performance of

13

statutory obligation to protect White House property.[4]

Unlike the EOP units found to be FOIA "agencies," OA does not have any "independent function of evaluating federal programs," *Soucie*, 448 F.3d at 1075, as does the Office of Science and Technology. Nor does it have any independent authority to coordinate federal regulatory programs, promulgate regulations for implementation of any federal law, or "issue formal legally authoritative commands to entities or persons within or without the executive branch," *Meyer*, 981 F.2d at 1292, as does the Council on Environmental Quality.

OA also has no congressionally delegated duties, such as the duty delegated to the Office of Management and Budget to report budget information to Congress. Presidential appointment of OA's Director is not subject to Congressional approval, as is the case with the heads of EOP units that have been found to be FOIA agencies. *See Sierra Club*, 581 F.2d at 902 (noting that "Congress signified the importance of OMB's power and function, when it provided, also by amendment in 1974, for Senate confirmation of the Director and Deputy Director of the OMB"); *see also* 42 U.S.C. § 4342 (requiring Presidential appointment of the head of Council on Environmental Quality be subject to the advise and consent of the Senate); 42 U.S.C. § 6612 (requiring Presidential appointment of the head of Office of Science and Technology Policy be subject to the advise and consent of the Senate).

Instead, OA's duties are imposed solely by the President "as the President shall from time to time direct." Reorganization Plan, § 2. *See Armstrong*, 90 F.3d at 565 (noting that an

---

[4] In fact, it is quite telling that Congress has grouped OA with the Executive Residence (along with the White House Office, the Office of the Vice President and the Domestic Policy Staff) for purposes of the President's report to Congress regarding certain pay rate information of the employees in those offices. *See* 3 U.S.C. § 113.

14

office within the EOP will be more likely to act independently of the President when, like an agency outside the EOP, the office is charged with specific duties by statute, rather than by an immediate delegation from the President).  OA is entirely a Presidential creation that exists solely to advise and assist the President under his direct supervision.  It wields no authority independent of the President, much less "substantial independent authority."  Accordingly, OA is not an "agency" for purposes of FOIA.

C.    **Application of the *Meyer* Three-Part Test Confirms that the Office of Administration Is Not An "Agency" Under FOIA**

The above discussion makes clear that OA is not subject to FOIA's disclosure requirements.  Notably, in certain contexts, the D.C. Circuit has also applied a three-factor test to determine an EOP unit's "agency" status under FOIA.  The test was first articulated in *Meyer v. Bush*, where, as discussed above, the D.C. Circuit held that a group of senior advisers to the President working within the EOP as the Task Force on Regulatory Relief did not constitute an "agency" under FOIA, even though the group "evaluated agency regulatory efforts and had authority to provide some direction over agency rulemaking."  981 F.2d at 1292.  The D.C. Circuit later applied the test to hold that the National Security Council, which is headed by the President and is authorized to provide guidance and policy direction for national security issues, is not an "agency" subject to FOIA, but is more like the "President's immediate personal staff." *Armstrong*, 90 F.3d at 567.

This Court need not apply the three-factor test articulated in *Meyer* and *Armstrong* because, as the D.C. Circuit explained, the test is "relevant to determining whether those who both advise the President *and supervise others in the Executive Branch* exercise 'substantial

15

independent authority' and hence should be deemed an agency subject to the FOIA." *Id.* at 558 (emphasis added). In this case, in contrast, it is beyond dispute that OA does not "supervise others in the Executive Branch." Indeed, the D.C. Circuit similarly did not apply the three-part test in *Sweetland*, a case decided after *Meyer*, when it found the staff of the Executive Residence not subject to FOIA because "[t]he staff does not oversee and coordinate federal programs . . . or promulgate binding regulations . . . ." 60 F.3d at 854.

In any event, application of the three-part test confirms that OA is not subject to FOIA. The test requires consideration of "(1) 'how close operationally the group is to the President,' (2) 'whether it has a self-contained structure,' and (3) 'the nature of its delegate[d] authority.'" *Armstrong*, 90 F.3d at 558 (quoting *Meyer*, 981 F.2d at 1293). Each factor is not "weighed equally" but "warrants consideration insofar as it is illuminating in a particular case." *Id.*

### 1.    The office of administration has a self-contained structure

The logical first inquiry, which is the second prong of the *Meyer* test, is whether OA has "a self-contained structure" such that it would be in a position to exercise independent authority if so delegated. *Armstrong*, 90 F.3d at 559. *See also Meyer*, 981 F.2d at 1296 ("FOIA, by declaring that only 'establishments in the executive branch' are covered, 5 U.S.C. § 552(e), requires a definite structure for agency status."). It appears that OA does have such a defined structure. OA maintains a staff of some 200 employees and is organized along the lines of five offices, with each office having its own defined functions. *See* FY 2008 Budget at OA-3. There also appears to be clearly established lines of authority both among and within the offices, with the OA Director being the chief administrative officer of the entire organization, and the President being the head of the organization. *See* Reorganization Plan, § 2.

However, as the D.C. Circuit has explained, "while a definite structure may be a prerequisite to qualify as an establishment within the executive branch . . . not every establishment is an agency under the FOIA." *Armstrong*, 90 F.3d at 558 (internal quotations and citations omitted).  Even when an office "has a structure sufficiently self-contained that the entity could exercise substantial independent authority . . . [t]he remaining question is whether the [entity] does in fact exercise such authority." *Id*. at 560.  Thus, for example, while the D.C. Circuit found that the NSC has a self-contained structure, it ultimately concluded that the NSC does not, in fact, exercise substantial independent authority to qualify as an "agency" under FOIA.  *See id.* 560, 565.

> **2.    The office of administration's proximity to the president confirms that it is more like the President's immediate personal staff**

Addressing the "proximity" factor, the D.C. Circuit has explained that "[t]he closer an entity is to the President, the more it is like the White House staff, which solely advises and assists the President, and the less it is like an agency to which substantial independent authority has been delegated." *Armstrong*, 90 F.3d at 558.  In holding that the NSC is not an "agency" for purposes of FOIA, the D.C. Circuit noted that the NSC shares an "intimate organizational and operational relationship" with the President in that the NSC is chaired by the President and supervised by the National Security Adviser, who "work[s] in close contact with and under the direct supervision of the President."  90 F.3d at 560.  As the court found, "[w]hen arrayed against the overwhelming fact that the President is the head of the NSC, more is required to demonstrate that [the challenged] staff activities cast the NSC in any role outside its statutory assignment to advise and assist the President." *Id.* at 565.

17

Like the NSC, OA is "headed by the President," Reorganization Plan, § 2, and under Executive Order No. 12028, the OA Director, who is the chief administrative officer of OA, "shall report to the President." *Id.*, § 3. Like the National Security Adviser who is an Assistant to the President, OA's Director is a Special Assistant to the President. This is in contrast to the Directors of the OMB and OSTP, and the Chairman of CEQ, all of whose units have been found to be "agencies" under FOIA. Moreover, while the OA Director is responsible for organizing OA, contracting for supplies and services, and "do[ing] all other things that the President, as head of the Office of Administration, might do," he does so "subject to such direction or approval as the President may provide or require." Exec. Order No. 12122, § 4(a). Indeed, on a day-to-day basis, OA's Director reports to senior White House officials concerning OA's activities, clearly to ensure that they are carried out consistently with "the President's wishes," *Sweetland*, 60 F.3d at 855, much like the NSC and the Executive Residence. In sum, OA is close to the President operationally, and its characteristics and functions are similar to those of the President's immediate personal staff.

### 3.     The nature of the office of administration's delegated authority confirms that it does not have substantial independent authority

Consideration of the third factor – *i.e.*, the nature of OA's delegated authority – which is a factor "[c]losely related to the proximity factor," *Meyer*, 981 F.2d at 1293, confirms that OA functions solely to advise and assist the President. As already discussed above, far from wielding any "substantial independent authority," OA's only delegated authority is to provide administrative assistance within the EOP "as the President shall from time to time direct." Reorganization Plan, § 2. Like the staff of the Executive Residence, it has no program or policy

responsibilities either within or without the EOP, nor does it have any power to issue formal legally authoritative commands to entities or persons within or without the Executive Branch. And even the performance of its purely administrative functions is subject to Presidential supervision and approval.  OA exists solely to advise and assist the President, and under settled D.C. Circuit precedent, OA does not meet FOIA's definition of "agency."

> **D.     The Office of Administration's Past Conduct Does Not Preclude It From Asserting That It is Not An "Agency" Subject to FOIA**

To be sure, OA currently has regulations implementing FOIA and has not taken the position in prior litigation that it is not subject to FOIA.  However, the D.C. Circuit has held that this is not probative on the question of whether an EOP unit does, in fact, satisfy FOIA's definition of "agency."  In *Armstrong*, 90 F.3d at 565, the plaintiff FOIA requester argued that the NSC had conceded its agency status under FOIA through past conduct and statements, including submissions in earlier rounds of that litigation.  Indeed, the NSC previously had deemed itself subject to FOIA and had issued regulations for the disclosure of information under FOIA.  *See id.* at 557; *see also* 32 C.F.R. §§ 2101-2103 (1993).

The D.C. Circuit found, however, that "[t]he NSC's prior references to itself as an agency are not probative on the question before the court – whether the NSC is indeed an agency within the meaning of the FOIA; quite simply the Government's position on that question has changed over the years."  *Armstrong*, 90 F.3d at 566.  As the court explained, "[t]hat the NSC, in the interests of permitting public access to some NSC records and ensuring a smooth transition on national security matters, voluntarily subjected certain of its records to the FOIA and the [Federal Records Act] does not reflect any intention to concede, and should not be

taken as a matter of law that the NSC is subject to those statutes."  *Id.*[5]

Similarly here, OA's prior conduct should not affect this Court's determination of OA's "agency" status.  The issue has never been decided by a court, and it is now ripe for this Court's determination based on well-settled D.C. Circuit precedent.

## CONCLUSION

For all the foregoing reasons, this Court should grant OA's motion for judgment on the pleadings in this action.

Dated: August 21, 2007                         Respectfully submitted,

                                               PETER D. KEISLER
                                               Assistant Attorney General

                                               JEFFREY A. TAYLOR
                                               United States Attorney

                                               JOHN R. TYLER
                                               Senior Trial Counsel

                                               _____*/s/* Jean Lin_____
                                               JEAN LIN  (NY#4074530)
                                               Federal Programs Branch, Civil Division
                                               United States Department of Justice
                                               20 Massachusetts Ave., N.W.
                                               Washington, D.C.  20530
                                               Tel: (202) 514-3716
                                               Fax: (202) 616-8407

                                               Attorneys for Defendants

---

[5]  The D.C. Circuit in *Armstrong* also rejected the district court's alternative ruling that the NSC's newly adopted position was arbitrary and capricious under the Administrative Procedure Act ("APA") for lacking a reasoned explanation.  *See* 90 F.3d at 566.  The court held that the NSC was not required to provide "a reasoned explanation for its change of position on the question whether it is an agency" because "invocation of the APA begs the question whether the NSC was an 'agency' within the meaning of that term as it is used in the APA," a question that was rendered moot by the court's determination that the NSC is not an agency under FOIA. *Id.*

20

**EXHIBIT 1**

# Executive Office of the President



# *Office of Administration*

## Fiscal Year 2008 Budget

# Executive Office of the President
## Office of Administration

### Mission Statement and Background

The Office of Administration (OA) was created by Reorganization Plan No. 1 of 1977, and was formally established by Executive Order 12028 on December 12, 1977. OA's mission is to provide enterprise-level administrative services to the Executive Office of the President (EOP) and the Office of the Vice President.

OA is organized along the following lines:

**Office of the Director** includes the Director's personal staff, Office of the General Counsel, and the Equal Employment Opportunity Office. This office provides leadership, manages allocation of resources, and ensures that priorities reflect customer needs.

**Office of the Chief Operating Officer** manages human resources, library, office supply, receiving and warehousing, duplicating, facilities management, telecommunications, and mail/messenger functions.

**Office of the Chief Financial Officer (OCFO)** oversees financial management activities related to EOP components. The OCFO directs, manages, and provides policy guidance and oversight of financial management activities and operations, including procurement and travel support.

**Office of Security and Emergency Preparedness** is responsible for oversight of EOP security, emergency preparedness, and continuity of operations programs. This office also serves as a liaison with the United States Secret Service.

**Office of the Chief Information Officer (OCIO)** efficiently and effectively delivers strategic and operational technology leadership to the components that OA supports.

### Overview

For fiscal year (FY) 2008, the estimated funding requirement for OA is $103,110,000 and a full-time equivalent (FTE) level of 222. The overall FY 2008 OA budget represents a net increase of $693,000, or 0.7 percent, from the FY 2007 budget request.

The OA budget is divided into single-year and no-year accounts as follows:

- The Salaries and Expenses (S&E) budget is composed of single-year funds amounting to $91,187,000, which represents an increase of $167,000 from the FY 2007 budget request level.

- o Personnel compensation and benefits amounts to a $910,000 increase to cover the expected cost-of-living adjustment for Federal employees. The number of FTEs remains unchanged.

- o Within the Enterprise Services Initiative, the OA S&E budget includes the following adjustments from the amounts originally proposed in the FY 2007 request: an increase of $123,000 for GSA space rent on behalf of Office of Management and Budget (OMB), and an $866,000 decrease on behalf of the Office of National Drug Control Policy (ONDCP). The net impact is a reduction of $743,000.

- The Capital Investment Plan (CIP) represents $11,923,000 in no-year funds. This includes a program increase of $526,000 in equipment to replace servers dedicated to systems maintained for Human Resources Management. There are no FTEs associated with the CIP.


FY 2008 Estimate

**Salaries and Expenses: $91,187,000**

The S&E account supports core OA functions, and the FY 2008 OA budget request reiterates the FY 2007 request in that it moves $11,176,000 in funding from other EOP components to the OA Enterprise Services Initiative:

- $10,281,000 for space rent paid to GSA:

  - o $7,528,000 from OMB
  - o $2,753,000 from ONDCP

- $658,000 for employee transportation subsidies:

  - o $100,000 from the White House Office (WHO)
  - o $2,000 from the Executive Residence (EXR)
  - o $4,000 from the Office of Policy Development (OPD)
  - o $25,000 from the National Security Council (NSC)
  - o $6,000 from the Council of Economic Advisers (CEA)
  - o $327,000 from OMB
  - o $52,000 from ONDCP
  - o $19,000 from the Office of Science and Technology Policy (OSTP)
  - o $119,000 from the United States Trade Representative (USTR)
  - o $4,000 from the Council on Environmental Quality (CEQ)

- $237,000 for services:

  o $25,000 for rent-based security charges from the Federal Protective Service (FPS):
    - $25,000 from ONDCP

  o $65,000 for health unit services:
    - $53,000 from OMB
    - $12,000 from ONDCP

  o $105,000 for burn bag pickup services:
    - $77,000 from WHO
    - $6,000 from CEA
    - $7,000 from ONDCP
    - $15,000 from USTR

  o $42,000 for employee Flexible Spending Account (FSA) administrative fees:
    - $4,000 from WHO
    - $1,000 from EXR
    - $1,000 from NSC
    - $1,000 from CEA
    - $22,000 from OMB
    - $3,000 from ONDCP
    - $1,000 from OSTP
    - $8,000 from USTR
    - $1,000 from CEQ

OA's S&E request includes $2,522,000 for the OCFO. These funds are used to maintain systems used by the EOP community for financial reporting, financial systems, and internal controls. This funding provides for the ongoing cross-servicing agreements with the Bureau of the Public Debt, Administrative Resource Center (core accounting system), and the Department of Health and Human Services, Division of Payment Management (grant management system), as well as, travel support services, OCFO employee training, and general office supplies for the OCFO.

**Capital Investment Plan (CIP): $11,923,000**

The CIP provides $11,923,000 to support the continued development of EOP information technology infrastructure, and it is a vital component in the mission of the OCIO. The use of these funds is managed and closely controlled by the OCIO. The four areas described below will be supported by the FY 2008 CIP requirement:

- **Customer Solutions ($4,526,000)** funds are directed to enterprise-wide solutions which serve the common needs of all EOP components as well as unique business requirements of the White House Office and the Office of Administration. This is achieved by analyzing customer requirements, developing customized solutions or finding existing solutions that meet these requirements, and implementing systems that automate common business

practices across the EOP. The particular focus of these implemented systems is on mission, operational and cost effectiveness, as well as statutory compliance. This area supports the migration of the current infrastructure architecture to a common architecture. The overall goal is to reduce the total cost of ownership of EOP information technology while strengthening the service that the OCIO provides to its customers.

- **Customer Service and Desktop Systems ($2,243,000)** is necessary for ensuring that the technological infrastructure is adequate for supporting the mission of the EOP. This area provides for the scheduled modernization of the desktop, laptop, and printer hardware for all EOP components. Included in this category is the acquisition of enterprise software licenses, augmentation of the infrastructure for wireless handheld communications devices, and the provisioning of equipment and services to support Presidential and Vice Presidential travel.

- **EOP Systems Infrastructure ($3,974,000)** is needed to ensure that the information technology and communications infrastructure resident within EOP is upgraded to meet the capacity and performance requirements of its mission and organizational requirements. This includes the ongoing update of the EOP data network and supporting infrastructure to provide faster and more reliable network connections, the upgrade of business software that supports EOP functions, and implementation of virtual server technology to improve recoverability and availability of applications. Failure to refresh this core infrastructure will cause outages in vital infrastructure components that degrade critical communication and business functions, resulting in the failure to meet the EOP's mission and goals. This area includes the program increase to replace servers for systems maintained by Human Resources Management.

- **Information Security ($1,180,000)** includes a significant investment in information technology required for compliance with the common identification standards mandated by Homeland Security Presidential Directive 12. The CIP in this area continues the implementation and improvement of internal security systems that monitor the EOP network. Additionally, the policies and systems which authorize and control user access capabilities are continuously improved upon, increasing the effectiveness of the EOP staff.

**EXHIBIT 2**

# Executive Office of the President



# *Office of Administration*

## Fiscal Year 2007 Budget

# Executive Office of the President
# Office of Administration

## Mission Statement and Background

The Office of Administration (OA) was created by Reorganization Plan No. 1 of 1977, and was formally established by Executive Order 12028 on December 12, 1977.  OA's mission is to provide enterprise-level administrative services to the Executive Office of the President (EOP) and the Office of the Vice President.

OA is organized along the following lines:

**Office of the Director** includes the Director's personal staff, Office of the General Counsel, and the Equal Employment Opportunity Office.  This office provides leadership, manages allocation of resources, and ensures that priorities reflect customer needs.

**Office of the Chief Operating Officer** manages services for human resources, procurement, office supply, receiving and warehousing, library, printing, facilities management, travel support, telecommunications, and mail/messenger.

**Office of the Chief Financial Officer (OCFO)** oversees financial management activities related to EOP components.  The OCFO directs, manages, and provides policy guidance and oversight of financial management activities and operations.

**Office of Security and Emergency Preparedness** is responsible for oversight of EOP security and emergency preparedness programs.  This office also serves as a liaison with the United States Secret Service.

**Office of the Chief Information Officer (OCIO)** provides secure, effective, reliable, and easy-to-use information technology services in support of the EOP by implementing best-in-class information resource management, service delivery, and customer service.

## Overview

For fiscal year (FY) 2007, the estimated funding requirement for OA is $102,417,000 and 222 full-time equivalent (FTE) positions.  The overall FY 2007 OA budget represents a net <u>increase</u> of $13,989,000, or 15.8 percent, from the FY 2006 post-rescission enacted level.

The OA budget is divided into single-year and no-year accounts as follows:

- The Salaries and Expenses (S&E) budget is composed of single-year funds amounting to $91,020,000, which represents an increase of $14,242,000 from the FY 2006 post-rescission level.

- The primary reason for the increase is a move of $11,919,000 from other EOP components for the Enterprise Services Initiative. Broken down by object class, this represents $11,024,000 for General Services Administration (GSA) space rent, $658,000 for personnel benefits (transportation subsidies), and $237,000 for services.

- In addition to the Enterprise Services Initiative, the OA S&E budget includes the following adjustments: a GSA space rent increase of $1,471,000; a $940,000 payroll increase; and, $7,000 for performance management training. Reductions within the FY 2007 OA S&E budget amount to $95,000 from the travel, transportation, services, supplies, and equipment accounts. The number of FTEs remains unchanged.

- The Capital Investment Plan (CIP) represents $11,397,000 in no-year funds. This includes a reduction in $253,000 in communications, supplies, and services from the FY 2006 post-rescission level. There are no FTEs associated with the CIP.

<u>FY 2007 Estimate</u>

**Salaries and Expenses: $91,020,000**

The S&E account supports core OA functions, and the FY 2007 OA budget request includes $11,919,000 in funding moved from other EOP components for the Enterprise Services Initiative:

- $11,024,000 for space rent paid to GSA:

  - $7,405,000 from the Office of Management and Budget (OMB)
  - $3,619,000 from Office of National Drug Control Policy (ONDCP)

- $658,000 for employee transportation subsidies:

  - $100,000 from the White House Office (WHO)
  - $2,000 from the Executive Residence (EXR)
  - $4,000 from the Office of Policy Development (OPD)
  - $25,000 from the National Security Council (NSC)
  - $6,000 from the Council of Economic Advisers (CEA)
  - $327,000 from OMB
  - $52,000 from ONDCP
  - $19,000 from the Office of Science and Technology Policy (OSTP)
  - $119,000 from the United States Trade Representative (USTR)
  - $4,000 from the Council on Environmental Quality (CEQ)

- $237,000 for services:

    o $25,000 for rent-based security charges from the Federal Protective Service (FPS):
        - $25,000 from ONDCP

    o $65,000 for health unit services:
        - $53,000 from OMB
        - $12,000 from ONDCP

    o $105,000 for burn bag pickup services:
        - $77,000 from WHO
        - $6,000 from CEA
        - $7,000 from ONDCP
        - $15,000 from USTR

    o $42,000 for employee Flexible Spending Account (FSA) administrative fees:
        - $4,000 from WHO
        - $1,000 from EXR
        - $1,000 from NSC
        - $1,000 from CEA
        - $22,000 from OMB
        - $3,000 from ONDCP
        - $1,000 from OSTP
        - $8,000 from USTR
        - $1,000 from CEQ

It should be noted that OA's S&E request includes $1,475,000 for the OCFO. These funds are used to maintain systems used by the EOP community for financial reporting, financial systems, and internal controls.


**Capital Investment Plan (CIP): $11,397,000**

The CIP account provides $11,397,000 to support development of the EOP's information technology infrastructure. The OCIO oversees the management and use of these funds. The overall FY 2007 CIP requirement supports the four areas described below:

- **Systems Architecture and Engineering ($3,688,000)** provides support for the missions and functions of the EOP components by implementing systems that automate common business practices across the EOP, with particular focus on mission effectiveness, operational effectiveness, statutory compliance, and cost-effectiveness. This contains the development of custom software to support the unique business requirements of the White House, implementation of an application development process, implementation of enterprise-wide technology standards, and migration to a common architecture to reduce the overall cost of ownership of EOP information technology.

- **Customer Service and Desktop Systems ($2,132,000)** provides scheduled desktop, laptop, and printer modernization for all EOP components. This category includes acquisition of enterprise software, augments the infrastructure for wireless handheld communications devices, and provides equipment and service enhancements for support of Presidential and Vice Presidential travel.

- **EOP Systems Infrastructure ($4,669,000)** ensures that EOP information technology and communications infrastructure is upgraded to meet the capacity and performance requirements of the EOP's mission and organizational requirements. This includes the ongoing update of the EOP data network and supporting infrastructure to provide faster and more reliable network connections, as well as upgrade of business software that supports EOP functions. Failure to refresh the core infrastructure will lead to outages that degrade critical communication and business functions.

- **Information Security ($908,000)** continues the implementation and improvement of internal security systems to monitor the EOP network and improve the policies and systems which authorize and control user access capabilities.

**Executive Office of the President**
**Office of Administration - Overall S&E and CIP**

**Summary Change to Object Class**
**($ in thousands)**

A summary of the estimated funding requirement is shown below:

|  | FY 2005 Actual | FY 2006 Enacted | FY 2007 Estimated |
|---|---|---|---|
| Total, Direct Obligations.................. | 89,910 | 88,428 | 102,417 |
| Full-time Equivalent Employment... | 217 | 222 | 222 |

The increases and/or decreases for FY 2007 are as follows:

FY 2006 enacted level................................................................. 88,428

Increases to FY 2006 enacted level:
| | | |
|---|---|---|
| Personnel Compensation & Benefits............................ | 1,598 | |
| Rental Payments to GSA................................................ | 12,495 | |
| Other Contractual Services............................................ | 191 | |
| Subtotal, increases to FY 2006 enacted level................. | | 14,284 |

Decreases to FY 2006 enacted level:
| | | |
|---|---|---|
| Travel & Transportation of Persons............................ | -41 | |
| Transportation of Things................................................. | -2 | |
| Comm., Utilities & Misc. Charges................................. | -100 | |
| Supplies and Materials.................................................... | -142 | |
| Equipment....................................................................... | -10 | |
| Subtotal, decreases to FY 2006 enacted level.............. | | -295 |

FY 2007 estimated level......................................................... 102,417

**Executive Office of the President**
**Office of Administration - Overall S&E and CIP**

## Object Class
## ($ in thousands)

|     |                                  | FY 2005 Actual | FY 2006 Enacted | FY 2007 Estimated | FY06/FY07 Difference |
|-----|----------------------------------|---------------:|----------------:|------------------:|---------------------:|
| 10  | Personnel Compensation & Benefits | 21,924 | 22,276 | 23,874 | 1,598 |
| 21  | Travel & Transportation of Persons. | 176 | 237 | 196 | -41 |
| 22  | Transportation of Things.................. | 208 | 140 | 138 | -2 |
| 23.1 | Rental Payments to GSA.................. | 22,804 | 20,494 | 32,989 | 12,495 |
| 23.3 | Comm., Utilities & Misc. Charges... | 7,189 | 6,756 | 6,656 | -100 |
| 24  | Printing and Reproduction................ | 230 | 192 | 192 | 0 |
| 25  | Other Contractual Services.............. | 31,240 | 27,174 | 27,365 | 191 |
| 26  | Supplies and Materials..................... | 1,122 | 1,565 | 1,423 | -142 |
| 31  | Equipment........................................ | 5,018 | 9,594 | 9,584 | -10 |
|     | Total, Direct Obligations................. | 89,910 | 88,428 | 102,417 | 13,989 |
|     |                                  |        |        |         |        |
| 99  | Reimbursement................................ | 1,465 | 1,210 | 1,600 |  |
|     | Total................................................ | 91,375 | 89,638 | 104,017 |  |

## Personnel Summary

|                                | FY 2005 Actual | FY 2006 Enacted | FY 2007 Estimated | FY06/FY07 Difference |
|--------------------------------|---------------:|----------------:|------------------:|---------------------:|
| Full-time Equivalent Employment | 217 | 222 | 222 | 0 |

**Executive Office of the President**
**Office of Administration - S&E**

**Summary Change to Object Class**
**($ in thousands)**

A summary of the estimated funding requirement is shown below:

|  | FY 2005 Actual | FY 2006 Enacted | FY 2007 Estimated |
|---|---|---|---|
| Total, Direct Obligations.................. | 79,024 | 76,778 | 91,020 |
| Full-time Equivalent Employment... | 217 | 222 | 222 |

The increases and/or decreases for FY 2007 are as follows:

| | | |
|---|---|---|
| FY 2006 enacted level................................................ | | 76,778 |
| | | |
| Increases to FY 2006 enacted level: | | |
| Personnel Compensation & Benefits........................... | 1,598 | |
| Rental Payments to GSA.............................................. | 12,495 | |
| Other Contractual Services.......................................... | 244 | |
| Subtotal, increases to FY 2006 enacted level.............. | | 14,337 |
| | | |
| Decreases to FY 2006 enacted level: | | |
| Travel & Transportation of Persons............................. | -41 | |
| Transportation of Things.............................................. | -2 | |
| Supplies and Materials................................................. | -42 | |
| Equipment.................................................................... | -10 | |
| Subtotal, decreases to FY 2006 enacted level.............. | | -95 |
| | | |
| FY 2007 estimated level.............................................. | | 91,020 |

OA-9

**Executive Office of the President**
**Office of Administration - S&E**

## Object Class
### ($ in thousands)

|      |                                           | FY 2005 Actual | FY 2006 Enacted | FY 2007 Estimated | FY06/FY07 Difference |
|------|-------------------------------------------|----------------|-----------------|-------------------|----------------------|
| 10   | Personnel Compensation & Benefits          | 21,924         | 22,276          | 23,874            | 1,598                |
| 21   | Travel & Transportation of Persons.        | 176            | 237             | 196               | -41                  |
| 22   | Transportation of Things...................| 208            | 140             | 138               | -2                   |
| 23.1 | Rental Payments to GSA...................   | 22,804         | 20,494          | 32,989            | 12,495               |
| 23.3 | Comm., Utilities & Misc. Charges...        | 6,377          | 6,656           | 6,656             |                      |
| 24   | Printing and Reproduction...............    | 230            | 192             | 192               | 0                    |
| 25   | Other Contractual Services...............   | 25,528         | 24,914          | 25,158            | 244                  |
| 26   | Supplies and Materials.....................| 1,122          | 1,465           | 1,423             | -42                  |
| 31   | Equipment.......................................| 656        | 404             | 394               | -10                  |
|      | Total, Direct Obligations...................| 79,024         | 76,778          | 91,020            | 14,242               |
|      |                                           |                |                 |                   |                      |
| 99   | Reimbursement...............................| 1,465          | 1,210           | 1,600             |                      |
|      | Total.............................................| 80,489     | 77,988          | 92,620            |                      |

## Personnel Summary

|                                | FY 2005 Actual | FY 2006 Enacted | FY 2007 Estimated | FY06/FY07 Difference |
|--------------------------------|----------------|-----------------|-------------------|----------------------|
| Full-time Equivalent Employment | 217            | 222             | 222               | 0                    |

**Executive Office of the President**
**Office of Administration - S&E**

**Explanation of Changes by Object Class**
($ in thousands)

| FY 2006 Enacted | FY 2007 Estimate | | Net Change |
|---|---|---|---|
| $22,276 | $23,874 | Personnel Compensation and Benefits (10) | $1,598 |

This object class includes salaries, terminal leave, premium pay, reimbursable detailees, assignments under the Intergovernmental Personnel Act, and employee benefits (including the Government's share of retirement, Medicare, insurance, transportation subsidy, and worker compensation).

The increase in this object class represents moving transportation subsidies ($658) from various EOP Components to the OA appropriation, as part of the Enterprise Services Initiative. An additional increase is included ($940) to cover projected increases in compensation and benefits.

| | | | |
|---|---|---|---|
| $237 | $196 | Travel and Transportation of Persons (21) | -$41 |

This object class includes official travel, such as per diem, hotel and transportation, auto rental and local transportation.

The reduction in this object class represents a reprioritization of funds within the OA S&E budget.

| | | | |
|---|---|---|---|
| $140 | $138 | Transportation of Things (22) | -$2 |

This object class includes commercial express delivery as well as freight and other shipping charges.

The reduction in this object class represents a reprioritization of funds within the OA S&E budget.

| FY 2006 Enacted | FY 2007 Estimate | | Net Change |
|---|---|---|---|
| $20,494 | $32,989 | Rental Payments to GSA (23.1) | $12,495 |

This object class includes payments to the GSA for rental of space and rent-related services.

Most of the increase in this object class represents moving GSA rent and rent-related responsibilities from OMB ($6,949), ONDCP ($2,679), and associated GSA programmed rent increases in FY 2007 for OMB ($456) and ONDCP ($940) to the OA appropriation, as part of the Enterprise Services Initiative. Additionally, GSA programmed FY 2007 rent increases are included for EOP offices that are funded through the OA appropriation in FY 2006 ($1,471).

| | | | |
|---|---|---|---|
| $6,656 | $6,656 | Communications, Utilities & Miscellaneous Charges (23.3) | $0 |

This object class includes data, voice, and wireless communications from Federal and commercial sources, as well as utilities, postage, and miscellaneous rental charges.

There is no net change in this object class.

| | | | |
|---|---|---|---|
| $192 | $192 | Printing and Reproduction (24) | $0 |

This object class includes printing and reproduction obtained from the private sector or from other Federal entities.

There is no net change in this object class.

| FY 2006 Enacted | FY 2007 Estimate | | Net Change |
|---|---|---|---|
| $24,914 | $25,158 | Other Contractual Services (25) | $244 |

This object class includes advisory and assistance services, other purchases of goods and services from Government accounts, operations and maintenance of facilities, research and development contracts, medical care, operations and maintenance of equipment, or subsistence and support of persons.

The increase in this object class represents funding for performance management training ($7), and moving FSA administrative fees ($42), burn bag services ($105), FPS ($25), and health unit operations ($65) from various EOP Components to the OA appropriation, as part of the Enterprise Services Initiative.

| | | | |
|---|---|---|---|
| $1,465 | $1,423 | Supplies and Materials (26) | -$42 |

This object class includes general supplies, information technology (IT), supplies, newspaper and magazine subscriptions, and Government publications.

The reduction in this object class represents a reprioritization of funds within the OA S&E budget.

| | | | |
|---|---|---|---|
| $404 | $394 | Equipment (31) | -$10 |

This object class includes IT hardware and software, customized software programming, peripheral equipment (e.g., printers and network devices), office furniture and equipment, such as photocopiers, facsimile machines and telephones.

The reduction in this object class represents a reprioritization of funds within the OA S&E budget.

| | | | |
|---|---|---|---|
| **$76,778** | **$91,020** | **Total for all Object Classes** | $14,242 |

**Executive Office of the President**
**Office of Administration - CIP**

---

**Summary Change to Object Class**
**($ in thousands)**

A summary of the estimated funding requirement is shown below:

|  | FY 2005 Actual | FY 2006 Enacted | FY 2007 Estimated |
|---|---|---|---|
| Total, Direct Obligations................... | 10,886 | 11,650 | 11,397 |
| Full-time Equivalent Employment | 0 | 0 | 0 |

The increases and/or decreases for FY 2007 are as follows:

| | | |
|---|---|---|
| FY 2006 enacted level............................................................ | | 11,650 |
| | | |
| Increases to FY 2006 enacted level: | | |
| Subtotal, increases to FY 2006 enacted level.............. | | 0 |
| | | |
| Decreases to FY 2006 enacted level: | | |
| Comm., Utilities & Misc. Charges................................ | -100 | |
| Other Contractual Services........................................... | -53 | |
| Supplies and Materials.................................................. | -100 | |
| Subtotal, decreases to FY 2006 enacted level................ | | -253 |
| | | |
| FY 2007 estimated level......................................................... | | 11,397 |

**Executive Office of the President**
**Office of Administration - CIP**

---

**Object Class**
**($ in thousands)**

| | | FY 2005 Actual | FY 2006 Enacted | FY 2007 Estimated | FY06/FY07 Difference |
|---|---|---|---|---|---|
| 23.3 | Comm., Utilities & Misc. Charges... | 812 | 100 | 0 | -100 |
| 25 | Other Contractual Services............... | 5,712 | 2,260 | 2,207 | -53 |
| 26 | Supplies and Materials.................... | 0 | 100 | 0 | -100 |
| 31 | Equipment........................................ | 4,362 | 9,190 | 9,190 | 0 |
| | Total, Direct Obligations................. | 10,886 | 11,650 | 11,397 | -253 |

---

**Personnel Summary**

| | FY 2005 Actual | FY 2006 Enacted | FY 2007 Estimated | FY06/FY07 Difference |
|---|---|---|---|---|
| Full-time Equivalent Employment | 0 | 0 | 0 | 0 |

**Executive Office of the President**
**Office of Administration - CIP**

**Explanation of Changes by Object Class**
($ in thousands)

| FY 2006 Enacted | FY 2007 Estimate | | Net Change |
|---|---|---|---|
| $100 | $0 | **Communications, Utilities & Miscellaneous Charges (23.3)** This object class includes data, voice, and wireless communications from Federal and commercial sources, as well as utilities, postage, and miscellaneous rental charges. The reduction in this object class represents a reprioritization of funds within the OA CIP budget. | -$100 |
| $2,260 | $2,207 | **Other Contractual Services (25)** This object class includes advisory and assistance services, other purchases of goods and services from Government accounts, operations and maintenance of facilities, research and development contracts, medical care, operations and maintenance of equipment, or subsistence and support of persons. The reduction in this object class represents a reprioritization of funds within the OA CIP budget. | -$53 |
| $100 | $0 | **Supplies and Materials (26)** This object class includes general supplies, information technology (IT), supplies, newspaper and magazine subscriptions, and Government publications. The reduction in this object class represents a reprioritization of funds within the OA CIP budget. | -$100 |

| FY 2006 Enacted | FY 2007 Estimate | | Net Change |
|---|---|---|---|
| $9,190 | $9,190 | Equipment (31) | $0 |
| | | This object class includes IT hardware and software, customized software programming, peripheral equipment (e.g., printers and network devices), office furniture and equipment, such as photocopiers, facsimile machines and telephones. | |
| | | There is no net change in this object class. | |
| **$11,650** | **$11,397** | **Total for all Object Classes** | -$253 |

**EXHIBIT 3**

# Executive Office of the President



# *Office of Administration*

## Fiscal Year 2006 Budget

# Executive Office of the President
## Office of Administration

## Mission Statement and Background

The Office of Administration (OA) was created by Reorganization Plan No. 1 of 1977, and was formally established by Executive Order 12028 on December 12, 1977. OA's mission is to provide administrative services to the Executive Office of the President (EOP).

OA's primary function is to provide enterprise-level services to the EOP. OA provides cost-effective and efficient services so that policy-making staff elsewhere in the EOP can focus on national policy decisions without having the distractions caused by routine administrative services.

OA is organized along the following lines:

**Office of the Director** includes the Director's personal staff, Office of the Deputy Director, Office of the General Counsel, and the Equal Employment Opportunity Office. This office provides leadership, manages allocation of resources, and ensures that priorities reflect customer needs.

**Office of the Chief Operating Officer** organization manages EOP services for human resources, receiving, office supply, warehousing, library, printing, facilities management, travel support, telecommunications, procurement, and mail/messenger.

**Office of the Chief Financial Officer (CFO)** oversees EOP financial management activities related to the programs and operations of the organization. The CFO directs, manages, and provides policy guidance and oversight of financial management activities and operations.

**Office of Security and Emergency Preparedness** is responsible for oversight of EOP security and emergency preparedness programs. This office also serves as a liaison with the United States Secret Service.

**Office of the Chief Information Officer** provides secure, effective, reliable, and easy-to-use information technology services in support of the President and the EOP by implementing best-in-class information resource management, service delivery, and customer service.

**Executive Office of the President**
**Office of Administration**

**Overview**

For fiscal year (FY) 2006, the estimated funding requirement for OA is $98,609,000 and 222 full-time equivalent (FTE) positions. This amount includes a move of $7,042,000 from other EOP components to cover the cost of enterprise services.

The overall FY 2006 OA budget represents a net increase of $7,079,000, or 7.7 percent, from the FY 2005 enacted level. Excluding the enterprise services, this represents an increase of $37,000, or 0.04 percent. The number of FTEs remains the same

The OA budget is divided into single-year and no-year accounts as follows:

- The Salaries and Expenses (S&E) portion of the budget is composed of single-year funds amounting to $86,841,000. This is a 9.2 percent increase over the FY 2005 enacted level.

- The Capital Investment Plan represents $11,768,000 in no-year funds. This is a 1.8 percent reduction from the FY 2005 enacted funding.

<u>FY 2006 Estimate</u>

The derivation of the FY 2006 funding requirement for OA is as follows:

|  | <u>S&E</u> | Capital<br><u>Investment</u> | <u>Total</u> |
|---|---|---|---|
| FY 2005 Enacted Budget | $79,552,448 | $11,978,400 | $91,530,848 |
| Salary adjustment | 501,000 | 0 | 501,000 |
| Services reduction | -867,448 | 0 | -867,448 |
| Space rental reduction | -187,000 | 0 | -187,000 |
| Equipment reduction | 0 | -210,400 | -210,400 |
| Increase for after-hours utilities | 800,000 | 0 | 800,000 |
| Enterprise services funds moved to OA | <u>7,042,000</u> | <u>0</u> | <u>7,042,000</u> |
| Total | $86,841,000 | $11,768,000 | $98,609,000 |

70