# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————

CITIZENS FOR RESPONSIBILITY AND          :
ETHICS IN WASHINGTON,                    :
                                         :
          Plaintiff,        :
                                         :
       v.                 :          Civil Action No. 07-0964 (CKK)
                                         :
OFFICE OF ADMINISTRATION,                :
                                         :
          Defendant.        :
—————————————————:

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
## FOR JUDGMENT ON THE PLEADINGS

               Respectfully submitted,


               ANNE L. WEISMANN
               (D.C. Bar No. 298190)
               MELANIE SLOAN
               (D.C. Bar No. 434584)
               Citizens for Responsibility and Ethics
                 in Washington
               1400 Eye Street, N.W., Suite 450
               Washington, D.C.  20005
               Phone:  (202) 408-5565
               Fax:  (202) 588-5020


               Attorneys for Plaintiff

September 4, 2007

# TABLE OF CONTENTS

PAGE(S)

STATEMENT..................................................................................................... 1

BACKGROUND................................................................................................ 3

    A.  The Office Of Administration.............................................................. 3

    B.  CREW's FOIA Request, OA's Response And This Litigation............................. 6

ARGUMENT..................................................................................................... 9

I.  THE ISSUE OF WHETHER OA IS AN AGENCY FOR PURPOSES OF THE
FOIA CANNOT BE DECIDED ON THE BASIS OF THE PLEADINGS........................ 9

    A.  Standard For Judgment On The Pleadings............................................. 9

    B.  The Pleadings Here Do Not Establish As A Factual Matter That OA
       Is Not An Agency Under The FOIA.................................................... 10

II.  PLAINTIFF MUST BE AFFORDED DISCOVERY ON THE AGENCY ISSUE
GIVEN THAT THE RELEVANT EVIDENCE RESTS SOLELY WITH THE
GOVERNMENT........................................................................................ 18

III.  ALTERNATIVELY THE COURT SHOULD RULE THAT OA IS AN
AGENCY SUBJECT TO THE FOIA.............................................................. 20

CONCLUSION................................................................................................. 26

## TABLE OF AUTHORITIES

**CASES**                                                                     **PAGE(S)**

Armstrong v. Executive Office of the President,
    90 F.3d 553 (D.C. Cir. 1996).................................................................... passim

Bell Atlantic Corp. v. Twombly,
    127 S.Ct. 1955 (2007)............................................................................  9

Covad Communications Co. v. Bell Atlantic Corp.,
    407 F.3d 1220 (D.C. Cir. 2005)................................................................  10

*Electronic Privacy Information Center v. Office of Homeland Security,
    Civil Action No. 02-620 (CKK)............................................................... passim

EEOC v. St. Francis Xavier Parochial Sch.,
    117 F.3d 621 (D.C. Cir. 1997).................................................................  10

Fay v. Perles,
    484 F.Supp.2d 12 (D.D.C. 2007).............................................................  9

Goldgar v. Office of Administration,
    26 F.3d 32 (5th Cir. 1994)......................................................................  23

Kissinger v. Reporters Committee for Freedom of the Press,
    445 U.S. 136 (1980)...............................................................................  21

Land v. Dollar,
    330 U.S. 731 (1947)...............................................................................  20

*Meyer v. Bush,
    981 F.2d 1288 (D.C. Cir. 1993)............................................................... passim

*National Security Archive v. Archivist,
    909 F.2d 541 (D.C. Cir. 1990).................................................................  22

Pacific Legal Foundation v. Council on Environmental Quality,
    636 F.2d 1259 (D.C. Cir. 1980)...............................................................  21,26

Rushforth v. Council of Economic Advisers,
    762 F.2d 1038 (D.C. Cir. 1985)...............................................................  3,18,25

Schuchart v. La Taberna Del Alabardero, Inc.,
    365 F.3d 33 (D.C. Cir. 2004)................................................................... 9

*Soucie v. David,
    448 F.2d 1067 (D.C. Cir. 1971).........................................................11,25,21

Sweetland v. Walters,
    60 F.3d 852 (D.C. Cir. 1995)............................................................. 15,16

Wilderness Soc'y v. Griles,
    824 F.2d 4 (D.C. Cir. 1987)............................................................... 18,20

Wise v. Glickman,
    257 F.Supp.2d 123 (D.D.C. 2003)......................................................... 10

## STATUTES AND REGULATIONS

5 U.S.C. § 552...............................................................................11,23

5 C.F.R. Part 2502, 42 Fed. Reg. 47112 (July 14, 1980)................................... 4

5 C.F.R. § 2502.16........................................................................ 4,23

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(c)..................................................................... 9,10

## LEGISLATIVE MATERIAL

H.R. Conf. Rep. No. 93-1380, 93d Cong., 2d Sess. 14 (1974)........................... 11

S. Conf. Rep. No. 1200, 93d Cong., 2d Sess. 15 (1974)................................ 11

## MISCELLANEOUS

Reorganization Plan No. 1 of 1977, § 2, 42 Fed. Reg. 56101, 91 Stat. 1633..................... 3

*Executive Order No. 12028, 42 Fed. Reg. 62895 (Dec. 12, 1977)................................... passim

*Executive Order No. 12122, 44 Fed. Reg. 11197 (Feb. 26, 1979)................................... passim

* cases and authorities chiefly relied upon

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

CITIZENS FOR RESPONSIBILITY AND    :
ETHICS IN WASHINGTON,              :
                                   :
        Plaintiff,                 :
                                   :
    v.                             :        Civil Action No. 07-0964 (CKK)
                                   :
OFFICE OF ADMINISTRATION,          :
                                   :
        Defendant.                 :
_____:

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR JUDGMENT ON THE PLEADINGS**

**STATEMENT**

As this Court has recognized in the past, in determining whether an entity of the

Executive Office of the President ("EOP") is an agency for purposes of the Freedom of

Information Act ("FOIA") it is "at the very least, helpful, if not required" to have deposition

testimony and other evidence on issues such as the degree of independent authority that an entity

in fact exercises.  Electronic Privacy Information Center v. Office of Homeland Security, Civil

Action No. 02-620 (CKK), Memorandum Opinion, December 26, 2002, p. 12 (attached as

Exhibit 1).  Public documents such as executive orders simply do not provide "definitive proof"

of an EOP entity's status as a non-agency.  Id. at 12.

Notwithstanding the approach that this Court and the D.C. Circuit have sanctioned as

necessary for resolving the agency issue, the Office of Administration ("OA") asks the Court

here to rule solely on the basis of the pleadings that OA is not an agency.  To be sure, OA

attaches public documents to its motion that it suggests the Court can consider beyond the

pleadings -- precisely the kind of documents this Court has eschewed as definitive proof of

agency status –  but asks the Court to confine its review to the facts presented in the pleadings.

Not only is OA's approach analytically unsound, but the publicly available facts strongly suggest, if not prove conclusively, that OA is an agency subject to the FOIA.  Completely missing from OA's brief -- whether by intention or design -- is any mention of the language in the executive order establishing OA that makes clear OA is to provide administrative support and services "to all units within the Executive Office of the President, *except for such services provided primarily in direct support of the President*."[1]  A subsequent provision of that executive order states unequivocally that the effect of the order is to transfer to OA primary responsibility for "performing all administrative support and service functions of units" within EOP "*except to the extent those functions are performed by the White House Office primarily in direct support of the President*."[2]  The clear and repeated language of the executive order limiting OA's responsibilities makes the government's failure to even mention, much less explain, this language all the more inexcusable.

OA's litigating position here also cannot be reconciled with its consistent prior practice of holding itself out as subject to the FOIA.  Like other EOP entities that the D.C. Circuit has deemed to be agencies, OA has published FOIA regulations, has responded consistently to FOIA requests, and in all other respects has acted as an agency under the FOIA.  OA's attempt here to adopt an "on-again off-again definition" of itself as an agency[3] must therefore fail.

---

[1] Executive Order No. 120028, § 3, 42 Fed. Reg. 62785 (Dec. 12, 1977) (emphasis added).

[2] Id., § 5 (emphasis added).

[3] See, e.g., Rushforth v. Council of Economic Advisers, 762 F.2d 1038, 1041 (D.C. Cir. 1985).

At an absolute minimum, this Court cannot on the basis of the pleadings -- even as amplified by public documents such as executive orders and budget submissions -- "foreclose the possibility that [OA] is an agency."[4]  Instead, the issue of OA's agency status can be resolved only after appropriate discovery, including depositions, that elicits facts concerning the actual nature of the authority OA enjoys, its operational proximity to and relationship with the president, and its organizational structure.

## BACKGROUND

### A.  The Office Of Administration

The Reorganization Plan No. 1 of 1977 established the Office of Administration within the EOP and directed that it "shall provide components of [EOP] with such administrative services as the President shall from time to time direct."  Reorganization Plan No. 1 of 1977, § 2, 42 Fed. Reg. 56101, 91 Stat. 1633.  Subsequently, through Executive Order 12028 President Jimmy Carter clarified more specifically OA's duties and responsibilities.  In particular, that executive order provides:

> The Office of Administration shall provide common administrative support and services to all units within the Executive Office of the President, except for such services provided primarily in direct support of the President.

Executive Order No. 12028, § 3(a), 42 Fed. Reg. 62895 (Dec. 12, 1977) ("EO 12028").  The exclusion of the president from OA's primary responsibilities is also echoed in section 5 of EO 12028:

> The primary responsibility for performing all administrative support

---

[4] Electronic Privacy Information Center v. Office of Homeland Security, Civil Action No. 02-620 (CKK), Memorandum Opinion, December 26, 2002 at 9 ("EPIC Op.").

> and service functions of units within the Executive Office of the
> President shall be transferred and reassigned to the Office of
> Administration; except to the extent those functions are vested by
> law in the head of such a unit, other than the President; and except
> to the extent those functions are performed by the White House
> Office primarily in direct support of the President.

EO 12028, § 5.

President Carter subsequently amended EO 12028 through Executive Order No. 12122,

which provides in pertinent part as follows:

> Subject to such direction or approval as the President may provide
> or require, the Director shall organize the Office of Administration,
> contract for supplies and services, and do all other things that the
> President, as head of the Office of Administration, might do.

Executive Order No. 12122, § 4(a), 44 Fed. Reg. 11197 (Feb. 26, 1979) ("EO 12122").

In 1980, OA published its first FOIA regulations establishing procedures to obtain

records from OA.  5 C.F.R. Part 2502, 42 Fed. Reg. 47112 (July 14, 1980) (attached as Exhibit

2).[5]  Among other things, OA's initial FOIA regulations provided that "all records by the Office

of Administration are available to the public, *as required by the Freedom of Information Act*."

Id. at Part 2502.16 (emphasis added).  OA's current FOIA regulations, also found at 5 C.F.R.

Part 2502, contain this same provision.  See 5 C.F.R. § 2502.16.

In addition to providing access to OA's FOIA regulations, the official White House

website – www.whitehouse.gov -- provides a wealth of other information concerning OA's

compliance with the FOIA.  For example, the website posts OA's annual FOIA reports dating

---

[5] Although these regulations, together with documents available from the White House's own website discussed below, are not part of the pleadings, this Court can take judicial notice of them as publicly-available documents to the same extent the government has requested that the Court take judicial notice of OA's budget submissions.

back to 1996.  See www.whitehouse.gov/oa/foia/readroom.html.  Among other things, those

reports reveal the number of FOIA requests OA receives and processes each fiscal year and the

basis for any withholdings the agency has made.  For example, in Fiscal Year 2006, OA received

67 FOIA requests.  See www.whitehouse/gov/oa/foia/foia2006.pdf.

Until this past weekend, the White House's official website also explained in two

separate places how FOIA works within the EOP.  As provided therein, "The President's

immediate personal staff and units within the EOP whose sole function is to advise and assist the

President are not subject to FOIA."  www.whitehouse.gov/oa/foia/eop-foia.html;

www.whitehouse.gov/oa/foia/handbook.html.[6]   The site went on to list the specific EOP entities

that are subject to the FOIA:

> Council on Environmental Quality
> Office of Administration
> Office of Management and Budget
> Office of National Drug Control Policy
> Office of Science and Technology Policy
> Office of the United States Trade Representative.

Id.  Also listed were the six entities considered exempt from FOIA's provisions.  Id.  In addition,

the Department of Justice's website listing of principal FOIA contacts at federal agencies

includes OA.  See www.usdoj.gov/oip/foiacontacts.html.[7]

---

[6] Copies of these postings as they existed as of August 31, 2007, are attached as Exhibit
3.  The White House's eleventh-hour changes made during the pendency of litigation over OA's
status cannot erase its prior consistent treatment of the OA as an agency subject to the FOIA.

[7] DOJ's listing also includes under the heading Executive Office of the President the five
other EOP components that the White House's website denotes as agencies subject to the FOIA
(Council on Environmental Quality, Office of Management and Budget, Office of National Drug
Control Policy, Office of Science and Technology Policy and Office of the United States Trade
Representative) in addition to the Privacy and Civil Liberties Oversight Board.  Id.

**B.  CREW's[8] FOIA Request, OA's Response And This Litigation**

Based on information CREW received that a massive amount of email -- at least five

million -- during a two and one-half year period mysteriously went missing from White House

servers CREW sent a FOIA request to OA on April 16, 2007, seeking documents OA had

assembled and prepared related to the loss of EOP email records.  <u>See</u> Exhibit A to Complaint.

On April 18, 2007, CREW sent a second clarifying request that delineated four categories of

records CREW is seeking, all related to the loss of email and proposals developed to restore the

deleted email as well as implement a new electronic record-keeping system that would ensure

proper preservation of records under both the Federal Records Act and the Presidential Records

Act.  <u>See</u> Exhibit B to Complaint.  CREW's requests also sought a waiver of fees as well as

expedition for the express purpose of disseminating any responsive documents to the public

based on the widespread and exceptional media interest in the White House emails, the

revelations about the use by high-ranking EOP officials of outside email accounts and the fact

that the White House has known since the fall of 2005 that at least five million emails are

missing from its records management system, but has done nothing to address or fix the problem.

Exhibits A and B to Complaint.

By letter dated April 27, 2007, OA acknowledged receipt of CREW's requests and

granted the requests for a fee waiver and expedited processing.  Exhibit C to Complaint.  OA

also stated, however, that due to "unusual circumstances" it could neither process the requests

within FOIA's mandatory time-frames nor could it provide an anticipated date for completing

---

[8] CREW is the acronym for plaintiff Citizens for Responsibility and Ethics in
Washington.

processing.  Id.

On April 30, 2007, CREW sent a follow-up letter to OA explaining that OA's assessment that CREW was seeking an "extensive list of records" was inaccurate.  Exhibit D to Complaint. When OA failed to respond to this letter or provide CREW with an anticipated date for completing processing, CREW filed the complaint in this matter on May 23, 2007, along with a motion for a preliminary injunction.

At the direction and assistance of the Court, the parties negotiated a time-table for OA to process CREW's prioritized categories of documents that resolved the pending motion for emergency relief.  See Order of June 4, 2007, as modified by Order of June 7, 2007.[9]  At no time during those discussions did OA suggest it was not subject to the FOIA.

Pursuant to the Court's Orders, OA made its first response on June 21, 2007.  There, for the first time, OA stated that it was processing CREW's requests "as a matter of administrative discretion" based on its claim that "on occasion" OA provides direct administrative support to the president.  Letter from Carol Ehrlich, FOIA Officer, to Anne L. Weismann, June 21, 2007 (Exhibit 1 to Plaintiff's Motion to Modify Order -- Document 12).[10]  OA also claimed it had located 504 pages that "may be responsive," which it described as including "emails, spreadsheets, procurement-related documents, and internal guidance."  Id.  Of those documents,

---

[9] It was revealed recently, in a letter from Chairman Henry A. Waxman to Fred F. Fielding, Counsel to the President, that at the same time OA was telling this Court it would need months to process CREW's request it was meeting with House Oversight Committee staff specifically to brief them on the White House email system and the missing email.  See Letter from Chairman Henry A. Waxman to Fred F. Fielding, August 30, 2007 (attached as Exhibit 4).

[10] References to pleadings and other motions filed in this case include reference to the document number assigned to each filing.

OA claimed approximately 454 pages were exempt under Exemptions 2, 5 and 6.  Finally, OA released 50 pages, including nine pages of a document dated November 12, 2002, 26 pages of a document dated June 24, 2003, with a July 2005 amendment and interagency agreement dated September 24, 2005, and 15 pages of a document dated September 21, 2004.  Id.  None of these documents included information related directly to the deleted emails.

Given the total absence of any meaningful information to enable an assessment of the completeness of OA's production, on July 2, 2007, CREW requested that the Court modify its orders (Document 12).  Specifically, CREW requested that the Court require OA to provide additional information, including a description of the withheld documents and an identification of the exemption claimed for each withheld document.  Id.  OA has opposed the motion and briefing is now complete.

Thereafter, on July 27, 2007, the parties filed a Joint Proposed Schedule (Document 17) as ordered by the Court.  Defendant, for its part, stated "OA will move to dismiss this action on the ground that OA is not an 'agency' subject to FOIA."  Joint Proposed Schedule, ¶ 6.  By Order dated August 7, 2007, the Court ordered OA to file its brief in support of its motion to dismiss on or before August 21, 2007, with CREW's opposition due on or before September 4, 2007, and OA's reply due by September 11, 2007.  Order of August 7, 2007 (Document 18).  OA was also directed to comply with the Court's prior orders regarding its processing of CREW's requests.  Id.  Finally, the Court noted it was holding in abeyance CREW's motion to modify pending resolution of OA's motion to dismiss.  Id.

Contrary to its representations to the Court, OA did not file a motion to dismiss.  Instead, on August 21, 2007, OA filed a motion for judgment on the pleadings pursuant to Rule 12(c) of

the Federal Rules of Civil Procedure (Document 20).  As exhibits to its motion OA included

three of OA's budgets for Fiscal Years 2006, 2007 and 2008, that it claims are evidence of its

mission.  See Defendant's Motion for Judgment on the Pleadings and Memorandum in Support

at 13 ("D's Mem.").

   In addition, on August 24, 2007, OA sent its second response to CREW's FOIA requests.

 OA's one-page letter (attached as Exhibit 5) states in summary form that OA has located

"approximately 3,470 pages that may be responsive," that "[s]uch documents include

spreadsheets and related documents," and that all 3,470 pages are exempt in their entirety (or do

not contain reasonably segregable portions) pursuant to exemptions 5 (attorney work product,

attorney client and/or deliberative process privileges) and 6 (personal privacy matters).

## ARGUMENT

### I.  THE ISSUE OF WHETHER OA IS AN AGENCY FOR PURPOSES OF THE FOIA CANNOT BE DECIDED ON THE BASIS OF THE PLEADINGS.

#### A. Standard For Judgment On The Pleadings

   In ruling on a motion for judgment on the pleadings, the court's review is confined to the

pleadings and the facts they contain.  See, e.g., Fay v. Perles, 484 F.Supp. 2d 12, 14 (D.D.C.

2007).  Any facts must be construed most favorably to the non-moving party, Schuchart v. La

Taberna Del Alabardero, Inc., 365 F.3d 33,3 5 (D.C. Cir. 2004), and such motion must be denied

where the complaint, at a minimum, alleges a "plausible entitlement to relief."  Bell Atlantic

Corp. v. Twombly, 127 S. Ct. 1955, 1967 (2007).

   Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, if the moving party

presents matters outside the pleadings, a motion for judgment on the pleadings "shall be treated

as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." While courts are permitted to take judicial notice of certain public documents in deciding such motions, a court generally exercises its discretion to do so to avoid unnecessary proceedings. So, for example, in Covad Communcations Co. v. Bell Atlantic Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005), cited by OA in its brief,[11] the court looked to the public record in another related judicial proceeding precisely to avoid an unnecessary proceeding in the case before it. Indeed, virtually all of the cases cited by OA in support of its claim that including OA budget submissions does not transfer its motion to one for summary judgment involved a court's consideration of publicly filed documents or documents pertaining to judicial or quasi judicial proceedings.[12] Notably, OA cites no case -- and CREW is aware of none -- sanctioning a party's use of a motion for judgment on the pleadings to avoid discovery and prevent the court from considering a full and complete record.

### B. The Pleadings Here Do Not Establish As A Factual Matter That OA Is Not An Agency Under The FOIA.

Under the FOIA, "[e]ach agency" "shall make records promptly available" upon request, subject to certain exceptions. 5 U.S.C. § 552(a)(3)(A). The Act, as amended in 1974, defines "agency" to include:

---

[11]D's Mem. at 7 n.1.

[12] For example, in EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997), the documents in question were referenced in the complaint and consisted of publicly filed notices of recordation. Similarly, in Wise v. Glickman, 257 F.Supp. 2d 123, 130 n. 5 (D.D.C. 2003), the documents in question were rulings of arbitrators that were in the public record.

10

> any executive department, military department, Government
> corporation, Government controlled corporation, or other
> establishment in the executive branch of the Government
> (including the Executive Office of the President), or any
> independent regulatory agency . . .

Id. at § 552(f)(1).

The legislative history of this provision makes clear that by including the EOP in the definition of "agency," Congress did not intend to include "the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President." H.R. Conf. Rep. No. 93-1380, 93d Cong., 2d Sess. 14 (1974). In this regard, the drafters intended to codify the approach of the D.C. Circuit in Soucie v. David, 448 F.2d 1067 (D.C. Cir. 1971). Id. See also S. Conf. Rep. No. 1200, 93d Cong. 2d Sess. 15 (1974).

Specifically, in Soucie, the D.C. Circuit applied a "sole function" test in considering whether the Office of Science and Technology Policy ("OST" or "OSTP"), an entity within the EOP, is an agency. As the Soucie court reasoned, "[i]f the OST's sole function were to advise and assist the President, that might be taken as an indication that the OST is part of the President's staff and not a separate agency." 448 F.2d at 1075. The court found the OST to be an agency "[b]y virtue of its independent function of evaluating federal programs," which went beyond solely advising and assisting the president. Id.

It is therefore clear from the text of the FOIA, as amplified by congressional intent, that the determination of whether a particular entity within the EOP is an agency is fact-dependent. This Court came to this same conclusion in EPIC, noting that the D.C. Circuit " has identified

> 'three interrelated factors' relevant to determining whether those
> who both advise the President and supervise others in the Executive
> Branch exercise 'substantial independent authority' and hence should
> be deemed an agency subject to the FOIA. These factors are: (1) 'how

11

>close operationally the group is to the President,' (2) 'whether it has
>a self-contained structure,' and (3) 'the nature of its delegated authority.'
>These three factors are not necessarily to be weighed equally; rather
>each factor warrants consideration insofar as it is illuminating in the
>particular case.

EPIC Op. at 7, *quoting* Armstrong v. Executive Office of the President, 90 F.3d 553, 558 (D.C.

Cir. 1996) ("Armstrong") (*citing* Meyer v. Bush, 981 F.2d 1288, 1293 (D.C. Cir. 1993)).

Despite this clear authority, the government takes issue with the three-factor test

endorsed by the D.C. Circuit in both Meyer and Armstrong, arguing instead that the test applies

only in "certain contexts" not present here. D's Mem., p. 15. According to the government, the

only relevant factor here is whether OA has substantial independent authority. Id. at 15-16.

What the government overlooks is that the three-factor test employed by the Meyer court

is simply a way to determine whether a particular entity within the EOP is not an agency because

it has "characteristics and functions . . . similar to those of the President's immediate personal

staff." Meyer, 981 F.2d at 1293. Whether viewed exclusively through the lens of the actual

authority that an EOP entity wields, or informed by the structure of the entity and its operational

closeness to the president, the touchstone for any analysis of the agency question is the same:

the language and intent of the FOIA to exclude from the definition of agency those entities of the

EOP whose sole function is to advise and assist the President. See Armstrong, 90 F.3d at 558-59

(explaining that the three-part test of Meyer "is designed succinctly to capture the court's prior

learning on the subject whether a unit within the [EOP] is an agency covered by the FOIA. As

reflected in those cases, the specific evidence bearing upon that question varies with the entity in

question.").[13]

Moreover, even if the Court were to adopt the single-factor agency test that OA advances here, it would still be required to consider factual evidence not contained in any of the pleadings or the three OA budget documents included with OA's brief.  In determining whether OA is an agency, the Court must be guided by facts that reveal the actual authority that OA has exercised and its operational proximity to the president as well as facts that would reveal whether OA has "characteristics and functions" like those of the president's immediate personal staff.  None of these facts is contained in the pleadings on which the government asks the Court exclusively to rely.  Indeed, those pleadings are silent on the critical questions of what the actual role that OA plays is and whether it exercises independent authority.  Simply stated, the pleadings "do not foreclose the possibility that [OA] is an agency."  EPIC Op. at 9.[14]

Missing from the record, for example, are the agency declarations and deposition testimony that were so critical to the court in deciding the agency question in Armstrong.  See, e.g., Armstrong, 90 F.3d at 559-60 (discussing declaration of National Security Advisor Anthony Lake), 561 (discussing deposition testimony of the Senior Director for Intelligence Programs).  As a review of the district court opinion in Armstrong reveals,[15] the record in that case was

_____

[13] OA's argument also cannot be reconciled with the court's observation in Meyer that "the structure of the group is important in determining its relative independence from the President.  Function is crucial, but, like the architect Louis Sullivan, we believe that form follows function."  981 F.2d at 1296-97.

[14] Notably, in EPIC the government filed with its motion to dismiss considerably more exhibits (15) than OA has proffered here.  See EPIC Op. at 2-3 n.2.  The Court nevertheless found the record insufficient from which to conclude that the Office of Homeland Security was not an agency.

[15] See 877 F.Supp. 690 (D.D.C. 1995).

replete with not only deposition testimony from multiple deponents, but also a joint statement of facts, responses to admissions and other discovery requests, internal memoranda and letters and other documents such as National Security Division directives. This evidence, "at the very least," was "helpful, if not required, in determining the status of an entity positioned within the Executive Office of the President." EPIC Op. at 12.

Here, by contrast, there is no testimony from OA officials -- whether by deposition or declaration -- elucidating its status. Instead, the government cites only to certain budget submissions by OA that are far from dispositive on the issue of OA's status as an agency and the executive orders that established OA in the first place. These executive orders not only fail to provide "definite proof" that OA is not an agency,[16] but make clear that OA's sole purpose is not to advise and assist the president.

First and foremost, EO 12028 directs OA to provide administrative support and services to all units within the EOP *"except for such services provided primarily in direct support of the President*." EO 12028, § 3(a) (emphasis added). That same executive order directs that responsibility for providing administrative support to the President remains with the White House Office. Id. at § 5. Thus, by its plain terms, the executive order establishing OA is proof positive that OA is not an entity that solely advises and assists the President. To the contrary, OA's primary mission is to advise and assist all other components of the EOP, save the President.

OA has no response or differing explanation of this language; indeed, OA's brief does not even mention these two provisions of the executive order. Yet this executive order is, in the

---

[16] EPIC Op. at 12.

14

words of the Meyer court, "the most important indication of [OA's] role." 981 F.2d at 1294.

OA's silence on this most probative evidence speaks volumes about the lack of merit in OA's

position.

The governing executive orders also evidence the independent authority OA has been

given. Pursuant to EO 12122, the director of OA is empowered to "organize the Office of

Administration, contract for supplies and services, and do all other things that the President, as

head of the Office of Administration, might do." EO 12122, § 4(a). And while the director is

"[s]ubject to such direction or approval as the President *may* provide or require," id. (emphasis

added), the use of the word "may" indicates that, in the absence of such direction or approval,

the director is free to act. In other words, OA's director is authorized to act as the president

might, and need not wait for direction, guidance, or orders from the president.

OA suggests otherwise, claiming that this language makes OA akin to the staff of the

Executive Residence found to be outside the scope of the FOIA in Sweetland v. Walters, 60 F.3d

852 (D.C. Cir. 1995). D's Mem. at 13-14. The comparison is inapt; unlike OA, the staff of the

Executive Residence was found to be "exclusively dedicated to assisting the President in

maintaining his home and carrying out his various ceremonial duties." Sweetland, 60 F.3d at

854. OA, by contrast, was created to provide administrative support to all entities of the EOP

except for the president, including entities such as the Office of Management and Budget

("OMB"), OST, and the Council on Environmental Quality ("CEQ"), all EOP components found

to be agencies for purposes of the FOIA.[17]

_____

[17] In determining that the Executive Residence is not an agency, the court in Sweetland
was also guided by the "unseemly" result of submitting the Executive Residence to the FOIA,
namely the resulting revelation of "the intimate details of the management of [the president's]

15

Moreover, the government's litigating position here, including its claim that OA is headed by the president,[18] is directly contrary to the interpretation of the governing executive order that the government advanced before the Supreme Court in Armstrong.  The government's brief in opposition to certiorari addresses the specific suggestion that the National Security Council is not unique in having the president as its head, as the OA also is headed by the president, as follows:

> Petitioners suggest . . . that the Office of Administration, a component of the EOP, is also headed by the President.  That suggestion is incorrect.  *By Executive Order No. 12,122, 44 Fed. Reg. 11,197 (1979), the President has effected a broad delegation of authority over the OA to its Director.*  That Executive Order states that, '[s]ubject to such direction or approval as the President may provide or require, [the] Director shall organize the Office of Administration, contract for supplies and services, and do all other things that the President, as head of the Office of Administration, might do.'  Ibid.  The OA's governing regulations state that the OA 'consists of specified offices, which do not include the President.

Armstrong v. Executive Office of the President, No. 96-1242 (S. Ct. 1996), Brief for the Respondent in Opposition, p. 18 n.5 (emphasis added) ("Armstrong Brief").[19]

The budget documents OA has offered here in support of its claim that it is not an agency also provide proof for the opposite conclusion.[20]  For example, OA's Fiscal Year 2008 Budget

---

home, particularly when those details will often be closely connected to his duties as head of State as well as head of Government."  60 F.3d at 855.  A determination that OA is an agency and subject to the FOIA will have no such result, particularly as OA lacks proximity to the president.

[18] D's Mem. at 17-18.

[19] Available at http://www.usdoj.gov/osg/briefs/1996/w961242w.txt.

[20] OA's brief cites to the budget submissions only as evidence of OA's "organizational lines," D's Mem. at 4, 16, and its mission.  See D's Mem. at 13.  These documents, standing

(Exhibit 1 to D's Mem.), describes the responsibilities of the Office of the Chief Financial

Officer ("OCFO") as follows:  "The OCFO directs, manages, and provides policy guidance and

oversight of financial management activities and operations, including procurement and travel

support."  Executive Office of the President, Office of Administration, Fiscal Year 2008 Budget

at OA-3.  Similarly, the responsibilities of the Office of the Chief Information Officer include

providing "leadership to the components that OA supports."  Id.  Moreover, OA's salaries and

expenses are paid from funds that came from other EOP components, including OMB, OSTP,

the United States Trade Representative and CEQ, all EOP components found to be agencies for

purposes of the FOIA.  See id. at OA 4-5.  The degree of responsibility afforded offices within

OA as well as the sources of at least some of its funding evidence OA's independence from the

President and its corresponding status as an agency.[21]

It necessarily follows that the Court cannot resolve the issue of OA's status as an agency

simply on the basis of the pleadings.  OA's brief and exhibits do not foreclose the possibility,

indeed likelihood, that OA has acted with independent authority and is an agency.  See EPIC Op.

at 9-10.  Nor can it be said that "'each one of the [OA's] enumerated . . . duties is directed at

providing . . . advice and assistance to the president.'"  Id. at 10, *quoting* Rushford v. Council of

---

alone, are hardly conclusive on either of these issues.

[21] In addition, while not part of the pleadings, representations by Keith Roberts on behalf
of OA also document OA's independent authority.  For example, during the June 1, 2007
conference call before the Court, Mr. Roberts stated:  "the Office of Administration, our mission
is to provide a common administration throughout the deputy office of the president complex so
part of that involves *we own all the information technology system* and we do -- we maintain all
electronic databases, all the e-mails, and we also do all the searches from the complex."
Transcript at 9 (Exhibit A to Plaintiff's Reply in Support of Plaintiff's Motion to Modify
(Document 16-2) (emphasis added)).

Economic Advisers, 762 F.2d at 1042. OA's motion for judgment on the pleadings must therefore be denied.

## II. PLAINTIFF MUST BE AFFORDED DISCOVERY ON THE AGENCY ISSUE GIVEN THAT THE RELEVANT EVIDENCE RESTS SOLELY WITH THE GOVERNMENT.

As a necessary corollary to denying OA's motion for judgment on the pleadings, the Court must also afford CREW an opportunity to conduct appropriate discovery. The Court has already noted that "whether OA is an agency subject to the FOIA is . . . a dispositive issue," that should be resolved in advance of deciding how to proceed on the merits of CREW's claims. Order of August 7, 2007 (Document 18). OA's failure to proffer definitive evidence on the issue of OA's agency status,[22] coupled with the fact that "the relevant evidence on this issue rests solely with Defendant[]," means that CREW must be given "'the opportunity to discover evidence relevant to [its] jurisdiction claim.'" EPIC Op. at 10-11, *quoting* Wilderness Soc'y v. Griles, 824 F.2d 4, 16 n.10 (D.C. Cir. 1987).

In determining the scope of appropriate discovery, the Court should be guided by the three areas of relevant inquiry identified in Meyer and endorsed in Armstrong: (1) OA's operational closeness to the president; (2) whether OA has a self-contained structure; and (3) the nature of OA's delegated authority. Armstrong, 90 F.3d at 558, citing Meyer, 981 F.2d at 1293.

To address the first issue, plaintiff will need discovery on the nature of OA's communications and interactions with the president and his advisors and the extent to which the

---

[22] OA's blanket and unsupported statements about the nature of OA's authority (e.g., "[i]t wields no authority independent of the President (D's Mem. at 15)) and its bald statements about OA's proximity to the president (e.g., "on a day-to-day basis, OA's Director reports to senior White House Officials concerning OA activities" (D's Mem. at 18)) are no substitute for the factual evidence the D.C. Circuit has demanded.

president has expressly approved OA decisions, findings, or other initiatives.  Plaintiff is particularly entitled to this information given the tension between OA's assertion here that it is not an agency and the language of the executive order creating OA that excludes from OA's responsibilities providing services in direct support of the president.

Second, plaintiff will need discovery on the staffing and organizational structure of OA. Although the government appears to concede here that OA has a self-contained structure (see D's Mem. at 16-17), its failure to provide adequate factual evidence on this critical factual issue requires supplementation of the record through discovery.

Third, plaintiff will need discovery on the manner in which OA has actually fulfilled the responsibilities assigned to it in EO 12028 and EO 12122.  This includes consideration of OA's interactions with other EOP components and the degree to which those components must seek OA approval or action on administrative functions.

This discovery can be accomplished in part through the use of interrogatories, admissions and requests for production of documents.  In the final analysis, however, plaintiff will need to conduct targeted depositions of individuals who can speak to the actual authority and independence that OA has wielded.  Documents, while certainly probative, do not address sufficiently how the OA has actually acted.  Indeed, it was the deposition testimony of senior officials with the National Security Council that led the court in Armstrong to conclude that the NSC was not an agency.  Armstrong, 90 F.3d at 561, 555-560.  As Armstrong illustrates, it is necessary to consider not only the nature of the authority delegated to OA, but how it has actually exercised that authority.

The government will undoubtedly argue that discovery is unnecessary and that it should

first be given an opportunity to supplement the record further.  Such a request should not be granted.  OA represented to the Court that it would be filing a motion to dismiss, and the Court so ordered.  Instead, however, OA filed a motion for judgment on the pleadings -- a transparent attempt to foreclose any factual inquiry beyond what the government chose to put before the Court.[23]  Under these circumstances, OA is not entitled to another try before discovery is commenced.

Moreover, plaintiff bears the burden of establishing this Court's jurisdiction and cannot do that here without access to facts that are in the exclusive knowledge and control of the government.  See EPIC Op. at 8.  In short, discovery is both necessary and appropriate and should proceed at the earliest opportunity given the great public interest in and importance of the substantive issues that this case presents.

### III.  ALTERNATIVELY THE COURT SHOULD RULE THAT OA IS AN AGENCY SUBJECT TO THE FOIA.

Alternatively the Court can conclude, based on the language of OA's governing executive orders and the consistent position that OA has taken in the past, that it is an agency subject to the FOIA.[24]  As discussed supra, OA does not solely advise and assist the president as evidenced in the executive order establishing the OA, which directs that OA provide

---

[23] In deciding a motion to dismiss based on a claim that the court lacks jurisdiction, a reviewing court may look beyond the pleadings to consider facts relevant to the jurisdictional issue.  Land v. Dollar, 330 U.S. 731, 735 n.4 (1947).  Courts have also recognized that in responding to a motion to dismiss a plaintiff must be given "the opportunity to discover evidence relevant to his jurisdictional claim."  Wilderness Soc'y, 824 F.2d at 16 n.10.

[24] Such a finding is a predicate to the Court's jurisdiction, given that the FOIA vests jurisdiction in district courts to enjoin an "agency" from withholding agency records.  5 U.S.C. § 552(a)(4)(B); see also Kissinger v. Reporters Committee for Freedom of the Press, 445 U.S. 136, 139 (1980).

administrative support to all EOP entities except for the president.  See EO 12028, §§ 3(a), 5.

Just as importantly, as the government has recognized in the past, through EO 12122, "the

President has effected a broad delegation of authority over the OA to its Director."  Armstrong

Brief at 18 n.5.

    These executive orders -- the "most important indication" of OA's role[25]-- place OA on

the same footing as other EOP entities found to be agencies for FOIA purposes.  For example, in

Soucie, the D.C. Circuit concluded that OST was an agency "[b]y virtue of its independent

function of evaluating federal programs."  448 F.2d at 1075.  Similarly, the director of OA

functions independently of the president in organizing OA, contracting for supplies and services,

and doing all other things that the president might do.  EO 12122 at § 4(a).

    Likewise, in Pacific Legal Foundation v. Council on Environmental Quality, 636 F.2d

1259 (D.C. Cir. 1980), the court placed great weight on executive orders that expanded CEQ's

functions to include oversight of the activities of federal agencies and regulatory authority.  Id. at

1262.  There, as here, the executive orders granted the EOP entity independent authority that

went beyond solely advising and assisting the president.[26]  Based on this precedent and the

language of the executive order, the Court can properly conclude that OA is an agency under the

FOIA.

    Moreover, while no court has ruled explicitly that OA is an agency, the D.C. Circuit at

---

    [25] Meyer, 981 F.2d as 1294.

    [26] OA suggests that because OA "is entirely a Presidential creation" it necessarily cannot
be an agency.  D's Mem. at 15.  Meyer makes clear, however, that this is not relevant.  See 981
F.2d at 1296 ("We do not think much should turn on whether the President delegates authority to
a White House group by memorandum or by Executive Order.").

least implicitly so found in <u>National Security Archive v. Archivist</u>, 909 F.2d 541 (D.C. Cir. 1990).  At issue there were four FOIA requests of OA for documents related to the Tower Commission's investigation.  The executive order establishing the Tower Commission also directed OA to provide the Commission with administrative and support services, including funding.  After OA denied the requests on the ground that it did not "maintain" any of the documents in question, NSA redirected its FOIA requests to the White House Counsel's Office. The White House Counsel's Office denied the requests on the ground that it was not an agency subject to the FOIA.  <u>See</u> <u>generally</u>, 909 F.2d at 543.

The D.C. Circuit agreed with the district court that the claims against OA were properly dismissed given that the Tower Commission, and not OA, had "sole possession and control of the requested documents" and there was therefore "no basis for upsetting its conclusion that the Office of Administration did not withhold the documents."  <u>Id.</u> at 545.  By sharp contrast, the claims against the White House Counsel's Office were found properly dismissed for the very different reason that "the Office of the President," in which the White House Counsel's Office is found, "is not an 'agency' for purposes of the FOIA."  <u>Id.</u>  Critical here is the fact that the D.C. Circuit treated OA as subject to the FOIA -- dismissing the FOIA claims against it only because OA had not improperly withheld documents -- while at the same time it found the claims against the White House Counsel's Office properly dismissed because the office was not an agency. Stated differently, a necessary predicate to the D.C. Circuit's ruling as to OA was that OA was an agency subject to the FOIA in the first instance.

The conclusion that OA is an agency is reinforced by OA's past practices.  Since 1980, OA has published regulations governing access to its records under the FOIA.  Those regulations

provide unambiguously that "all records by the Office of Administration are available to the public, *as required by the Freedom of Information Act*."  5 C.F.R. § 2502.16 (emphasis added).  Pursuant to the FOIA regime that it has adopted, OA has processed hundreds of FOIA requests over the years and submitted yearly reports as the FOIA requires (5 U.S.C. § 552(e)(1)).  See www.whitehouse.gov/oa/foia/readroom.html.  Moreover, the White House's own website (until this past weekend) delineated the OA as an EOP entity that is subject to the FOIA because its sole function is not to advise and assist the president.  See www.whitehouse.gov/oa/foia/eop-foia.html.

OA's past conduct also includes the litigating positions it has adopted throughout the years.  As discussed supra, the government's brief filed before the Supreme Court in Armstrong adopts the same expansive interpretation of OA's independent authority pursuant to EO 12122 as that plaintiff is advancing here -- an interpretation that cannot be reconciled with OA's newly minted argument that it is not an agency.  Further, there is no suggestion in the National Security Archives case that OA ever questioned the court's jurisdiction over it or its status as an agency under the FOIA.

This is equally true in the only other reported FOIA decision involving OA that plaintiff has located, Goldgar v. Office of Administration, 26 F.3d 32 (5th Cir. 1994).  Goldgar involved a FOIA request of OA to which the agency responded that it had no responsive records.  Id. at 34.  On appeal, in response to the plaintiff's argument that he was seeking "information," not agency records, the Fifth Circuit ruled that such a request is an "abuse[] and misus[e] [of] the FOIA."  26 F.3d at 35.  The court held alternatively that if the plaintiff were seeking a record, "we hold that no such record exists and that Goldgar has failed to state a claim under the FOIA . . ."  Id.

Importantly, there is no suggestion that OA ever argued it was not an agency subject to the FOIA, nor did the appellate court reach that issue. Instead, its opinion presupposes the general applicability of the FOIA to OA.

OA's treatment of CREW's FOIA requests also reinforces the notion that it is an agency subject to the FOIA. Upon receipt of CREW's request, OA sent a letter granting expedition and the fee waiver request. At no time did OA ever represent, or even suggest, that it was not subject to the FOIA or was processing the request only as a matter of administrative discretion. See Exhibit C to Complaint. Once in litigation, OA participated in court-supervised discussions over a schedule for processing the six prioritized categories of documents CREW was seeking in its request for emergency relief. At no time during those discussions did OA represent, or even suggest, that it was not subject to the FOIA. In its answer, OA denied the allegations pertaining to the court's jurisdiction and venue, Answer at ¶ 3 (Document 10), but amplified this denial in its first affirmative defense wherein it stated: "The Court lacks jurisdiction over the subject matter of this complaint because no records have been improperly withheld." Id., First Defense. Completely missing from OA's answer was any suggestion that OA is not subject to the FOIA in the first place because it is not an agency. That OA has raised this defense now -- in an apparent effort to avoid having to account for or produce any documents that would document the degree of the White House's prior knowledge about the deleted email and its failure to address the problem -- cannot excuse or erase its consistent prior practices.

Nevertheless, OA argues that its prior conduct is not probative on the issue of whether it is an agency subject to the FOIA, citing Armstrong. D's Mem. at 19-20. This reliance is misplaced. First, the Armstrong court characterized the NSC's past practice as "*voluntarily*

24

subject[ing] certain of its records to the FOIA" "in the interest of permitting public access to *some* NSC records . . ." 90 F.3d at 566 (emphasis added). As even the Armstrong plaintiff conceded, "even as the NSC was treating some of its institutional records as though they were subject to the FOIA and the FRA [Federal Records Act], it was declining to treat other records in that way." Id. The D.C. Circuit accordingly found that the NSC's prior references to itself as an agency were not probative on the agency issue because "quite simply, the Government's position on that question has changed over the years." 90 F.3d at 566. Indeed, precisely because "the NSC's past behavior has been inconsistent -- both logically and factually" the court found that it did not "illuminate the legal question" of whether the NSC was an agency subject to the FOIA. Id.

By contrast, as outlined above, there is nothing inconsistent about OA's past practices. Unlike the NSC, there is nothing to suggest OA has "voluntarily subjected certain of its records to the FOIA." Quite the opposite is true. Since at least 1980, when it published its first FOIA regulations, OA has represented that it is required under the FOIA to make its records available upon request. In the 30 years of its existence there has been no suggestion until now -- when faced with a potentially very embarrassing, if not outright damaging, FOIA request -- that it is not an agency subject to the FOIA. OA's sudden about-face on the agency question has been rejected repeatedly and explicitly by the D.C. Circuit in favor of exactly the kind of indicia of agency status present here. See Soucie, 448 F.2d at 1075 (OST's publication of FOIA regulations "lends additional support to the conclusion that it is a separate administrative entity"); Rushforth, 762 F.2d at 1041 (discussing Pacific Legal Foundation in which the D.C. Circuit "rejected the CEQ's proffered on again-off again definition" after CEQ had admitted in

25

the past that it was an agency).

In sum, the available evidence points unmistakably to one conclusion:  OA is, as it has consistently represented itself to be, an agency for purposes of the FOIA.

## **CONCLUSION**

For the foregoing reasons, the Court should deny defendant's motion for judgment on the pleadings and grant plaintiff an opportunity to conduct discovery.  Alternatively, the Court should rule that OA is an agency and must respond fully and promptly to CREW's FOIA requests.  Pursuant to LCvR 7(f) plaintiff hereby respectfully requests that the Court hold an oral hearing on defendant's motion.

Respectfully submitted,

*/s/ Anne L. Weismann*
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and Ethics
  in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Phone: (202 408-5565
Fax: (202) 588-5020

Attorneys for Plaintiff

Dated:  September 4, 2007

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELECTRONIC PRIVACY INFORMATION
CENTER

    Plaintiff,

    v.

OFFICE OF HOMELAND SECURITY and
TOM RIDGE, in his official capacity as
Director of Homeland Security

    Defendants.

Civil Action No. 02-620  (CKK)

**FILED** ✓

**DEC 2 6 2002**

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

## MEMORANDUM OPINION
(December 26, 2002)

Plaintiff Electronic Privacy Information Center ("EPIC") brought a four-count complaint against the Office of Homeland Security ("OHS") and its Director Tom Ridge ("Ridge") (collectively "Defendants") for injunctive and other appropriate relief, seeking the expedited processing and release of agency records requested from OHS.  Pending before this Court is Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def. Mot."). Plaintiff has filed a Motion to Stay Proceedings Pending Discovery ("Pl. Mot.").  Upon review of Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, Plaintiff's Motion to Stay Proceedings, Defendants' Opposition ("Def. Opp."), and Plaintiff's Reply ("Pl. Reply"), the Court shall deny Defendants' Motion without prejudice, and shall grant Plaintiff's Motion with respect to its request for discovery.

## I. BACKGROUND

On March 20, 2002, Plaintiff made a request pursuant to the Freedom of Information Act

("FOIA"), 5 U.S.C. 552, to OHS for "all records relating to efforts to standardize driver's licenses across the country in the possession of [OHS], including but not limited to memos, talking points, reports and draft legislation." Plaintiff's Complaint ¶ 7. Plaintiff also requested "all records associated with [the trusted-flier program] and other proposals being considered by [OHS] that rely on biometric technology to identify citizens and visitors to America." *Id.*

As a basis for their Motion, Defendants maintain that neither OHS nor the Homeland Security Council ("HSC") are "agencies" for the purposes of FOIA, and thus cannot be subjected to FOIA information requests. *See Def.* Mot. at 3. Defendants argue that OHS's status as a non-agency means that this Court lacks jurisdiction to hear this case and therefore it should dismiss Plaintiff's complaint. *Id.* In response, Plaintiff filed its Motion, claiming that it is entitled to discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure[1] before the Court rules on Defendants' Motion. Plaintiff asserts that it is "currently unable to present certain material facts essential to [its] opposition to defendants' motion." Pl. Opp. Exhibit 1, Declaration of David L. Sobel (Sobel Decl.) ¶ 2. The current record provided by Defendants consists– with one exception– of public record documents.[2] Plaintiff claims that in order to be able to oppose

---

[1] "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Fed. R. Civ. P. 56(f).

[2] Defendant filed in support of its Motion the following exhibits: Executive Order 13228 ("Establishing the Office of Homeland Security and the Homeland Security Council"), Exhibit 1; a six-page printout from the White House website ("President Establishes Office of Homeland Security"), Exhibit 2; President George W. Bush's remarks at the swearing-in of then-Governor Tom Ridge as Director of the Office of Homeland Security, Exhibit 3; Homeland Security Presidential Directive - 1, Exhibit 4; Homeland Security Presidential Directive - 2; Exhibit 5; Joint Statement by the Deputy Prime Minister of Canada and Director Ridge on Progress Made

Defendants' Motion it requires facts "within the exclusive knowledge and control of the

government," and that prior adjudications of an entity's status for FOIA purposes have "not

rested solely upon publicly available documents and directives." Sobel Decl. ¶ 4. Plaintiff has

confined its request for discovery to include only material information that will establish OHS's

entity status. *Id.* ¶ 6. Specifically, Plaintiff seeks to discover material facts concerning the

following information to justify its opposition to Defendants' Motion:

> (a) the staffing and organizational structure of the Office;[3]
> (b) the manner in which the Office has fulfilled the responsibilities assigned to it
> in Executive Order 13228;
> (c) the nature of the Office's communications and other interactions with federal
> agencies and officials, including whether OHS has issued guidelines, instructions,
> or directives to such agencies and officials;
> (d) whether federal agencies and officials have been directed to obtain OHS
> approval before pursuing policies or activities relating to homeland security; and
> (e) whether the President has expressly approved OHS decisions, findings or other
> initiatives.

*Id.* ¶ 5.

In response to Plaintiff's discovery request, OHS maintains that its status is plainly

---

in the Smart Border Action Plan, Exhibit 6; Homeland Security Presidential Directive - 3,
Exhibit 7; Notice seeking comments on the Homeland Security Advisory System, 67 Fed. Reg.
12047 (Mar. 18, 2002), Exhibit 8; President George W. Bush's "Securing the Homeland,
Strengthening the Nation" Report, Exhibit 9; Testimony of Director of Office of Management
and Budget, Mitchell E. Daniels, Jr., Before Senate Committee on Governmental Affairs, April
11, 2002, Exhibit 10; Letter from Director Ridge to Senator Joseph Lieberman, April 10, 2002,
Exhibit 11; President George W. Bush's Proposal for The Department of Homeland Security,
June 2002, Exhibit 12; Organizational Charts for the Office of Homeland Security, Exhibit 13;
Executive Order Establishing a Transition Planning Office for the Department of Homeland
Security Within the Office of Management and Budget, June 20, 2002, Exhibit 14; President
George W. Bush's Message to the Congress of the United States transmitting proposed
legislation to create a new Cabinet Department of Homeland Security, June 18, 2002, Exhibit 15.

[3] Defendant's Exhibit 13, containing organizational flowcharts of OHS was submitted
with its Opposition to Plaintiff's Motion.

3

sufficient under law, as evidenced by the record. Def. Opp. at 1. Defendants have proffered various public documents such as OHS's "charter" executive order, all three existing Homeland Security Presidential Directives, and additional congressional materials, which they claim "demonstrate that operational authority for homeland security resides in executive branch agencies," and not in OHS. *Id.* Defendants maintain that more information is not required to determine whether or not OHS is an agency for FOIA purposes.

## II. DISCUSSION

### A.    *Legal Standards*

#### 1.    Motion to Dismiss

Defendants bring their Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). In reviewing motions to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1), district courts employ a standard virtually identical to that used for 12(b)(6) motions. *See, e.g., Vanover v Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) (*citing Pitney Bowes Inc. v U.S. Postal Serv.*, 27 F. Supp.2d 15, 19 (D.D.C. 1998). In reviewing a 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, a court will not grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Accordingly, at this early stage in the proceedings, the Court assumes the veracity of all factual allegations set forth in Plaintiff's Complaint. *See Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985). Moreover, "[t]he complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler*

4

*v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). Nonetheless, the Court is not bound to accept the legal conclusions of the non-moving party. *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997). In the 12(b)(1) context, however, the plaintiff bears the burden of proving jurisdiction. *See Vanover*, 77 F. Supp.2d at 98. In its consideration of a motion under 12(b)(1), a district court may look beyond the pleadings to inquire into facts pertinent to its jurisdiction. *See Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947). "[R]uling on a Rule 12(b)(1) motion may be improper before the plaintiff has had a chance to discover the facts necessary to establish jurisdiction." *Herbert v. Nat'l Acad. of Sciences*, 974, F.2d 192, 198 (D.C. Cir. 1992) (*citing Collins v. New York Cent. Sys.*, 327 F.2d 880 (D.C. Cir. 1963); *see also Wilderness Soc'y v. Griles*, 824 F.2d 4, 16 n.10 (D.C. Cir. 1987) ("What is clear is that under . . . Rule 12(b)(1) . . . a district court must give the plaintiff the opportunity to discover evidence relevant to his jurisdictional claim."). "Even under Rule 12(b)(1), procedural safeguards equivalent to those in Rule 56 are required, with Rule 56 used selectively as a guide for ensuring fairness." *Gordon v. Nat'l Youth Work Alliance*, 675 F.2d 356, 360 (D.C. Cir. 1982).

    2.    <u>Motion for Summary Judgment</u>

    Defendants, in the alternative, bring a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants, as the moving parties, bear the "initial responsibility of informing the district court of the basis for [their] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [they] believe[] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c). Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and by [its] own affidavits, or by

depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal citations omitted). The Court is to draw all inferences from the supporting records submitted in favor of the party opposing the summary judgment motion. However, mere allegations or denials in the non-moving party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Furthermore, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251. Rule 56 also provides "essential safeguards" aimed at "ensuring fairness." *Gordon*, 675 F.2d at 360.

One of these "safeguards" is Rule 56(f), which states: "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Fed. R. Civ. P. 56(f). To succeed on a Rule 56(f) Motion, the Plaintiff must establish how the specific discovery it seeks would create a genuine issue of material fact. *See Carpenter v. Federal Nat'l Mortgage Ass'n*, 174 F.3d 231, 237 (D.C. Cir. 1999). The Court may also deny a motion for summary judgment, or postpone its ruling by granting a stay pending discovery "if the party opposing the motion adequately explains why, at what timepoint, it cannot present by affidavit facts needed to defeat the motion." *Strang v. United States Arms Control and Disarmament Agency*, 864 F.2d 859, 861

6

(D.C. Cir. 1989). "A Rule 56(f) affidavit or other supporting material must provide reasons why the non-moving party cannot present facts in opposition and how additional discovery will provide those facts, not simply assert that 'certain information' and 'other evidence' may exist and may be obtained through discovery." *Richardson v. Nat'l Rifle Ass'n*, 871 F. Supp. 499, 501-502 (D.D.C. 1994). Furthermore, discovery will not be granted under Rule 56(f) where the non-movant seeks speculative, vague, or irrelevant discovery. *See Strang*, 864 F.2d at 861.

## B.    *"Agency" Under FOIA*

FOIA requires "agenc[ies]" to "make available to the public" various types of information. 5 U.S.C. § 552(a). The Act defines "agency" as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." *Id*. at § 552(f)(1). This definition "was not, however, meant to cover 'the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President." *Armstrong v. Executive Office of the President*, 90 F.3d 553, 558 (D.C. Cir. 1996) (*quoting* H.R. Conf. Rep. No. 1380, 93d Cong., 2d Sess. 14 (1974)). From FOIA's text and congressional intent, this Circuit has identified

> "three interrelated factors" relevant to determining whether those who both advise the President and supervise others in the Executive Branch exercise "substantial independent authority" and hence should be deemed an agency subject to the FOIA. These factors are: (1) "how close operationally the group is to the President," (2) "whether it has a self-contained structure," and (3) "the nature of its delegated authority." These three factors are not necessarily to be weighed equally; rather each factor warrants consideration insofar as it is illuminating in the particular case.

*Id*. (*citing Meyer v. Bush*, 981 F.2d 1288, 1293 (D.C. Cir. 1993)). "The question is not only

7

whether the President sets the [assigned] goal, but the generality of that goal; the more general the goal the greater the likelihood that the responsible entity is vested with some element of discretion and is not just advising or assisting the President." *Id.* at 565.

Defendants maintain that based upon the public documents they have submitted with their briefs, this Court can conclude that OHS is not an agency for the purposes of FOIA. *See* Def. Mot. at 23-35. Defendants point to excerpts from congressional testimony, a letter to a United States Senator, an Executive Order, and Presidential Directives to make their point. *Id.* Defendants also claim that the size of the record reflects only the short length of time OHS has been in existence and not any effort by Defendants to withhold relevant information. Def. Opp. at 2. Defendants also warn the Court that failure to find OHS a non-agency would place it in the position of having to answer a "significant constitutional question." Def. Mot. at 35.

Plaintiff responds that courts, in determining an entity's agency status, have relied on "facts concerning the actual manner in which the authority of the subject entity has been exercised, which . . . were within the exclusive knowledge and control of the government. Those cases have not rested solely upon publicly available documents and directives." Sobel Decl. ¶ 4. Plaintiff claims that the lack of information provided in this case stands in contrast to the record established in *Armstrong*, and therefore posits that "there is simply is no clear indication here that the authority of the OHS cannot 'be exercised without the consent of the president.'" Pl. Mot. at 8 (*quoting Armstrong*, 90 F. 3d at 563). Plaintiff also points to the public documents submitted by Defendants arguing that the evidence does not foreclose the possibility that OHS may exercise some independent authority. Plaintiff maintains that many of Defendants' arguments pertain to HSC and not to OHS. Pl. Mot. at 9-10. Furthermore, while the Executive Order establishing

HSC and OHS states that HSC "shall be responsible for advising and assisting the President with respect to all aspects of homeland security," similar language is not applied to the description of the OHS. Pl. Mot at 11; Def. Mot. Exhibit 1 (Executive Order 13228) §§ 1-3, 5. Lastly, Plaintiff notes that the Executive Order establishing OHS uses vague terms, such as "develop," "coordinate," and "review," which Plaintiff argues "militates in favor of a conclusion that OHS exercises the requisite 'independent authority.'" Pl. Mot. at 13-14.

## C.     The Court Cannot Grant Defendants' Motion

### 1.     Motion to Dismiss

Plaintiff has the burden of showing that this Court has jurisdiction to hear its case. *Vanover*, 77 F. Supp. 2d at 98. However, Plaintiff claims that if it were allowed discovery it would be able to obtain "information that is within the exclusive knowledge and control of defendants [that] is likely material to the jurisdictional issue defendants raise." Pl. Mot. at 7. While Plaintiff has not shown that this Court has jurisdiction to hear this case, it is clear that the information Plaintiff would need to make such a showing rests solely with Defendants who object to Plaintiff's request for discovery.

The Court agrees with Plaintiff that Defendants' briefs and exhibits filed in support do not foreclose the possibility that OHS is an agency. First, the Court notes that Defendants have presented no affidavits in support of their position. The Court observes that given the strong presumption given government affidavits in FOIA cases, *see Safecard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("Agency affidavits are accorded a presumption of good faith. . . ."), an affidavit addressing the scope of OHS's independent authority would be strong evidence in favor of the Defendants' position, *see Public*

9

*Citizen Health Research Group v. Food and Drug Administration*, 997 F. Supp 56, 72-73

(D.D.C. 1998) ("If a court is satisfied that the affidavits supplied by the agency meet the

established standards for summary judgment in a FOIA case and that plaintiff has not adequately

called these submissions into question, no factual dispute remains, and discovery is

inappropriate.") (citations omitted). Instead, Defendants have provided the Court with various

public documents, and pages of explanation of their contents, in an effort to show how OHS

functions. However, none of these documents foreclose the possibility that OHS has acted with

independent authority in other, undocumented instances. The Court notes with interest that

OHS's "mission" is "to develop and coordinate the implementation of a comprehensive national

strategy to secure the United States from terrorist threats or attacks," and that OHS is instructed

to "*perform the functions necessary to carry out this mission, including the functions specified in*

*section 3 of this order.*" Executive Order 13228 § 2 (emphasis added). Therefore, OHS's charter

document provides the Office, at least on paper, with the authority to do whatever is "necessary"

to meet its mission. The fact that Defendants can point to instances where OHS has acted "solely

to advise and assist the President," Def. Mot. at 25, does not mean that OHS acts only in that

capacity. Furthermore, it cannot be said that "each one of the [OHS's] enumerated . . . duties is

directed at providing . . . advice and assistance to the president," as was the case when the D.C.

Circuit examined the Council of Economic Advisers' status. *Rushford v. Council of Economic*

*Advisers*, 762 F.2d 1038, 1042 (D.C. Cir. 1985) (determining that the Council "should not be

considered an agency for the purposes of FOIA"); *see also* Executive Order 13228 §§ 2-3.

Given that Defendants have failed to provide evidence that is definitive on the issue of

the OHS's agency status and the fact the relevant evidence on this issue rests solely with

Defendants, if this Court is to rule on Defendants' Motion to Dismiss it "must give the plaintiff the opportunity to discover evidence relevant to [its] jurisdictional claim." *Wilderness Soc'y*, 824 F.2d at 16 n.10. The Court will therefore allow Plaintiff the opportunity to conduct limited discovery on this narrow threshold question, as discussed later in this Opinion.

    2.    Defendants' Motion for Summary Judgment

The Court similarly finds that it cannot grant Defendants' Motion for Summary Judgment. As detailed above, Plaintiff lacks access to information to challenge Defendants' position, and Defendants have not been able to establish to the Court's satisfaction, that OHS is not an agency. Given this determination, the Court cannot grant Defendants' Motion for Summary Judgment.

In addition to the analysis in the preceding section, the Court finds noteworthy the fact that the *Armstrong* court was aided in its analysis of the National Security Council's ("NSC") agency status by a deposition by the NSC's Senior Director for Intelligence Programs, who stated "I don't have the ability to issue instructions or directions to agencies. I would merely convey a decision made by the President or by the National Security Adviser or Deputy National Security Adviser on behalf of the President." *Armstrong*, 90 F.3d at 561. This deposition, in part, led the *Armstrong* court to "conclude that the NSC staff does not 'direct' the CIA in the conduct of its business, nor tell the DCI what to do except insofar as it may relay the decisions of the President and his senior advisers on the statutory Council." *Id.* A deposition by National Security Adviser Anthony Lake was also considered by the *Armstrong* court in reaching its conclusion that the NSC "has a structure sufficiently self-contained that the entity could exercise substantial independent authority." *Id.* At 559-60. Although the *Armstrong* court said nothing about the

11

need for such evidence in making such a determination, the fact that it had such evidence at its disposal and quoted from two depositions suggests that the consideration of such evidence is, at the very least, helpful, if not required, in determining the status of an entity positioned within the Executive Office of the President.

Much of the Court's concerns would be addressed by such additional evidence. Defendants argue that additional evidence is not required because courts deciding whether or not an entity meets FOIA have relied on statutes, executive orders and presidential directives. Def. Opp. at 4-5. Defendants also maintain that Plaintiff has not shown additional evidence is warranted in this case and that its discovery requests are vague, speculative or irrelevant. *Id.* at 6. The Court disagrees. First, as shown above, courts have looked beyond public documents in efforts to determine whether or not an entity was an agency for FOIA purposes. Such evidence would be helpful especially in this case where the language establishing the entity's power is broad and lacking in firm parameters. Indeed, in *Armstrong*, an affidavit, in addition to analysis of the relevant statute, assisted the Court of Appeals in determining the nature of the authority delegated to the NSC.[4] Defendants' citation to Executive Order 13228 and the Homeland Security Presidential Directives clearly suggest that OHS operates only to assist and advise the President; it does not, however, provide definitive proof that OHS is not an agency. Furthermore, Plaintiff has shown that its request for discovery is necessary and relevant.

---

[4] The district court in *Meyer v. Bush,* also looked beyond executive orders in determining whether or not the Presidential Task Force on Regulatory Relief was an agency subject to FOIA. No. 88-3112, 1991 U.S. Dist. LEXIS 13626 (D.D.C. Sept. 30, 1991), *rev'd and remanded*, 981 F.2d 1288 (D.C. Cir. 1993). The district court relied on letters, memoranda and statements in making its determination. *Id.* at * 20-22.

3.    <u>Discovery</u>

The Court shall permit Plaintiff sixty (60) days in which to complete discovery related

solely to whether or not OHS is an agency.  Discovery may not extend into the merits of this

case, and should be narrowly tailored to achieve the goal of this grant.  Plaintiff's suggested areas

of discovery should be narrowed further.  Specifically, Plaintiff may inquire into the nature of the

authority delegated to OHS to determine whether or not it possesses independent authority, or

operates exclusively, for example, as the staff of the HSC.  After completion of this sixty (60)

day period, Defendants shall have 30 days in which to refile their Motion if they so choose.

### III. CONCLUSION

For the foregoing reasons, the Court shall deny Defendants' Motion to Dismiss or, in the

Alternative, for Summary Judgment without prejudice.  The Court shall grant Plaintiff's Motion

with respect to its request for discovery.  An order accompanies this memorandum opinion.

December 26, 2002

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

13

**EXHIBIT 2**

LEXSEE 45 FR 47112


EXECUTIVE OFFICE OF THE PRESIDENT, OFFICE OF ADMINISTRATION

AGENCY: Office of Administration, Executive Office of the President.

5 CFR PART 2502

Availability of Records -- Freedom of Information Act: Final Regulations

*45 FR 47112*

July 14, 1980


ACTION: Final rule.


SUMMARY: The following regulations were published in the Federal Register, for public review and comment, on April 21, 1980. No comments have been received. These regulations establish the procedures by which records may be obtained from all organizational units within the Office of Administration; however, they apply only to the Office of Administration and not to other agencies within the Executive Office of the President.


EFFECTIVE DATE: August 13, 1980.


FOR FURTHER INFORMATION CONTACT: Donald Street, Assistant to the Deputy Director, (202) 456-2970.

The following Part 2502 is added to Title 5 of CFR.

TEXT: Sarah T. Kadec,

Deputy Director.

CHAPTER XV -- OFFICE OF ADMINISTRATION; FREEDOM OF INFORMATION ACT REGULATIONS

PART 2502 -- AVAILABILITY OF RECORDS

Subpart A -- Production or Disclosure of Records Under the Freedom of Information Act, U.S.C. 552

Sec.

2502.1 Definitions.

2502.2 Statutory requirements.

2502.3 Purpose and scope.

2502.4 Organization and functions.

2502.5 Public reference facilities and current index.

45 FR 47112

2502.6 Records of other agencies.

2502.7 How to request records: Form and content.

2502.8 Initial determination.

2502.9 Prompt response.

2502.10 Responses: Form and content.

2502.11 Appeals to the Director from initial denials.

2502.12 Maintenance of files.

2502.13 Schedule of fees.

2502.14 Waiver of fees.

2502.15 Payment of fees.

2502.16 Information to be disclosed.

2502.17 Exemptions.

2502.18 Deletion of exempted information.

2502.19 Annual report.

Subpart B -- Production in Response to Subpoenas or Demands of Courts or Other Authorities

2502.30 Purpose and scope.

2502.31 Production prohibited unless approved by Director.

2502.32 Procedure in the event of a demand for disclosure.

2502.33 Procedure in the event of an adverse ruling.

Authority: *15 U.S.C. 552,* as amended by Pub. L. 93-502.

Subpart A -- Production or Disclosure of Records Under the Freedom of Information Act, *5 U.S.C. 552*

Authority: *5 U.S.C. 552,* as amended by Pub. L. 93-502.

§ 2502.1 Definitions.

(a) "Office" means the Office of Administration, Executive Office of the President;

(b) "Agency" means agency as defined in *5 U.S.C. 552*(e);

45 FR 47112

(c) "Workday" means those days when the Office is open for the conduct of government business, and does not include Saturdays, Sundays and legal public holidays;

(d) "FOIA" means Freedom of Information Act, *5 U.S.C. 552,* as amended.

§ 2502.2 Statutory requirements.

*5 U.S.C. 552*(a)(3) requires each Agency, when it receives a request which reasonable describes the records sought and which is in accordance with the implementing regulations published by the Agency, to make the records promptly available. *5 U.S.C. 552*(b) exempts specified classes of records from the public access requirements of *5 U.S.C. 552*(a) and permits them to be withheld.

§ 2502.3 Purpose and scope.

This subpart contains the regulations of the Office of Administration, Executive Office of the President, implementing *5 U.S.C. 552.* The regulations of this subpart describe the procedures by which records may be obtained from all organizational units within the Office of Administration. Official records of the Office made available pursuant to the requirements of *5 U.S.C. 552* shall be furnished to members of the public only as prescribed by this subpart. To the extent that it is not prohibited by other laws the Office also will make available records which it is authorized to withhold under *5 U.S.C. 552* whenever it determines that such disclosure is in the public interest.

§ 2502.4 Organization and functions.

The Office of Administration was created by Reorganization Plan No. 1 of 1977 and Executive Order 12028. Its primary function is to provide common administrative and support services for the various Agencies of the Executive Office of the President. It consists of:

(a) The Office of the Director, which includes the Director and the Deputy Director and their principal assistants, including the Assistant for Audit and Assessment;

(b) Six Assistant Directors and their staffs, who are responsible for the following Divisions:

(1) Administrative Services

(2) Computer Facilities Management

(3) Financial Management

(4) Information Management and Services

(5) Information Systems Development

(6) Personnel Management

The Office has no field organization. Offices of the Office of Administration are presently located in the Executive Office Building, 17th & Pennsylvania Ave, NW., and in the New Executive Office Building, 726 Jackson Place NW., Washington, D.C. 20503. Regular office hours are from 9 a.m. to 5:30 p.m., Monday through Friday. Both buildings are under security control. Persons desiring access are encouraged to make advance arrangements for an appointment.

§ 2502.5 Public Reference Facilities and Current Index.

(a) The Office of Administration will maintain in a public reading area located in the Executive Office of the President Information Center, Room G-102, New Executive Office Building, 726 Jackson Place NW., Washington, D.C., and make available for public inspection and copying a current index providing identifying information for the public as to any matter which is issued, adopted, or promulgated after January 1, 1978, and which is required to be indexed by *5 U.S.C. 552*(a)(2). The office will also maintain on file in this public reading area all material published by the Office of Administration in the Federal Register and currently in effect.

§ 2502.6 Records of other Agencies.

Requests for records that originated in another Agency and are in the custody of the Office of Administration, will be referred to that Agency for processing, and the person submitting the request shall be so notified. The decision made by that Agency with respect to such records will be honored by the Office of Administration.

45 FR 47112

§ 2502.7 How to request records -- form and content.

(a) A request made under the Freedom of Information Act must be submitted in writing, addressed to: Deputy Director, Office of Administration, 726 Jackson Place, NW, Washington, D.C. 20503. The words "FOIA REQUEST" should be clearly marked on both the letter and the envelope. Due to security measures in force at the Old and New Executive Office Buildings, requests made in person can only be accepted from current employees of the Executive Office of the President, who have the appropriate security clearances.

(b) Any Office employee or official who receives a FOIA Request shall promptly forward it to the Deputy Director. Any Office employee or official who receives an oral request made under the FOIA, shall inform the person making the request to the provisions of this subpart.

(c) Each request must reasonably describe the record(s) sought, including, when known: Agency/individual originating the record, date, subject matter, type of document, location, and any other pertinent information which would assist in promptly locating the record(s).

(d) When a request is not considered reasonably descriptive, or requires the production of voluminous records, or places an extraordinary burden on the Office of Administration, seriously interfering with its normal functioning to the detriment of the business of the government, the Office may require the person making the request, or such person's agent, to confer with an Office representative in order to attempt to verify, and, if possible, narrow the scope of the request.

§ 2502.8 Initial determination.

The Deputy Director shall have the authority to approve or deny requests received pursuant to these regulations. The decision of the Deputy Director shall be final, subject only to administrative review as provided in § 2502.11.

§ 2502.9 Prompt response.

(a) The Deputy Director shall either approve or deny a request for records within 10 working days after receipt of the request unless additional time is required for one of the following reasons:

(1) It is necessary to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or

(2) It is necessary to consult with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject matter interest therein.

(b) When additional time is required for one of the reasons stated in paragraph (a) of this section, the Deputy Director or his designee shall acknowledge receipt of the request within the 10 workday period and include a brief explanation of the reason for the delay, indicating the date by which a determination will be forthcoming. An extended deadline adopted for one of the reasons set forth above may not exceed 10 additional workdays.

§ 2502.10 Responses -- form and content.

(a) When a requested record has been identified and is available, the Deputy Director shall notify the person making the request as to where and when the record is available for inspection or the copies will be available. The notification shall also advise the person making the request of any fees assessed under § 2502.13 hereof.

(b) A denial or partial denial of a request for a record shall be in writing signed by the Deputy Director and shall include:

(1) The name and title of the person making the determination;

(2) A reference to the specific exemption under the Freedom of Information Act authorizing the withholding of the record, and a brief explanation of how the exemption applies to the record withheld; or

(3) A statement that, after diligent effort, the requested records have not been found or have not been adequately examined during the time allowed by § 2502.9, and that the denial will be reconsidered as soon as the search or examination is complete;

(4) A statement that the denial may be appealed to the Director within 30 days of receipt of the denial or partial denial.

If a requested record cannot be located from the information supplied, or is known to have been destroyed or otherwise disposed of, the person making the request shall be so notified and the legal authority for disposition shall be cited.

§ 2501.11 Appeals to the Director from initial denials.

(a) When the Deputy Director had denied a request for records in whole or in part, the person making the request may, within 30 days of its receipt, appeal the denial to the Director. The appeal must be in writing, addressed to the Director, Office of Administration, 726 Jackson Place, NW., Washington, D.C. 20503 and clearly labeled as a "Freedom of Information Act Appeal".

(b) The Director will act upon the appeal within 20 workdays of its receipt. The Director may extend the 20 day period of time by any number of workdays which could have been claimed and consumed by the Deputy Director under § 2502.9 but which were not claimed and consumed in making the initial determination. The Office of Administration's action on an appeal shall be in writing, signed by the Director of the Office.

(c) If the decision is in favor of the person making the request, the Director shall order records promptly made available to the person making the request.

(d) A denial in whole or in part of a request on appeal shall set forth the exemption relied on and a brief explanation of how the exemption applied to the records withheld and the reasons for asserting it, if different from that described by the Deputy Director under § 2502.10. The denial shall state that the person making the request may, if dissatisfied with the decision on appeal, file a civil action in the district in which the person resides or has his principal place of business, in the district where the records are located, or in the District of Columbia.

(e) No personal appearance, oral argument or hearing will ordinarily be permitted in connection with an appeal to the Office of Administration.

(f) On appeal, the Office may reduce any fees previously assessed.

§ 2502.12 Maintenance of files.

(a) The Deputy Director shall maintain files, containing all materials required to be retained by or furnished to him under this subpart. The material shall be filed by individual request, indexed according to the exemptions assorted, and, to the extent feasible indexed according to the type of records requested.

(b) The Deputy Director shall also maintain a file open to the public, which shall contain copies of all grants or denials of appeals by the office of Administration. The materials shall be indexed as stated in paragraph (a) of this section.

§ 2502.13 Schedule of fees.

(a) Except as otherwise provided, the following specific fees shall be applicable with respect to services rendered to members of the public under this subpart:

(1) *Search for Records.* Five dollars per hour when the search is conducted by a clerical employee. Ten dollars per hour when the search is conducted by a professional employee. There will be no charges for searches of less than one hour.

(2) *Duplication of Records.* Records will be duplicated at a rate of $0.10 per page for copying 4 pages or more. There will be no charges for duplicating 3 pages or less.

(3) *Other.* When no specific fee has been established for a service, the Deputy Director is authorized to establish an appropriate fee based on "direct costs" as provided in the Freedom of Information Act. Examples of services covered by this provision include searches involving computer time or special travel, transportation, or communication costs.

(b) If the Office anticipates that the fees chargeable under this section will amount to more than $30, or the maximum amount specified in the request, the requester shall be promptly notified of the estimated amount of the fee, before costs have been incurred. In such instances the requester will be advised of the option to consult with Office personnel in order to reformulate the request in a manner which will reduce the fees, yet still meet your needs. A reformulated request shall be considered a new request, thus beginning a new 10 workday period for processing.

§ 2502.14 Waiver of fees.

The Deputy Director shall assess fees for the search and, if necessary, duplication of records requested. The Deputy Director shall also have authority to furnish records without charge, or at a reduced charge, where he determines that waiver or reduction of the fee is in the public interest.

§ 2502.15 Payment of fees.

(a) Fees must be paid in full prior to issuance of the requested copies. In the event the requestor owes money for a previous request, copies of records will not be provided for any subsequent request until the debt has been paid in full. Fees for search time must be paid before records are made available.

(b) Search costs are due and payable even if the record which was requested cannot be located after all reasonable efforts have been made.

(c) Payment of fees shall be in the form either of a personal check or bank draft drawn on a bank in the United States, or a postal money order. Remittances shall be made payable to the order of the Treasury of the United States and mailed or delivered to the Deputy Director, Office of Administration, 726 Jackson Place, NW., Washington, D.C. 20503.

§ 2502.16 Information to be disclosed.

In general, all records by the Office of Administration are available to the public, as required by the Freedom of Information Act. However, the Office claims the right, where it is applicable, to withhold material under the provisions specified in the Freedom of Information Act as amended *(5 U.S.C. 552*(b)).

§ 2502.17 Exemptions.

(a) *5 U.S.C. 552* exempts from all of its publication and disclosure requirements nine categories of records which are described in 552(b). These categories include such matters as national defense and foreign policy information, investigatory files, internal procedures and communications, materials exempted from disclosure by other statutes, information given in confidence and matters involving personal privacy.

(b) Executive Order 12028 (December 4, 1977) provides that the Office of Administration shall upon request, assist the White House office in performing its role of providing those administrative services which are primarily in direct support of the President. Due to this role of providing direct support of the President, members of the public should presume that communications between the Director of the Office of Administration and the President (and their staffs) are confidential or ordinarily will not be released; they will usually fall, at a minimum, within Exemption 5 of the Act.

(c) The records of the Office of Administration which are part of systems of records subject to the Privacy Act of 1974 are exempt from disclosure to the public except as provided by 5 CFR Part 2504.

§ 1502.18 Deletion of exempted information.

Where requested records contain matters which are exempted under *5 U.S.C. 552*(b) but which matters are reasonably segregable from the remainder of the records, they shall be disclosed by the Office with deletions. To each such record, the Office shall attach a written justification for making deletions. A single such justification shall suffice for deletions made in a group of similar or related records.

§ 2502.19 Annual Report.

The Deputy Director shall annually on or before March 1, submit a Freedom of Information report covering the preceding calendar year to the Speaker of the House of Representatives and President of the Senate. The report shall include those matters required by *5 U.S.C. 552*(d).

Subpart B -- Production in Response to Subpoenas or Demands of Courts or other Authorities

§ 2502.30 Purpose and scope.

This subpart contains the regulations of the Office concerning procedures to be followed when a subpoena, order or other demand (hereinafter in this subpart referred to as a "demand") of a court or other authority is issued for the production or disclosure of: (a) Any material contained in the files of the Office of Administration; (b) any information relating to materials contained in the files of the Office; or (c) any information or material acquired by any person while such person as an employee of the Office of Administration as a part of the performance of his official duties or because of his official status.

45 FR 47112

§ 2502.31 Production prohibited unless approved by the Director.

No employee or former employee of the Office of Administration shall, in response to a demand of a court or other authority, produce any material contained in the files of the Office of Administration or disclose any information or produce any material acquired as part of the performance of his official status without the prior approval of the Director.

§ 2502.32 Procedure in the event of a demand for disclosure.

(a) Whenever a demand is made upon an employee or former employee of the Office of Administration for the production of material or the disclosure of information described in § 2502.31, he shall immediately notify the Director. If possible, the Director shall be notified before the employee or former employee concerned replies to or appears before the court or other authority.

(b) If response to the demand is required before instructions from the Director are received, an attorney designated for that purpose by the Office of Administration shall appear with the employee or former employee upon whom the demand has been made, and shall furnish the court or other authority with a copy of the regulations contained in this part and inform the court or other authority that the demand has been or is being, as the case may be, referred for prompt consideration by the Director. The court or other authority shall be requested respectfully to stay the demand pending receipt of the requested instructions from the Director.

§ 2502.33 Procedure in the event of an adverse ruling.

If the court or other authority declines to stay the effect of the demand in response to a request made in accordance with § 2502.32(b) pending receipt of instructions from the Director, or if the court or other authority rules that the demand must be complied with irrespective of the instructions from the Director not to produce the material or disclose the information sought, the employee or former employee upon whom the demand has been made shall respectfully decline to comply with the demand. (*United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951)*).
[FR Doc. 80-20856 Filed 7-11-80; 8:45 am]

BILLING CODE 3115-01-M

**EXHIBIT 3**



PRESIDENT | VICE PRE
Your Governmer

# THE WHITE HOUSE

PRESIDENT GEORGE W. BUSH

Home > Government > Freedom of Information Act within the EOP

## FOIA within the EOP

### Your Government

- President's Cabinet
- Executive Office of the President
- USA Freedom Corps
- Faith-Based & Community
- Office of Management and Budget
- National Security Council
- Citizens' Handbook
- Federal Agencies & Commissions
- Federal Statistics



USA.gov

### Appointments

- Application
- Nominations

### In Focus

- Budget Management
- Defense
- Economy
- Education
- Energy
- Environment
- Gulf Coast
- Health Care
- Homeland Security
- Immigration
- Iraq
- Judicial Nominations
- Medicare
- National Security
- Pandemic Flu
- Patriot Act
- Veterans

more issues →

### News

- Current News
- Press Briefings
- Proclamations
- Executive Orders

The President's immediate personal staff and units within the EOP whos assist the President are not subject to FOIA.

Please contact the separate EOP entities, that are subject to FOIA, indiv FOIA request for their records.

The EOP entities subject to the FOIA are:

> Council on Environmental Quality
> Office of Administration
> Office of Management and Budget
> Office of National Drug Control Policy
> Office of Science and Technology Policy
> Office of the United States Trade Representative

The EOP entities exempt from the provisions of the FOIA are:

> White House Office
> Office of the Vice President
> Council of Economic Advisers
> National Security Council
> Office of Policy Development
>    o  Domestic Policy Council
>    o  Office of National AIDS Policy
>    o  National Economic Council
> President's Foreign Intelligence Advisory Board

Radio

more news →

President | Vice President | First Lady | Mrs. Cheney | News & Policies

History & Tours | Kids | Your Government | Appointments | Jobs | Contact | Text only

Accessibility | Search | Privacy Policy | Help | Site Map



THE WHITE HOUSE
PRESIDENT GEORGE W. BUSH

PRESIDENT | VICE PRE
Your Governmer


**IN FOCUS**

Home > Government > Office of Administration > Freedom of Information Act

## FOIA HANDBOOK

Budget Management
Defense
Economy
Education
Energy
Environment
Gulf Coast
Health Care
Homeland Security
Immigration
Iraq
Judicial Nominations
Medicare
National Security
Pandemic Flu
Patriot Act
Veterans

more issues ⊕

This handbook is intended to assist you in making a Freedom of Information Act (FOIA) request to the Office of Administration (OA), Executive Office of the President (EOP). For further details please refer to the OA FOIA Regulations which can be found at 5 CFR §2502. These regulations are currently being updated.

OA is a distinct entity from the other components of the EOP. Please contact the separate EOP entities, that are subject to FOIA, individually, if you would like to make a FOIA request for their records.

The EOP entities subject to the FOIA are:

- Council on Environmental Quality
- Office of Administration
- Office of Management and Budget
- Office of National Drug Control Policy
- Office of Science and Technology Policy
- Office of the United States Trade Representative

**News**

Current News
Press Briefings
Proclamations
Executive Orders
Radio

more news ⊕

The EOP entities exempt from the provisions of the FOIA are:

- White House Office
- Office of the Vice President
- Council of Economic Advisers
- National Security Council
- Office of Policy Development
  - ○ Domestic Policy Council
  - ○ Office of National AIDS Policy
  - ○ National Economic Council
- President's Foreign Intelligence Advisory Board

**Interact**

Ask the White House
White House Interactive

**Your Government**

President's Cabinet
USA Freedom Corps
Faith-Based & Community Initiatives
Office of Management and Budget
National Security Council
USA.gov

### MISSION OF THE OFFICE OF ADMINISTRATION:

The Office of Administration (OA) was established within the Executive Office of the President (EOP) by Reorganization Plan No. 1 of 1977. The Office was activated, effective December 4, 1977, by Executive Order 12028 of December 12, 1977. Its primary function is to provide common administrative and support services for the various entities of the EOP. The services include personnel; financial management; data processing; library services; records management; and general office operations, such as mail, messenger, printing, procurement, and supply services. OA has no field organizations and consists of the following:

(1) Office of the Director and General Counsel

**Appointments**

Nominations
Applications

(2) Equal Employment Opportunity

(3) Facilities Management

(4) Financial Management

(5) General Services

(6) Human Resources Management

(7) Information Systems & Technology

(8) Library Research Services

(9) Operations and Legislative Liaison

(10) Security

## CURRENT PUBLICATIONS:

None at this time.

## SUBMITTING A FREEDOM OF INFORMATION ACT REQUEST:

A request made under the FOIA must be submitted in writing, by mail or fax, to the following address:

Office of Administration
FOIA Officer
725 17th Street NW
Washington, DC 20503
Phone: (202) 395-2273
Fax: (202) 456-7921

The words **FOIA REQUEST** should be clearly marked on both the letter and the envelope. Due to security measures at the Eisenhower Executive Office Building and the New Executive Office Building, requests made in person should be delivered to Room G-1, at the above address. Describe the specific records requested in enough detail so that they can be located with a reasonable amount of effort. Requests for answers posed as questions are not covered under the FOIA. The request must be for records. Records must exist at the time the request is submitted.

Please state your willingness and ability to pay applicable fees or provide a justification to support a fee waiver.

For further information, please refer to the Office of Administration FOIA Regulations at 5 CFR §2502, which are currently being reviewed in light of the passage of the E-FOIA Amendment of 1996. Questions relating to the OA records and disclosure regulations may be directed to (202) 395-2273.

## PRIVACY ACT:

Information may also be requested from OA under the **Privacy Act, 5 U.S.C. 552a**. Privacy Act requests for information in OA's files must be in writing and sent to the same address as FOIA requests (see **Submitting a Freedom of Information Act Request**). For further details please refer to the OA Privacy Act Regulations which can be found at 5 CFR §2504.

The Privacy Act Regulations apply to all records maintained by the Office of Administration that are contained in a system of records, and that contain information about an individual. The regulations also establish procedures that (a) authorize an individual's access to records maintained about him/her; (b) limit the access of other persons to those records; and (c) permit an individual to request the

amendment or correction of records about him/her self.

Please note that records maintained by OA are usually kept only on individuals employed by the office and not on all other citizens or residents of the United States.

EOP Publications:

There are no OA publications. If you are interested in publications from other EOP entities, please visit the individual web sites.

### OA'S WEBSITE ADDRESS:

http://www.whitehouse.gov/oa/

### OA'S ELECTRONIC READING ROOM

OA's Electronic Reading Room located on OA's website (see address above) contains documents specifically identified for inclusion by the FOIA, as well as documents for which we have received multiple requests:

- The IMPAC Credit Card Holders Listing;
- Government Information Locator System (GILS);
- Office of Administration Annual FOIA Reports;
- Handbook for FOIA Requests;
- Office of Administration FOIA Regulations; and
- Index and Description of Major Information and Record Locater Systems

**EXHIBIT 4**

HENRY A. WAXMAN, CALIFORNIA,
    CHAIRMAN

TOM LANTOS, CALIFORNIA
EDOLPHUS TOWNS, NEW YORK
PAUL E. KANJORSKI, PENNSYLVANIA
CAROLYN B. MALONEY, NEW YORK
ELIJAH E. CUMMINGS, MARYLAND
DENNIS J. KUCINICH, OHIO
DANNY K. DAVIS, ILLINOIS
JOHN F. TIERNEY, MASSACHUSETTS
WM. LACY CLAY, MISSOURI
DIANE E. WATSON, CALIFORNIA
STEPHEN F. LYNCH, MASSACHUSETTS
BRIAN HIGGINS, NEW YORK
JOHN A. YARMUTH, KENTUCKY
BRUCE L. BRALEY, IOWA
ELEANOR HOLMES NORTON,
    DISTRICT OF COLUMBIA
BETTY McCOLLUM, MINNESOTA
JIM COOPER, TENNESSEE
CHRIS VAN HOLLEN, MARYLAND
PAUL W. HODES, NEW HAMPSHIRE
CHRISTOPHER S. MURPHY, CONNECTICUT
JOHN P. SARBANES, MARYLAND
PETER WELCH, VERMONT

ONE HUNDRED TENTH CONGRESS

# Congress of the United States
## House of Representatives

COMMITTEE ON OVERSIGHT AND GOVERNMENT REFORM

2157 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6143

MAJORITY (202) 225–5051
FACSIMILE (202) 225–4784
MINORITY (202) 225–5074

www.oversight.house.gov

TOM DAVIS, VIRGINIA,
    RANKING MINORITY MEMBER

DAN BURTON, INDIANA
CHRISTOPHER SHAYS, CONNECTICUT
JOHN M. McHUGH, NEW YORK
JOHN L. MICA, FLORIDA
MARK E. SOUDER, INDIANA
TODD RUSSELL PLATTS, PENNSYLVANIA
CHRIS CANNON, UTAH
JOHN J. DUNCAN, JR., TENNESSEE
MICHAEL R. TURNER, OHIO
DARRELL E. ISSA, CALIFORNIA
KENNY MARCHANT, TEXAS
LYNN A. WESTMORELAND, GEORGIA
PATRICK T. McHENRY, NORTH CAROLINA
VIRGINIA FOXX, NORTH CAROLINA
BRIAN P. BILBRAY, CALIFORNIA
BILL SALI, IDAHO
JIM JORDAN, OHIO

August 30, 2007

Mr. Fred F. Fielding
Counsel to the President
The White House
Washington, DC 20500

Dear Mr. Fielding:

Last week, in an apparent effort to keep the public from learning the extent of missing White House e-mails, the White House took the unusual position that the Office of Administration is not subject to the Freedom of Information Act. Because Congress also has an interest in this issue, I am writing to request information about the reports that millions of e-mails may have been lost from the White House e-mail system.

On May 29, 2007, Keith Roberts, the Deputy General Counsel of the White House Office of Administration, and Emmet Flood, Special Counsel to the President, briefed Committee staff on the White House e-mail system and the missing e-mails. At the briefing, Mr. Roberts informed Committee staff that the White House had discovered in 2005 that an unknown number of e-mails may not have been preserved in the White House archive, as required by the Presidential Records Act. According to Mr. Roberts, the Office of the Chief Information Officer then conducted a review of the e-mail system to determine the scope of the potential loss. He said that this review apparently found some days with a very small number of preserved e-mails and some days with no e-mails preserved at all. He also stated that a report summarizing these findings had been presented to the White House Counsel's office.

In addition, Mr. Roberts informed the Committee that an unidentified company working for the Information Assurance Directorate of the Office of the Chief Information Officer was responsible for daily audits of the e-mail system and the e-mail archiving process. Mr. Roberts was not able to explain why the daily audits conducted by this contractor failed to detect the problems in the archive system when they first began.

At the conclusion of the briefing, Committee staff requested a copy of the analysis presented to White House Counsel and the identity of the contractor responsible for daily audits and archiving. Mr. Flood told Committee staff that he would take the two requests under consideration. Since then, Committee staff have repeatedly requested that the White House

Mr. Fred F. Fielding
August 30, 2007
Page 2

provide this information without success.  Given that three months have passed since your office first received this request, I am writing to ask that you provide the information to the Committee by September 10, 2007.

The Committee on Oversight and Government Reform is the principal oversight committee in the House of Representatives and has broad oversight jurisdiction as set forth in House Rule X.  An attachment to this letter provides additional information on how to respond to the Committee's request.

If your staff has any questions about this request, they should contact David Rapallo with the Committee staff at (202) 225-5420.

Sincerely,

Henry A. Waxman
Chairman

Enclosure

cc:     Tom Davis
        Ranking Minority Member

# EXHIBIT 5



**EXECUTIVE OFFICE OF THE PRESIDENT**
**OFFICE OF ADMINISTRATION**
WASHINGTON, D.C. 20503
August 24, 2007

Via Federal Express

Ms. Anne Weismann
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, NW, Suite 450
Washington, DC  20005

RE:  Freedom of Information Act Request

Dear Ms. Weismann:

Pursuant to the Court's Orders of June 4, June 7 and August 7, 2007 this letter responds in part to the pending FOIA requests of Citizens for Responsibility and Ethics in Washington ("CREW"). Specifically, this provides the response, due by August 24, 2007, as specified in the Court's June 4, June 7 and August 7, 2007 Orders with respect to the Categories 1 through 4 dating from the time period between February 3 and February 28, 2006, as well as documents responsive to Category 5.

On August 22, 2007, OA filed its Motion for Judgment on the Pleadings, asserting that it is not subject to FOIA.  Those arguments are not repeated here since, as described above, this letter is provided in response to the Court's Orders.

OA has located approximately 3,470 pages that may be responsive to CREW's requests as required in the Court's June 4, June 7 and August 4, 2007 Orders.  Such documents include spreadsheets and related documents.  After reviewing the documents, OA has determined that all of the approximately 3,470 pages are exempt from disclosure in their entirety or do not contain reasonably segregable portions that OA could release.  The documents are exempt from release under the following FOIA provisions:

(1) Title 5 U.S.C. § 552(b)(5) exempts inter-agency/intra-agency communications and records that fall within the Attorney Work Product, Attorney Client, and/or Deliberative Process Privileges. OA has located potentially responsive documents that fall within those categories; and

(2) Title 5 U.S.C. § 552(b)(6) [Personal Privacy Matters] protects the identities of Federal employees who may be potential targets of threats and harassment.  As such, there is a heightened interest in the identity and duty locations of current and former employees that is concurrent with the increased security awareness demanded in this time of national emergency.

Since this matter is in litigation, please contact Jean Lin at 202-514-3716 if you have any questions.

Sincerely,

F. Andrew Turley
Deputy General Counsel