UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | : : : | |
| Plaintiff, | : : | |
| v. | : : | Civil Action No. 07-0964 (CKK) |
| OFFICE OF ADMINISTRATION, | : : | |
| Defendant. | : : | |

**PLAINTIFF'S MOTION TO SUPPLEMENT OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND SUPPORTING MEMORANDUM**

Plaintiff CREW hereby moves to supplement its opposition to defendant's motion for judgment on the pleadings to bring to the Court's attention newly obtained evidence on the issue of defendant Office of Administration's ("OA") status as an agency under the Freedom of Information Act ("FOIA"). As grounds for this motion, plaintiff states as follows:

1. On August 21, 2007, defendant filed a motion for judgment on the pleadings arguing that the OA does not meet the definition of "agency" under the FOIA. More specifically, the government argued that the OA does not have "substantial independent authority," relying in large part on President Jimmy Carter's Reorganization Plan No. 1 of 1977, as well as Executive Order 12028, also issued by President Carter.

2. CREW filed its opposition to this motion on September 4, 2007. Among other things, CREW argued that the issue of whether the OA is an agency for purposes of the FOIA is a fact-bound issue that cannot be decided on the basis of the pleadings and that, as a necessary corollary, plaintiff must be afforded discovery on this issue, particularly given that much of the

relevant evidence rests solely with the government. CREW argued alternatively that the OA is an agency, relying in part on the available historical evidence demonstrating OA's agency status.

3. The OA filed a reply brief on September 11, 2007, again relying in large part on the Executive Order that established the OA in the first place.

4. On September 25, 2007, CREW was provided with copies of documents from the Carter Presidential Library that bear directly on the issue of the OA's status as an agency under the FOIA. In particular, CREW was provided a copy of a June 28, 1978 White House memorandum on the express subject of the applicability of the FOIA to White House documents in the custody of the OA. A copy of this memorandum is attached as Exhibit A.[1]

5. Applying the test set forth in Soucie v. David, 448 F.2d 1067 (D.D.C. 1971), the same White House that established the OA readily concluded: "OA performs functions for other offices within the EOP and there are no identifiable units within the OA which function solely to serve the President. Accordingly, it is reasonable to conclude that the Office of Administration is an 'agency' subject to the Act [the FOIA]." Memorandum for Margaret McKenna from Patrick Apodaca re. Applicability of the FOIA to White House Documents, June 28, 1978, p. 2.[2] The White House further concluded that "[w]ith regard to documents actually generated by OA and in its possession, it is clear that these constitute OA documents subject to the Act [the

---

[1] CREW was provided by e-mail with copies made from actual photographs of pages from the Presidential Papers of Jimmy Carter. For purposes of clarity and legibility, CREW hereby provides the Court and the defendant with enlarged photocopies of those photographs. Should the Court wish, CREW would be happy to provide photographs or a cd-rom with the electronic versions of Attachment A.

[2] It is CREW's understanding that Margaret McKenna held the position of Deputy White House Counsel while Patrick Apodaca was Associate Counsel to President Carter.

FOIA]." Id. at 3.

6. This historical evidence, created contemporaneously with the creation of the OA, bears directly on the issue before this Court, namely whether the OA is an agency for purposes of the FOIA such that documents it has created and that are in its possession are also subject to the FOIA.

7. Accordingly, for the foregoing reasons, plaintiff respectfully requests that the Court permit plaintiff to supplement the record and its opposition to the pending motion for judgment on the pleadings with this newly obtained evidence.

Pursuant to LCvR7(m), counsel for CREW contacted defendant's counsel on September 25, 2007, to ascertain whether defendant opposed this motion. Despite government counsel's promise to advise CREW by noon on September 26 of the government's position on this motion, CREW has not yet heard back from defendant's counsel.

                        Respectfully submitted,

                        _____/s/_____
                        Anne L. Weismann
                        (D.C. Bar No. 298190)
                        Melanie Sloan
                        (D.C. Bar No. 434584)
                        Citizens for Responsibility and Ethics
                         in Washington
                        1400 Eye Street, N.W., Suite 450
                        Washington, D.C.  20005
                        Phone: (202 408-5565
                        Fax: (202) 588-5020

                        Attorneys for Plaintiff

Dated: September 26, 2007

# EXHIBIT A







Attachment 2

THE WHITE HOUSE
WASHINGTON

July 8, 1977

MEMORANDUM FOR:

FROM:    HUGH CARTER
         MARGARET MCKENNA
         PATRICK APODACA

In consultation with the Office of Legal Counsel, Department of Justice, we have reviewed the question of whether White House documents (including those in computerized systems) maintained by the Office of Administration are subject to the Freedom of Information Act.

As per the attached memorandum, we have concluded that certain White House documents presently maintained by the Office of Administration run a risk of being subject to FOIA because of the degree of control which OA exercises over them. However, this risk might be adequately minimized by implementing certain safeguards. The adoption of a written agreement between OA and the White House restricting access, use and control of these documents exclusively to White House staff, in combination with a system designed to achieve this result, would obviate FOIA concerns in the future.

In the meantime, the White House Communications Agency would seem to provide a reasonable alternative for maintaining such documents without running any significant risk of public disclosure under FOIA.



Attachment 2

THE WHITE HOUSE
WASHINGTON

July 6, 1978

MEMORANDUM FOR:

FROM:    HUGH CARTER
         MARGARET McKENNA
         PATRICK APODACA

In consultation with the Office of Legal Counsel, Department of Justice, we have reviewed the question of whether White House documents (including those in computerized systems) maintained by the Office of Administration are subject to the Freedom of Information Act.

As per the attached memorandum, we have concluded that certain White House documents presently maintained by the Office of Administration run a risk of being subject to FOIA because of the degree of control which OA exercises over them. However, this risk might be adequately minimized by implementing certain safeguards. The adoption of a written agreement between OA and the White House restricting access, use and control of these documents exclusively to White House staff, in combination with a system designed to achieve this result, would obviate FOIA concerns in the future.

In the meantime, the White House Communications Agency would seek to provide a reasonable alternative for maintaining such documents without running any significant risk of public disclosure under FOIA.



Attachment 1

THE WHITE HOUSE
WASHINGTON

June 28, 1978

MEMORANDUM FOR MARGARET MCKENNA
FROM: PATRICK APODACA
SUBJECT: Applicability of the FOIA to White House Documents

This will address questions you raised concerning the applicability of the Freedom of Information Act to White House documents which are currently in or may in the future be placed in the custody of the Office of Administration. I have discussed the problem with individuals who worked on the OMB reorganization staff when OA was created and there appears to have been no formal consideration of these issues at that time.

Applicability of the FOIA will depend on whether 1) the Office of Administration is an "agency"; and 2) whether the documents in question are "agency records".

The term "agency" specifically includes the Executive Office of the President but has been interpreted to exclude the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President. Soucie v. David, 448 F.2d 1067 (C.A.D.C. 1971); House of Rep. 93-1380, pp. 14-15. OA performs functions for other offices within the EOP and there are no identifiable units within the OA which function solely to serve the President. Accordingly, it is reasonable to conclude that the Office of Administration is an "agency" subject to the Act.

The FOIA applies to "agency records" but the Act defines neither "record" nor "agency records". The question is whether OA's involvement with White House documents in its custody is sufficient to deem them agency records subject to the Act.

White House ownership of the documents under _____ would preclude any argument that the documents _____ records. However, because of OA's custody of

Attachment C

- 2 -

the "Documents" and certain services which it currently uses, direct thereto, it becomes necessary to analyze under what circumstances the Office of Administration's possessory interest could rebut an argument that it is merely acting as a bailee for the White House and thereby does these "agency (OA) records" subject to the Act. 1/

For purposes of this analysis, documents that are currently in or might be placed in OA custody can be divided into the following categories:

1. Documents which are in OA's possession only for a short period of time while a service with regard to them is being performed, e.g., messenger service, duplication.

2. Documents in the form of ADP applications, the control of and access to which is restricted exclusively to White House staff. No such systems presently exist.

3. Documents whose information is available to OA personnel for the purpose of performing a related support function, e.g., payroll processing, accounting, correspondence tracking, etc., and documents (including copies of White House documents retained by OA) created by OA relative to or incidental to functions it performs for the White House, e.g., catalog of information systems, status reports, computer printouts, etc. 2/

---

1/   There is no written agreement between the White House and OA establishing the exact scope of authority which the latter may exercise in regard to any of the documents in its possession. It appears to be informally established that OA may not disclose to a third party any documents or information transferred to it from the White House without the latter's express approval.

2/   Specifically exempted from the FOIA are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. §552(b)(6). This exemption would afford considerable but not absolute protection from disclosure of White House personnel records in the OA computer system. The exemption would not preclude judicial review of a record to determine whether, on balance, an individual's privacy interest outweighs the public's interest in obtaining disclosure.

- 3 -

OA's limited possession of Category One documents amounts to only a bailment, and not ownership. Accordingly, these are not "agency records" subject to FOIA.

Analyzing the opposite extreme, it would appear that OA's dominion and control over Category Three documents is sufficiently extensive to rebut a bailment theory and strongly suggest that these are agency documents. With regard to documents actually generated by OA and in its possession, it is clear that these constitute OA documents subject to the Act. There remains, however, a question of whether White House documents to which OA has regular access and use might not be restricted in the manner described below to minimize the risk of compelled disclosure under the Act.

The most difficult question arises with respect to Category Two documents. If the information involved in creating these records were inputed and accessed exclusively by White House staff, the risk of exposure to FOIA would be minimal. In other words, OA would merely provide the White House with computer facilities but would not itself become involved in creating the computer records. However, I understand that it may be necessary for OA personnel to become involved in at least a transformation process in creating these records. For example, raw data would be provided to OA (either orally or in writing) which OA staff would then transform to a computer usable form. Under these circumstances, it is unclear whether the documents would constitute agency records, but there is a significant risk that they would be subject to FOIA.

The risk that any Category Two documents would be subject to FOIA could be effectively minimized or eliminated by implementing certain safeguards. A written agreement between OA and the White House could be effected making explicit OA's restricted possessory interest over documents and making clear that ownership and control, in spite of OA's limited interest, remains in the White House. In addition, as has already been suggested, the elimination of OA staff access or involvement with these documents at any step in the process would seem to create a very strong presumption that the documents are not agency records.

As an alternative to the Office of Administration, use of White House Communication Agency (WHCA) facilities is under consideration. The FOIA risks attendant to having WHCA

- 4 -

the White House are fewer than if services were provided by OA.

While not clear from doubt, a persuasive argument can be made that WHCA is not an "agency" subject to FOIA. Technically, WHCA is a field operation of the Defense Communication agency (DCA), Department of Defense. DCA may exercise discretion concerning administrative matters (e.g., assignment of personnel) but the day-to-day control and operation is clearly directed by the Director of the White House Military office, a White House staff person. Consistent with the purpose for which WHCA was created, its personnel are assigned to the White House exclusively to provide communications and transportation assistance and support to the President. It would therefore appear that WHCA is an entity whose sole function is to advise and assist the President and not an agency subject to FOIA.

In summary, applicability of FOIA to White House documents will depend on the extent to which the Office of Administration is able to exercise control over them. Documents in OA's custody for a temporary period while OA is performing a specific service are not subject to the Act. Where custody is of a more permanent nature there may be a significant risk of compelled disclosure, unless OA's control, use and access is restricted. Although not entirely clear, WHCA would not appear to be an "agency" under FOIA and any risks of public disclosure would be fewer for documents in its custody.

cc: Val Giannini



THE WHITE HOUSE

WASHINGTON

June 28, 1978

MEMORANDUM FOR MARGARET MCKENNA

FROM: PATRICK APODACA

SUBJECT: Applicability of the FOIA to White House Documents

This will address questions you raised concerning the applicability of the Freedom of Information Act to White House documents which are currently in or may in the future be placed in the custody of the Office of Administration. I have discussed the problem with individuals who worked on the OMB reorganization staff when OA was created and there appears to have been no formal consideration of these issues at that time.

Applicability of the FOIA will depend on whether 1) the Office of Administration is an "agency"; and 2) whether the documents in question are "agency records".

The term "agency" specif-

Attachment 1

... are "agency"; and 2) whether the docu- [ments] ... "agency records".

The term "agency" specifically includes the Executive Office of the President's specifically but has been interpreted to exclude the Office whose immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President. Soucie v. David, 448 F.2d 1067 (C.A.D.C. 1971); House Rep. 93-1380, pp. 14-15. OA performs functions for other offices within the EOP and there are no identifiable units within the OA which function solely to serve the President. Accordingly, it is reasonable to conclude that the Office of Administration is an "agency" subject to the Act.

The FOIA applies to "agency records" but the Act defines neither "record" nor "agency records". The question is whether OA's involvement with White House documents in its custody is sufficient to deem them agency records subject to the Act.

Exhibits White House ownership of the documents under consideration would preclude any argument that the documents in agency records. However, because of OA's custody of...

- 2 -

the documents and certain circumstances thereto, it becomes necessary to perform both interest and analyze under what circumstances it becomes necessary to analyze under what as a ballee could the Office of Administration's possessory "agency" (OA) records for the White House and thereby making for purposes of this argument that it is merely acting in or might be placed subject to the Act. 1/
the following categories:

1. Documents which are in OA's possession only for a short period of time while a service with regard to them is being performed, e.g., messenger service, duplication.

2. Documents in the form of ADP applications, the control of and access to which is restricted exclusively to White House staff. No such systems presently exist.

3. Documents whose information is available to OA personnel for the purpose of performing a related support function, e.g., payroll processing, accounting, correspondence tracking, etc., and documents (including copies of White House documents retained by OA) created by OA relative to or incidental to functions it performs for the White House, e.g., catalog of information status reports, e.g., computer printouts for the systems, etc. 2/

1/

Attachment 1

status reports, e.g., catalog of information systems, computer printouts, etc.

---

1/ There is no written agreement between the White House and OA establishing the exact scope of authority which the latter may exercise in regard to any of the documents in its possession. It appears to be informally established that OA may not disclose to a third party any documents or information transferred to it from the White House without the latter's express approval.

2/ Specifically exempted from the FOIA are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. §552(b)(6). This exemption would afford considerable but not absolute protection from disclosure of White House personnel records in the OA computer system. The exemption would not preclude judicial review of a record to determine whether, on balance, an individual's privacy interest outweighs the public's interest in obtaining disclosure.

- 3 -

OA's limited possession of Category One documents amounts to only a bailment, and not ownership. Accordingly, these are not "agency records" subject to FOIA.

Analyzing the opposite Category Three documents is suf- ficiently extensive to rebut a bailment theory and strongly suggest that these are agency documents. With regard to documents that actually are generated by OA and in its possession, it is clear that these constitute OA documents subject to the Act. There remains, however, a question of whether White House documents to which OA has regular access and use might not be restricted to the manner described below to minimize the risk of compelled disclosure under the Act.

The most difficult question arises with respect to Category Two documents. If the information involved in creating these records were inputed and accessed exclusively by White House staff, the risk of exposure to FOIA would be minimal. In other words, OA would merely provide the White House with computer facilities but would not itself become involved in creating the computer records. However, I understand that it may be necessary for OA personnel to become involved in at least a transformation process in creating these records. For example, raw data would be provided to OA (either orally or in writing) which OA staff would then transform to a computer usable form. Under these circumstances, it is unclear whether the documents would constitute agency records, but there is a significant risk that they would be subject to FOIA.

The risk

unclear whether the documents would then transform to a subject to FOIA. Under these circumstances, it is records, but there is a significant risk that they would be usable form. staff would OA (either orally

The risk that any Category Two documents would be subject to FOIA could be effectively minimized or eliminated by implementing certain safeguards. A written agreement between OA and the White House could be effected making explicit OA's restricted possessory interest over documents and making clear that ownership and control, in spite of OA's limited interest, remains in the White House. In addition, as has already been suggested, the elimination of OA staff access or involvement with these documents at any step in the process would seem to create a very strong presumption that the documents are not agency records.

As an alternative to the Office of Administration, use of White House Communication Agency (WHCA) facilities is under consideration. The FOIA risks attendant to having WHCA

- 4 -

the White House are fewer than if services were made that WHCA is not provided by OA.

while not clear from doubt, a persuasive argument can be made that WHCA is not an "agency" subject to FOIA. Technical-ly, WHCA (DCA) is a field operation of the Defense Communica-tion Agency (DCA), Department of Defense. DCA may exercise discretion concerning administrative matters (e.g., as-signment of personnel) but the day-to-day control and opera-tion is clearly directed by the White House Director of the Military Office, a White House staff person. Consistent with the purpose for which WHCA was created, its per-sonnel are assigned to the communications and transportation assistance exclusively to pro-vide for the Presidents whose sole function therefore appear that WHCA is an entity to the White House is to advise and assist the President and not an agency subject to FOIA.

In summary, applicability of FOIA to White House documents will depend on the extent to which the Office of Administration is able to exercise control over them. Documents in OA's custody for a temporary period while OA is performing a specific service are not subject to the Act. Where custody of a more permanent nature there may be a significant risk of compelled disclosure. Although not entirely clear, WHCA access is restricted. would not appear to be an "agency" under FOIA and any risks of public disclosure would be fewer for documents in its custody.

cc: Val Giannini

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, : : : Plaintiff, : : v. : : OFFICE OF ADMINISTRATION, : : Defendant. : | Civil Action No. 07-0964 (CKK) |

## [PROPOSED] ORDER

Upon consideration of plaintiff's motion to supplement its opposition to defendant's motion for judgment on the pleadings and the entire record herein it is hereby

ORDERED that plaintiff's motion is GRANTED.

DATED: _____  _____
COLLEEN KOLLAR-KOTELLY
United States District Judge