IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>     Plaintiff,<br><br>     v.<br><br>OFFICE OF ADMINISTRATION,<br><br>     Defendant. | Civil Action No: 1:07-CV-00964 (CKK) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR IMMEDIATE STATUS CONFERENCE**

**INTRODUCTION**

Defendant, the Office of Administration ("OA"), the Executive Office of the President ("EOP"), respectfully submits this opposition to the motion of plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") seeking an immediate status conference to address the "impact on this case of recent developments in related litigation" as well as the alleged "renewed urgency" of CREW's requests filed pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See* Plaintiff's Motion for Immediate Status Conference ("Pl. Mot.") at 1.

As discussed below, a status conference at this juncture would be premature. Pending before the Court is OA's dispositive motion establishing that OA is not an "agency" as defined in the FOIA. As the Court held on August 7, 2007, "[i]n the event that the Court denies OA's motion to dismiss, the Court shall set a status conference . . . ." Aug. 7, 2007 Order at 2.

CREW's present motion is a thinly disguised effort to prompt a ruling on the pending dispositive motion. While OA has no objection to the Court ruling on its dispositive motion – indeed, OA briefed its dispositive motion on an expedited basis and simultaneously processed CREW's FOIA requests within the deadlines set by this Court – the vehicle CREW uses to claim exigency is attenuated and wholly without merit. CREW's speculation that OA may have destroyed documents responsive to CREW's FOIA requests in this case is baseless, and the attached declaration of F. Andrew Turley, Deputy General Counsel of OA, establishes that all responsive documents are being preserved. Accordingly, no status conference is necessary.

## ARGUMENT

**A STATUS CONFERENCE IS UNNECESSARY UNTIL THIS COURT DECIDES THE OFFICE OF ADMINISTRATION'S DISPOSITIVE MOTION**

In its Order of August 7, 2007 setting an expedited briefing schedule for OA's dispositive motion, this Court stated that "[i]n the event that the Court denies OA's motion to dismiss, the Court shall set a status conference at which the Court shall address the parties' remaining obligations under the Court's June 4 and 7, 2007 Orders." Aug. 7, 2007 Order at 2. Nothing has changed to require an immediate status conference because the dispositive motion remains pending and OA has fully complied with the fixed deadlines in the Court's June 4 and 7, 2007 Orders.

By way of background, the June 4 and 7, 2007 Orders had set a schedule for OA to process CREW's FOIA requests seeking documents or materials relating to an issue with the EOP's email capturing process discovered in the fall of 2005 (the "email" issue). *See* Answer, ¶ 19. As negotiated by the parties and memorialized in the Court's June 4 and 7, 2007 Orders,

CREW's FOIA requests are delineated to include six categories of material covering primarily the time period between September 2005 and February 2006.  *See* June 4, 2007 Order.  OA has met both of the deadlines in the Court's June Orders.  On June 21, 2007, OA produced 50 pages of responsive documents and withheld approximately 454 pages of potentially responsive documents.  Thereafter, on August 24, 2007, OA advised CREW that it had located, and was withholding, approximately 3,470 additional potentially responsive pages.

OA's only remaining obligation under the Court's Orders is to conduct an electronic search, based on appropriate search terms to be proposed by CREW, for emails responsive to category 4 of CREW's requests and dated "between March 1, 2006 and present."  Order of June 7, 2007.  Category 4 essentially is a catch-call category because it seeks "all emails discussing or referring to any aspect[]" of the first three categories of CREW's requests.  *See* Order of June 4, 2007 at 2.  CREW argued that it was unable to propose search terms without OA first producing *Vaughn* indexes for the already withheld documents, and accordingly, moved to modify this Court's June 4 and 7 Orders.  This Court held that motion in abeyance pending resolution of OA's dispositive motion.  *See* Aug. 7, 2007 Order at 2.  Until the Court decides the dispositive motion, therefore, there is nothing more to be done.

CREW's motion does not show the contrary.  Despite CREW's wide-ranging discussion about other cases against OA and the EOP, none of that is relevant here.  This case concerns only whether OA falls within FOIA's definition of an "agency," and if so, whether it has complied with its statutory obligations under the FOIA.  OA has briefed the agency issue on an expedited basis, and despite its position that it is not a FOIA agency, it has also fully complied with the Court's orders to process CREW's FOIA requests.  Whether OA and the EOP have also fulfilled

3

any statutory obligations imposed on them by the Federal Records Act or the Presidential Records Act is simply beside the point. That is the subject of CREW's other lawsuits. This suit, by contrast, is a suit for documents under the FOIA.

In an effort to find some reason to support its plea for urgency, CREW speculates that OA, or the White House, might have "destroyed records responsive to CREW's FOIA requests." *See* Pl. Mot. at 9. That speculation is based on the alleged inconsistency between, on the one hand, OA's August 24, 2007 FOIA response that it had located, and was withholding, approximately 3,470 pages of potentially responsive documents, and on the other hand, the following: (1) the partial statement of White House spokesperson Tony Fratto that "the White House has absolutely no reason to believe that any e-mails are missing"; and (2) CREW's characterization of statements allegedly made by OA's Chief Information Officer Theresa Payton that there was a "'detailed analysis' of the missing emails," and that the analysis "consists of 'a chart' created by a former employee . . . ." Pl. Mot. at 6-7 (quoting Declaration of Teresa Payton at ¶ 10, filed Jan. 15, 2008, *Crew v. EOP*, Civ. Action Nos. 07-01707, 07-01577, a copy of which is attached as Exhibit A). According to CREW, Ms. Payton's declaration "suggests the existence of a lone chart," which cannot be reconciled with the number of potentially responsive documents OA has located in response to CREW's FOIA requests. *See* Pl. Mot. at 8-9.

But there is no inconsistency, and certainly nothing to suggest any improper destruction of documents responsive to CREW's FOIA requests. Ms. Payton, who has held the position of Chief Information Officer since May 2006, was not speaking about the volume of materials that exists, or might have been found, relating to the "email" issue. In providing background to her discussion of disaster recovery back-up tapes, she stated: "I am aware of a chart created by a

4

former employee within the OCIO [Office of Chief Information Officer] that purports to identify certain dates and EOP components for which the chart's creator appears to have concluded that certain EOP components were missing emails on certain dates in the 2003-2005 time period." Payton Decl. , ¶ 10.  She went on to explain that OCIO "has so far been unable to replicate [the chart's] results or to affirm the correctness of the assumptions underlying it," and "has serious reservations about the reliability of the chart." *Id.,* ¶ 11.

Ms. Payton's sworn statements are not inconsistent with the fact that OA has located more than three thousand pages of materials potentially responsive to CREW's FOIA requests. Specifically, the 3,470 pages cited in CREW's motion were responsive to at least four different categories of documents.  *See* Order of June 4, 2007 at 1-2.  In any event, as the declaration of OA's Deputy General Counsel F. Andrew Turley (attached as Exhibit B) establishes, OA has preserved and will continue to preserve, as it would in any litigation, the 3,470 pages of potentially responsive documents it located in responsive to CREW's FOIA requests (and for that matter, as well as the 454 pages it withheld on June 21, 2007).  There is no basis for suggesting that any of those documents have been destroyed.

## CONCLUSION

For all the foregoing reasons, this Court should deny plaintiff's motion for immediate status conference.

Dated: January 22, 2007                                    Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

           */s/* Jean Lin           
JEAN LIN
Federal Programs Branch, Civil Division
United States Department of Justice
20 Massachusetts Ave., N.W.
Washington, D.C.  20530
Tel: (202) 514-3716
Fax: (202) 616-8407

Attorneys for Defendant

**EXHIBIT A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY<br>AND ETHICS IN WASHINGTON,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>EXECUTIVE OFFICE OF THE<br>PRESIDENT, et al.,<br><br>　　　　　　　　Defendants. | Civil Action No: 1:07-cv-01707 (HHK/JMF) |
| NATIONAL SECURITY ARCHIVE,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>EXECUTIVE OFFICE OF THE<br>PRESIDENT, et al.,<br><br>　　　　　　　　Defendants. | Civil Action No: 1:07-cv-01577 (HHK/JMF) |

### DECLARATION OF THERESA PAYTON

I, Theresa Payton, declare as follows:

1. My name is Theresa Payton and I currently hold the position of Chief Information Officer (CIO) in the Office of Administration (OA), Executive Office of the President (EOP). In this capacity, I am responsible for providing strategic and operational leadership within the Office of the Chief Information Officer (OCIO). I have held the position of CIO in OA since May 2006.

2. I submit this Declaration on behalf of the Defendant OA pursuant to the Order of Magistrate Judge John M. Facciola dated January 8, 2008. The statements contained in this

Declaration are based on my personal knowledge and on information provided to me by members of my staff in the performance of my official duties.

A.   **OA and the OCIO**

3.   OA was created by Reorganization Plan No. 1 of 1977 and Executive Order 12028. Its primary functions include providing common administrative and support services for the EOP components.

4.   The OCIO, which is an operating unit of OA, provides around-the-clock customer service for all EOP components and the Office of the Vice President, consisting of more than 3000 users and customers, in excess of 200 servers, and over 100 applications. Specifically, the OCIO is responsible for providing EOP components with unified enterprise services such as production support, application development and support, office automation, e-mail, disaster recovery back-up information, Continuity of Operations (COOP) support, and intranet capabilities. It also provides coordination of compliance programs for Federal Records, Federal Enterprise Architecture, and Information Assurance. The OCIO is also charged with protecting and safeguarding the complex, sensitive but unclassified EOP network (EOP Network) (including the infrastructure, web sites, remote access, and data).

5.   As part of its email record-keeping responsibilities, the OCIO employs an archiving process. Since the phased deployment of Microsoft Exchange as the email system for the EOP Network, that process has entailed saving journaled emails to .pst files that are then maintained on the EOP Network.

B.   **The EOP's Disaster Recovery System**

6.   As a matter of good business practices, the EOP Network has been and continues to be regularly "backed-up" onto disaster recovery back-up tape media as part of the EOP's

disaster recovery system. The back-ups occur as a protective measure for purposes of restoring EOP operations in the event of a disaster or catastrophic incident resulting in the partial or total loss of operating systems and data. OA's process for creating disaster recovery back-up tapes ("tapes" or "back-up tapes") has changed over time, undergoing periodic upgrades, enhancements and improvements. The data-types contained on the tapes include the server software, such as operating systems and applications. The data-types also include files saved on the server such as, for example, email databases and/or email environment information.

    7.    The purpose of the tapes created and maintained by OA is to create a "snapshot" of the EOP Network, including its operating systems, as well as applications and data thereon, at the point in time of the back-up. For example, the snapshot captures all email information present on the EOP Network in the journals, the .pst archives, and the customer mailboxes at the time the back-up is created. In the event of a disaster or catastrophic incident that results in the partial or total loss of operating systems and data, these tapes could be used to reconstruct the data on the EOP Network as it existed at the time of the last back-up. Thus, any reconstruction following a disaster or catastrophic incident should reflect the EOP Network at the time of the last back-up. Configuration changes, system patches, anti-virus updates and other changes made after the latest back-up but prior to the disaster or catastrophic incident would not be included on tapes and, thus, would not be reflected in a reconstructed system. Similarly, any emails sent or received after the latest back-up but prior to the disaster or catastrophic incident may not be backed up on tapes and, thus, may not be reflected in a reconstructed system. This limitation in the disaster recovery back-up process is consistent with industry standards for these types of disaster recovery systems.

8. The back-up tapes have been used to restore information that is not otherwise available on the EOP Network. When applied to email recovery, the process is complex, labor intensive and costly. By way of hypothetical example, a request to recover a specific file(s) from a particular date or date range within the period of 2003-2005 would be forwarded to the OCIO. The OCIO would then ordinarily consult a media database, similar to a catalogue or back-up tape index, to identify a range of tapes that correspond to that request. In this process, the OCIO may pull tape sets backed up prior to and/or subsequent to the target date period to ensure they have the full population of potential tape sets that may contain the requested file. Additionally, the OCIO would then restore the data-type environment, applicable software, and/or information, and then conduct a search for the information requested.

C.  *Plaintiffs' Claims*

9. As I understand the Complaint, plaintiffs allege that the EOP failed to electronically archive some emails in the period 2003-2005. Plaintiffs allege that OA created a "detailed analysis" of this alleged problem. *See* CREW Comp., ¶ 34; NSA Comp., ¶ 32.

10. I am aware of a chart created by a former employee within the OCIO that purports to identify certain dates and EOP components for which the chart's creator appears to have concluded that certain EOP components were missing emails on certain dates in the 2003-2005 time period. Specifically, the chart appears to have concluded that some components on some dates had either (i) a lower-than-expected number of emails preserved in the normal electronic archiving process, or (ii) no emails preserved in the normal electronic archiving process. I believe this is what Plaintiffs refer to as the "detailed analysis."

11. The OCIO has reviewed the chart and has so far been unable to replicate its results or to affirm the correctness of the assumptions underlying it. Accordingly, this office has

4

serious reservations about the reliability of the chart. Given these concerns, and the apparent lack of supporting documentation, this office has undertaken an independent effort to determine whether there may be anomalies in Exchange email counts for any particular days resulting from the potential failure to properly archive emails for the 2003-2005 time period. That process is underway and we expect the independent assessment to be completed in the near term.

**D.    *Responding to the Court's Questions***

    12.    In light of this background, I now turn to the four questions posed by the Court:

    a.  **Question No. 1: Are the back-ups catalogued, labeled or otherwise identified to indicate the period of time they cover?**

It is possible to discern an approximate time period of the latest information backed up to a tape set by examining the information in the media database and reviewing the information for the last date on which data was written to an individual back-up tape. The media database does not display information that indicates fixed, identifiable periods of time. However, the tapes are labeled with a barcode, which correlates to an entry in the media database and, in turn, to the information about the last back-up to a particular tape.

    b.  **Question No. 2: Are the back-ups catalogued, labeled or otherwise identified to indicate the data contained therein?**

For each back-up tape, the media database contains a field identifying the type of server that is backed up. Although the information in this field does not reveal details about the data itself, it does identify whether a particular back-up tape should contain data relating to Microsoft Exchange emails and/or email environment information.

c. **Question No. 3: Do the back-ups contain emails written and received between 2003-2005?**

Prior to October 2003 and continuing through 2005 and to the present, this office has regularly created back-up tapes for the EOP Network, which includes the system's email servers. Consistent with industry best practices relating to tape media management for disaster recovery back-up systems, these tapes were recycled prior to October 2003. In October 2003, this office began preserving and storing all back-up tapes and continues to do so. For that reason, emails sent or received in the 2003-2005 time period should be contained on existing back-up tapes.

d. **Question No. 4: Do the back-ups contain the emails said to be missing that are the subject of this lawsuit? [Footnote omitted.]**

As I understand the Complaint, some emails are alleged to be missing from electronic archives in the period 2003-2005. At this stage, this office does not know if any emails were not properly preserved in the archiving process. We are continuing our efforts to determine whether there may be anomalies in Exchange email counts for any particular days in 2003-2005 resulting from the potential failure to properly archive emails. However, in view of this office's practice in the 2003-2005 time period of regularly creating back-up tapes for the EOP Network, which includes servers containing emails, and in view of this office's practice of preserving all such back-up tapes from October 2003 to the present, the back-up tapes should contain substantially all the emails sent or received in the 2003-2005 time period.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, the foregoing to be true and correct.

Executed the 15 day of January, 2008.

*[signature]*
THERESA PAYTON
Chief Information Officer
Office of Administration, Executive Office of the President

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>  Plaintiff,<br><br>v.<br><br>OFFICE OF ADMINISTRATION,<br><br>  Defendant. | Civil Action No: 1:07-CV-00964 (CKK) |

### DECLARATION OF F. ANDREW TURLEY

I, F. ANDREW TURLEY, declare as follows:

1. I am F. Andrew Turley, Deputy General Counsel for the Office of Administration, Executive Office of the President. I provide the following statement, based on my personal knowledge and on information provided to me in my official capacity, in support of OA's Opposition to Plaintiff's Motion for Immediate Status Conference.

2. On June 21, 2007, pursuant to this Court's Orders of June 4 and 7, 2007, OA made its first response to CREW's FOIA requests at issue in this litigation. OA informed CREW that in addition to the documents that were being produced that day, it was withholding approximately 454 pages of documents that are potentially responsive to CREW's FOIA requests. On August 24, 2007, OA further advised CREW that it had located, and was withholding, approximately 3,470 additional potentially responsive pages pursuant to specified FOIA exemptions.

3. OA has preserved, and will continue to preserve, the 3,924 pages of documents

located so far in response to CREW's FOIA requests.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, the foregoing to be true and correct.

Executed on this 22nd day of January, 2008.

                                          F. ANDREW TURLEY
                                          Deputy General Counsel