**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
CITIZEN FOR RESPONSIBILITY AND          )
ETHICS IN WASHINGTON,                    )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )          Civil Action No: 1:07-CV-00964 (CKK)
                                         )
OFFICE OF ADMINISTRATION,                )
                                         )
                    Defendant.           )
_____)

## JOINT DISCOVERY PLAN

Pursuant to the Court's Order of February 11, 2008 (Document 33), plaintiff and defendant hereby submit this joint discovery plan.

### Plaintiff's Discovery Proposal

In view of the limited nature of the discovery that the Court has authorized, the subject matter of that discovery and the limited time-period in which discovery must be completed (by March 28, 2008), plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") proposes to take two forms of discovery: (1) document requests and (2) depositions. Each of these forms of discovery is best aimed at soliciting the most relevant information in the shortest period of time, recognizing the highly exigent nature of this action.

1. First, as to document requests, CREW proposes submitting the attached Request for Production of Documents, which it has already shared with the defendant. CREW's document request is limited to specific documents that will shed light on the functions and responsibilities of the Office of Administration ("OA") vis-a-vis other components of the Executive Office of the President ("EOP") and other third parties. For example, CREW seeks documents of OA's

organizational structure as well as the Enterprise Architecture that OA submitted to the House and Senate Committees on Appropriations in Fiscal Years 2002, 2003 and 2004, and that CREW understands includes a detailed explanation of OA's mission and responsibilities. CREW also seeks documents relating to OA's document retention policy, including records disposition schedules, and OA's implementation of the Freedom of Information Act ("FOIA"), as these offer some of the best evidence of the degree to which OA has considered itself to be an agency subject to the Federal Records Act and the FOIA and has carried out functions beyond those specifically delineated in its charter documents. CREW also seeks documents relating to OA's exercise of its contracting authority, another area in which OA has functioned beyond what is specifically delineated in its charter documents. Finally, CREW seeks a discrete number of manuals, guidance and logs to flesh out the degree to which OA has exercised authority over third parties and taken on responsibilities in excess of those delineated in its charter documents.

Together with depositions, these document requests represent the most efficient and direct way to ascertain OA's actual functions and authority. CREW has attempted to draft the requests as narrowly as possible, consistent with the limited scope of discovery authorized by the Court and the time-frame in which CREW must complete its discovery. In addition, given that time-frame, the limited nature of the document requests, the fact that CREW has already shared the requests with defendant and CREW's need for the documents in advance of any depositions, CREW also requests that defendant's time to answer be shortened to 10 days. CREW has also communicated to OA its willingness to work with OA to further narrow the requests, as necessary.

2. Notwithstanding the narrowness of CREW's document requests and OA's stated

position herein that CREW should be permitted only written discovery, OA objects to each and every document request CREW intends to propound on a variety of grounds.  At bottom, it is clear that OA's fundamental objection is to any discovery at all, an objection it has already raised and that this Court has already rejected.

According to OA, requests that seek documents relating to OA's performance of specific functions, such as contracting (Request No. 7), conducting security investigations (Request No. 5), and implementing record-keeping laws (Request Nos. 3, 4, 8) are not relevant based on OA's self-serving and unsubstantiated statements that the documents will not demonstrate that OA exercises substantial authority independently of the President.  OA's views on the degree to which this evidence will demonstrate OA's non-agency status, however, are an insufficient basis to deny CREW an opportunity to explore more thoroughly the exact nature of the authority OA in fact exercises.  This is the precise issue for which the Court has authorized discovery and OA has not demonstrated how the document requests stray from this issue.

OA's objection to CREW's request for OA's record disposition schedules (Request No. 2) is also wide of the mark.  The extent to which OA considers itself to be an agency bound by the Federal Records Act is highly relevant to its agency status at issue here.  And to the extent OA performs record management functions for other EOP components, including agency components, the ministerial nature of those actions does not undermine their significance as evidence of OA's substantial independent authority.

OA's objection to requests that it produce documents comprising the Enterprise Architecture and most recent information plan (Request Nos. 6, 9) fails to address one of the principle reasons why CREW seeks these documents -- CREW's understanding that they include

detailed explanations of OA's mission and responsibilities. Moreover, how OA describes itself to other entities outside of the context of litigation is highly probative on its agency status.

OA's objection to producing directives, manuals and handbooks issued to OA staff that reflect how that staff performs its functions vis-a-vis other EOP components (Request No. 10) is equally meritless. As with the documents OA has produced to Congress, documents it has prepared for internal use, outside of the context of litigation, will likely be the most candid and revealing evidence of how OA in fact functions, not how it wishes to portray its functions now in light of its recent decision that it is no longer an agency.

OA also objects to producing these documents in 10 days, but its objection fails to address the reasons for this short turn-around: the necessarily truncated discovery period and CREW's need for the documents to conduct depositions. Moreover, OA has not demonstrated that it cannot respond to the requests in 10 days, only that it does not wish to do so. Finally, it is likely from OA's preliminary objections noted here and its unduly narrow view of the discovery to which CREW is entitled to conduct, that OA's eventual "responses" to any document requests will be something far short of full and actual document productions. Accordingly, it is necessary and appropriate that OA's response time take into account the Court's need to resolve any discovery disputes.

3. Second, CREW seeks to depose four individuals: (1) Alan Swendiman, Director of OA; (2) Carol Ehrlich, OA's FOIA officer; (3) OA's chief operating officer; and (4) Theresa Payton, OA's chief information officer. CREW has proposed that these depositions take place

during the first two weeks in March.[1]

Each of these deponents has relevant testimony to offer on the subject of OA's authority over or responsibilities to third parties as well as any functions OA carries out beyond those specifically delineated in its charter documents. Through Executive Order 12122 the director of OA (currently Mr. Swendiman) was "designated to perform the functions of the President under Section 107(b) of Title 3 of the United States Code." Accordingly, the manner in which he has performed those functions is highly relevant to the question of whether OA is an agency.

Similarly, Ms. Ehrlich is a long-term OA employee who can testify about how OA has actually functioned under both the FOIA and the Federal Records Act, including OA's promulgation of FOIA regulations, both before and after its self-designation as a non-agency. Ms. Ehrlich can also testify about the specific records functions OA has carried out for itself and the EOP that are not delineated in OA's charter documents. And now that OA no longer considers itself as an agency subject to the FOIA, Ms. Ehrlich can testify about her current job duties and how they have changed with the change in OA's thinking on its agency status. It is critical that CREW have access to deposition testimony not only from individuals who can speak to how OA theoretically functions, but those like Ms. Ehrlich who can speak to how OA actually functions.

It is CREW's understanding that OA's chief operating officer generally has responsibility for providing facilities and human resources to all EOP components. Accordingly, that individual can testify to the exact manner in which OA carries out responsibilities to these third

---

[1] Defendant's counsel has committed to making the deponents available in March if the Court permits the depositions to go forward, but has not provided plaintiff with available dates despite plaintiff's request that defendant do so.

parties and the extent to which the chief operating officer has provided guidance and oversight to other EOP components. This testimony will shed light on the degree of independence and authority OA in fact exercises.

Finally, OA's chief information officer, Theresa Payton, provides technical support EOP-wide and can likewise testify to the degree of independence and authority OA actually exercises, as manifested in its guidance, coordination and oversight of other EOP components. Ms. Payton's declaration has already been submitted in this matter and confirms that her office is responsible for providing information technology support EOP-wide.

4. OA's counterproposal that CREW be limited to written discovery only is based on a false premise, fails to take sufficient account of the purpose for which this Court authorized discovery and is facially suspect given OA's objection to the entirety of written discovery CREW has already proposed.

Contrary to defendant's assertion, written discovery is not the most efficient approach. The issue for which the Court has authorized discovery and the time-frame in which that discovery must be completed do not lend themselves to written discovery, with the exception of document requests. Interrogatory responses and admissions are largely crafted by attorneys and are little better than the declaration OA requested it be permitted to provide in lieu of discovery.

Moreover, practically speaking, interrogatories do not allow for follow-up questions, derived from earlier answers. If CREW were limited to paper discovery, CREW would not be able to explore fully the nature and extent of a particular individual's authority without the ability to ask for clarification of responses.

In short, information on the topic of discovery here -- OA's authority over or

responsibilities to third parties and any functions OA carries out beyond those specifically delineated in its charter documents -- is most effectively and efficiently derived from deposition testimony where CREW will have the opportunity to ask necessary follow-up questions and explore the differences, if any, between OA's stated functions and how it actually functions. And while OA claims that the manner in which OA has actually fulfilled its responsibilities is not relevant, this is precisely the question for which the Court has authorized discovery: "evidence regarding OA's authority over or responsibilities to any third parties, including federal agencies, or *of any functions that OA in fact carries out beyond those specifically delineated in its charter documents*." Order of February 11, 2008 at 5-6 (emphasis added).

OA also opposes deposition discovery because it is aimed at the EOP, to which OA claims "high respect" is owed. This argument is circular in that the very reason for the discovery is to ascertain whether OA is an agency that does not exist solely to advise and assist the president. In any event, depositions here are the most stream-lined method to elicit facts on how OA actually functions, as they allow plaintiff to question directly those individuals with greatest personal knowledge of the issues.[2] OA's argument is also undermined by its concession that if CREW is permitted to take depositions, only the deposition of OA's director should be authorized. If the deposition of the highest ranking individual in OA does not pose an undue interference, clearly the depositions of three subordinates will not either. OA's rhetoric aside, there is simply no equivalency between "the Executive Branch, at its highest level"[3] and the four

---

[2] Of note, OA does not argue that there are other, more knowledgeable, deponents than the four CREW has identified.

[3] Cheney v. U.S. District Court, 542 U.S. 3367, 385 (1997). Indeed, in Cheney the government argued that the discovery authorized by the district court, by including the vice

deponents CREW seeks to depose here who have very little, if any, proximity to the president.

Alternatively, OA argues that CREW should be limited to the deposition of only OA Director Alan Swendiman. According to defendant, the proposed depositions of OA's chief information officer and chief operating officer are unlikely to lead to admissible evidence because they will merely confirm that OA provides "purely ministerial" "administrative and support functions." That OA is entrusted with an administrative support function, however, does not answer the question of whether in fulfilling that function it exercises substantial independent authority so as to make it an agency subject to the FOIA. Indeed, the Court has authorized limited discovery precisely to determine whether, in exercising the administrative support functions delegated to OA by its charter documents, "OA acts with the type of substantial independent authority that has been found sufficient to make the Office of Science and Technology, Council on Environmental Quality, and Office of Management and Budget agencies subject to FOIA." Order of February 11, 2008 at 5.

Moreover, OA's proposal is a transparent attempt to prevent CREW (and the Court) from ascertaining how OA actually functions on a day-to-day basis and to control the flow of information, much like OA's proffered declaration in lieu of discovery. Limiting CREW to the deposition of only OA's director would deprive CREW of an opportunity to learn how OA actually implements the more general authority that the director wields over OA, thereby thwarting the very purpose for which discovery has been authorized.

Finally, OA objects to CREW's proposal that the depositions take place during the first

---

president, "threaten[s] 'substantial intrusions on the process by which *those in closest operational proximity to the President* advise the President.'" Id. at 381 (quotation omitted) (emphasis added).

two weeks in March, if possible.  By this request CREW is not seeking to "shorten the time period allowed for conducting depositions," as plaintiff suggests.  Rather, CREW -- well aware of the exigent nature of this case, the need to complete discovery as quickly as possible and the likelihood that last-minute conflicts may require rescheduling -- has merely suggested a time-table that provides the most flexibility if changes are needed, or disputes must be resolved.

### Defendant's Discovery Proposal

Defendant does not intend to take any discovery of its own on the narrow jurisdictional question framed by the Court in its February 11, 2008 Order regarding whether OA is an "agency" as defined in the FOIA.  Defendant respectfully requests that CREW's proposed discovery be limited in the following fashion:

**1.** Defendant believes that given the nature and subject matter of the discovery, the least burdensome and most efficient approach is to limit discovery to written discovery only. Indeed, the Supreme Court has recognized that "[t]he high respect that is owed to the office of the Chief Executive ... is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery."  *Cheney v. United States District Court*, 542 U.S. 367, 385 (2004) (*quoting Clinton v. Jones*, 520 U.S 681, 707 (1997)).  Thus, discovery on the Executive Office of the President should be fashioned to be as unobtrusive as possible.  *See also id.* at 387-88.  Here, the Court has permitted "*very limited* discovery" on the question of OA's "agency" status under FOIA.  Order of Feb. 11, 2008 at 1, 6 (emphasis in original).  The least intrusive manner to conduct discovery on that topic is through written discovery.  At the same time, it is also the most efficient approach because the area of inquiry is such that it can be most fully answered in writing after consultation with various sources.  As the Court noted, "the only

question at issue" is whether in exercising its authority delegated by its charter documents, "OA acts with the type of substantial independent authority that has been found sufficient to make the Office of Science and Technology, Council on Environmental Quality, and Office of Management and Budget agencies subject to FOIA." *Id.* at 5. The three referenced EOP components are agencies subject to FOIA because they have independent authority to issue guidelines to federal agencies, to coordinate and evaluate federal programs, to oversee certain activities of other federal agencies, or to perform other significant statutory duties such as providing budget information to the Congress. *See id.* at 2 (quoting *Armstrong v. EOP*, 90 F.3d 553, 559 (D.C. Cir. 1996)). Whether OA has similar substantial independent authority over matters of public/regulatory policy or federal programs to make it an "agency" as defined in FOIA may require information from various sources, and thus, the most comprehensive response can most likely be obtained through written discovery.

      **2.**      Even if this Court were to permit oral depositions, defendant objects to three of the four depositions proposed by CREW. The depositions of OA's Chief Information Officer and Chief Operating Officer are outside of the limited discovery permitted by this Court because CREW apparently intends to inquire about how the offices headed by those two individuals have been carrying out their functions within the EOP, including for example, the information technology support services and the various administrative support services provided by those two offices. But this Court has already held that "the manner in which OA has actually fulfilled the responsibilities assigned to it" – an area CREW previously has argued as needing discovery – is not relevant here because OA's charter documents already clearly delineate OA's delegated authority. Order of Feb. 11, 2008 at 5 (quoting CREW's Opp'n at 18-19). As the Court found,

10

the language of OA's charter documents "is quite specific, and entirely devoid of the types of 'vague terms'" (*id.* at 3) that would suggest that OA has substantial independent authority to exercise "regulatory power or other functions" over other federal agencies.  *Id.* at 3 (quoting *Armstrong*, 90 F.3d at 559).  While the Court nevertheless permitted limited discovery "out of an abundance of caution," *id.* at 3, discovery is limited to "whether, in exercising that delineated authority, OA acts with the type of substantial independent authority that has been found sufficient to make the Office of Science and Technology, Council on Environmental Quality, and Office of Management and Budget agencies subject to FOIA."  *Id.* at 5.

The proposed depositions of OA's Chief Information Officer and its Chief Operating Officer are unlikely to lead to admissible evidence regarding whether OA has the type of regulatory and/or statutory power over federal programs and policies such as that exercised by the Office of Science and Technology, the Council on Environmental Quality, and the Office of Management and Budget.  As indicated in the declaration of OA's Chief Information Officer, Ms. Theresa Payton, filed in *CREW v. EOP*, Civ. Action Nos. 07-01707, 07-01577 (D.D.C) (J. Kennedy), and also submitted in this action in connection with the parties' dispute as to whether this Court should hold an immediate status conference (dkt. #30), the Office of the Chief Information Officer is responsible for providing informational technology support for the more than 3,000 users within the EOP.  Payton Decl. ¶ 4.  It provides such unified enterprise services as  production support, application development and support, office automation, e-mail, disaster recovery back-up information, continuity of operations support, and intranet capabilities.  The office also safeguards the EOP network, including the infrastructure, web sites, remote access, and data.  *Id.* ¶¶ 4-5.  In other words, that office's function is purely ministerial and within OA's

11

mission to provide common administrative and support services for the EOP components. Indeed, OA's charter documents broadly define OA's delegated authority to include "any other administrative support or service which will achieve financial savings and increase efficiency through centralization of the support services." Exec. Order No. 12028 § 3(b)(6). OA's provision of centralized information technology support for the entire EOP is precisely the type of administrative support envisioned by the charter documents

Similarly, the primary role of the Office of the Chief Operating Officer is to "manage[] human resources, library, office supply, receiving and warehousing, duplicating, facilities management, telecommunications, and mail/messenger functions." (Dkt. #20, Ex. 1 at OA-3). As OA's charter documents make clear, these centralized administrative and support functions are precisely why OA was created in the first place. *See* Exec. Order 12028 § 3(b).

While both of those operating units of OA do interact with other components of the EOP, those interactions would not transform OA into an "agency" within the meaning of FOIA. Indeed, pursuant to Presidential directive and in order to carry out its mission of providing centralized, common administrative and support services to the entire EOP, these offices necessarily must interact with all components of the EOP or outside vendors and/or entities. Discovery as to those specific interactions will not reveal whether OA in fact "wield[s] *substantial authority independently* of the President." *Sweetland v. Walters*, 63 F.3d 852, 854 (D.C. Cir. 1995) (emphasis added). Put differently, because both of those offices perform functions specifically delegated by the President, even if they are deemed to have "oversight" responsibilities over those administrative functions, it still would not make OA an "agency" subject to FOIA. A FOIA agency's substantial authority must be independent of the President.

It is for that reason that the National Security Council, an EOP component, is not an "agency" within the meaning of FOIA despite its authority to supervises others in the Executive Branch. *See Armstrong*, 90 F.3d 553.

The proposed deposition of OA's prior Freedom of Information Act Officer, Carol Ehrlich, is similarly unnecessary. While CREW apparently intends to inquire about how OA has functioned under the Federal Records Act and FOIA, including OA's promulgation of FOIA regulations, those issues are not relevant to whether OA in fact has the type of substantial independent authority over matters of public/regulatory policy or federal programs to make it an "agency" as defined in FOIA. Moreover, OA has admitted that in the past, it viewed itself as being subject to FOIA. OA's FOIA regulations date back to 1980, and OA processed FOIA requests between that time and until this litigation. OA has not taken the position in prior litigation that it is not subject to FOIA. As the D.C. Circuit has held, however, past conduct is not probative on the question of whether an EOP unit does, in fact, satisfy FOIA's definition of "agency." *See Armstrong*, 90 F.3d at 565 ("The [National Security Council]'s prior references to itself as an agency are not probative on the question before the court – whether the NSC is indeed an agency within the meaning of the FOIA; quite simply the Government's position on that question has changed over the years."). In light of OA's admissions, there is no need to depose Ms. Ehrlich regarding how OA has functioned under the Federal Records Act and FOIA.

Finally, CREW states that it wishes to depose Ms. Ehrlich also because she is a long-term staff of OA, and because now that OA no longer considers itself as an agency subject to FOIA, she can testify about her current job duties and how they have changed. It is unclear why Ms. Ehrlich's current job duties as compared to her past job duties would shed light on whether OA

has carried out its functions beyond those specifically delineated in its charter documents. Indeed, Ms. Ehrlich has held only administrative support and/or FOIA related positions within OA (and none relating to any records functions OA has carried out for the EOP, as CREW speculates), and is not in a position to speak about whether OA has acted outside of its delegated authorities. The deposition, therefore, would likely be turned into a fishing expedition.

As for the proposed deposition of OA's Director, Mr. Alan Swendiman, OA will make every effort to make him available if the Court should require his deposition, even if he is no longer OA's Director at that time.

3. If the Court were to permit CREW's proposed depositions to proceed, defendant further objects to CREW's proposal that the depositions take place during the first two weeks in March. Defendant has committed to making deponents, who are OA employees, available in March if the Court allows the depositions to go forward, and indeed, the Court's February 11, 2008 Order allows the parties to have up to and including March 28, 2008 to conduct discovery. Defendant has also indicated to CREW's counsel that it would make every effort to schedule the depositions in the first two to three weeks of March. There is no basis for CREW's request to shorten the time period allowed for conducting depositions to the first two weeks of March.

4. Defendant submits that all except for two of CREW's document requests are outside of the scope of the limited discovery permitted by this Court because they are based on the incorrect assumption that if OA's authority to perform the administrative support services for the other EOP units is substantial enough, that would transform OA into an "agency" within the definition of FOIA. But as noted above, no matter how significant OA's administrative support functions are, OA's authority to performance those functions is not independent of the President

14

because it is specifically delegated by the charter documents.  Even if OA has significant latitude

in carrying out its mission of providing administrative support services to EOP units, it still does

not have the type of independent regulatory or statutory power as that possessed by the EOP

units found to be FOIA agencies.

Furthermore, defendant has the following specific objections to CREW's document

requests:

Request No. 1 – Defendant objects to this document request to the extent it seeks

the organizational structure of OA from 1977 to the present.  As the Court has specifically held,

CREW's request for discovery regarding "the staffing and *organization structure of OA*" is

"entirely misplaced" because OA has acknowledged that it has a self-contained structure such

that it would be in a position to exercise substantial independent authority if it were delegated

that authority.  Order of Feb. 11, 2008 at 5 (emphasis added).

Request No. 2 – This document request seeks all record disposition schedules OA

has submitted to the National Archives and Records Administration from 1977 to the present.

This request is not relevant to the question of OA's "agency" status because to the extent OA

performs any record management functions for other components of the EOP, that is a

quintessentially administrative function contemplated by OA's charter documents and would not

suggest any "substantial independent authority" on the part of OA over matters of public or

regulatory policy, such as that exercised by those EOP units found to be FOIA agencies.

Request Nos. 3, 4, 8 – Defendant objects to these requests, which seek documents

relating to the implementation of the Presidential Records Act and the Federal Records Act

(request No. 3), to OA's retention of its records (request No. 4), and to OA's implementation of

FOIA.  How OA has been preserving or disposing of its records and whether it is doing so pursuant to the Presidential Records Act or the Federal Records is the subject of CREW's other lawsuit filed against OA and the EOP currently pending before Judge Kennedy.  It is not relevant to the issue of whether OA has the type of substantial independent authority such as that exercised by those EOP units found to be FOIA agencies.  To the extent CREW seeks to determine whether OA previously deemed itself an "agency" subject to the FOIA or the Federal Records Act, that question is not in dispute.  As already discussed above, OA previously considered itself an "agency" within the meaning of FOIA.  It previously also operated as if it were subject to the Federal Records Act.  There is no need to conduct discovery on these questions.

　　　　　<u>Request No. 5</u> – This request seeks a Directive issued by the Director of the Central Intelligence Agency ("CIA") that OA's Office of Security and Emergency Preparedness uses when reviewing background investigation after field investigation has been conducted by the Federal Bureau of Investigation.  As its name suggests, the Office of Security and Emergency Preparedness is responsible for EOP's security and emergency preparedness programs.  The CIA directive is not relevant to the limited discovery here because even if it reveals how OA approves background investigations pursuant to the directive, it still would not shed light on whether OA has the type of substantial independent authority to make it an "agency."

　　　　　<u>Request Nos. 6 and 9</u> – Defendant objects to these two requests.  They seek documents relating to OA's computer network technology, the Enterprise Architecture (request No. 6), and OA's policy on usage of computers in the EOP network (request No. 9).  Again, it is undisputed that OA provides information technology support for the entire EOP.  It maintains as

well as safeguards the EOP network, including the infrastructure. The documents requested here would not shed light on whether OA therefore is or is not a FOIA "agency" because to the extent OA exercises authority in acquiring, designing, maintaining, and safeguarding the EOP network, that authority is delegated by its charter documents. Should this Court nevertheless find these document requests to be within the scope of the limited discovery here, then appropriate protective order would have to be entered to protect such sensitive information as the technological infrastructure of EOP's computer network.

   <u>Request No. 7</u> – Defendant objects to this request, which seeks all documents relating to OA's exercise of its contracting authority, including but not limited to requests for proposals, Source Sought Notices, and Presolicitation Notices from 2001 to the present. There is no dispute that OA does the contracting and procurement for the EOP units because that is the type of administrative service that would "achieve financial savings" and "increase efficiency through centralization." Exec. Order 12028 § 3(b)(6). Moreover, subject to such direction or approval as the President may provide or require, the OA Director is specifically authorized to "contract for supplies and services . . . ." Exec. Order 12122 § 4. Documents relating to OA's contracting authority, which OA does not dispute that it has, therefore would not suggest that OA exercises substantial authority independently of the President.

   <u>Request No. 10</u> – This request seeks all directives, manuals and handbooks prepared by OA relating to OA's policy decisions and administrative management activities and included in the subject files of OA's deputy director. Counsel for CREW indicated that the document request is intended to capture not only those directives, manuals and handbooks issued to other EOP units but also those issued to only the OA staff that reflect OA staff's performance

of their functions vis-a-vis other EOP components.  Defendant objects to this document request

to the extent it seeks those materials that were issued to only the OA staff.  As noted before, in

order for OA to carry out its mission of providing administrative support services to the various

EOP components, it must necessarily interact with those components.  OA's internal documents,

if they exist, regarding how to do so would not indicate that OA has the type of substantial

independent authority to make it an "agency."

     **5.**     Finally, defendant objects to CREW's proposal that OA respond to its documents

requests within 10 days.  Again, this Court has permitted the parties until March 28, 2008 to

conduct discovery, which is already an expedited discovery schedule.  If the Court finds that the

document requests are within the scope of the limited discovery permitted by the Court, OA will

diligently respond to CREW's document requests (within the limitations imposed by its other

administrative and litigation responsibilities and burden) and produce the responsive documents

on a rolling basis by March 28, 2008.

**<u>Proposed Briefing Schedule</u>**

     The Court's February 11, 2008 Order provides that "the parties' proposed briefing

schedule should reflect the exigent nature of the case."  The parties propose the following

schedule for revised briefing of OA's dispositive motion on the issue of its agency status:

| | |
|---|---|
| April 25, 2008: | Defendant to file its revised brief |
| May 9, 2008: | Plaintiff to file is opposition |
| May 16, 2008: | Defendant to file its reply brief. |

Respectfully submitted,

____/s/_____                  _____/s/_____
Anne L. Weismann                               Elizabeth J. Shapiro (D.C. Bar No. 418925)
(D.C. Bar No. 298190)                          Jean Lin
Melanie Sloan                                  Federal Programs Branch, Civil Division
(D.C. Bar No. 434584)                          United States Department of Justice
Citizens for Responsibility and Ethics         20 Massachusetts Ave., N.W.
in Washington                                  Washington, D.C.  20530
1400 Eye Street, N.W., Suite 450               Tel: (202) 514-3716
Washington, D.C. 20005                         Fax: (202) 616-8407
Phone: (202) 408-5565                          Attorneys for Defendant
Fax: (202) 588-5020
Attorneys for Plaintiff

Dated:  February 21, 2008

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND | ) |
| ETHICS IN WASHINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil No. 07-0964 (CKK) |
| | ) |
| OFFICE OF ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

_____)

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**
**AND THINGS TO DEFENDANT OFFICE OF ADMINISTRATION**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and the Court's Order of

February 11, 2008 (Document 33), plaintiff Citizens for Responsibility and Ethics in Washington

("CREW") hereby submits the following  First Set of Requests for Production of Documents and

Things to Defendant Office of Administration ("OA").  Defendant shall respond in writing and

produce and permit the inspection and copying of the responsive documents and tangible things

within 10 days of service hereof.  Defendant shall produce the requested documents and things

for inspection at the offices of CREW, 1400 Eye Street, N.W., Suite 450, Washington, D.C.

20005.

**INSTRUCTIONS**

1. These requests extend to all documents in your possession, custody or control, or of

anyone acting on your behalf.  A document is in your possession, custody or control if it is in

your physical custody or if it is in the physical custody of any other person and you:

(a) own such document in whole or in part;

(b) have a right, by contract, statute or otherwise, to use, inspect, examine,

or copy such document on any terms;

    (c) have an understanding, express or implied, that you may use, inspect, examine or copy such document on any terms; or

    (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when you sought to do so.

2.  The documents produced in response to these requests shall be (i) organized and designated to correspond to the categories in these requests, or (ii) produced as they are maintained in the normal course of business.

3.  If, in answering these requests, you claim that any request, or a definition or instruction applicable thereto, is ambiguous, set forth the matter deemed ambiguous and the construction used in answering.

4.  If a document called for by these requests has been destroyed, lost, discarded, or otherwise disposed of, identify such document as completely as possible including, without limitation, the following information:  author(s), recipient(s), sender(s), subject matter, date prepared or received, date of disposal, manner of disposal, reason for disposal, person(s) authorizing the disposal, person(s) having knowledge of the disposal and person(s) disposing of the document.

5.  In the event that more than one copy of a document exists, produce every copy on which there appears any notation or marking of any sort not appearing on any other copy, or any copy containing attachments different from any other copy.

6.  Produce all documents in their entirety, without abbreviation or redaction, including both front and back thereof and all attachments or other matters affixed thereto.

7.  If you claim any form of privilege, whether based on statute or otherwise, as a ground

for not responding to a document request or any part thereof, provide the reason for such

objection or the ground or the actual basis, if any, on which the privilege or other ground is

based, including sufficient facts to permit the Court to make a determination as to whether the

claim of privilege is valid.

8.  Whenever used herein, the singular shall be deemed to include the plural and the

plural shall be deemed to include the singular; the masculine shall be deemed to include the

feminine and the feminine shall be deemed to include the masculine; the disjunctive (or) shall be

deemed to include the conjunctive (and) and the conjunctive shall be deemed to include the

disjunctive; and each of the functional words "each," "every," "any," and "all" shall be deemed

to include each of the other functional words.

10.  These document requests are continuing in nature.  Documents and tangible things

sought by these requests that you obtain or discover after you serve your answers must be

produced to counsel for plaintiff by supplementary answers or productions.

### DEFINITIONS

1.  "Document(s)" and "documentation" mean the complete original, or a true, correct

and complete copy of any written or graphic matter, no matter how produced, recorded, stored,

or reproduced, including without limitation writings and communications of whatever type,

nature, or description, whether typed, handwritten, printed or otherwise, as well as all tape

recordings, computer tapes, disks, CDs and other electronic or mechanical recordings, however

produced or reproduced, including information stored in a computer, whether or not ever printed

out or displayed, photographs, drawings, graphs, charts, and other data compilations.  The term

"document" also includes both the original and each and every copy of the original that differs in

any significant respect from the original. A draft of a non-identical copy is a separate document within the meaning of the term.

2. "Person(s)" includes any individual, alive or deceased, company, association, corporation, governmental entity, organization, partnership, joint venture, sole proprietorship, commission, department, committee, board, or agency.

3. "Writing(s)" means handwriting, typewriting, printing, photostating, photographing, magnetic, mechanical or electronic recording and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, numbers, sounds, or symbols, or combinations thereof.

4. "Executive Office of the President" and "EOP" refer to each and every office of the Executive Office of the President, including the Council of Economic Advisers, the Council on Environmental Quality, the Office of Administration, the Office of Management and Budget, the Office of National Drug Control Policy, the Office of Science and Technology Policy, the President's Foreign Intelligence Advisory Board, the United States Trade Representative and the White House Office.

5. "You" and "your" refer to defendant OA.

6. "Identify" and "describe" mean:

   (a) as to an entity: name, address(es), telephone number, type of entity and the address of its principal place of business and registered agent;

   (b) as to a document: the type of document (letter, memo, email, etc.), the identity of the author or originator, the date authored or originated, the identity of each person to whom the original or copy was addressed or delivered, the identity of such person known or reasonably believed by you to have present possession, custody, or control thereof, and a brief description of the subject matter thereof, all with sufficient particularity to request its production under Rule 34 of the Federal Rules of Civil

Procedure;

(c) as to a communication:  the date of the communication, the type of communication (telephone conversation, meeting, etc.), the place where the communication took place, the identity of the person who made the communication, the identity of each person who received the communication, each person present when it was made and the subject matter discussed;

(d) as to a meeting:  the date of the meeting, the place of the meeting, each person invited to attend, each person who attended and the subject matter discussed.

7.  "Included" means "including but not limited to."

8.  Unless words or terms have been given a specific definition, each word or term shall have its usual and customary dictionary definition.

## REQUEST FOR PRODUCTION NO. 1

All documents that show the organizational structure of OA as well as how OA fits into the organizational structure of the EOP from 1977 to the present.

## REQUEST FOR PRODUCTION NO. 2

All records disposition schedules OA has prepared and/or submitted to the National Archives and Records Administration from 1977 to the present.

## REQUEST FOR PRODUCTION NO. 3

All documents relating to the implementation of the Presidential Records Act and the Federal Records Act that mention and/or apply in whole or in part to OA from 2001 to the present.

## REQUEST FOR PRODUCTION NO. 4

All documents relating to OA's retention of its records, whether presidential or federal, from 2001 to the present.

**REQUEST FOR PRODUCTION NO. 5**

Document D-SKID 6.8 identified by James Knodell, OA's Chief Security Officer for the Office of Security and Emergency Preparedness, during his testimony before the House of Representatives Committee on Oversight and Government Reform on March 16, 2007, in response to a request that he identify a document stating the policy of his office concerning the initiation of an administrative investigation.

**REQUEST FOR PRODUCTION NO. 6**

All documents comprising the Enterprise Architecture as defined in OMB Circular A-130 that OA submitted to the House and Senate Committees on Appropriations in Fiscal Years 2002, 2003 and 2004.

**REQUEST FOR PRODUCTION NO. 7**

All documents relating to OA's exercise of its contracting authority, including but not limited to requests for proposals (RFPs), Source Sought Notices (SSNs) and Presolicitation Notices from 2001 to the present.  This request includes, but is not limited to, documents relating to RFPs, SSNs, or Presolicitation Notices with the following Solicitation Numbers (as detailed on the website www.fedbizopps.gov):  EOPOA23002A, EOPOA-26002, OAS-S-06-0011, CIO-07-001, OA-S-07-0003, UST-GEN-R-08-0007, EOPOA23008A, EOPOA2005FC, RZZ23141, RWH24019, EOPSSN, EOPSSN1.

**REQUEST FOR PRODUCTION NO. 8**

All documents relating to OA's implementation of the Freedom of Information Act ("FOIA") from 1980 to the present, including but not limited to any and all manuals, guidance and logs documenting FOIA requests received by OA.  This request does not include OA's

responses to specific FOIA requesters.

**REQUEST FOR PRODUCTION NO. 9**

The information assurance plan and/or information management plan most recently

prepared by OA.

**REQUEST FOR PRODUCTION NO. 10**

All directives, manuals and handbooks prepared by OA relating to OA's policy decisions

and administrative management activities and included in the subject files of OA's deputy

director.

Respectfully submitted,

_____/s/_____
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and Ethics
   in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20530
Telephone:  202-408-5565
Fax:  202-508-506

Attorneys for plaintiff

Dated:  February 21, 2008

7