# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZEN FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )  Civil Action No: 1:07-CV-00964 (CKK) |
| OFFICE OF ADMINISTRATION, | ) ) ) |
| Defendant. | ) ) |

## PLAINTIFF'S MOTION TO COMPEL OR ALTERNATIVELY TO AMEND THE COURT'S ORDER OF MARCH 30, 2008 TO REQUIRE DEFENDANT TO PRODUCE THE OLC OPINION ADDRESSING OA'S AGENCY STATUS AND SUPPORTING MEMORANDUM

### STATEMENT

Rejecting the Office of Administration's ("OA") argument that when it purportedly ceased functioning as an agency is irrelevant to the legal issue of whether it is an agency, this Court ordered OA to produce any documents in its possession or control reflecting its final decision that it is subject to neither the Freedom of Information Act ("FOIA") nor the Federal Records Act ("FRA").  In response, OA now claims no such documents exist, despite OA's earlier representation that its extended deliberations on the agency question concluded with a final written decision.  OA also asks this Court to accept its unsworn representation that a legal memorandum provided by the Department of Justice's Office of Legal Counsel ("OLC") on August 21, 2007 -- the very day that OA claims to have made its final decision on this issue -- is not responsive to this Court's order and need not be produced.

What OA ignores, however, is that OLC opinions have a binding and conclusive effect on the executive branch; while the president, of course, was free to reject the OLC's conclusion

OA was not.  Accordingly, any final decision OA made as to its agency status under the FOIA necessarily incorporated the OLC opinion.  In other words, absent a separate written final decision from OA, the OLC opinion is the final executive branch decision on OA's agency status.  As such, it must be produced to plaintiff.

## **BACKGROUND**

This latest discovery dispute stems from the Court's Order of March 31, 2008, requiring OA, *inter alia*, to produce the following:

> any document(s) in OA's possession or control reflecting (1) OA's final decision after its deliberative process concluded regarding whether OA was an agency subject to FOIA; and (2) OA's final determination that it was subject to the PRA rather than the FRA . . ."

Order of March 31, 2008, p. 2.  The Order further provides that if OA is asserting a privilege over any document responsive to the Order OA must, in lieu of producing the document, "produce a privilege log regarding those documents that sets forth the date of the documents in question and the legal grounds for any privilege(s) asserted . . ."  Id.

The Court issued this order after conducting a conference call with the parties on March 28, 2008.  During that call the Court posed a number of questions to OA's counsel related to plaintiff's motion to compel defendants to respond to plaintiff's third set of document requests.  Plaintiff seeks documents that reflect when OA stopped functioning as an agency subject to the FOIA, the FRA and any other statute governing federal agencies.

During the call the Court pointed out that a 1978 memorandum concluded that OA was an agency subject to FOIA.  Transcript of Conference Call (attached as Exhibit A), p. 5.  From this the Court sought to learn whether a written document was ever created "that rescinded the

interpretation in the 1978 memorandum . . ." <u>Id.</u> at p. 6.  In response, OA counsel stated "I do

believe that there is," referring to the existence of a written conclusion of OA's deliberative

process.[1]  OA's counsel also confirmed that "a decision was reached shortly before OA filed its

dispositive motion August 2007." <u>Id.</u> at p. 6.

On April 7, 2008, OA filed its first response to the Court's order.  Rather then producing

any documents or otherwise claiming privilege, OA asserted for the first time -- and contrary to

its earlier representation -- that OA "does not have a document that represents the final decision

that OA is not subject to FOIA."  Defendant's Response to the Court's March 30, 3008 Order

(Document 42) (D's Resp.") at p. 1.  OA further confirmed that its final decision "was made on

August 21, 2007" -- the same day it filed its dispositive motion in this case.  <u>Id.</u> at p. 2.  OA also

revealed that before filing its motion the OLC "provided legal advice to the White House

Counsel's Office regarding OA's status under FOIA," and that this advice "was formalized in a

memorandum . . . dated August 21, 2007," which OA described as "not the final decision . . ."

<u>Id.</u>  OA termed the OLC memorandum "not responsive to the Court's instructions " and the

Order of March 30, 2008, and therefore did not produce the OLC opinion  <u>Id.</u>

## ARGUMENT

### THE COURT SHOULD COMPEL DEFENDANT TO PRODUCE THE OLC OPINION, WHICH IS THE FINAL DECISION OF THE EXECUTIVE BRANCH ON THE ISSUE OF OLC'S AGENCY STATUS.

This Court has already recognized that documents establishing when OA ceased

complying with the FOIA and the FRA are relevant and must be considered by the Court,

---

[1] <u>Id.</u> at p. 9.

because they "give[] the context of determining whether OA is or is not an agency subject to FOIA." Transcript of Conference Call at p. 4. The Court has also recognized that the factual record in this regard "is not as crystal clear as it might be." Id. This need for context and lack of clarity underlie the Court's order requiring OA to produce all final decision documents.

The OLC opinion, while not generated internally by OA, represents the final legal opinion of the Department of Justice's Office of Legal Counsel. As such, it also represents the final decision of the executive branch on OA's agency status under the FOIA and must be treated as the final decision document on this issue.

The OLC is charged with providing definitive legal advice "to the President and all the executive branch agencies," and issuing written opinions in response to requests from, among others, the Counsel to the President. USDOJ: Office of Legal Counsel Homepage, available at http://www.usdoj.gov/olc/index.html. OLC opinions "typically deal with legal issues of particular complexity and importance or about which two or more agencies are in disagreement." Id. OLC's authority to issue these definitive opinions stems from the authority of the attorney general to render opinions to heads of executive departments "on questions of law arising in the administration of his department." 5 U.S.C. § 512. The attorney general, in turn, has delegated this authority to the OLC by virtue of the delegation authority contained in 5 U.S.C. § 510. Specifically, the attorney general has assigned to the OLC the responsibility to, *inter alia*, "[p]repar[e] the formal opinions of the Attorney General . . ." 28 C.F.R. § 0.25(a). [2]

---

[2] The official Department of Justice website describes OLC's authority as follows:

> The authority of the Office of Legal Counsel to render legal opinions is derived from the authority of the Attorney General. Under the Judiciary Act of 1789, the Attorney General was

While OLC opinions are not binding on the courts,[3] they are binding on the executive branch "until withdrawn by the Attorney General or overruled by the courts."  Public Citizen v. Burke, 655 F.Supp. 318, 321-22 and n.5 (D.D.C. 1987), *citing* Smith v. Jackson, 246 U.S. 388, 390-91 (1918); U.S. Bedding Co. v. U.S., 55 Ct.Cl. 459, 460-61 (1920).[4]  See also Randolph D. Moss, Recent Developments Federal Agency Focus:  The Department of Justice:  Executive Branch Legal Interpretation:  A Perspective From The Office of Legal Counsel, 52 ADMIN. L. Rev. 1303, 1305 (Fall 2000) ("The legal advice of the Office [of Legal Counsel], often embodied in formal written opinions, constitutes the legal position of the executive branch, unless overruled by the President or the Attorney General.").[5]

The seminal role that the OLC opinion had here on the position of the White House that the OA is not an agency is confirmed by the date of its issuance and the absence of any countervailing decision by the president.  OA identified August 21, 2007 as the date on which "the final decision on that issue [OA's agency status under the FOIA] was made."  D's Resp. at

---

authorized to render opinions on questions of law when requested by the President and the heads of executive departments.  This authority is now codified at 28 U.S.C. §§ 511-513.  Pursuant to 28 U.S.C. § 510 the Attorney General has delegated to the Office of Legal Counsel responsibility for preparing the formal opinions of the Attorney General . . .

http://www.usdoj.gov/olc/opinions.htm.

[3] See, e.g., Nat'l Mining Ass'n v. Slater, 167 F.Supp.2d 265, 284 n.18 (D.D.C. 2001).

[4] While these cases address the binding effect of attorney general opinions they are equally applicable to OLC opinions where OLC is exercising the authority of the attorney general.

[5] At the time that he wrote this article Mr. Moss was an assistant attorney general in the Department of Justice and head of the OLC.

p. 2.  That date is also when OLC issued its written opinion and OA filed its motion for judgment

on the pleadings arguing, for the first time, that OA is not subject to the FOIA.  See id.

According to OA, it has no other document "that represents the final decision that OA is not

subject to FOIA."  Id. at p. 1.  The absence of any other final agency decisional document

confirms, at least implicitly, that neither the president nor the attorney general countermanded

the otherwise conclusive and binding opinion of the OLC.  Accordingly, the OLC opinion is the

final decision of the executive branch -- including OA -- on OA's status under the FOIA and

must be produced under the express terms of the Court's order.  See Order of March 31, 2008, p.

2 (requiring OA to produce any document "in OA's possession or control *reflecting* (1) OA's

final decision after its deliberative process concluded regarding whether OA was an agency

subject to FOIA . . ." (emphasis added)).[6]

     The Court also ordered OA to submit a privilege log for any document it was not

producing.  For the OLC opinion, OA has produced no privilege log or otherwise suggested the

document is subject to a privilege.  Such a claim, in any event, could not succeed given that the

opinion was adopted as OA policy.

     In other litigation the government has refused to produce OLC opinions claiming they are

exempt under both the deliberative process and attorney-client privileges.  See, e.g., CREW v.

Nat'l Archives and Records Admin., Civil No. 07-048 (RBW) (NARA withheld OLC advice

memorandum pursuant to Exemption 5 of the FOIA, claiming it was protected under the

attorney-client and deliberative process privileges).  Neither privilege is available here, as the

_____

    [6] By requiring OA to produce any document "reflecting" OA's final decision, the Court
extended the production obligation beyond those documents directly authored by OA to include
documents such as the OLC opinion that "reflect" OA's final decision.

OLC opinion represents the final opinion of the government.  See Brinton v. Dep't of State, 636 F.2d 600, 605 (D.C. Cir. 1980) ("[t]he rationale underlying the 'final opinion' exception to the deliberative process rule is to prevent agencies from developing a body of 'secret law' veiled by the privilege of Exemption 5." (citation omitted)).

As the Second Circuit concluded under similar circumstances, an OLC memorandum prepared for the Department of Justice was not subject to a valid claim of privilege because the agency had adopted or incorporated the opinion into official agency policy.  Nat'l Council of LaRaza v. Dep't of Justice, 411 F.3d 350 (2d Cir. 2005).  The court reasoned that once an agency adopts a document as its policy "the principal rationale" behind both the attorney-client privilege and the deliberative process privilege "evaporates; for once an agency adopts or incorporates [sic] document, frank communication will not be inhibited."  411 F.3d 360.  Indeed, recognizing a claim of privilege over the OLC opinion "would permit legal opinions, recognized as authoritative interpretations within the agency, to be hidden from the public . . . it is clear that the purpose of the privilege is not to protect communications which are statements of policy and interpretations adopted by the agency."  Id. at 360-61 (quotation omitted).

These same principles lead inescapably to the conclusion that the OLC opinion must be produced both because it is covered by the Court's order and it is not subject to any valid claim of privilege.  Should there be any doubt that OA must produce the document under the terms of the March 31 Order, the Court should amend the order to require production of the OLC opinion.  While not dispositive of the issue here,[7] it is not without relevance.  In Armstrong v. Executive

---

[7] See, e.g., Nat'l Mining Ass'n v. Slater, 167 F.Supp.2d 265, 284 n.18 (D.D.C. 2001) (OLC opinion not binding on the court).

<u>Office of the President</u>, 90 F.3d 553, 557 (D.C. Cir. 1996), the D.C. Circuit considered a record

that included an OLC opinion in deciding whether the National Security Council was an agency

subject to the FOIA.  There, as here, it was one of a number of documents that "give[] the

context of determining whether [OA] is or is not an agency subject to FOIA."  Transcript of

Conference Call at p. 4.  Similarly, this Court should have the benefit of reviewing the OLC

opinion in deciding whether OA is an agency subject to the FOIA.

**CONCLUSION**

For the foregoing reasons, the Court should grant plaintiff's motion to compel and order

defendant to produce immediately the August 21, 2007 OLC opinion addressing OA's status as

an agency under the FOIA.

Respectfully submitted,

_____/s/_____
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and Ethics
  in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20530
Telephone:  202-408-5565
Fax:  202-508-506

Attorneys for plaintiff

Dated:  April 14, 2008

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,                    CA No. 07-964
            Plaintiff,                   Washington, DC
                                         March 28, 2008
        vs.                              9:15 a.m.

OFFICE OF ADMINISTRATION,
        Defendant,


JUDICIAL WATCH, INC.
        Movant.
_____


TRANSCRIPT OF CONFERENCE CALL
BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:          ANNE L. WEISMANN, ESQUIRE
  via telephone             Citizens for Responsibility
                              and Ethics
                            1400 Eye Street, NW
                            Suite 450
                            Washington, DC  20005
                            (202) 588-5020


For the Defendant:          JEAN LIN, ESQUIRE
  via telephone             JOHN R. TYLER, ESQUIRE
                            U.S. Department of Justice
                            20 Massachusetts Avenue, NW
                            Suite 7218
                            Washington, DC  20530
                            (202) 514-3716

Court Reporter:                    Lisa M. Hand, RPR
                                   Official Court Reporter
                                   U.S. Courthouse, Room 6505
                                   333 Constitution Avenue, NW
                                   Washington, DC  20001
                                   (202) 354-3269

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

```
 1                    P R O C E E D I N G S
 2            MS. LIN:  I have John Tyler of my office.
 3            THE COURT:  That's Ms. Lin?
 4            COURTROOM DEPUTY:  Yes, Ms. Lin and Mr. Tyler.
 5            THE COURT:  All right.  Let me go ahead and call
 6     the case and have you identify yourself.  I have a court
 7     reporter here.  This is in the matter of CREW versus the OA,
 8     07cv964.  And we have Ms. Weismann for the plaintiffs.  Do you
 9     have anybody else on the line, Ms. Weismann?
10            MS. WEISMANN:  No, I do not, Your Honor.
11            THE COURT:  Okay.  And for the defendant we have
12     Ms. Lin and John Tyler, is that correct?
13            MS. LIN:  Yes.
14            THE COURT:  As we have done before, if you would --
15     let me call on you to answer so that we make sure that we have
16     a record, and then if somebody does speak, you need to give
17     your name so we make sure we ascribe the comments to the right
18     people.
19            Now, I'm calling about the plaintiff's motion to
20     compel.  So, let me set out in very summary form what I see
21     here.  I have some additional questions and information, I'm
22     hoping to cut through the motion and get this resolved by
23     having this discussion with you.  So, in terms of -- as I
24     understand it, the substance of CREW's motion is basically
25     four parts in terms of asking for documents reflecting a date
```

1   or dates on which OA first stopped functioning as an agency

2   subject to FOIA.  To stop functioning as an agency subject to

3   the Federal Records Act.  Three, started functioning as an

4   entity subject to the Presidential Records Act.  And, four,

5   stopped functioning as an agency under any other federal

6   statute.

7           I would just note to begin with that by phrasing it

8   as agency, that basically is the legal conclusion of the

9   ultimate issue here of whether OA is an agency.  So, I'm not

10  going to discuss it in that context, that's the decision that

11  the Court ultimately will be making.  Now, in summary form,

12  OA's opposition is in essence that when OA stopped functioning

13  under FOIA is not probative of the question of whether OA

14  should have done so or not.  That the general time line has

15  been given, and that this is not a dispositive issue.

16          Now, the problem I see from OA's perspective is

17  that it's true that it's not dispositive, but it is something

18  that the Court has to consider.  It gives the context of

19  determining whether OA is or is not an agency subject to FOIA.

20  And although there's certain things that appear not to be in

21  dispute, the time line -- having looked very quickly at the

22  deposition and some of the other materials that were

23  provided -- is not as crystal clear as it might be.  So, from

24  my perspective, I think a better factual record than we

25  currently have is probably important.

1          So, let me indicate to you what I see as the

2   answers to a number of specific questions that relate to

3   CREW's document requests.  And in the event that OA has

4   documents in its possession or control, they're responsive to

5   one of the questions I'm going to ask you, then it should be

6   produced if you haven't already.  If you don't have such

7   documents, in other words, this has been oral discussions or

8   something that's been done without specific documentations,

9   then I think it may be important to provide it in the form of

10  an affidavit, so I at least have and we all have the same

11  information for the Court to consider, at least the context of

12  the decision that OA made about whether or not it's subject to

13  the FOIA requirements.  As I said, it's not dispositive, but

14  it is certainly a factor that the Court can consider.

15         I have a series of questions, and what I would ask

16  is that if defense counsel, either Ms. Lin or Mr. Tyler, would

17  answer it, if you know the answer.  If you don't, then this

18  would be something that I would ask that you get.  The first

19  one is:  CREW previously brought to the Court's attention a

20  1978 memorandum that concluded that OA was an agency subject

21  to FOIA.  Now, the OA Director Swendiman testified in his

22  deposition that he was orally informed that OA was not an

23  agency subject to FOIA when he came on board in November

24  of 2006.  So, I think that -- those two aspects of it we have

25  on the record.

1              Now, the question that I have is, was this

2    understanding that he was given ever committed to writing?  In

3    other words, was there a document ever created that rescinded

4    the interpretation in the 1978 memorandum, and it could be in

5    any form, but is there something in writing?  So, Ms. Lin, if

6    you could answer that.

7              MS. LIN:  Your Honor, I do not know whether there

8    was any writing that reflects what Mr. Swendiman testified to

9    as to what he was orally informed in November 2006.  What we

10   do know took place, based on Mr. Swendiman's testimony, was

11   that a deliberative process had begun prior to his tenure at

12   OA, and that continued, and because of the significance of the

13   issue and the implications, that deliberation required

14   collaboration and extensive analysis that took over a period

15   of time, and that a decision was reached shortly before OA

16   filed its dispositive motion August 2007.

17             So, it's not -- and the reason that there's no

18   crystal clear timeframe is because there was extensive

19   deliberations, and that occurred over a period of time, so

20   it's not one moment in time that everything changed.

21             THE COURT:  Okay.  If I can do a follow-up then,

22   Ms. Lin.  I would have you check if there's anything in

23   writing, and it doesn't have to be rescinding the '78

24   memorandum, but something that sets out a conclusion from

25   this -- what you've called a deliberative process.  In other

1    words, is there something in writing that says, you know, OA

2    is not subject to FOIA or does not have to follow the Federal

3    Records Act or that we are no longer going to accept for

4    processing FOIA requests.  I don't care how it's worded, but

5    is there something actually in writing.  If you don't know,

6    I'd ask that you find that out.

7            MS. LIN:  Your Honor, I'll find that out, but let

8    me make sure I understand the question.  Are you talking about

9    as of November 2006?

10           THE COURT:  Any time.  Look, what I'm asking is, in

11   '78 you had a memo that said:  OA is subject to it.  At any

12   time after that, other than -- you obviously, in writing, in

13   this litigation, took the position that OA is not an agency

14   subject to FOIA, and that it's subject to the Presidential

15   Records Act, and those are two slightly different things, and

16   I understand that.  But the question I have for you -- at any

17   point, whether it's -- the two things we know is the '78 memo,

18   and we know that OA Director Swendiman, I guess he's Former

19   Director, testified that he was orally informed that OA was

20   not an agency subject to FOIA.

21           Now, what I'm asking is, at any point since '78 to

22   the point where you put in writing in this litigation, is

23   there any writing that says, and it can be in different forms,

24   I mean, it could be -- that's why I'm giving you different

25   things.  It could rescind the '78 memo.  It could just simply

1    say that OA is not subject to FOIA requests.  It could be a

2    writing that says, you know, you're not subject to the Federal

3    Records Act, you're now subject to the Presidential Records

4    Act.  It could be, we're now as of this date not going to

5    accept for processing FOIA requests.  I don't care how it's

6    worded, but something that indicates the change in writing,

7    that's all I'm asking.  And I'm giving you examples because it

8    could be not necessarily a direct rescission of the '78 memo,

9    but some other writing.  If there's something in writing, I

10   think it should be produced.

11           My second question is that when you talk about a

12   deliberative process, are you discussing an oral discussion

13   within the agency in consultation with the White House or

14   whomever, or are you talking about documents going back and

15   forth that you're claiming are deliberate -- you know, would

16   not be accessible to anybody because they show a deliberative

17   process?  Ms. Lin.

18           MS. LIN:  Your Honor, it's the latter.  I believe

19   the deliberation took -- there were many forms of deliberation

20   that included both writing and oral.

21           THE COURT:  Okay.  So, is there a final -- out of

22   this deliberative process of people writing memos back and

23   forth or whatever they did or an oral discussion, but let's

24   focus on the written.  Is there a final, you know, something

25   in writing reflecting a final decision?  And that's the

1    question I have.  I mean, if you send a bunch of things back

2    and forth, some in writing, some in oral discussions, was

3    there a final decision other than the position that you put

4    when you file something in court in this litigation?  That's

5    what I'm asking for.

6            In other words, if there's something in writing,

7    whether it's a conclusion of this deliberative process or any

8    other paper at any time that shows this change of position

9    from the position that was taken in '78.  So, Ms. Lin, do you

10   know if there's a document that basically has your conclusions

11   or OA's conclusions, a conclusion of the deliberative process?

12   I understand there might have been things back and forth

13   discussing it, but did somebody come to a conclusion, and say,

14   this is our position, this is our final position, and if there

15   is something like that then I think you need to produce it.

16   Do you know if there's such a thing?

17           MS. LIN:  I do believe that there is.

18           THE COURT:  Okay.  Then are you -- is there any

19   reason not to produce, I'm not asking for your back and forth,

20   I'm asking for the final decision.

21           MS. LIN:  Your Honor, there may well be these

22   documents that we have to figure out whether they might be

23   subject to a privilege because there was a deliberative

24   process and a conclusion was reached.

25           THE COURT:  Well, let me just put it this way.  As

1   I understand it, most of these things when you do -- putting

2   it even in the FOIA context, the deliberative process usually

3   protects discussions back and forth while you're trying to

4   reach a decision.  Once you've reached a decision and there's

5   a final agency decision, which is what I'm asking about, a

6   final agency decision, not the back and forth, but the final

7   agency decision, that should be -- that supports the position

8   that you're taking in this litigation, it seems to me that

9   that is something that you should produce.  I'm not asking for

10  the back and forth, only the final decision, which sounds

11  like, you know, you must have come to some conclusion which

12  then showed up in the litigation.  So, I mean, we need

13  whatever this final decision was that's an outgrowth of this

14  deliberative process.

15           MS. LIN:  I understand, Your Honor.

16           THE COURT:  Okay.  Now, and if there is some

17  privilege that you're -- and I'll set dates, if there is some

18  privilege that you're going to be asserting then you need to

19  assert it at that point one way or the other.  I'm not sure --

20  I'm not going to read into what there might be, but if there's

21  something in writing that indicates -- it would make it easier

22  on this record to have -- to be able to be told precisely and

23  to see the document, but even if there isn't a document --

24  even if you assert some privilege, you certainly can come up

25  with a date by which this document was done where a final

1  decision was made, even if you decide that it somehow is

2  privileged.  So, we either want the document or if you're

3  claiming a privilege then we'll look at what the privilege is

4  and I'll let plaintiff weigh in on that.  But at the minimum I

5  would like to have a date by which, in writing, somebody at

6  the conclusion of this deliberative process came to a

7  decision.  Okay.  Do we understand each other, Ms. Lin?

8              MS. LIN:  Yes, I understand.

9              THE COURT:  Okay.  And I'll set dates at the end.

10  Now, let me move on to the next question.  My understanding is

11  that you've taken -- this is the first time that you've taken

12  the position in litigation that OA is not subject to FOIA, is

13  that correct?

14              MS. LIN:  That is correct in terms of -- yes, it

15  is.

16              THE COURT:  Okay.  If there is another document,

17  then I take it -- do you know the date of the other document,

18  the document that's -- I'll call it the conclusion of your

19  deliberative process, do you know what date it is?

20              MS. LIN:  I do not know at this time, but I would

21  think it would be around the time -- around the same timeframe

22  as the dispositive motion that we filed in August of 2007.

23              THE COURT:  Okay.  Then let me move to -- since at

24  least November of '06, and it may even be earlier, has OA

25  consistently continued to accept FOIA requests for processing?

1    And if it has, did you do it on what you viewed as a

2    discretionary basis or because you felt that you were required

3    to do so?  Do you have an answer to that?

4            MS. LIN:  Your Honor, I believe that OA continued

5    to process FOIA requests even prior to November 2006.  I

6    believe that was Your Honor's question?

7            THE COURT:  No, I chose November 2006 because I

8    believe that is when OA Director Swendiman indicated that he

9    was orally told that OA was not subject to FOIA.  But what I'm

10   asking is, and it can be November or whatever, whatever date,

11   until the decision was made concerning CREW's request.  In

12   other words, where you took the position in this litigation

13   that OA was not subject to FOIA, has OA consistently accepted

14   FOIA requests for processing?

15           In other words, have there been any periods of time

16   when you haven't done it, and it can be since November of '06

17   or before that.  I chose '06 because that's when supposedly OA

18   Director Swendiman was orally told that OA was not subject to

19   FOIA, so it can be either that time or earlier.  Has there

20   been any time until the CREW's request and your position in

21   this litigation that you have not accepted FOIA requests for

22   processing?

23           MS. LIN:  Your Honor, my understanding is that --

24   no.

25           THE COURT:  No what?

```
 1          MS. LIN:  That OA has consistently processed FOIA

 2   requests all the way through the time that we filed the

 3   dispositive motion in this case.

 4          THE COURT:  So, despite any discussions that orally

 5   you've had or as you've gone through this deliberative process

 6   in writing and/orally, the OA has consistently, until the

 7   dispositive motions in this case, accepted FOIA requests for

 8   processing and actually processed them, is that correct?

 9          MS. LIN:  That's my understanding.

10          THE COURT:  And in doing so was -- do you know

11   whether you decided that you had the discretion to do so, or

12   because at that point you still felt compelled to do so

13   because a final decision hadn't been made?  If you don't know

14   the answer to that, tell me, but it's a question that -- in

15   other words, what is the reason for doing it?  Did you feel

16   you had discretion, and therefore, could do it?  Or did you

17   feel that until a final decision was made at the end of this

18   deliberative process that you still were required to do so?

19          MS. LIN:  Your Honor, I can't answer that question

20   other than there was that deliberative process that was

21   ongoing, and I think OA had -- despite OA's belief, that

22   deliberative process was ongoing.

23          THE COURT:  But let me ask it this way then.  Are

24   you indicating to me that until you made your final decision

25   at the end of this deliberative process that you felt you were
```

 1    compelled to accept and process FOIA requests?

 2              MS. LIN:  Your Honor, I don't know what -- I cannot

 3    speak for OA as to what its considerations were in continuing

 4    to process the FOIA requests.  I do note that in June of 2007

 5    when OA responded to CREW's FOIA requests when they produced

 6    documents at that point, OA indicated in its response letter

 7    that it was doing so as a matter of administrative discretion.

 8    So, that's the issue about OA status --

 9              THE COURT:  I guess the question is -- you had --

10    we had a discussion on the phone relating to the initial

11    requests, which you had agreed to -- OA had agreed to and I

12    ordered.  There were other requests that we left for a later

13    discussion.  You took the position that in terms of the later

14    request that you were no longer subject to and we got the

15    dispositive motion.  You had already agreed and I had ordered

16    it for the earlier part, so you went ahead and complied.  Is

17    that your -- is that what you're talking about?

18              MS. LIN:  Yes.

19              THE COURT:  Okay.  Then it's not clear to me what

20    you mean by discretionary process.  Are you saying that you

21    decided to comply with the agreement on a discretionary

22    process or something else?

23              MS. LIN:  I'm simply noting that OA's response

24    letter references that they were processing the FOIA requests

25    as a matter of administrative discretion, not waiving the

1    position that OA is not subject to FOIA.

2         THE COURT:  So, let me go back and -- when you

3    first responded to -- back in -- let me get these dates right.

4    CREW made a request on April 17th and 18th of '07, they made

5    their FOIA request and they filed the lawsuit May 23rd.  Are

6    you indicating that in response to their request your letter

7    indicated that because of administrative discretion -- is that

8    what you're talking about?

9         MS. LIN:  No, I'm sorry, Your Honor, I'm referring

10   to when OA made the first production of documents in June 2007

11   that Your Honor is correct, that was subsequent to the Court's

12   order as to the production schedule.

13        THE COURT:  So, from your production June 6th,

14   which is after the lawsuit was filed and after you had a

15   discussion with the Court, that that production you viewed

16   as -- you were producing in your administrative discretion, is

17   that correct, is that what you're saying?

18        MS. LIN:  Yes, that's what OA stated in its letter.

19        THE COURT:  Now, in terms of -- so I understand

20   that.  Prior to this June 6th of '07, did you -- you know,

21   were you in complying with -- I guess in accepting FOIA

22   requests, at that point did you view it as discretionary or

23   did you view it that because you had not reached your final

24   conclusion at the end of this deliberative process that you

25   were still compelled to do so, based on the '78 memorandum or

1   whatever.  Do you understand what I'm asking?  If you don't

2   know, I'll give you an opportunity to get it, but it does --

3   to get the answer -- but it does make a difference.  What I'm

4   trying to figure out is, prior to June 6th when you were still

5   accepting FOIA requests, were you doing so, even though

6   contemporaneously you may have been going through what you

7   call this deliberative process, did you feel that until you

8   came to some conclusion at the end of that deliberative

9   process that you were still compelled to basically accept and

10  process requests?

11          MS. LIN:  Your Honor, my understanding is that OA

12  can process FOIA requests all the way up to the time of the

13  dispositive motion even though it did not consider itself a

14  FOIA agency, and they were processing these FOIA requests as a

15  matter of administrative discretion.

16          THE COURT:  But when did that start?  In other

17  words, the '78 memo says you're an agency, you're compelled to

18  respond to these requests.  When did you decide, if it wasn't

19  at the end of this deliberative process when you put whatever

20  final decision in writing, at what point did you decide you

21  were doing it on a discretionary basis?

22          MS. LIN:  Your Honor, there's no one magic date

23  when that started, but Mr. Swendiman's testimony was that it

24  occurred prior to his tenure at OA.

25          THE COURT:  Well, do you have a document or

1   something that reflects this -- did you respond to people's

2   requests, saying, in your administrative discretion you're

3   going to process it?  Did you ever put something in writing to

4   indicate that you were shifting from being compelled to do so

5   to a discretionary process, other than this litigation?

6           MS. LIN:  I do not know whether there's any writing

7   reflecting when the deliberations began.

8           THE COURT:  All right.  I would like to know that

9   answer.  That does make a difference, and there is certainly

10  at least one case that talked about the agency -- the entity,

11  I'll call it, the entity doing things on a discretionary basis

12  or presenting itself as doing it that way.  So, it seems to me

13  that -- you've indicated that June 6th was done in an

14  administrative -- based on your processing the requests and

15  produced them, based on administrative -- the exercise of your

16  administrative discretion.  The question I have is:   Did you

17  do that earlier?

18          In other words, is there anything in writing or any

19  time that you then suddenly shifted from being compelled to do

20  so based on the '78 memorandum to now you're doing it based on

21  administrative discretion, either in writing or some, you

22  know, time period.  So, you need to find out if there's

23  anything in writing, and I guess the other question is, you

24  know, if there isn't, what is to the best of -- you know,

25  anybody's date, that you would view that there's this shift?

1  Okay.

2       MS. LIN:  Yes, Your Honor.

3       THE COURT:  Now, the other thing is, since this

4  litigation have you accepted any FOIA requests for processing?

5       MS. LIN:  Your Honor, my understanding is that, no,

6  we have not processed any further FOIA requests.

7       THE COURT:  Okay.  Then let me move to one other

8  question.  Let me move into the Federal Records

9  Act/Presidential Records Act because they don't seem to be

10  looking at the deposition, it wasn't clear to me that they

11  were coterminous.  When was the determination made that OA was

12  covered by the Presidential Records Act as opposed to the

13  Federal Records Act?

14       MS. LIN:  Your Honor, to the best of my knowledge

15  it occurred around the time of the consideration as to whether

16  OA is a FOIA agency because it's whether OA is subject to one

17  or the other federal records statutes is a by-product of a

18  correction of its status.  So, as Your Honor is aware, if OA

19  is not an agency, then the Presidential Records Act would

20  apply.  So, it's kind of concurrent with that decision that --

21  the implementation of the OA's decision that is not subject to

22  FOIA necessitated the shift from the FRA, the Federal Records

23  Act, to the Presidential Records Act.

24       THE COURT:  Well, let me ask it this way.  In terms

25  of the -- was this shift from the Federal Records Act to the

1  Presidential Records Act made at the same time that you

2  reached the end of your deliberative process and put something

3  in writing?  In other words, does that writing address this as

4  well?  In other words, you're no longer subject to FOIA

5  because you're not an agency, and you're now subject to the

6  Presidential Records Act as opposed to the Federal Records

7  Act, or were these two decisions made separately.

8          MS. LIN:  Your Honor, Mr. Swendiman's testimony was

9  that OA began to implement its transition from functioning

10  under the FRA to functioning under the PRA in late August or

11  early September.  And, as you know, our dispositive motion was

12  filed late August, August 21st, 2007.

13          THE COURT:  Do you have any documents, either in

14  your possession or that you control, that reflects when this

15  determination was made?  Much like the end of your

16  deliberative process, you say that there's something in

17  writing that indicates what the final decision is as to

18  whether you're subject to FOIA.  Is there such a document,

19  either that same one or another document, that comes to this

20  firm conclusion, because it does have different response --

21  you would have different responsibilities in OA as to what you

22  were required to do.  So, I assume this was done in writing

23  and not just orally to staff.

24          MS. LIN:  I do not know whether there are any

25  writings, but we will definitely look for them.

```
 1            THE COURT:  Okay.  Then the other thing is, is

 2    there a distinction in the way OA operates now that it's

 3    decided that you're under the Presidential Records Act that

 4    that applies, as opposed to when you viewed yourself as being

 5    under the Federal Records Act?  In other words, in terms of

 6    your operation, has it changed -- which would go to decisions

 7    about whether you're an agency.  In other words, how you have

 8    operated as OA, have you changed now that you've put yourself

 9    under the Presidential Records Act as opposed to the Federal

10    Records Act?

11            MS. LIN:  Your Honor, to the best of my knowledge,

12    not beyond what the different recordkeeping regimes might

13    require OA to do.  OA's functionings continue to be the same,

14    which is to provide administrative support services to the

15    EOP.

16            THE COURT:  So, as I understand it then, other than

17    recordkeeping requirements that are different between these

18    two Acts, that in terms of your actual operations that there

19    was no change, is that correct?

20            MS. LIN:  That's my understanding.

21            THE COURT:  Okay.  Now, from say around 2006

22    to 2007, did OA act in any way inconsistent with the

23    Presidential Records Act, from whenever you made your

24    decision, did you act inconsistent with what the requirements

25    are, recordkeeping, et cetera, inconsistent with the
```

1    President's Records Act?  In other words, once you decided you

2    were -- whatever timeframe in there you decided you were

3    subject the Presidential Records Act, did you act inconsistent

4    with those requirements?

5            MS. LIN:  Your Honor, I do not know what the

6    Presidential Records Act requirements are, and I do -- the

7    only indication that Mr. Swendiman gave during the deposition

8    was that there is some issues that remain to be resolved with

9    the National Archives regarding what records might, for

10   purposes of continuity from administration to administration,

11   whether they should be -- how the recordkeeping should go

12   forward because of those issues.

13           So, it's a continuing process in terms of

14   implementing the Presidential Records Act, I believe OA is

15   working closely with the National Archives to achieve that

16   process.

17           THE COURT:  All right.  So, I mean, what would

18   be -- obviously there's a transition in terms of the

19   requirements.  My question is whether, knowing what the

20   requirements are and working that out, has anything been done

21   that's inconsistent with?  You're expected to preserve certain

22   records, et cetera, has anything been done that doesn't fit

23   into what is required, that you're aware of?

24           MS. LIN:  Your Honor, I do not believe they've

25   acted inconsistently, in fact, the deposition testimony

1   reflected that OA instructed its staff late August, early

2   September, of the specific obligations of the Presidential

3   Records Act, and the staff was instructed to observe those

4   obligations.

5          THE COURT:  Let me move to another area, I'll get

6   back to this one in a moment.  Well, actually, let me finalize

7   this.  I think what I would require in terms of this set of

8   questions is for you to do two things:  One, on the questions

9   where you don't know, I need an affidavit or something that is

10  more specific about the information -- the questions I've

11  asked, and you may wish to get a transcript, frankly, to

12  figure this out, that's why I'm doing it orally, because it

13  was too difficult to try and put this in writing and word it

14  such that we'd all understand what's being asked.

15         So, there are certain -- in terms of certain dates,

16  et cetera, that you need to be able to tell me as to the

17  deliberative process, when you finally made a final decision,

18  when you made a decision relating to the Presidential -- that

19  you're not subject to the Federal Records Act but you're now

20  subject to the Presidential Records Act, and some of the other

21  questions that I've asked where you weren't sure.

22         I'd also ask that you produce, unless you're going

23  to assert some privilege, in which case you need to assert the

24  privilege, but I'd like at least the dates.  And the two dates

25  that are important are the one when you -- whatever your final

1    decision was for this deliberative process, and two, whatever

2    final decision there was that you're now subject to the

3    Presidential Records Act and not the Federal Records Act.  And

4    I'd like the documents produced if they are in writing, but at

5    minimum I'd want the dates.  And, as I said, if you're not

6    producing them, and I'm talking about the final decision, then

7    it seems to me that you need to assert some privilege that

8    will then -- I'll take a look at.  Otherwise, I would expect

9    that you would produce it.

10           But any of the other questions that I've asked, it

11    would be helpful just to clarify so that we get -- we have

12    dates here to make it clearer in terms of at what point

13    certain decisions were made.  Some of them you've answered so

14    I have that on the record.  When can you do this by, Ms. Lin?

15           MS. LIN:  Your Honor, I have to consult with the

16    client in terms of their availability because OA services over

17    3,000 employees and it's been -- and they are short on staff,

18    so obviously we're going to put this as a priority and do it

19    as quickly as we can.

20           THE COURT:  Well, can you give me some ballpark

21    timeframe?  My feeling is there's -- it appears that there's

22    at least two documents that you'll have to take a look at, and

23    there is a few other questions, it's not an enormous amount

24    that you need back, but there is something.  So, how much

25    time, roughly, do you need?  I'll put a time -- if you go back

1    and find out that there are other issues with it then come

2    back and let me know, but I just can't sort of leave it up in

3    the air.

4              MS. LIN:  Your Honor, can we do so by April 18th?

5              THE COURT:  Well, the only question I had is I

6    hoped to get this done before you start doing the briefing and

7    not have to push the briefing back.  If you get it by the

8    18th -- the briefing I think is due to 25th?

9              MS. LIN:  That's right.

10             THE COURT:  Can you do it any earlier than that

11   because I'd like to not have to put that all off again.

12             MS. LIN:  Yeah, Your Honor, obviously we'll do it

13   as quickly as possible, but because without consulting with

14   the client's schedule and there are other ongoing litigations

15   as well as other administrative burdens, it's difficult to

16   point to a time where we could do so, but the hope is that

17   we'll do so well before the 18th, but definitely no later than

18   the 18th.

19             MS. WEISMANN:  Your Honor, this is Anne Weismann,

20   may I be heard?

21             THE COURT:  In terms of the date, yes.

22             MS. WEISMANN:  My only concern, I mean, I'm

23   concerned about the 18th, my biggest concern is if there's

24   going to be an assertion of privilege that we would want to

25   challenge that there would be time to litigate.  We've

1    already, you know, had a pretty generous briefing schedule to

2    accommodate defense counsel's schedule, and I have no

3    objection to that, but it seems to me that the information the

4    Court is asking for is relatively narrow, and the 18th strikes

5    me as a pretty long time, especially, as I said, if we're

6    going to have to -- if we do end up litigating an issue of

7    privilege, it really doesn't give us time.  And I just would

8    urge the Court to suggest a much earlier date than the 18th.

9         THE COURT:  Why don't I suggest this.  If you're

10   going to assert a privilege on either one or both of these

11   documents, then it seems to me that you need to do that

12   earlier, and you would file on the 18th your argument for your

13   privilege.  In other words, what I don't want to have is the

14   18th you tell me, yes, the privilege, and then we get into a

15   briefing around whether or not the privilege is appropriate to

16   be asserted.

17        So, it seems to me that we need to set a date where

18   you've decided, yes, you're going to assert it, or no, you're

19   not, and it has to be earlier than the 18th.  I mean, these

20   are two documents, it seems to me, and either -- as I said,

21   I'm asking for the final one, I'm not asking for the

22   documentation coming back and forth in terms of trying to

23   reach this decision.  But if there is -- it appears that there

24   may very well be two separate things or one document that has

25   both of these decisions.  The final decision of the

1    deliberative process as to whether or not you're subject to

2    FOIA, and the final decision about shifting from Federal

3    Records to the Presidential Records.

4            So, it's either one document or two.  I would think

5    that it isn't going to take that long to figure out, and it's

6    a legal issue, frankly, it's privilege.  It's not really the

7    client deciding this, either you've got an argument or you

8    don't have an argument for it.

9            MS. LIN:  I understand, Your Honor, but you also

10   want answers to some of the other questions that I was not

11   able to answer, so I'm trying to make sure that we have

12   sufficient time to track down the answers and prepare the

13   necessary affidavits that Your Honor is --

14           THE COURT:  I don't have a problem with the

15   affidavit being on the 18th, and I don't have any problem if

16   you're going to wind up having to brief what the privilege is,

17   doing it by then.  But I do need -- we need to know before

18   that as to whether you're going to actually assert a

19   privilege, because that makes a difference in terms of how

20   people proceed with this.  And I would expect that if you're

21   going to assert it you would also give at minimum the date

22   these writings were done, so we at least have a time on it.

23   Can you get this done, say, by the 7th?  April 7th you'd

24   indicate --

25           MS. LIN:  Your Honor, so we would do the privilege

1    log, if there is such documents, and provide the privilege

2    assertion if they can be asserted by the 7th, and then we

3    provide the affidavit no later than the 18th?

4         THE COURT:  Right.  And then you would do -- in

5    terms of the 7th would be the privilege log, if that's what

6    you're doing.  And at the minimum you should give us the date

7    of the documents, it would be helpful to have that.

8         MS. LIN:  Yes.

9         THE COURT:  So, for April 7th we get a privilege

10   log, if you're going to assert something, and at least the

11   date of the documents that these final decisions were made,

12   and those -- it may be the same document or it may not be the

13   same document.  Then on the 18th you would do the affidavit,

14   which I don't have any problem with it.

15        MS. LIN:  Okay.

16        THE COURT:  And then the question is, in the

17   privilege log -- that will work if you give enough information

18   so that then Ms. Weismann can come back and oppose it, if

19   that's going to be her position.  But sometimes the privilege

20   log is meager on information and legal -- you know, the legal

21   underpinning for it with at least an explanation of why you

22   think it's privileged, whatever privilege you're asserting.

23   So, if you do the log such that it's clear what privilege

24   you're asserting and why, then we can set a date for Ms.

25   Weismann to respond.

1          So, that's the understanding for the 7th.  The 7th

2   is the privilege log with enough information as to why this --

3   why this is privileged and the date of the document, and then

4   the affidavit on the 18th.  Ms. Weismann, let's assume that

5   they do assert and provide a privilege log, when do you want

6   to respond to it?

7          MS. WEISMANN:  I'm just -- the 14th I believe is

8   the Monday?

9          THE COURT:  Okay.

10         MS. WEISMANN:  I would be fine by the 14th with a

11  motion to compel or whatever, if that's how we were going to

12  proceed.

13         THE COURT:  Or just, you know, however you want

14  label it, but anyway, whatever -- if you're opposing the

15  privilege log or their assertion of it, you'd file it at that

16  point.

17         MS. WEISMANN:  Yes.

18         THE COURT:  And then the Government -- the OA needs

19  to respond to it.  It should have some legal authority in

20  here, please, folks, so I'm not the one doing your research

21  for you.  Make sure that we get -- that's why I wanted to make

22  sure the privilege log explains sufficiently what privilege

23  and why and what the content of -- enough of it is to be able

24  to say why this is -- the whole thing is -- whole or parts of

25  it are privileged.  And then the opposition should indicate

1   with some legal authority as to why that is true or not true.

2   And then from the Government's perspective, if she gets it in

3   on the 14th, when can you do a response?

4          MS. LIN:  We'll do so by the 18th.

5          THE COURT:  All right.  Okay.  And then I have to

6   say I have another matter that around this time needs to get

7   out, it's got a tight timeframe as well.  I will make an

8   effort to get this all decided before you have to do your

9   briefing.  If for some reason it looks like it's a problem,

10  I'll let you know, because I have another thing I need to get

11  out before the 14th.  So, the more information you provide me

12  and legal underpinning for it the easier it's going to be for

13  me to be able to do this.  So, we have those dates.

14         There's one last issue that CREW raised that -- and

15  that's what I viewed as the fourth document request, which was

16  documents, et cetera, when stopped functioning as an agency

17  under any other federal statute.  It seems to me -- I'm not

18  sure what's different or what you're asking beyond what you

19  already have.  I looked at your document requests, and it

20  looks like you've already made a request, and the deposition

21  discussed, with those documents, instances where OA has

22  provided services or has responsibilities to third parties

23  outside of the EOP components.  I don't understand what you're

24  asking for that's different than what you already asked for

25  and already have.  Ms. Weismann.

 1          MS. WEISMANN:  I don't know how comprehensive
 2   Mr. Swendiman's testimony is, so to the extent that there are
 3   other statutes other than, for example, I think it's called
 4   the Economic Act that they relied on for statutory authority
 5   to do some of those agreements, that's what our fourth request
 6   was intended to encompass.
 7          THE COURT:  You already made the request, and
 8   frankly, you put it in broad terms.  I don't think it was just
 9   the -- let me just look through the documents.  Hold on a
10   second.  In terms of looking at it, my understanding is they
11   produced documents that you used in your deposition, so
12   presumably you had requests then that covered this.
13          MS. WEISMANN:  No, I mean --
14          THE COURT:  It's not clear to me what you're asking
15   beyond that.
16          MS. WEISMANN:  I --
17          THE COURT:  I know OA is opposing sort of this
18   generalized request that you have made, so, it's not clear to
19   me in looking through it what, frankly, you don't have.
20          MS. WEISMANN:  But the documents were not produced
21   in response to a specific request for any other statute under
22   which they have exercised authority.  It was just that -- it
23   happened that the documents they produced, you know, mentioned
24   the fact that they were exercising authority, and we just
25   picked up on what the documents had not -- but that was not

1    produced in response to that question.

2            THE COURT:  But, Ms. Weismann, it seemed to me that

3    the issue that I left open was -- in terms of my order and the

4    discovery, related to whether there were any services or

5    responsibilities to third parties outside of the EOP

6    components, which is presumably why these documents got

7    produced by OA.  Let me just ask OA, Ms. Lin, are there any

8    other documents that you did not produce that go to this issue

9    of either services or responsibility or authority over third

10   parties that are not the EOP components?

11           MS. LIN:  Your Honor, I do not believe so, but

12   obviously we were responding to the document request that Ms.

13   Weismann propounded on us and we produced over 1300 pages, and

14   many of those documents do reflect, for example, the

15   memorandum of understanding that OA entered into pursuant to

16   certain federal statutes or not, or that they were following

17   certain federal statutes as a matter of good business

18   practice.  But all those documents were produced, so, we are

19   at a loss, frankly, as to what Ms. Weismann might still need

20   to see because our relationship with outside third parties is

21   fully explored in the prior document request.

22           THE COURT:  I'm sorry, I missed the last part -- is

23   what?

24           MS. LIN:  The OA's relationship with outside

25   parties or other federal -- or other federal entities are

 1  fully explored in all of the documents that we produced.

 2         THE COURT:  All right.  What I'd ask, Ms. Lin, is

 3  that if there is something you haven't produced in this

 4  category that comes to your attention, then I would ask that

 5  you do so.  Otherwise, I think, Ms. Weismann, that you have

 6  what they've done.  And I had indicated outside of the EOP

 7  components, if they had any relationships, it looks to me as

 8  if you asked Mr. Swendiman about it, in terms of those

 9  documents, and I think you had a question in there in terms of

10  whether there was anything else, and I didn't hear anything

11  that would say so.  So, I think I'm going to -- on the last

12  issue that you've asked for, I don't think we'll need to go

13  any further.

14         So, I've set out the dates.  I think you probably

15  will need -- you may want to get a transcript so it's clear

16  what additional things need to be in the affidavit so we don't

17  have any problems with it.  But the dates we've set out then

18  are April 7th, if you're going to -- either provide the

19  documents or assert your privilege log, and if you're going to

20  assert a privilege log, at least provide the date of the

21  documents.  And the two documents at issue are whatever final

22  decision was made after this deliberative process about

23  whether or not you were subject to FOIA.

24         And the second document or maybe it's the same one,

25  but it's the second decision about that you're no longer

1   subject to the Federal Records Act, you're subject to the

2   Presidential Records Act.  And so you either produce the

3   documents, you produce a privilege log, but at least you

4   certainly give the dates of the documents themselves.  Then

5   any opposition -- if a privilege log is asserted, then if

6   there's going to be an opposition it will be April 14th, any

7   reply by OA by April 18th.  And April 18th you will produce --

8   OA will produce an affidavit to respond to a few of the

9   additional questions that I propounded where, Ms. Lin, you

10  weren't sure or you needed to go back and check.  Okay?  So,

11  is there anything else, Ms. Weismann?

12          MS. WEISMANN:  No, Your Honor.  Thank you.

13          THE COURT:  Ms. Lin?

14          MS. LIN:  No, Your Honor.

15          THE COURT:  Okay.  Then I'll wait to see what gets

16  filed.  Thank you.

17          MS. LIN:  Thank you.

18          MS. WEISMANN:  Thank you, Your Honor.

19  END OF PROCEEDINGS AT 10:03 A.M.

20

21

22

23

24

25

1                        C E R T I F I C A T E

2                I, Lisa M. Hand, RPR, certify that the

3     foregoing is a correct transcript from the record of

4     proceedings in the above-titled matter.

5

6

7

8                              _____

9                              Lisa M. Hand, RPR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25