**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTON, )
                                       )
               Plaintiff, )
                                         )
                v. )       Civil Action No: 1:07-CV-00964 (CKK)
                                         )
OFFICE OF ADMINISTRATION, )
                                         )
              Defendant. )
                                         )
                                         )

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
OR ALTERNATIVELY TO AMEND THE COURT'S ORDER
OF MARCH 30, 2008 TO REQUIRE DEFENDANT TO PRODUCE
THE OLC OPINION ADDRESSING OA'S AGENCY STATUS**

**INTRODUCTION**

Defendant Office of Administration ("OA") hereby opposes plaintiff's motion to

compel the production of a memorandum prepared by the Office of Legal Counsel ("OLC") of

the Department of Justice that formally memorialized OLC's legal advice to the White House

Counsel's Office regarding OA's status under the Freedom of Information Act ("FOIA").  As the

declaration of OA's General Counsel indicates,[1] while the legal advice contained in the OLC

memorandum informed the Executive Branch's decisionmaking on whether to change OA's

longstanding practice of complying with FOIA, it is not the "final agency decision," Tr. of March

28, 2008 Conference at 10.  The Executive Branch did not "choose[] expressly to adopt or

incorporate by reference [this] intra-agency memorandum." *NLRB v. Sears, Roebuck & Co.*, 421

---

[1]  The declaration of OA's General Counsel, M. Elizabeth Medgalia, is filed
simultaneously with this opposition and is in response to the Court's Order of March 30, 2008.

U.S. 132, 161 (1975). The law is clear that a government entity must have actually and expressly adopted or incorporated by reference a deliberative document, such as an OLC legal advice memorandum, before the Court may order its disclosure. CREW's mere speculation that the Executive Branch has done so is insufficient to justify the disclosure of what is otherwise a confidential, deliberative document.

## BACKGROUND

In resolving plaintiff's prior motion to compel the production of documents reflecting the dates when OA ceased functioning as an "agency" under FOIA and the Federal Records Act ("FRA"), and the date when OA started complying with the Presidential Records Act ("PRA"), the Court noted that the issue of timing "gives the context of determining whether OA is or is not an agency subject to FOIA." *See* Tr. of March 28, 2008 Conference at 4. Because the Court found that "the time line . . . is not as crystal clear as it might be," *id.,* it ordered OA to produce the final decision(s) that OA is not subject to FOIA or the FRA so to determine the dates of those decisions. *Id.* at 10 ("I am not asking for the back and forth, only the final decision."). The Court further ordered that if the documents are privileged, then OA was to produce a privilege log setting forth the dates of the documents and the legal grounds for the privileges asserted. *Id.* at 11 ("at a minimum, I would like to have a date by which, in writing, somebody at the conclusion of this deliberative process came to a decision").

As OA informed the Court on April 7, 2008, and as further explained by the sworn declaration of OA's General Counsel, M. Elizabeth Medaglia, the final decision that OA is not subject to, and will no longer comply with, FOIA was reached on August 21, 2007, the day OA filed its motion for judgment on the pleadings. *See* Medaglia Decl. ¶¶ 8-9. The Executive

Branch has no internal document that represents the final decision, but the decision is reflected in the dispositive motion filed on that day. *See id.* ¶ 9. As the Medaglia declaration makes clear, the decisionmaking was a collaborative effort and was informed by OLC's legal advice, which was provided at the request of the White House Counsel's Office and formally memorialized in a memorandum also dated August 21, 2007. *See id.* at ¶¶ 6, 8. The OLC memorandum is not the "final agency decision," Tr. of March 28, 2008 Conference at 10. *See* Medaglia Decl. ¶ 8. The Executive Branch did not expressly adopt or incorporate by reference the OLC memorandum. *See id.* Nor has the Executive Branch cited the OLC memorandum as the legal justification for its final decision that OA is not subject to, and will no longer comply with, FOIA. The substance of the OLC memorandum has not been disclosed outside the Executive Branch and has remained confidential. *See id.* The only mention of the OLC memorandum has been in connection with OA's response to this Court regarding the date and existence of the memorandum to provide the Court the time line of the Executive Branch's decisionmaking.

## ARGUMENT

### I.  THE OLC MEMORANDUM IS A QUINTESSENTIALLY DELIBERATIVE DOCUMENT AND IS ALSO PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE

CREW argues that the OLC memorandum necessarily has been incorporated and adopted as the Executive Branch's final decision because OLC opinions are binding on the Executive Branch unless specifically overruled by either the Attorney General or the President. To accept CREW's argument, however, would mean that virtually all legal advice OLC provides to the Executive Branch would be subject to disclosure. There is no support for such an extraordinary proposition. The principal function of the OLC is to assist the Attorney General in his role as

legal adviser to the President and to departments and agencies in the Executive Branch.  In connection with this function, the OLC drafts legal opinions of the Attorney General and renders opinions that resolve disputes within the Executive Branch.  It also performs a purely advisory role as legal counsel to the Attorney General, providing confidential legal advice both directly to the Attorney General and, through him or on his behalf, to the White House and other components of the Executive Branch.  In that capacity, OLC, in effect, serves as outside counsel to the Executive Branch.[2]  *See* www.usdoj.gov/olc/

As the declaration of OA's General Counsel indicates, the OLC memorandum at issue was prepared in OLC's advisory role as legal counsel to the White House.  Specifically, in April 2006, the White House Counsel's Office requested OLC's legal advice regarding OA's status under FOIA.  *See* Medaglia Decl. ¶ 6.  The deliberative process regarding that question, which took place between April 2006 and August 2007, involved written and oral communications between and among the Department of Justice, OA, and the White House Counsel's Office, including preliminary legal advice from OLC on the issue of OA's status under FOIA.  *Id.* at ¶ 6. The Executive Branch's final decision that OA is not subject to, and will no longer comply with, FOIA was the result of a collaborative effort and was made after receipt of the OLC memorandum.  *See id.* at ¶¶ 8-9.

In other words, the OLC memorandum is a pre-decisional, deliberative advice document. It is predecisional because it was prepared to assist the Executive Branch in determining whether

---

[2]  OLC does have a limited publication project whereby, usually after a lapse of years, certain memoranda are reviewed and selected for publication.  Memoranda are selected for publication only where the Department determines, in consultation with the agencies or offices for which the memoranda were written, that it is in the public interest that they be disclosed.

OA should continue to comply with FOIA, given its longstanding practice of doing so; it is

deliberative because it was legal advice submitted as part of the process by which the Executive

Branch reached the decision.  *See Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980)

("legal advice . . . fits exactly within the deliberative process rationale").  The document is also

subject to the attorney-client privilege because it contains confidential legal advice provided by

OLC to the White House Counsel's Office.  Attorneys in OLC are often required to provide

advice and analysis with respect to "legal issues of particular complexity and importance."  *See*

http://www.usdoj.gov/olc/.  Absent the confidentiality afforded by these two privileges, attorneys

within the OLC very likely would be discouraged from offering candid legal advice or even

controversial legal arguments and theories.  As a result, decisionmakers within the Executive

Branch would be deprived of OLC's candid views.

Indeed, given the quintessentially deliberative nature of the OLC memoranda, courts have

upheld the withholding of OLC memoranda in the FOIA context, unless the document has been

expressly adopted.  *See Southam News v. INS*, 674 F. Supp. 881, 886 (D.D.C. 1987) (OLC

memorandum to the Attorney General discussing "legal questions regarding the criteria used to

evaluate visa applications made by a certain class of individuals" protected because it "evince[d]

recommendations and deliberations 'comprising part of a process by which governmental

decisions and policies are formulated,' and as such, its release would likely 'stifle honest and

frank communications within the agency.'") (internal citations omitted); *Morrison v. United*

*States Dep't of Justice*, Civ. A. No. 87-3394, 1988 WL 47662, at *1-2 (D.D.C. Apr. 29, 1988)

(OLC memorandum analyzing constitutionality of amendment to Gramm-Rudman law was

subject to deliberative process privilege and exempt from disclosure under FOIA); *cf. Nat'l*

*Council of La Raza v. Dep't of Justice*, 411 F.3d 350 (2d Cir. 2005) (OLC memorandum adopted as the final agency decision and no longer privileged where "[t]he OLC Memorandum was used by the agency in its dealings with the public as the sole legal authority for the Department's claim that its new policy had a basis in the law") (internal citations and quotations omitted).

## II.     THE EXECUTIVE BRANCH DID NOT ADOPT OR INCORPORATE BY REFERENCE THE OLC MEMORANDUM

The deliberative nature of the OLC memorandum has not been lost, because the Executive Branch did not adopt the memorandum – as the concept of "adoption" is settled in the case law.  The adoption doctrine, first articulated by the Supreme Court in *NLRB v. Sears, Roebuck & Co.*, provides that a governmental entity may be required to disclose a document otherwise entitled to protection under the deliberative process privilege if the entity has chosen "expressly to adopt or incorporate by reference" the document.  421 U.S. 132, 161 (1975).  As discussed above, the declaration of OA's General Counsel refutes any suggestion that the Executive Branch has expressly adopted the OLC legal advice memorandum.  Although CREW placed much emphasis on the fact that the date of the OLC memorandum is the same date as the Executive Branch's final decision on whether OA will continue to comply with FOIA, that certainly cannot refute the sworn declaration of OA's General Counsel, which indicates that the deliberative process was a collaborative effort spanning over a period of time, and that final decision was reached after the Executive Branch's receipt of OLC's memorandum which formally memorialized OLC's legal advice.

*Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350 (2d Cir. 2005), on which CREW heavily relies, confirms that much more is required to show adoption.  In that case, the

6

court held that the OLC memorandum at issue was indeed predecisional and deliberative, but was adopted or incorporated into official agency policy and therefore was no longer protected by the attorney-client and deliberative process privileges.  Agreeing that adoption was required to be express, the Court found adoption because the Attorney General and several of his high level staff "publically and repeatedly depended on the Memorandum as the primary legal authority" to justify a change in department policy, and "to assure the public and the very state and local government officials who would be asked to implement the new policy that the policy was legally sound."  *Id.* at 358.  In the court's view, the public use of the OLC memorandum "to justify what a third party – 'state and local law enforcement' –  *should* and *could* lawfully do" is "powerful evidence" that the department explicitly adopted the OLC Memorandum as part of its policy.  *Id.* at 359; *see also id.* at 357 ("the repeated references to the OLC memorandum . . . to assure third parties as to the legality of the actions the third parties were being urged to take [] are sufficient to establish that the Department incorporated the Memorandum into its new policy").  Here, in contrast, the substance of the memorandum remains confidential and the only mention of the memorandum outside the Executive Branch has been in connection with OA's response to this Court regarding the date and existence of the memorandum.

The suggestion that the Executive Branch's reliance on OLC legal advice would make inapplicable the deliberative process privilege would be tantamount to a conclusion that the Executive Branch can no longer receive confidential legal advice from OLC.  The law is to the contrary.  As the *La Raza* court explained, "had the Department simply adopted only the conclusions of the OLC Memorandum, the district court could not have required that the Memorandum be disclosed."  *Id.* at 358.  This is so because "[m]ere reliance on a document's

7

conclusions does not necessarily involve reliance on a document's analysis; both will ordinarily be needed before a court may properly find adoption or incorporation by reference." *Id.*; *see also Afshar v. Dep't of State*, 702 F.2d 1125, 1143 n. 22 (D.C. Cir. 1983) ("[if] the agency merely carried out the recommended decision without explaining its decision in writing, we could not be sure that the memoranda accurately reflected the decisionmaker's thinking"). Even a "reference to a report's conclusions" falls "far short of the *express* adoption required by *Sears*," as "the [Supreme] Court has refused to equate reference to a report's conclusions with adoption of its reasoning, and it is the latter that destroys the privilege." *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1197 (D.C. Cir. 1991) (citing *Renegotiation Bd. v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 184 (1975)). In other words, "an agency does not adopt or incorporate by reference a pre-decisional memorandum where it only adopts the memorandum's conclusions." *Wood v. FBI*, 432 F.3d 78, 84 (2d Cir. 2005). Were it otherwise, decisionmakers would no longer be able to receive confidential recommendations. "[T]here must be evidence that an agency has *actually* adopted or incorporated by reference the document at issue; mere speculation will not suffice." *La Raza*, 441 F.3d at 359; *see also Wood*, 432 F.3d at 84 ("where there is no evidence in the record from which it could be inferred that DOJ adopted the reasoning of the Memo . . . , this failure is fatal."). As discussed above, there is no such evidence here. Accordingly, disclosure of the August 21, 2007 OLC advice memorandum is unwarranted.

## CONCLUSION

For the foregoing reasons, this Court should deny CREW's motion to compel or its alternative motion to amend the Court's Order of March 30, 2008 to require the production of the August 21, 2007 OLC memorandum.

8

Dated: April 18, 2008                          Respectfully submitted,

                                               JEFFREY S. BUCHOLTZ
                                               Acting Assistant Attorney General

                                               JEFFREY A. TAYLOR
                                               United States Attorney

                                               ELIZABETH J. SHAPIRO
                                               Assistant Branch Director

                                               _____ /s/ Jean Lin _____
                                               JEAN LIN
                                               Federal Programs Branch, Civil Division
                                               United States Department of Justice
                                               20 Massachusetts Ave., N.W.
                                               Washington, D.C.  20530
                                               Tel: (202) 514-3716
                                               Fax: (202) 616-8407

                                               Attorneys for Defendant

9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No: 1:07-CV-00964 (CKK) |
| OFFICE OF ADMINISTRATION, | ) ) | DECLARATION OF M. ELIZABETH MEDAGLIA |
| Defendant. | ) ) ) | IN RESPONSE TO THE COURT'S ORDER OF MARCH 30, 2008 |

Pursuant to 28 U.S.C. § 1746, I, M. Elizabeth Medaglia, hereby declare as follows:

1. I am the General Counsel of the Office of Administrative ("OA"), Executive Office of the President. I have held this position since May 14, 2007. Prior to that time, I was in the private practice of law. In my capacity as OA's General Counsel, I am responsible for legal advice and support to the Office of Administration.

2. I submit this declaration pursuant to the Court's Order of March 30, 2008, which requires OA to file an affidavit setting forth answers to the questions posed by the Court during a March 28, 2008 telephone conference between the Court and the parties' counsel.

3. Based on my review of the transcript of the March 28, 2008 telephone conference, as well as the Court's Order of March 30, 2008, it is my understanding that the Court posed the following questions to counsel: (1) when was the "final agency decision" made that OA was not subject to FOIA, and is that decision in writing (*see* March 28, 2008 Conference Transcript [hereinafter Conf. Tr.] at 6-8, 10-11); (2) when did OA decide that it was processing FOIA requests as a matter of administrative discretion and not because

it was compelled to do so (*see* Conf. Tr. at 16-17); (3) did OA assert in writing that it was

processing FOIA requests as a matter of administrative discretion prior to doing so in

connection with its June 2007 production of documents in response to CREW's FOIA

request (*see* Order of March 30, 2008 at 2; Conf. Tr. at 16-17); (4) when did OA cease

accepting FOIA requests for processing (*see* Order of March 30, 2008 at 2; Conf. Tr. at

12-13), and did OA continue to process FOIA requests until that time because the end of

the deliberative process had not been reached and a final decision had not been made

regarding OA's status under FOIA (Confr. Tr. at 13-15); (5) has OA functioned in a

manner consistent with the Presidential Records Act ("PRA") since determining that it

was subject to that statute rather than the Federal Records Act ("FRA") (*see* Order of

March 30, 2008; Conf. Tr. at 21); (6) when was the determination that OA was covered

by the PRA as opposed to the FRA made, and was that determination made in writing

and at the same time that OA reached the end of its deliberative process regarding the

FOIA issue (*see* Conf. Tr. at 18-19); and (7) have OA's actual operations changed since

it determined that it is a PRA entity rather than an FRA entity (*see* Conf. Tr. at 20)?

4. I provide the following statements in response to the Court's questions. The statements
   are based upon my personal knowledge, upon my review of OA's files, and upon
   information provided to me in the performance of my official duties.

5. Although it was well before my tenure at OA began, the issue of whether OA meets the
   FOIA definition of "agency" first surfaced soon after the district court's decision in
   *Armstrong v. EOP*, 877 F. Supp. 690 (D.D.C. 1995). Since that time, whether OA met
   the FOIA definition of an agency was from time to time a subject of discussion between

and among the Department of Justice, OA, and the White House Counsel's Office.

6.  In April 2006, the White House Counsel's Office requested the legal advice of the Office
    of Legal Counsel ("OLC") of the Department of Justice regarding OA's status under
    FOIA.  The deliberative process regarding that question, which took place from April
    2006 through August 2007, involved written and oral communications between and
    among the Department of Justice, OA, and the White House Counsel's Office, including
    preliminary legal advice from OLC on the issue of OA's status under FOIA.

7.  On several occasions during this deliberative process, although not consistently, OA
    included language in its FOIA responses advising the requesters that OA was processing
    their requests as a matter of administrative discretion.  Some of these written responses
    were sent prior to OA's receipt of CREW's FOIA requests in April 2007.

8.  The final decision that OA is not subject to FOIA was made on August 21, 2007, after
    OA and the White House Counsel's Office received OLC's memorandum formally
    memorializing its legal advice.  Although the decisionmaking was informed by OLC's
    legal advice, the OLC memorandum, also dated August 21, 2007, is not the "final agency
    decision."  The Executive Branch has not expressly adopted the OLC memorandum or
    incorporated it by reference.  The substance of the OLC memorandum has remained
    confidential and has not been shared beyond the interested parties within the Executive
    Branch.  No one in the Executive Branch has publicly cited the OLC memorandum as the
    legal justification for OA's decision to no longer comply with FOIA.

9.  The Executive Branch has no document that represents the final decision made on August
    21, 2007.  But that final decision – which was the result of a collaborative effort – is

3

reflected in OA's motion for judgment on the pleadings, which was filed in this case that same day.

10. OA ceased processing FOIA requests on approximately July 27, 2007. Between that date and September 12, 2007, OA retained pending FOIA requests due to the status of the deliberative process. On September 12, 2007, OA began responding to requesters by advising them that OA is not subject to FOIA and returning their requests. Since September 12, 2007, OA has consistently responded to requests in this way.

11. As OA informed the Court on April 7, 2008, the determination that OA is subject to the PRA and not to the FRA was not reached separately or independently from the decision that OA is not subject to FOIA. OA's Office of General Counsel was aware that "coverage of the FRA is coextensive with the definition of 'agency' in the FOIA," *Armstrong v. EOP*, 90 F.3d 553, 556 (D.C. Cir. 1996); and that presidential records under the PRA do not include "official records of an agency," as the term "agency" is defined under FOIA, 5 U.S.C. § 552(f). 44 U.S.C. § 2201(2)(B)(I). Thus, the decision that OA is not subject to FOIA is also a decision that OA is subject to the PRA and not the FRA.

12. Once the final decision was reached that OA is not subject to, and will no longer comply with, FOIA, OA began implementation of its PRA status.

13. On August 31, 2007, OA distributed a memorandum to its personnel regarding their recordkeeping obligations. The memorandum stated in part that "under applicable case law, the Office of Administration does not fall within the definition of agency set forth in the Freedom of Information Act (FOIA), 5 U.S.C. § 552," and that "[c]onsequently, the applicable records management statute for OA is the Presidential Records Act rather than

4

the Federal Records Act." The memorandum advised that "[u]nless and until otherwise

instructed, you must preserve and maintain all documents, emails, and other materials

created or received by you in the course of your official duties." OA provided a copy of

the memorandum to the Court on April 7, 2008.

14. Since August 31, 2007, I and others within the OA Office of General Counsel have had

numerous oral communications with OA personnel about their obligations under the

PRA. It is my understanding that OA personnel have followed the directions of the

August 31, 2007, memorandum and the subsequent mandatory PRA training, and have

maintained their records in a manner consistent with the PRA.

15. Since the August 21, 2007 determination that OA is subject to the PRA and not the FRA,

except for the shift from the FRA recordkeeping regime to the PRA recordkeeping

regime, OA has not changed its actual operations and functions, which are to provide

common administrative support and services to the Executive Office of the President.

I declare under penalty of perjury that the foregoing is true and correct.


Dated _April 18, 2008_

M. Elizabeth Medaglia
General Counsel
Office of Administration
Executive Office of the President

5