UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>    Plaintiff,<br><br>    v.<br><br>OFFICE OF ADMINISTRATION,<br><br>    Defendants. | Civil Action No. 07-964 (CKK) |

**MEMORANDUM OPINION**
(May 5, 2008)

Currently pending before the Court is [43] Plaintiff Citizens for Responsibility and Ethics in Washington's ("CREW") Motion to Compel or Alternatively to Amend the Court's Order of March 30, 2008 to Require Defendant to Produce the [Office of Legal Counsel ("OLC"), Department of Justice ("DOJ")] Opinion Addressing [the Office of Administration, Executive Office of the President's ("OA")] Agency Status. Defendant OA opposes CREW's Motion. As suggested in CREW's Reply in support of its Motion, the Court has reviewed the OLC memorandum at issue *in camera*, and concludes that it falls within the scope of the deliberative process discovery privilege. The Court shall therefore DENY [43] CREW's Motion to Compel.

**I: BACKGROUND**

On March 30, 2008, following a conference call on the record with counsel for both parties participating, the Court entered an Order regarding CREW's [37] March 21, 2008 Motion to Compel, which sought the production of documents reflecting the date or dates on which OA

1

stopped functioning as an agency subject to FOIA, the Federal Records Act ("FRA"), and any other federal statute, and started functioning as an entity subject to the Presidential Records Act ("PRA"). *See* Order, Docket No. [41]. The Court's March 30, 2008 Order required OA to produce either the actual document or a privilege log regarding any document(s) in OA's possession or control reflecting (1) OA's final decision regarding whether OA is an agency subject to FOIA; and (2) OA's final determination that it is subject to the PRA rather than the FRA. *Id.* The Court's Order also set forth dates for briefing in the event that OA asserted a claim of privilege, and further required that OA submit an affidavit setting forth the answers to a number of questions posed by the Court during the conference call on the record. *Id.*

On April 7, 2008, OA submitted a Response to the Court's March 30, 2008 Order, in which it advised the Court that:

> it does not have a document that represents the final decision that OA is not subject to FOIA. Defendant notes, however, that the final decision on that issue was made on August 21, 2007, and that defendant's prior motion for judgment on the pleadings filed in this case on August 21, 2007 reflects that final decision. Defendant further notes that prior to the filing of that motion, [OLC] had provided legal advice to the White House Counsel's Office regarding OA's status under FOIA. That legal advice was formalized in a memorandum to the White House Counsel's Office dated August 21, 2007. OLC's advisory memorandum was not the final decision and is therefore not responsive to the Court's instructions during the conference call on March 28, 2008 and under the Court's Order of March 30, 2008.

Def.'s Resp. to Court's March 30, 2008 Order, Docket No. [42], at 1-2.

On March 14, 2008, CREW filed its Motion to Compel or Alternatively to Amend the Court's Order of March 30, 2008 to Require Defendant to Produce the OLC Opinion Addressing OA's Agency Status. *See* Docket No. [43]. OA filed its Opposition to CREW's Motion to Compel, along with a supporting Declaration of M. Elizabeth Medaglia in Response to the

Court's Order of March 30, 2008 (which also serves as OA's affidavit required by the Court's March 30, 2008). *See* Docket No. [44], Docket No. [44-2] ("Medaglia Decl."). Ms. Medaglia is the General Counsel of OA, and has held that position since May 14, 2007. Medaglia Decl. ¶ 2. CREW filed its Reply in support of its Motion to Compel on April 23, 2008. CREW's Reply suggested that the Court review the August 21, 2007 OLC memorandum at issue (hereinafter the "OLC Memo") *in camera* in order to evaluate OA's claims that the memo may be withheld under either the attorney-client privilege or the deliberative process privilege. The Court accepted CREW's suggestion, and on April 28, 2008, issued a Minute Order requiring OA to produce the OLC Memo *in camera*, *ex parte* and under seal for the Court's review.[1] The Court has now reviewed the OLC Memo.

## II: DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure authorizes "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and further explains that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The Court has already concluded–during the March 28, 2008 conference call on the record in this case and in the Court's March 30, 2008 Order–that when OA stopped functioning as an agency under FOIA and the FRA is relevant insofar as it provides "context" for OA's defense that it is not an agency subject to FOIA. *See* CREW Mot. to Compel, Ex. A (Tr. of 3/28/08 Conf. Call) at 4:16-

---

[1] In addition, OA filed a renewed [47] Motion to Dismiss for Lack of Subject Matter Jurisdiction on April 25, 2008, in compliance with a briefing schedule previously set by the Court. In light of the fact that CREW's Opposition to that Motion is due on May 9, 2008, the Court required OA to produce the OLC Memo *in camera* by 5:00 p.m. on April 30, 2008, so that CREW's Motion to Compel could be promptly resolved.

25. Drawing upon this conclusion, CREW's Motion to Compel suggests that the OLC Memo is probative of when OA stopped functioning as an agency under FOIA, and thus must be produced in response to CREW's limited discovery requests.

In support of its Motion to Compel, CREW argues that "absent a separate written final decision from OA, the OLC [Memo] is the final executive branch decision on OA's agency status," and cannot be withheld pursuant to either the attorney-client privilege or the deliberative process privilege. *See generally* CREW Mot. to Compel. OA responds that the OLC Memo is not the "final agency decision" regarding OA's status under FOIA, and further argues that the OLC Memo is shielded from disclosure by both the deliberative process privilege and the attorney-client privilege. *See generally* OA Opp'n. The Court briefly addresses and rejects OA's claim that the attorney-client privilege applies to the OLC Memo, before turning to OA's argument that the deliberative process privilege applies.

    A.    *The OLC Memo Is Not Covered By the Attorney-Client Privilege*

In its Opposition to CREW's Motion to Compel, OA claims that the OLC Memo is protected by the attorney-client privilege. In support of this claim, OA asserts that "OLC, in effect, serves as outside counsel to the Executive Branch," that the OLC Memo "contains confidential legal advice provided by OLC to the White House Counsel's Office," and that the "substance of the OLC [Memo] has not been disclosed outside the Executive Branch and has remained confidential." OA Opp'n at 3-5 (citing www.usdoj.gov/olc). OA's assertions in this respect are supported by Ms. Medaglia's Declaration. *See* Medaglia Decl. ¶¶ 6, 8.

"The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services." *Tax Analysts v. Internal*

4

*Revenue Service*, 117 F.3d 607, 618 (D.C. Cir. 1997) (citing *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984)). The attorney-client privilege also "protects communications from attorneys to their clients," however only "if the communications 'rest on confidential information obtained from the client.'" *Tax Analysts*, 117 F.3d at 618 (quoting *In re Sealed Case*, 737 F.2d at 98-99); *see also Mead Data Cent. v. United States Dep't of Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977).

The Court's *in camera* review of the OLC Memo reveals that it does not rest upon confidential information obtained from OA, and thus is not covered by the attorney-client privilege. Rather, the OLC Memo rests upon the same basic factual information as the Motion for Judgment on the Pleadings that OA filed in this Court on August 21, 2007. The Court therefore concludes that OA may not withhold the OLC Memo on the basis of the attorney-client privilege.

    B.    *The OLC Memo Is Covered By the Deliberative Process Privilege*

In contrast, the Court concludes that the OLC Memo is covered by the deliberative process privilege, and therefore need not be produced in response to CREW's discovery request. The general purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).[2] More specifically, the privilege "serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism;" "to protect against premature

---

[2] The Court's reference to "agency" decisions is a result of quoting directly from cases discussing the deliberative process privilege, and should not be interpreted as reflecting any conclusion as to whether OA is, as a matter of law, an agency subject to FOIA.

disclosure of proposed policies before they have been finally formulated or adopted;" and "to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). To this end, the privilege protects "documents and other materials that would reveal advisory opinions, recommendations, and deliberations comprising part of the process by which governmental decisions and policies are formulated." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).

Although the deliberative process privilege often arises in the context of FOIA cases, it originated as a common law privilege. *Id.*[3] For the privilege to apply, the government must establish that the material at issue is both "predecisional" and "deliberative" in nature. *Id.* "A document is predecisional if it was prepared in order to assist an agency decision maker in arriving at his decision, rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (citing *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)). At its most basic, the courts have held that a document is deliberative in nature if "it reflects the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866.

The Court's *in camera* review of the OLC Memo confirms that it is deliberative in nature. In *Sears*, the Supreme Court explained that the deliberative process privilege focuses on

---

[3] As such, and because FOIA Exemption 5 has been construed "to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," *Taxation With Representation Fund v. IRS,* 646 F.2d 666, 676 (D.C. Cir. 1981), cases discussing the deliberative process privilege in the FOIA context are relevant to the instant case.

"documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." 421 U.S. at 150. The Court's review of the OLC Memo reveals that it does not mandate a particular policy, rather it clearly contains legal advice from the equivalent of OA's outside counsel. Significantly, the D.C. Circuit has found that "[t]here can be no doubt that [] legal advice, given in the form of an intra-agency memoranda prior to any agency decision on the issues involved, fits exactly within the deliberative process rationale. . . ." *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980). Moreover, courts have upheld the withholding of specific OLC memoranda in the FOIA context based on findings that the memoranda are deliberative in nature. *See Southam News v. U.S. Immigration and Naturalization Service*, 674 F. Supp. 881, 887 (D.D.C. 1987) (Concluding that OLC opinion letters " generated in the course of formulating policies and positions that were being considered" fell within the scope of the deliberative process privilege encompassed in FOIA Exemption 5); *see also Morrison v. United States Dep't of Justice*, Civ. A. No. 87-3394, 1998 WL 47662 (D.D.C. Apr. 29, 1988) (OLC legal opinion analyzing the constitutionality of a proposed amendment exempt from disclosure under the deliberative process privilege).

      Further, OA's Opposition asserts that the OLC Memo in this case fits within the scope of documents covered by, and the purposes behind, the deliberative process privilege because "[a]ttorneys in OLC are often required to provide advice and analysis with respect to 'legal issues of particular complexity and importance,'" and absent the deliberative process privilege "attorneys within the OLC very likely would be discouraged from offering candid legal advice or even controversial legal arguments and theories. As a result, decisionmakers within the Executive Branch would be deprived of OLC's candid views." OA Opp'n at 5. CREW's Reply

attempts to discount OA's claim, arguing that the OLC Memo "represents the opinion of the attorney general through the Department of Justice's Office of Legal Counsel, not the opinion of a single attorney." CREW Reply at 4-5 n.4. The Court's *in camera* review of the OLC Memo, however, reveals that it is signed by a single attorney within the OLC. As such, shielding the OLC Memo from disclosure comports with the deliberative process privilege's "policy of protecting the decisionmaking processes of government agencies . . . [by encouraging] frank discussion of legal or policy matters." *Sears*, 421 U.S. at 650-51 (internal quotations and citations omitted); *see also Southam News*, 674 F. Supp. at 887. The Court therefore concludes that the OLC Memo is deliberative in nature and potentially appropriate for protection under the deliberative process privilege.

The next issue, then, is whether the OLC Memo is predecisional in nature, i.e., whether it was "generated *before* the adoption of an agency policy." *Tax Analysts*, 117 F.3d at 616. In her Declaration, Ms. Medaglia sets forth the timeline pursuant to which the Executive Branch reached its conclusion that the OA is not an agency subject to FOIA, and discusses the role that the OLC Memo played in that process. Specifically, according to Ms. Medaglia, the issue of whether OA is an agency subject to FOIA surfaced soon after the district court's decision in *Armstrong v. EOP*, 877 F. Supp. 690 (D.D.C. 1995) that the National Security Council was an agency subject to FOIA (a decision that was subsequently reversed on appeal by the D.C. Circuit in *Armstrong v. EOP*, 90 F.3d 553 (D.C. Cir. 1996)). Medaglia Decl. ¶ 5.[4] Since then, the

---

[4] As the Court noted during the March 28, 2008 conference call in this case, in 1978, shortly after the establishment of OA, President Jimmy Carter's Associate Counsel addressed a memorandum to the Deputy White House Counsel, in which he concluded–based on the D.C. Circuit's opinion in *Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971) and the legislative history surrounding the 1974 Amendment to FOIA–that "it is reasonable to conclude that [OA] is an

question of whether OA is an agency under FOIA was "from time to time a subject of discussion between and among the Department of Justice, OA, and the White House Counsel's Office, *id.*, and in April 2006, the White House Counsel's Office requested OLC's legal advice regarding OA's status under FOIA, *id.* ¶ 6. According to Ms. Medaglia, a "deliberative process regarding that question [ensued] from April 2006 through August 2007, [which] involved written and oral communications between and among the Department of Justice, OA, and the White House Counsel's Office, including preliminary legal advice from OLC on the issue." *Id.* ¶ 6.

Consistent with OA's April 7, 2008 Response to the Court's March 30, 2008 Order, Ms. Medaglia avers that the "final decision that OA is not subject to FOIA was made on August 21, 2007, after OA and the White House Counsel's Office received OLC's memorandum formally memorializing its legal advice. Although the decisionmaking was informed by OLC's legal advice, the OLC memorandum, also dated August 21, 2007, is not the 'final agency decision.'" *Id.* ¶ 7. Ms. Medaglia continues to explain that the "Executive Branch has no document that represents the final decision made on August 21, 2007. But that final decision–which was the result of a collaborative effort–is reflected in OA's motion for judgment on the pleadings, which was filed in this case that same day." *Id.* ¶ 9.

CREW contests OA's claim that the OLC Memo is not predecisional, arguing that it "represents the final decision of the executive branch entity charged with issuing final and binding legal advice." CREW Mot. to Compel at 3. As an initial matter, CREW appears to suggest that the OLC Memo must constitute a final opinion because "[w]hile OLC opinions are

---

'agency' subject to the Act." CREW Mot. to Suppl. Opp'n, Ex. A (6/28/78 Mem. from P. Apodaca to M. McKenna) at 2; *see also* CREW Mot. to Compel, Ex. A at 5:19-21.

not binding on the courts, they are binding on the executive branch 'until withdrawn by the Attorney General or overruled by the courts.'" *Id.* at 4-5 (quoting *Public Citizen v. Burke*, 655 F. Supp. 318, 321-22 & n.5 (D.D.C. 1987)).  CREW's argument proves too much.  As OA correctly notes, CREW's position "would mean that virtually all legal advice OLC provides to the executive branch would be subject to disclosure," and is therefore inconsistent with OLC's role, at least in this context, as outside counsel to OA.  OA Opp'n at 3.  Further, CREW's argument flies in the face of cases concluding that OLC memoranda may properly be withheld from disclosure under the deliberative process privilege.  *See Southam News*, 674 F. Supp. at 887; *Morrison*, 1998 WL 47662; *cf. National Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005) (OLC memorandum that would otherwise have been entitled to protection under the deliberative process privilege subject to disclosure because it was incorporated into DOJ policy).

CREW also argues that the OLC Memo must be disclosed in order to prevent the development of a body of "secret law."  *See* CREW Reply at 3-4.  To be sure, the D.C. Circuit has explained that a "strong theme" of the law regarding the deliberative process privilege is "that an agency will not be permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because its is not designated as 'formal,' 'binding,' or 'final.'" *Coastal States*, 617 F.2d at 867.  However, that concern is inapposite to the instant case because the Executive Branch has certainly not relied upon the OLC Memo in discharging regulatory duties and, as discussed below, has not used the OLC Memo in its dealings with the public.  Nor does not appear that the OLC Memo can rightly be described as itself a statement of the Executive Branch's legal

position, as was the case with the advisory opinions at issue in *Tax Analysts*. *See* 117 F.3d at 617. While Ms. Medaglia's Declaration acknowledges that the OLC Memo "formally memorializ[ed]" the OLC's legal advice and informed the Executive Branch's decisionmaking process, Medaglia Decl. ¶ 8, Ms. Medaglia also makes clear that the Executive Branch's ultimate decision that OA is not an agency subject to FOIA was the result of a collaborative effort between the Department of Justice, OA, and the White House Counsel's Office. *Id.* ¶¶ 8-9. Simply put, CREW offers nothing–other than its speculation that the OLC Memo must represent the Executive Branch's final decision because it was issued on the same day as OA filed its Motion for Judgment on the Pleadings in this case–to refute Ms. Medaglia's sworn declaration. Furthermore, the Court's *in camera* review of the OLC Memo supports Ms. Medaglia's assertion that the OLC Memo does not represent the Executive Branch's final decision on that question.

Finally, CREW argues that, even if the OLC Memo might be entitled to protection under the deliberative process privilege, OA is nevertheless required to disclose it because the Executive Branch has adopted the OLC Memo's conclusion and reasoning. *See* CREW Reply at 5-7. CREW is correct that, "even if [a] document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States*, 617 F.2d 866. Significantly, the Supreme Court has concluded that this exception applies where an "agency chooses *expressly* to adopt or incorporate by reference an intra-agency memorandum previously covered by [the deliberative process privilege]." *Sears*, 421 U.S. at 161 (emphasis added); *see also Afshar v. Dep't of State*, 702 F.2d 1125, 1143 & n.22 (D.C. Cir. 1983) ("We think it clear that, at least under the circumstances of this case, only express adoption in a nonexempt memorandum

explaining a final decision will serve to strip these memoranda of their predecisional character"); *Access Reports v. Dep't of Justice*, 926 F.3d 1192, 1197 (D.C. Cir. 1991) (a "confused statement . . . fell far short of the *express* adoption required by *Sears*."). Here, there can be no doubt that the Executive Branch has never *expressly* adopted or incorporated by reference the OLC Memo. To the contrary, OA's Motion for Judgment on the Pleadings, which Ms. Medaglia avers represents the final Executive Branch position on OA's status under FOIA, *see* Medaglia Decl. ¶ 9, makes no mention of the OLC Memo, and OA only revealed its existence in response to direct questioning by the Court as to whether such a memo existed.

As such, this case stands in stark contrast to *La Raza*, upon which CREW places significant emphasis. In that case, the Second Circuit held that an OLC memorandum that was otherwise covered by the deliberative process privilege was subject to disclosure because it was adopted or incorporated into official agency policy. *See generally* 411 F.3d 350. The court found that the OLC memorandum at issue in that case was adopted by the Department of Justice through "repeated references . . . made by the Attorney General and his high-ranking advisors . . . [which] were used . . . to assure third parties as to the legality of the actions the third parties were being urged to take." *Id.* at 357. Indeed, the Second Circuit found that DOJ's repeated references to the OLC memorandum in that case "demonstrate that the Department regarded the Memorandum as the exclusive statement of, and justification for, its new policy." *Id.* In contrast, in the instant case, the Executive Branch has never referred to nor relied upon the OLC Memo in dealings with the public, and has certainly not indicated that it represents an "exclusive statement of, and justification for" the Executive Branch's position that OA is not an agency subject to FOIA.

Further, as *La Raza* explains–and numerous other courts have concluded–"[m]ere reliance on a document's conclusions does not necessarily involve reliance on a document's analysis; both will ordinarily be needed before a court may properly find adoption or incorporation by reference." *Id.* at 358-59 (citing *Grumman*, 421 U.S. at 168). The reason for this requirement is that "[i]f the agency merely carried out the recommended decision without explaining its reasoning in writing, [a court cannot be] sure that the [recommendation] memoranda accurately reflected the decisionmaker's thinking." *Afshar*, 702 F.2d at 1143 n.22. Indeed, a final policy decision "might be motivated by myriad considerations; the simple fact that an inter-agency deliberative memorandum reaches the same conclusion as the ultimate decision-maker provides no guarantee that the memorandum represents the views actually adopted by the government." *Am. Soc. of Pension Actuaries v. Internal Revenue Service*, 746 F. Supp. 188, 191 (D.D.C. 1990).

Thus, even if the OLC Memo reached the same conclusion as the Executive Branch's collaborative process, the Court could not assume–in the absence of evidence indicating that the conclusion was reached on the same grounds–that the Executive Branch actually adopted the OLC Memo. Moreover, having now reviewed the OLC Memo *in camera*, it is clear to the Court that any such assumption would be entirely inappropriate. The analysis contained in the OLC Memo meaningfully differs from the legal position ultimately taken in OA's Motion for Judgment on the Pleadings, which Ms. Medaglia describes as reflective of the Executive Branch's final position on whether OA is an agency subject to FOIA. *See* Medaglia Decl. ¶ 9. In light of the significant distinctions between the legal reasoning contained in the OLC Memo and that contained in OA's Motion for Judgment on the Pleadings, the Court is convinced that the

Executive Branch did not adopt–explicitly or implicitly, formally or informally–the OLC's Memo as its official position on whether OA is an agency subject to FOIA.

The Court therefore concludes that the OLC Memo is both predecisional and deliberative in nature, and thus covered by the deliberative process privilege. The Court further concludes that that privilege remains intact, as the OLC Memo has not been adopted or incorporated by reference into the Executive Branch's final decision on OA's status under FOIA. As such, OA is not required to disclose the OLC Memo in response to CREW's limited discovery requests.

### III:  CONCLUSION

Although the Court concludes that the OLC Memo is not covered by the attorney-client privilege, it is shielded from discovery by the deliberative process privilege. Accordingly, the Court shall DENY [43] CREW's Motion to Compel. An appropriate Order accompanies this Memorandum Opinion.

Date:   May 5, 2008

                                               /s/
                                          COLLEEN KOLLAR-KOTELLY
                                          United States District Judge