**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No: 1:07-CV-00964 (CKK) |
| OFFICE OF ADMINISTRATION, ) ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

# TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES. .............................................................................................. ii

PRELIMINARY STATEMENT. ......................................................................................... 1

ARGUMENT. ...................................................................................................................... 2

I.      THIS COURT LACKS SUBJECT MATTER JURISDICTION TO
        REVIEW THIS FOIA ACTION. ........................................................................... 2

        A.      OA Does Not Wield "Substantial Independent Authority" to Qualify
                As An "Agency" Under FOIA. .................................................................. 2

        B.      OA Is Subject to the President's Direction and Control Through A
                Chain of Command. ................................................................................... 6

        C.      OA Is Operationally Close to the President. .............................................. 7

        D.      OA Does Not Have Any "Substantial Independent Authority" Over
                Other EOP Components. ............................................................................ 8

        E.      OA Assists and Advises the President by Providing Administrative
                Support to the EOP. ................................................................................. 10

II.     OA'S PAST CONDUCT DOES NOT PRECLUDE THIS COURT
        FROM HOLDING THAT OA IS NOT AN "AGENCY" UNDER FOIA. ....................... 12

CONCLUSION. ................................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**                                                                                                    **<u>PAGE(S)</u>**

Armstrong v. EOP,
    1 F.3d 1274 (D.C. Cir. 1993). ............................................................... 7, 12, 13

Armstrong v. EOP,
    90 F. 3d 553 (D.C. Cir. 1996). ................................................. passim

Davis County Solid Waste Management v. E.P.A.,
    101 F.3d 1395 (D.C. Cir. 1996). ...................................................... 6

King v. St. Vincent's Hosp.,
    502 U.S. 215 (1991). ........................................................................ 6

Meyer v. Bush,
    981 F.2d 1288 (D.C. Cir. 1993). ................................................ 3, 7, 8

National Rifle Ass'n of America v. Federal Election Com'n,
    854 F.2d 1330 (D.C. Cir. 1988). .................................................... 14

Pacific Legal Foundation v. Council on Environmental Quality,
    636 F.2d 1259 (D.C. Cir. 1980). ...................................................... 2

Sierra Club v. Andrus,
    581 F.2d 895 (D.C. Cir. 1978). ....................................................... 2

Soucie v. David,
    448 F.2d 1067 (D.C. Cir. 1971). .................................................... 2, 4

Sweetland v. Walters,
    60 F.3d 852 (D.C. Cir. 1995). ............................................... 2, 3, 8, 15

Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler,
    537 U.S. 371 (2003). ........................................................................ 6

**<u>STATUTES AND REGULATIONS</u>**

3 U.S.C. § 401(a)(4). ....................................................................... 12

3 U.S.C. § 411. ................................................................................ 12

31 U.S.C. § 16 (1976). ....................................................................... 3

31 U.S.C. § 101. ............................................................................................... 12

## **RULES AND REGULATIONS**

32 C.F.R. §§ 2101-2103 (1993). ...................................................................... 13

Fed. R. Civ. P. 12(b)(6). .................................................................................. 15

## **MISCELLANEOUS**

Executive Order No. 12028, 42 Fed. Reg. 62895 (Dec. 12, 1977), *as amended by* Executive
Order No. 12122, 44 Fed. Reg. 11197 (Feb. 26, 1979). ........................................... passim

Reorganization Plan No. 1 of 1977, 42 Fed. Reg. 56101, 91 Stat. 1633 . ................................. 6, 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No: 1:07-CV-00964 (CKK) |
| OFFICE OF ADMINISTRATION, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION**
**TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**PRELIMINARY STATEMENT**

Defendant Office of Administration ("OA") is not an "agency" within the definition of the Freedom of Information Act ("FOIA") because it exercises no substantial independent authority over matters of public or regulatory policy. Unlike those components of the Executive Office of the President ("EOP") that have been found to be FOIA agencies, OA has no authority to issue guidelines to federal agencies, to coordinate and evaluate federal programs, to oversee activities of federal agencies, or to perform other significant statutory duties. Rather, OA exists to provide administrative support and services to EOP components so that other EOP staff can focus on advising and assisting the President on policy decisions.

Unable to show otherwise, plaintiff conflates the authority to direct others with respect to matters of public and regulatory policy, with the authority OA's Director exercises in *operating OA* and carrying out OA's undeniably administrative functions within the EOP. The law is clear that the latter authority – to which plaintiff's opposition brief is exclusively devoted – does not

suffice to make OA a FOIA agency.  In the end, plaintiff's opposition boils down to the familiar

argument that OA's prior practice of operating as if it were subject to FOIA necessarily precludes

this Court from determining as a matter of law that OA is not an "agency" under FOIA.  The

D.C. Circuit has long rejected that argument.  This Court should do so as well.

## ARGUMENT

I.     **THIS COURT LACKS SUBJECT MATTER JURISDICTION TO REVIEW THIS FOIA ACTION**

      A.     **OA Does Not Wield "Substantial Independent Authority" To Qualify As An "Agency" Under FOIA**

In *Sweetland v. Walters*, 60 F.3d 852, 855 (D.C. Cir. 1995), the D.C. Circuit explained

that "FOIA was intended to enlighten citizens as to how they are governed."  Consistent with this

principle, those EOP components held by the D.C. Circuit to be FOIA agencies have "wielded

substantial authority independently of the President" over matters of public or regulatory policy.

*Id.* at 854.  For example, the Office of Science and Technology Policy ("OSTP") is a FOIA

agency because it has "the independent function of evaluating federal [scientific] programs."

*Soucie v. David*, 448 F.2d 1067, 1075 (D.C. Cir. 1971).  The Council on Environmental Quality

("CEQ") is a FOIA agency because it has power to coordinate federal environmental programs

and issue binding guidelines and regulations to federal agencies.  *See Pacific Legal Foundation*

*v. Council on Environmental Quality*, 636 F.2d 1259 (D.C. Cir. 1980).  Likewise, the Office of

Management and Budget ("OMB") is subject to FOIA's disclosure requirements because it has a

statutory duty to prepare the budget – which is "an aid to Congress," *Sierra Club v. Andrus*, 581

F.2d 895, 902 (D.C. Cir. 1978) – and has the authority to "assemble, correlate, revise, reduce, or

increase the requests for appropriations of the several departments or establishments."  *Id.* at 902

n.25 (quoting 31 U.S.C. § 16 (1976)).

Where the EOP component lacks substantial independent authority over others in the Executive Branch, however, the D.C. Circuit has not found it to be a FOIA agency. Thus, the President's Task Force on Regulatory Relief was not a FOIA agency because it lacked "substantial independent authority *to direct executive branch officials*." *Meyer v. Bush*, 981 F.2d 1288, 1298 (D.C. Cir. 1993) (emphasis added). Similarly, the Council of Economic Advisers ("CEA") is not a FOIA agency because it does "not possess any delegated *regulatory authority to supervise agencies*," *id.* at 1293 (emphasis added), and has "no [] power to issue formal legally authoritative commands to entities or persons within or without the executive branch," *id.* at 1292. Likewise, the National Security Council is not a FOIA agency because it does not exercise "meaningful non-advisory authority" in coordinating the activities of the various agencies with national security responsibilities. *Armstrong v. EOP*, 90 F.3d 553, 561, 565 (D.C. Cir. 1996). And the Executive Residence is exempt from FOIA because it is exclusively dedicated to assisting the President in maintaining his home and carrying out his various ceremonial duties, and "does not oversee and coordinate federal programs . . . or promulgate binding regulations." *Sweetland*, 60 F.3d at 854.

OA established in its opening brief that unlike OSTP, CEQ and OMB, it does not direct or supervise others in the Executive Branch, let alone exercise "substantial independent authority" over regulatory and/or public policy matters.[1] Instead, much like the Executive Residence, which supports the President by maintaining his home and assisting him in his

_____

[1] Indeed, plaintiff acknowledges as much: "To be sure, OA is unlike entities such as the CEQ and OST that the courts have determined are agencies based on the fact that they exercise independent authority over other, non-EOP agencies." Pl's Br. at 19.

3

various ceremonial duties, OA supports the President by performing purely administrative functions for the EOP.  Like the Executive Residence's non-substantive, supporting role, OA similarly is "not accountable for the program and management responsibilities" of the EOP units it supports.  Exec. Order No. 12028, § 4(d).

Plaintiff nevertheless maintains that OA is a FOIA agency because through OA's governing executive order,[2] "the President has effected a broad delegation of authority over the OA to its Director."  *See* Pl's Br. at 16.  But D.C. Circuit precedent is clear that only authority over others in the Executive Branch in matters affecting public or regulatory policy is relevant to this inquiry.  The OA Director's authority over the operation of OA – *e.g.,* to make personnel or procurement decisions – says nothing about whether OA has the type of "substantial independent authority" that would render it a FOIA agency.[3]  *Soucie*, 448 F.2d at 1073.

Similarly irrelevant to the present inquiry is OA's authority to perform its purely administrative functions delegated by its charter documents.  Although plaintiff relies heavily on OA's various interagency agreements with non-EOP agencies (*see* Pl's Br. at 19-21), those agreements do not shed light on OA's "agency" status.  They are all for the provision of supplies and services either for OA itself, for an EOP entity, or for the entire EOP, and relate to the utilization of federal procurement organizations, the outsourcing of administrative and financial

---

[2]  Executive Order No. 12028, 42 Fed. Reg. 62895 (Dec. 12, 1977), *as amended by* Executive Order No. 12122, 44 Fed. Reg. 11197 (Feb. 26, 1979).  References in this brief to Executive Order 12028 are to the executive order as amended.

[3]  Perhaps recognizing its inability to meet the "substantial independent authority" standard as articulated and interpreted in the case law, plaintiff attempts to characterize the relevant standard as merely requiring, for example, "substantial independence," "sufficient independence," and "significant independence."  *See* Pl's Br. at 15-17.  Clearly, such artful recasting of the standard cannot cure the legal deficiency in plaintiff's case.

4

management services, the reimbursement of expenses incurred by the President's attendance at events sponsored by a federal agency, and the provision of limited administrative services (*i.e.*, phone services) for federal entities present on the White House complex for purposes of supporting the EOP.[4]  Clearly, OA's ability to enter into these types of contracts is central to its ability to provide administrative support and services to the EOP.  Section 4(a)(3) of OA's governing executive order so recognizes, providing that "[s]ubject to such direction or approval that the President may provide or require, the Director shall . . . contract for supplies or services."  Thus, far from establishing any substantive authority on the part of OA, the agreements merely confirm OA's purely administrative support role within the EOP.

---

[4]  Specifically, the September 2004 interagency agreement with the Department of Interior cited by plaintiff (Ex. 6 to Pl's Br.) was an agreement for OA to use Interior's procurement organization, GovWorks, to obtain a private contractor for the implementation of an e-mail archive retrieval system for the EOP.  *See* Deposition Transcript of Alan R. Swendiman, dated March 13, 2008, [hereinafter Swendiman Tr.] (attached as Ex. 2 to OA's Opening Br.) at 70, 81-82 (stating that OA sometimes uses procurement organizations within the federal government, such as GovWorks, to procure supplies and services on behalf of the EOP).  The January 2008 agreement with the Department of Education (Ex. 11 to Pl's Br.) was for the reimbursement of expenses incurred relating to the President's attendance at a Chicago event sponsored by the Department of Education.  *See* Swendiman Tr. at 94-97.  And, the October 2007 agreement with the Department of Health and Human Services ("HHS") (Ex. 13 to Pl's Br.) outsources to HHS the administrative service of processing and managing grants awarded by the Office of National Drug Control Policy ("ONDCP"), an EOP component.  *See* Swendiman Tr. at 29-31.

In addition, OA has an agreement with the Department of the Navy pursuant to which the Navy pays OA for "AT&T voice systems operation and maintenance" (Ex. 8 to Pl's Br.) because Navy operates the White House Mess executive dining rooms, which are located on the White House complex.  OA has similar interagency agreements for the provision of phone services to entities that are present on the White House complex, including the Secret Service, the Harry S. Truman Scholarship Foundation, the White House Fellows, the President's Commission on White House Fellowships, the White House Communications Agency, and the General Services Administration.  *See* Ex. 9 to Pl's Br.

**B.     OA Is Subject to the President's Direction and Control Through A Chain of Command**

Equally without merit is plaintiff's argument that the OA Director has *carte blanche* in his operation of OA.  The OA Director's authority is "[s]ubject to such direction or approval as the President may provide or require."  Exec. Order No. 12028, § 4.  Plaintiff contends that the word "may" means that there could be a total absence of direction or approval, allowing the OA Director to act as he wishes.  Pl's Br. at 16.  Such an interpretation makes no sense.  The phrase "[s]ubject to such direction or approval as the President may provide or require" unambiguously limits the OA Director's authority to act.  Otherwise, the remainder of section 4(a) would have the same meaning without that phrase.  It is "a well-established maxim of statutory construction that courts should avoid interpretations that render a statutory provision superfluous."  *Davis County Solid Waste Management v. E.P.A.*, 101 F.3d 1395, 1404 (D.C. Cir. 1996).

Moreover, plaintiff's reading would be contrary to section 2 of the governing executive order, which requires the OA Director to "report to the President."  Exec. Order 12028 § 2; *see also* Reorganization Plan No. 1 of 1977 ("Reorganization Plan"), § 2, 42 Fed. Reg. 56101, 91 Stat. 1633 (Ex. 1 to OA's Opening Br.) (requiring OA to provide EOP "with such administrative services *as the President shall from time to time direct*").  Basic canons of statutory interpretation require that a statute – or here, an executive order – "be read as a whole" in order not to render portions of it inconsistent.  *Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler,* 537 U.S. 371, 385 n.7 (2003); *see also King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (court "follow[ing] the cardinal rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context").

6

The President remains the head of OA, *see id.*, and while the President has appointed "a chief administrative officer" to operate OA as contemplated by section 2 of the Reorganization Plan, it by no means suggests that the OA Director has substantial authority *independent* of the President.  To the contrary, OA's Director, who also carries the title of Special Assistant to the President, reports to the Deputy Assistant to the President for Management and Administration. *See* Swendiman Tr. at 9.  As OA's then Director explained:  "My authority, as I understand it, is to report to the President of the United States through a chain of command, and I make recommendations with regards to the operations of the office." *Id.* at 11.  Indeed, even OA's procurement of detailees to work at OA is subject to Presidential approval. *See id.* at 116 ("I've got to get the approval of the White House Management and Administration of getting detailees.").

### C.    OA Is Operationally Close To The President

Because OA exercises no substantial independent authority over others in the Executive Branch, plaintiff cannot rely on OA's alleged lack of operational proximity to the President to compel a different outcome here.  "How close operationally the group is to the President" is one of the three factors articled by the D.C. Circuit in *Meyer* when "determining whether those who both advise the President *and supervise others in the Executive Branch* exercise 'substantial independent authority' and hence should be deemed an agency subject to the FOIA." *Armstrong*, 90 F.3d at 558 (emphasis added); *see also Meyer*, 981 F.2d at 1293 ("When we apply *Soucie* to those who help the President *supervise others in the executive branch*, we think it is necessary to focus on three interrelated factors . . .") (emphasis added).  But where an EOP component, like OA, does not supervise others, the three factor test is inapplicable.  This Court need not apply it,

7

just as the D.C. Circuit did not apply the test in *Sweetland* – a case decided after *Meyer* – when it found that the Executive Residence is not subject to FOIA. *See Sweetland*, 60 F.3d at 854.

Even if proximity to the President were a relevant consideration, however, it weighs in favor of OA's non-agency status under FOIA. As discussed above, OA's Director reports directly to senior White House officials regarding his or her operation of OA and is subject to the President's direction and approval through a chain of command. While plaintiff argues that there is no working relationship "directly between the President and OA" of the sort that exists between the national security advisor and the President (at issue in *Armstrong*), *see* Pl's Br. at 27, no such relationship is required. In light of OA's purely administrative functions, the President obviously has determined that he need not have the same type of personal working relationship with OA's Director as he does with the national security advisor regarding national security policies and issues. And as the D.C. Circuit has explained, each of the three *Meyer* factors, including the proximity factor, "warrants consideration insofar as it is illuminating in a particular case." *Armstrong*, 90 F.3d at 558. There is plainly sufficient operational proximity between OA and the President to warrant a finding of OA's non-agency status.

**D.    OA Does Not Have Any "Substantial Independent Authority" Over Other EOP Components**

Plaintiff nevertheless maintains that OA is a FOIA agency because it allegedly exercises substantial independent authority *over other EOP components*. *See* Pl's Br. at 17. But consistent with D.C. Circuit precedent, this Court has already held that the relevant question here is whether OA exercises substantial independent authority over "third parties *outside of EOP units*, such as federal agencies and private entities." Order of Feb. 22, 2008 at 3 (emphasis in original).

8

Moreover, as discussed above, whatever authority OA exercises over other EOP components in

providing administrative and support services, that authority is not independent of the President.

This alone precludes any finding that OA has the type of "substantial independent authority,"

whether within or without the EOP, sufficient to make it an "agency" subject to FOIA.

In any event, the general descriptions in OA's Fiscal Year ("FY") 2008 Budget Request

of OA's Office of the Chief Financial Officer ("OCFO") and its Office of the Chief Information

Officer ("OCIO") – upon which plaintiff relies – do not support the proposition that OA has

substantial authority over other EOP components.  The OCIO is described to have the function of

"efficiently and effectively deliver[ing] strategic and operational technology leadership to the

components that OA supports."  FY 2008 Budget Request at OA-3 (Ex. 7 to Pl's Br.).  This

description simply conveys that the OCIO is charged with protecting and safeguarding the

complex, sensitive but unclassified EOP network (including the infrastructure, web sites, remote

access, and data),[5] which is consistent with OA's delegated authority to provide administrative

support services to the EOP components.

Similarly, consistent with section 3(b)(2) of OA's governing executive order requiring

OA to provide "financial management services" to the EOP components, the OCFO is described

as responsible for "overseeing financial management activities related to EOP components."  FY

2008 Budget Request at OA-3.  Specifically, it "directs, manages, and provides policy guidance

---

[5]  As OA's then Director, Alan Swendiman, testified before the House Committee on Oversight and Government Reform, OA's OCIO is also responsible for providing the EOP with unified enterprise services such as production support, application development and support, office automation, email, disaster recovery back-up information, Continuity of Operations support, and intranet capabilities.  *See* Swendiman Statement (February 26, 2008) (attached as Ex. 5 to OA's Opening Br.) at 1-2.

9

and oversight of financial management activities and operations, including procurement and

travel support." *Id.*   The description makes clear that the OCFO's function is related to EOP's

financial management.  Financial management is a quintessentially administrative function that

OA was created to provide, and does not suggest that OA wields independent authority over

other EOP components.[6]

      E.      **OA Advises And Assists The President By Providing Administrative
Support To The EOP**

 Plaintiff also argues that OA does not advise and assist the President because section 3(a)

of the governing executive order merely indicates the possibility that OA could be asked by the

White House Office to provide administrative services in direct support of the President.  Pl's Br.

at 17 n.16; *see also id.* at 22.  But whether or not OA actually provides the full complement of

administrative services to the White House Office that it does to other EOP components is

besides the point.  OA is entirely a Presidential creation established to combine administrative

support operations into a central unit in the EOP so that the EOP can better serve the President's

needs.  *See* President's Message accompanying the Reorganization Plan No. 1 of 1977 at 3 and 8

(Ex. 1 to OA's Opening Br.).  As OA has explained to Congress, OA's mission is to provide the

---

 [6] Plaintiff also cites the FY 2008 Budget Request (at OA 4-5) for the proposition that
"OA's salaries and expenses are paid from funds that come from other EOP components,"
including those that are FOIA agencies.  *See* Pl's Br. at 17.  That assertion is not correct.  OA's
estimates for its salaries and expenses are separately provided at OA-9 to OA-11.  The pages
plaintiff cites list only estimated amounts of money OA would be paying on behalf of various
EOP components and from which components the funds would be shifted (*e.g.*, $10,281,000 for
rent to the General Services Administration from OMB and ONDCP; $658,000 for employee
transportation subsidies from various EOP components; and $105,000 for burn bag pick up
services from the White House Office, CEA, ONDCP and the U.S. Trade Representative).   In
any event, even if plaintiff's assertion was true, it would not shed any light on whether OA has
substantial authority over other EOP components.

necessary administrative support for the staff of the EOP "so that policy-making staff elsewhere in the EOP can focus on national policy decisions without having the distractions caused by routine administrative services."  OA Fiscal Year 2006 Budget Request (excerpt attached as Ex. 4 to OA's Opening Br.), at 69.  In other words, in providing administrative support and services to the EOP components, OA is serving the function of advising and assisting the President.[7]

In any case, OA in fact provides direct support to the President.  It is undisputed in this case that OA is responsible for providing unified enterprise services such as application development and support to all EOP components, including the White House Office.  *See* Order of Feb. 22, 2008 at 2 (noting that "there is no dispute – and the documents in the record make clear – that OA provides extensive administrative services to all EOP components, including acquiring, designing, maintaining, and safeguarding the EOP [computer] network") (internal quotation marks omitted, alteration in original).  In addition, the FY 2008 Budget Request illustrates some of the administrative services that OA provides the White House Office.  *See* FY 2008 Budget Request at OA 4-5 (requesting that funds be shifted from the White House Office to OA for handling of White House employee transportation subsidies, burn bag pick up services, and payment of employee Flexible Spending Account administrative fees).

In sum, OA is not an "agency" under FOIA because it does not have substantial authority

---

[7]  Clearly, since OA's creation, OA's administrative role has expanded with the advance of technology.  Thus, as OA's Director testified before Congress, during this Administration alone, OA has seen a tremendous increase in cyber threats to the EOP network, which OA maintains.  *See* Swendiman Testimony at 3.  But regardless of the types of administrative functions OA performs on behalf of the EOP – *e.g.*, cyber security and threats, contracting for supplies and services, budget and appropriation issues – it is clear that OA is advising and assisting the President on those issues.  Indeed, plaintiff itself alleges that OA is responsible for assessing the EOP's alleged "missing email problem" and for proposing "a plan of action" for the recovery efforts to senior White House officials.  *See* Compl. ¶¶ 18-24.

11

independent of the President, but exists solely to advise and assist the President by providing

non-substantive, administrative support and services to the EOP.

## II.    OA'S PAST CONDUCT DOES NOT PRECLUDE THIS COURT FROM HOLDING THAT OA IS NOT AN "AGENCY" UNDER FOIA

Unable to establish the requisite authority on the part of OA, plaintiff is left to argue that

OA somehow is "estopped" from asserting its non-agency status because of its past practices.

These arguments lack merit.  First, plaintiff argues that OA is a FOIA agency because it allegedly

"has complied with or relied on a host of federal laws applicable to federal agencies."  *See* Pl's

Br. at 2.  Plaintiff cites in particular the Economy Act and the Americans with Disabilities Act.

*See* Pl's Br. at 22-23.  OA's compliance with those laws, however, is irrelevant to the issue of

whether OA is an "agency" under FOIA.  As OA fully explained in its opening brief (at 26-28),

OA's governing executive order specifically requires that OA act in accordance with the

Economy Act in order to achieve financial savings and increase efficiency.  *See* Exec. Order

12028, § 3(c).  And the Economy Act, in any event, expansively defines the term "agency" to

mean "a department, agency, or instrumentality of the United States Government."  31 U.S.C.

§ 101.

Similarly, OA's compliance with federal anti-discrimination laws, such as the Americans

with Disabilities Act, is mandated by statute and does not illuminate on the question of OA's

"agency" status under FOIA.  Title 3 of the U.S. Code generally extends the protections of

federal anti-discrimination laws to employees of the EOP components.  Section 411 of Title 3 –

which is entitled "[r]ights and protections under title VII of the Civil Rights Act of 1964, the Age

Discrimination in Employment Act of 1967, the Rehabilitation Act of 1973, and title I of the

12

Americans with Disabilities Act of 1990" – prohibits discriminatory practices by an "employing office" within the EOP.  And, the term "employing office" is defined to mean "each office, agency, or other component of the Executive Office of the President."  3 U.S.C. § 401(a)(4).  OA falls within that definition.

Second, plaintiff claims that because OA previously has complied with FOIA (and with the corresponding record keeping statute, the Federal Records Act), it should be estopped from asserting its non-agency status now.  The D.C. Circuit rejected this precise argument in *Armstrong*, holding that an EOP component's prior conduct of complying with FOIA and the Federal Records Act "should not be taken as a matter of law that [the EOP component] is subject to those statutes."  *Armstrong*, 90 F.3d at 565-66.  This is true, even if prior cases had assumed, without deciding, the EOP component's "agency" status under FOIA.  *See Armstrong v. EOP*, 1 F.3d 1274, 1296 (D.C. Cir. 1993).  Plaintiff seeks to distinguish *Armstrong* on the ground that the EOP component involved there, the National Security Council ("NSC"), was only treating some of its records as being subject to FOIA and that its disclosure was in any event voluntary.  According to plaintiff, the D.C. Circuit relied on the NSC's inconsistent, and voluntary, disclosures of records to conclude that the NSC's past practice did not determine the NSC's "agency" status.

Plaintiff's attempt to distinguish *Armstrong* is unavailing.  The NSC had promulgated FOIA regulations and subjected some of its records to the disclosure requirements of FOIA because it believed that it was a FOIA "agency."  *See Armstrong*, 90 F.3d at 557 (citing the NSC's FOIA regulations at 32 C.F.R. §§ 2101-2103 (1993)).  As the D.C. Circuit noted in *Armstrong*, the Office of Legal Counsel of the Department of Justice had rendered an opinion in

1978 concluding that the NSC was an agency for purposes of FOIA. *See Armstrong*, 90 F.3d at 557. In 1993, during the *Armstrong* litigation, the Office of Legal Counsel reversed its prior opinion in light of developments in FOIA jurisprudence. *See id.* As was the case with the NSC in *Armstrong*, OA originally viewed itself as subject to FOIA and acted accordingly. Upon review of OA's status, however, it was determined that OA does not fall within the definition of "agency" under FOIA. This change in position is consistent with the change in the NSC's status recognized and upheld in *Armstrong.*

Third, plaintiff faults OA for accepting plaintiff's FOIA requests, for granting expedition and a fee wavier, for participating in the court-supervised discussions to resolve plaintiff's motion for a preliminary injunction, and for agreeing to a processing schedule. According to plaintiff, this conduct requires, at a minimum, that the records plaintiff seeks be subject to FOIA's mandatory disclosure requirements. This argument is frivolous. There is no requirement that OA assert its non-agency status in the first days of litigation. No estoppel doctrine operates to require OA to continue to comply with FOIA with respect to the two FOIA requests at issue here.

Finally, plaintiff accuses OA of failing to assert its "non-agency" defense in the Answer. However, OA expressly denied in its Answer that it is an agency subject to FOIA. *See* Answer, ¶ 7. In any event, only affirmative defenses are required to be pled in an answer, and given that this defense is a jurisdictional one, it can be raised at any time. *Cf. National Rifle Ass'n of America v. Federal Election Com'n,* 854 F.2d 1330, 1337, 272 (D.C. Cir. 1988) ("The Commission's failure to raise the jurisdictional argument in its answer is not, of course, determinative, inasmuch as the issue of subject matter jurisdiction cannot be waived and can thus

14

be raised at any time."). Even if non-agency status under FOIA is considered a Fed. R. Civ. P. 12(b)(6) defense, *see Sweetland*, 60 F.3d at 855, OA's assertion in the Answer that the complaint fails to state a claim upon which relief can be granted also constituted a denial of OA's agency status. *See* Answer, at 7. Thus, contrary to plaintiff's suggestion, there is no waiver.

## CONCLUSION

For all the foregoing reasons and the reasons submitted in OA's opening brief, this Court should grant OA's motion to dismiss for lack of subject matter jurisdiction.

Dated: May 16, 2008                                       Respectfully submitted,

GREGORY  G. KATSAS
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

_____ */s/* Jean Lin _____
JEAN LIN
Federal Programs Branch, Civil Division
United States Department of Justice
20 Massachusetts Ave., N.W.
Washington, D.C.  20530
Tel: (202) 514-3716
Fax: (202) 616-8407

Attorneys for Defendant