# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
CITIZENS FOR RESPONSIBILITY AND    )
ETHICS IN WASHINGTON,              )
                                   )
                Plaintiff,         )
                                   )
        v.                         )        Civil No. 07-0964 (CKK)
                                   )
OFFICE OF ADMINISTRATION,          )
                                   )
                Defendant.         )
_____)

## PLAINTIFF'S MOTION FOR STAY PENDING APPEAL

Plaintiff, by its undersigned counsel, hereby respectfully moves that the Court stay its

Order of June 16, 2008, to require defendant to retain all documents potentially responsive to

CREW's two Freedom of Information Act requests at issue pending the resolution of plaintiff's

appeal.  The grounds for this motion are set forth in the accompanying Memorandum of Points

and Authorities in Support of Plaintiff's Motion for Stay Pending Appeal.

In accordance with Local Rule 7(m), undersigned counsel for the plaintiff has

conferred with counsel for the defendant regarding the relief sought in this motion, and counsel

stated that defendant opposes this motion.

Respectfully submitted,

_____/s/_____
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and Ethics
   in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Telephone:  202-408-5565

Fax:  202-588-5020

June 20, 2008                          Attorneys for plaintiff

2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
CITIZENS FOR RESPONSIBILITY AND        )
ETHICS IN WASHINGTON,                   )
                                        )
                 Plaintiff,             )
                                        )
        v.                              )        Civil No. 07-0964 (CKK)
                                        )
OFFICE OF ADMINISTRATION,               )
                                        )
                 Defendant.             )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## PLAINTIFF'S MOTION FOR STAY PENDING APPEAL

### STATEMENT

On June 16, 2008, the date this Court issued its Order and Memorandum Opinion

granting defendant's motion to dismiss on the ground that it is not an agency subject to the

Freedom of Information Act ("FOIA"), plaintiff Citizens for Responsibility and Ethics in

Washington ("CREW") filed its notice of appeal (Docket No. 55). CREW seeks appellate

review of this Order, which places beyond the public's reach a large volume of significant

documents that would shed light on the degree to which the Administration has outright violated,

if not ignored, its record keeping obligations under the Federal Records Act ("FRA") and the

Presidential Records Act ("PRA"), because CREW believes as a matter of law the Office of

Administration ("OA") is an agency.

Separate and apart from the merits of CREW's appeal, the timing of that appeal and the

upcoming presidential transition raise a serious issue of whether, absent a partial stay of the

Court's Order, CREW can receive full and adequate relief should it ultimately prevail. As a

consequence of the Court's ruling, OA will now treat the documents CREW seeks as

presidential, not federal, records subject to the PRA. Under the terms of that statute, upon the conclusion of President Bush's term of office, the Archivist "assume[s] responsibility for the custody, control, and preservation of, and access to, the Presidential records of that President." 44 U.S.C. § 2203(f)(1). Thereafter, all such records will not be available to the public for at least five years, 44 U.S.C. § 2204(b)(2)(A), and public access may be restricted for up to 12 years, 44 U.S.C. § 2204(a). Moreover, before his term ends, President Bush would suffer no legal consequences if he destroys any of the responsive documents, and CREW and the public would have no legal remedy should that happen. By contrast, if OA is an agency subject to the FOIA -- as CREW believes to be the case -- its records are available immediately under the FOIA, remain under the custody and control of OA at the conclusion of this administration, and must be preserved pursuant to both the FRA and the FOIA. Thus, absent a stay, CREW faces irreparable harm should CREW win its appeal after the presidential transition has occurred.

By contrast, a stay simply requiring OA to maintain the status quo by preserving and retaining all documents potentially responsive to CREW's request would not harm the defendant and would best serve the public interest safeguarded by the FOIA. Under the terms of the stay CREW seeks, OA would be required simply to retain all of the documents potentially responsive to CREW's request, an obligation it has already been subject to since the inception of this lawsuit. To be clear, CREW does not seek an order requiring OA to further process CREW's FOIA request, to release to CREW any documents, or to otherwise act affirmatively on CREW's FOIA requests.

Finally, the merits of CREW's legal arguments support a stay. As this Court has already recognized, the question presented here "is a close one," "not easily resolved by reference to the limited body of D.C. Circuit case law," particularly since OA functions differently "from the EOP components previously considered by the D.C. Circuit." Memorandum Opinion, June 16, 2008, at p. 2 ("Mem. Op."). Under these circumstances, at the very least CREW's appeal presents a "serious legal question" that, when combined with the "little if any harm" that will befall the government from a stay and the injury to CREW if a stay is denied amply justify the relief CREW now seeks. Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1997) ("Holiday Tours").

## ARGUMENT

CREW's entitlement to a stay pending appeal rests on showing: (1) its likelihood of prevailing on the merits of its appeal; (2) that it will suffer irreparable injury absent the stay; (3) that the defendant will not be harmed by the issuance of a stay; and (4) that the public interest will be served by a stay. U.S. v. Philip Morris, Inc., 314 F.3d 612, 617 (D.C. Cir. 2003), citing Holiday Tours, 559 F.2d at 843. CREW need not meet each of these factors; "[t]he test is a flexible one [and] [i]njunctive relief may be granted with either a high likelihood of success and some injury, or vice versa." Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985). Moreover, CREW need not establish "an absolute certainty of success." Instead "[i]t will ordinarily be enough that the plaintiff has raised serious legal questions going to the merits, so serious, substantial, difficult as to make them a fair ground of litigation . . ." Population Inst. v. McPherson, 797 F.2d 1062, 1078 (D.C. Cir. 1986), quoting Holiday Tours, 559 F.2d at 844. Under these standards a stay pending appeal is warranted here.

3

**I. CREW Faces Irreparable Harm Absent A Stay.**

As a direct result of the Court's Order, which significantly changes the status quo, CREW faces irreparable harm. Until this ruling, OA was required by law and the pendency of this lawsuit to retain all documents potentially responsive to CREW's two FOIA requests. See, e.g., Jefferson v. Reno, 123 F.Supp.2d 1, 5 (D.D.C. 2000) (court referred Assistant United States Attorney to the Department of Justice's Office of Professional Responsibility for destroying documents subject to a FOIA request while litigation over request was pending); U.S. ex rel. Miller v. Holzmann, No. 95-1231, 2007 U.S. Dist. LEXIS 21681 (D.D.C. March 9, 2007) (agency subject to sanctions for its destruction of records collected in response to FOIA request that were deemed non-responsive). Moreover, OA had been retaining the responsive documents as federal records subject to the FOIA since their creation in late 2005 and early 2006. As a consequence, the documents were also subject to the FRA which meant, among other things, that they would not automatically be transferred to the Archivist at the conclusion of the Bush administration, and thereafter subject to the Archivist's exclusive possession, custody and control.

Now, however, all that has changed. The Court's conclusion that OA is not an agency subject to the FOIA means that OA will treat the documents CREW seeks as presidential and subject to the PRA. Armstrong v. Exec. Off. of the President, 90 F.3d 553, 556 (D.C. Cir. 1991) (record cannot be subject to both the PRA and the FRA). As a result, the president now has unreviewable discretion to determine whether or not to retain the documents responsive to CREW's request. Armstrong v. Bush, 924 F.2d 282, 290 (D.C. Cir. 1991) (president's implementation of PRA not subject to judicial review).

Thus, even if the president decides to dispose of these records in contravention of the PRA and without complying with the PRA's requirement that he first obtain the views of the Archivist, 44 U.S.C. § 2203(c)(1), there is nothing either the courts or the Archivist can do. Armstrong v. Bush, 924 F.2d. at 290. The history of this administration, which includes the still unexplained disappearance of millions of emails that cover an especially significant period of our nation's history, makes this more than a mere possibility.

While OA's counsel has advised CREW that "OA will continue to preserve potentially responsive records in its custody and control until it transfers its records under the PRA," OA has refused to commit this assurance "to a stipulation or other writing for submission to the court." Email from Jean Lin to Anne Weismann, June 20, 2008 (attached as Exhibit 1). But absent a written assurance, CREW has no recourse if OA -- either on its own initiative or at the direction of the White House -- changes its mind. Under comparable circumstances in CREW v. Executive Off. of the President, Civil No. 07-1707 (HHK/JMF), Judge Henry H. Kennedy, Jr. adopted the recommendation of Magistrate Judge Facciola that the court enter a temporary restraining order requiring the EOP to maintain backup copies of the missing emails pending litigation, rather than simply accept a stipulation or declaration from the White House. As Judge Facciola reasoned,

> [w]hile stipulations entered into between parties can save time
> and money, there is no obligation upon a party to accept one . . .
> [and] a declaration does not have the force of an order. Unlike
> a court order, a declaration is not punishable by contempt. In
> other words, without such an order, destruction of the backup
> media would be without consequence. As a result, CREW
> would remain threatened with irreparable harm.

Report and Recommendation at pp. 2-3 (Oct. 18, 2007) (attached as Exhibit 2). CREW faces the

same threat here, absent a court order mandating the preservation of all records potentially responsive to CREW's requests.

Of equal concern is the fact that in just seven months when this administration ends, the records at issue will automatically be transferred to the exclusive custody and control of the Archivist, 44 U.S.C. § 2203(f)(1), and will not be available to the public for at least five years and possibly not for 12 or more years. 44 U.S.C. § 2204(a). It is far from clear what, if any, relief the Court could issue at that point that would preserve CREW's right to the requested documents in the event CREW succeeds on its appeal.

These consequences, all of which flow from the Court's Order, threaten to irrevocably destroy the status quo and thereby satisfy CREW's burden of demonstrating irreparable harm absent a stay. See, e.g., Providence Journal Co. v. FBI, 595 F.2d 889, 890 (1st Cir. 1979) (irreparable harm exists where the failure to enter a stay will irrevocably destroy the status quo). If the White House either fails to maintain the records CREW seeks or is required to transfer them out of OA's custody and control under the PRA, CREW will be unable to obtain any relief should it ultimately prevail on its appeal.[1]

In comparable circumstances under the FOIA courts have readily concluded that a stay pending appeal should issue to avoid effectively mooting any appeal. See, e.g., Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice, 217 F.Supp.2d 58, 59; citing Population Inst., 797 F.2d at 1078; N. Jersey Medical Group, Inc. v. Ashcroft, 122 S.Ct. 2655 (2002); Am. Civil Liberties Union v. County of Hudson, 799 A.2d 629 (N.J. Super. Ct. App. Div.), cert. denied (N.J. July 9,

---

[1] CREW intends to seek expedition of its appeal in the hope that the D.C. Circuit will decide the appeal prior to the close of this administration and thereby avoid these problems.

2002); <u>Rosenfeld v. U.S. Dep't of Justice</u>, 501 U.S. 1227 (1991).  <u>Cf</u>. <u>Armstrong v. Exec. Off. of the President</u>, No. 89-4112, 1993 U.S. Dist. LEXIS 356, *10-12 (Jan. 14, 1993) (denying government's motion for stay of district court order that required defendants to preserve their electronic federal records pending their appeal).

Nevertheless, OA through its counsel has indicated it opposes any request that OA retain all potentially responsive records pending the outcome of CREW's appeal and post-transition to a new president, based in part on the belief that should CREW prevail, the records would automatically be returned to OA.  This outcome, however, is far from clear.

First, OA's counsel could point to no precedent, and CREW knows of none, supporting OA's belief that the records would automatically be returned to OA should CREW prevail on its appeal.  Under the PRA, once the records are transferred to the National Archives and Records Administration ("NARA"), the Archivist assume[s] responsibility for the custody, control, and preservation of, and access to" the records.  44 U.S.C. § 2203(f)(1).  In other words, at the end of this administration OA will no longer have custody, control or access to the records and, accordingly, no ability to direct their return.  Moreover, neither NARA nor the Archivist is a party to this litigation.  Accordingly, it is pure speculation what, if anything, the Archivist would do should CREW prevail on its appeal.  One thing, however, is not a matter of speculation -- as non-parties, NARA and the Archivist cannot properly be the subject of a court order mandating or, at the least facilitating, the records' return.

Second, there is a serious concern about whether the Archivist will be able to even locate the documents CREW is seeking once they have been transferred to NARA.  At the end of this administration, the White House will be transferring an enormous volume of presidential

7

materials to the Archivist, of which the records at issue here will be only an exceedingly small part.  It is CREW's understanding that it typically takes the Archivist and his staff many years to sort through and catalogue a president's papers, and that time has increased exponentially with each president given the ever-expanding volume of presidential records created by recent presidential administrations.  The speculation that the Archivist will be able to readily locate and return to OA all documents potentially responsive to CREW's request is unsound.

In this respect, the Court is in unchartered waters.  To CREW's knowledge, no court has yet faced the situation looming here:  an upcoming transition that will have the effect of placing beyond the parties' and the Court's control the records that are at issue.  Unfounded assumptions that the situation will magically sort itself out in CREW's favor should not be a substitute for a Court order that ensures CREW's ability to get full relief should it prevail on its appeal.

## II.  A Stay Serves, Not Harms, The Public Interest And Would Cause Defendant No Harm.

By contrast to the unmistakeable harm CREW faces absent a stay, the defendant would suffer no harm whatsoever.  CREW seeks a stay that maintains the status quo by requiring the OA to retain all potentially responsive documents pending the outcome of CREW's appeal. CREW does not seek to impose any additional burdens or obligations on OA.  The immediate relief that CREW seeks will require nothing more of OA than what the law already mandates -- preservation of all requested records pending the D.C. Circuit's resolution of CREW's appeal. See Judicial Watch v. U.S. Dep't of Commerce, 34 F.Supp.2d 28, 42-43 (D.D.C. 1998).  As in Armstrong v. Bush, an order requiring document preservation under these circumstances is appropriate "where the parties dispute the adequacy of the government's record keeping procedures and disagree whether records are covered by the [Presidential Records Act]."

8

<u>Armstrong v. Bush</u>, 807 F.Supp. 816, 823 (D.D.C. 1992); *see also* <u>American Friends Service</u>

<u>Committee v. Webster</u>, 485 F.Supp. 222 (D.D.C. (1980).  In short, requiring the government to

comply with the law cannot properly be characterized as a burden.

Moreover, a stay best serves the public interest.  The FOIA was enacted "to ensure an

informed citizenry, vital to the functioning of a democratic society."  <u>NLRB v. Robbins Tire &</u>

<u>Rubber Co.</u>, 437 U.S. 214, 242 (1978).  As the Supreme Court has stressed, "FOIA is often

explained as a means for citizens to know 'what the Government is up to.'  This phrase should

not be dismissed as a convenient formalism.  *It defines a structural necessity in a real*

*democracy*."  <u>Nat'l Archives & Records Admin. v. Favish</u>, 541 U.S. 157, 171-72 (2004) (citation

omitted) (emphasis added).  CREW's requests, which are intended to shed light on a matter of

great public concern, unquestionably serve the public interest.  As a necessary corollary, denying

CREW the ability to obtain the requested records by denying the stay would cause irreparable

harm to the public interest.

Under these circumstances, "[a]n order maintaining the status quo is appropriate when a

serious legal question is presented, when little if any harm will befall other interested persons or

the public and when denial of the order would inflict irreparable injury on the movant."  <u>Holiday</u>

<u>Tours</u>, 559 F.2d at a844.  Here, there is simply no harm to balance against the demonstrable

harm CREW will suffer if the Court denies the requested stay.

**III.  CREW Is Likely To Prevail On The Merits Of Its Appeal.**

This Court's Opinion and Order expressly recognize the serious legal issue that the case

presents, one that is not "easily resolved by reference to the limited body of D.C. Circuit case

law addressing the agency status of units within the EOP."  Mem. Op. at 2.  This alone satisfies

the showing that CREW must make in support of its requested stay.

Beyond that, CREW respectfully submits that it is likely to prevail on the merits of its appeal.  This Court placed almost exclusive reliance on its conclusions that OA exercises no substantial authority independently of the president and "serves solely to assist and advise the President."  Mem. Op. at 30.  To reach these conclusions, however, the Court ignored or failed to adequately evaluate the wealth of evidence demonstrating the significant degree to which OA acts independently of the president.  While OA did not identify a single decision OA made or a single act OA took as a result of the express and direct authorization from the President, CREW presented evidence of the magnitude of actions and decisions OA undertakes every day without any consultation with or authorization by the president.  From contracting with other agencies and entities to entering into inter-agency agreements on behalf of EOP components that are agencies, OA has functioned since its inception as an agency.

The Court's conclusions also cannot be reconciled with the assessment of President Carter's administration, immediately following the OA's creation, that by virtue of  its functions OA is an agency subject to the FOIA.  That assessment, memorialized in a June 28, 1978 White House memorandum, provides as follow:  "OA performs functions for other offices within the EOP and there are no identifiable units within the OA which function solely to serve the President.  Accordingly, it is reasonable to conclude that the Office of Administration is an 'agency' subject to the Act [the FOIA]."  Memorandum for Margaret McKenna from Patrick Apodaca re:  Applicability of the FOIA to White House Documents, June 28, 1978, p. 2

(attached as Exhibit 1 to Plaintiff's Opposition to Defendant's Motion to Dismiss).[2]  OA has not

identified any way in which its functions have changed significantly since its creation, making

this assessment equally applicable here.

      The Court also failed to give sufficient weight to OA's interaction with and responsibility

for EOP components that are agencies subject to the FOIA.  OA provides administrative support

to the entirety of the EOP, *with the exception of the President*,[3] which includes agencies such as

the Council on Environmental Quality, the Office of Management and Budget and the Office of

the U.S. Trade Representative.  Not only do these responsibilities illustrate the degree to which

OA acts independently of the president, but they prove the error of the Court's conclusion that

OA exists "solely to assist and advise the President . . ."  Mem. Op. at 30.

      In addition, the Court failed to draw the proper legal conclusion from its

acknowledgment that "[t]he record in this case simply does not demonstrate that a comparable

'intimate organizational and operating relationship' exists between the OA Director and the

President," Mem. Op at 32.  The degree to which OA is operationally proximate to the president

is, CREW submits, the most critical factor in the agency analysis because "[t]he closer an entity

is to the President, the more it is like the White House staff, which solely advises and assists the

President, and the less it is like an agency to which substantial independent authority has been

delegated."  Armstrong, 90 F.3d at 558.  Congress was careful to exclude from the reach of the

FOIA only the president and his immediate staff.  See H.R. Conf. Rep. No. 93-1380, 93d Cong.,

---

      [2] It is CREW's understanding that Margaret McKenna held the position of Deputy White House Counsel while Patrick Apodaca was Associate Counsel to President Carter.

      [3] See Executive Oder No. 12028, § 3(a), 42 Fed. Reg. 62895 (Dec. 12, 1977).

2d Sess. 14 (1974); S. Conf. Rep. No. 1200, 93d Cong., 2d Sess. 15 (1974), *reprinted in* 1974

U.S.C.C.A.N. 6293.  The Court's conclusion that an entity like OA that is not operationally

proximate to the President and accordingly does not function like his immediate staff cannot be

reconciled with the language and intent of the FOIA.

Moreover, as this Court recognized, OA functions in a manner unlike any other EOP

component that the D.C. Circuit has found to be excluded from the reach of the FOIA.  OA

provides administrative support for the EOP, much like the functions performed by the General

Services Administration and a host of support offices within every agency of the federal

government, from the Justice Management Division at the U.S. Department of Justice to the

Departmental Administration at the U.S. Department of Agriculture to the Office of the Assistant

Secretary for Administration and Management at the U.S. Department of Labor -- all of which

are subject to the FOIA.

This case presents for the first time the question of which side of the agency line OA

falls.  It is a serious question in a high-stakes case of high public interest.  CREW respectfully

submits that the Court answered this question incorrectly but, at a minimum, the Court properly

acknowledged the lack of direct precedent for its conclusion and the degree to which OA differs

from any other EOP component found to be an agency.[4]  Accordingly, a stay is warranted to

protect CREW's ability to obtain full relief.[5]

---

[4] OA's counsel has also indicated to CREW that OA opposes this motion because it believes the issue on appeal is not a close one.  The language of this Court's opinion, that the question presented here "is a close one" "not easily resolved by reference to the limited body of D.C. Circuit case law," Mem. Op. at p. 2, expressly contradicts OA's position.

[5] That this Court has jurisdiction to enter a stay, notwithstanding its conclusion that CREW's complaint must be dismissed under Rule 12(b)(1) of the Federal Rules of Civil

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the requested stay and require the OA

to retain all records potentially responsive to CREW's FOIA requests pending the outcome of

CREW's appeal.

Respectfully submitted,

_____/s/_____
Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and Ethics
  in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Telephone:  202-408-5565
Fax:  202-588-5020

June 20, 2008                          Attorneys for plaintiff

---

Procedure, is clear.  Under the All Writs Act, 28 U.S.C. § 1651, this Court may issue "all writs
necessary or appropriate in aid of" jurisdiction.  Here, a stay of the Court's Order pending appeal
"is necessary . . . to protect the orderly continuation of proceedings . . . in the appellate court,"
<u>Rose v. Giamatti</u>, 721 F.Supp. 924, 928 (S.D. Oh., E. Div. 1989); absent a stay, this controversy
may be rendered moot as a practical matter once the requested records are transferred to the
Archivist at the end of this administration.

**EXHIBIT 1**

## Anne Weismann

**From:** Lin, Jean (CIV) [Jean.Lin@usdoj.gov]
**Sent:** Friday, June 20, 2008 9:49 AM
**To:** Anne Weismann
**Subject:** CREW v. OA

Anne:  I'm following up on our conversation of yesterday afternoon. You have OA's assurance that OA will continue to preserve potentially responsive records in its custody and control until it transfers its records to NARA under the PRA. We do not believe it is necessary to commit that to a stipulation or other writing for submission to the court.  Thanks.

*Jean Lin*
*Trial Attorney*
*U.S. Department of Justice, Civil Div.*
*Federal Programs Branch*
*Tel. 202.514.3716*
*jean.lin@usdoj.gov*

*The information in this transmittal (including attachments, if any) is intended only for the recipient(s) listed above and may contain information that is privileged and confidential. Any review, use, disclosure, distribution, or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately and destroy all copies of the transmittal. Your cooperation is appreciated.*

**EXHIBIT 2**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON,

      **Plaintiff,**

      **v.**                                 **07-1707 (HHK/JMF)**

**EXECUTIVE OFFICE OF THE
PRESIDENT** *et al.*,

      **Defendants.**

## REPORT AND RECOMMENDATION

      This matter has been referred to me for a Report and Recommendation concerning Plaintiff's Motion for a Temporary Restraining Order.[1]

I.      Plaintiff's Complaint

      Plaintiff, Citizens for Responsibility and Ethics in Washington ("CREW"), describes itself as a "non-profit, non-partisan corporation." Complaint, ¶5. CREW files many requests for records pursuant to the Freedom of Information Act, 5 U.S.C. §552.[2] It therefore claims a "direct interest in ensuring that these records are maintained, preserved and made accessible to the public in accordance with federal law." Id., ¶6.

II.     Plaintiff's Concerns About the Backup Tapes

      To "backup" a computer or a network is "to create a copy of data as a precaution against the loss or damage of the original data. Many users backup their files, and most

---

[1] Since notice has been given and a hearing has been held, plaintiff's motion will be deemed one for a preliminary injunction. The Federal Rules of Civil Procedure that will take effect on December 1, 2007 make this distinction clear. See Proposed Amendment of Fed. R. Civ. P. 65 (Effective December 1, 2007).

[2] All references to the United States Code are to the electronic version that appears in Westlaw or Lexis.

computer networks utilize automatic backup software to make regular copies of some or all of the data on the network."[3] CREW, complaining that the White House has deleted millions of e-mails that it was supposed to keep, seeks a temporary restraining order requiring the White House to keep all back up tapes or similar media which may contain the e-mails that have been, according to CREW, improperly deleted.

III.    The Narrow Dispute Presented

The dispute among the parties about preserving backup media while this case is litigated is now extremely narrow. The government,[4] without conceding that it is under any obligation to do so, insists that it will preserve the backup media that it has, but balks at entering into any stipulation that would in effect serve as the premise of an order requiring that it do so. The government also insists that CREW should instead accept a declaration from an authorized official expressing the defendants' intention to preserve all the backup media it has in its possession.

IV.    An Order Should Issue

While stipulations entered into between parties can save time and money, there is no obligation upon a party to accept one. See United States v. Caldwell, 543 F.2d 1333, 1359 n.134 (D.C. Cir. 1975). While the government insists that a declaration would eliminate any concern that backup media will be recycled and destroyed while this matter is pending, a declaration does not have the force of an order. Unlike a court order, a declaration is not punishable by contempt. In other words, without such an order, destruction of the backup media would be without consequence. As a result, CREW

---

[3] **The Sedona Conference Glossary For E-Discovery and Digital Information Management (May 2005 Version), available at http://www.thesedonaconference.org/dltForm?did=tsglossarymay05.pdf**

[4] "The government" is a shorthand reference to all defendants.

would remain threatened with irreparable harm. I therefore conclude that the order

should issue, despite the government's proposed declaration.

V.     Standards for the Relief Sought

The Court of Appeals for the D.C. Circuit has recently stated the familiar standard

for the award of a preliminary injunction:

> When deciding whether to grant a preliminary injunction,
> the district court must examine whether "(1) there is a
> substantial likelihood plaintiff will succeed on the merits;
> (2) plaintiff will be irreparably injured if an injunction is
> not granted; (3) an injunction will substantially injure the
> other party; and (4) the public interest will be furthered by
> the injunction." Id. at 1317-18 (citing Wash. Metro. Area
> Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843
> (D.C. Cir. 1977)). A court must balance these factors, and
> "[i]f the arguments for one factor are particularly strong, an
> injunction may issue even if the arguments in other areas
> are rather weak." Id. at 1318 (quoting City Fed Fin. Corp.
> v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C.
> Cir.1995)).

Ellipso, Inc. v. Mann, 480 F.3d 1153, 1157 (D.C. Cir. 2007).

First, if, as CREW contends, the e-mails have been deleted, then the backup

media are the only place where they may be and the obliteration of this backup media

obviously threatens CREW with irreparable harm. Indeed, the threat of such obliteration

is a text book example of irreparable harm. Second, issuing the injunction will not injure

the government or burden it in any way. Indeed, the government insists that it is already

doing and will continue to do what an injunction would require it to do—preserve the

backup media until the court can rule on the substantive issues before it. Third, there is

no public interest in the destruction of the backup media. To the contrary, there is a

public interest in their preservation, at least until this Court rules, since the e-mails at

issue may have historical and public importance.

Finally, there are several legal issues that divide the parties and, in my view, these issues are substantial and warrant careful consideration. In what one authoritative treatise[5] describes as the most often-quoted statement of the principle that the likelihood of success must be weighed against the likelihood of harm to the movant if the court does not act, the Second Circuit has stated:

> To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.

Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953) (Frank, J.).

In the instant action, one of the several legal issues separating the parties is whether one of the defendants, the "Executive Office of the President, Office of Administration," is an agency and therefore subject to the Federal Records Act. See 44 U.S.C. § 2901 (14). The parties explained to me that this precise issue awaits resolution in a case pending before Judge Kollar-Kotelly.[6] I have now reviewed the briefs on that issue in that case and am certain that the issue is substantial and complicated. I certainly cannot say that CREW has no likelihood of prevailing on that issue.

Instead, I must say that weighing the substantiality of the legal questions presented against the irreparable harm that CREW may suffer and the clear absence of any harm to the government justifies the order I am recommending the Court issue to

---

[5] 11 CHARLES ALAN WRIGHT, ARTHUR MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.3 (2d ed. 1995).
[6] Citizens for Responsibility and Ethics in Washington v. Office of Admin., No. 07-964 (D.D.C. filed May 23, 2007).

prevent the destruction of the backup media.  A proposed order accompanies this Report and Recommendation.

Failure to file timely objections to the findings and recommendations set forth in this report may waive your right to appeal from an order of the District Court adopting such findings and recommendations.  See Thomas v. Arn, 474 U.S. 140 (1985).


___/S/_____
JOHN M. FACCIOLA
October 19, 2007                    UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON,

     Plaintiff,

     v.                                             07-1707 (HHK/JMF)

EXECUTIVE OFFICE OF THE
PRESIDENT *et al.*,

     Defendants.

## PROPOSED ORDER

Having considered Plaintiff's Motion for a Temporary Restraining Order [#4], the opposition thereto, and the entire record herein, it is **ORDERED** that the motion is granted, and that defendants will preserve media, no matter how described, presently in their possession or under their custody or control, that were created with the intention of preserving data in the event of its inadvertent destruction. Defendants shall preserve the media under conditions that will permit their eventual use, if necessary, and shall not transfer said media out of their custody or control without leave of this Court.

     **SO ORDERED.**

                                       _____

October 19, 2007                 **HENRY H. KENNEDY**
                                         **UNITED STATES DISTRICT JUDGE**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

CITIZEN FOR RESPONSIBILITY AND          )
ETHICS IN WASHINGTON,                   )
                                        )
               Plaintiff,           )
                                        )
               v.                   )          Civil Action No: 1:07-CV-00964 (CKK)
                                        )
OFFICE OF ADMINISTRATION,               )
                                        )
               Defendant.           )
_____)

## [PROPOSED] ORDER

      The Court having considered plaintiff's motion for a stay pending appeal, defendant's

response and the entire record herein, it is hereby

      ORDERED that plaintiff's motion is GRANTED and defendant is hereby

      ORDERED to retain all documents potentially responsive to plaintiff's two Freedom of

Information Act requests at issue pending the outcome of plaintiff's appeal of the Court's

Opinion and Order of June 16, 2008.


DATED: _____               _____

                                           COLLEEN KOLLAR-KOTELLY
                                         United States District Judge