**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

CITIZENS FOR RESPONSIBILITY AND   )
ETHICS IN WASHINGTON,   )
   )
           Plaintiff,   )
   )
           v.   )     Civil Action No: 1:07-CV-00964 (CKK)
   )
OFFICE OF ADMINISTRATION,   )
   )
           Defendant.   )
   )

---

**DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR STAY PENDING APPEAL**

**PRELIMINARY STATEMENT**

Plaintiff CREW ostensibly brings this motion to ensure the preservation of documents at issue in this case pending its appeal of this Court's Memorandum Opinion and Order of June 16, 2008.[1] But there is no dispute as to whether those documents will be preserved. Defendant Office of Administration, through counsel, has given CREW its written assurance that OA has preserved, and will continue to preserve, those documents until their transfer to the National Archives and Records Administration ("NARA") pursuant to the Presidential Records Act ("PRA"). Counsel are officers of the court, whose representation is more than sufficient. Similarly, once the documents reach NARA, there is no reason to believe that the Archivist would not, or could not, segregate and properly preserve OA's records.

What CREW actually seeks is something wholly different. This Court's decision of June 16, 2008 confirmed that OA has been correctly treating its records as Presidential records since

---

[1] OA has advised CREW that it does not object to CREW's request for expedited briefing in the D.C. Circuit.

August 2007.  In the guise of a motion for a "stay pending appeal," CREW seeks to alter that status quo by asking this Court to issue a mandatory injunction to prevent the orderly transition of OA's records to NARA at the close of the Administration as mandated by the PRA.  As the Court is well aware, the PRA carefully navigates separation of powers concerns by providing for the preservation of Presidential records while recognizing a president's right to control his own papers.  CREW offers no proof that it will suffer the extreme or serious damage necessary to justify the requested mandatory injunction.  Rather, CREW provides only two unsubstantiated, highly speculative, and illogical allegations:   (1) that the President and OA will cavalierly destroy the responsive records in violation of the PRA – a claim that this Court previously has rejected in this case; and (2) that the Archivist will refuse to return the records to OA if the Court of Appeals finds OA's records to be Federal (as opposed to Presidential) records.

The suggestion that the President or OA will destroy records of this Administration that are subject to the PRA is utterly unfounded.  OA has assured CREW that it will continue to preserve all potentially responsive records until their transfer to NARA.  The notion that the professional archivists at NARA either cannot or will not keep track of OA documents or adhere to an order of the D.C. Circuit is equally preposterous.  In addition, CREW's allegations clearly contravene the settled presumption of good faith and regularity to which executive officials are entitled.

While CREW's motion falls far short of showing that it is certain to suffer irreparable harm absent an injunction – which alone requires the denial of CREW's motion – the balance of harms compels its denial.  The President's right, grounded in the Constitution, to control his records would be undermined should OA be required to retain them into the next Administration.

2

Moreover, the public's access to such records would be significantly delayed if this Court's decision is upheld on appeal and the next Administration assumes custody and control over the records. In addition, the public's right to have the records of a President transferred to NARA at the end of the Administration and maintained collectively by NARA would be diminished. On the other side of the balance, CREW suffers no harm, because the records at issue will continue to be preserved by OA until the end of the Administration, and by NARA thereafter. These factors, coupled with the fact that CREW is unlikely to succeed on the merits, compel the denial of CREW's motion.

## ARGUMENT

### THIS COURT SHOULD DENY CREW'S "MOTION FOR STAY" WHICH ACTUALLY SEEKS A MANDATORY INJUNCTION

In determining whether a stay pending appeal is warranted, courts consider: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 673-674 (D.C. Cir. 1985) (citing *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C. Cir.1958).

CREW, however, is not simply asking for a "stay pending appeal" but is asking the Court to change the status quo that OA is a PRA entity. In August 2007, OA determined that it is in fact not an "agency" within the definition of FOIA, which excludes entities within the Executive Office of the President, such as OA, that exist solely to advise and assist the President and exercise no substantial authority independently of the President. OA thereupon began

complying, as it must, with the record preservation obligations of the PRA, which is mutually exclusive of the Federal Records Act applicable to FOIA agencies.  This Court recently confirmed that OA "is not (and has never been), as a matter of law, an agency subject to the FOIA," Memorandum Op. at 38, agreeing that OA is correctly operating as a PRA entity. Pursuant to the PRA, the Archivist of the United States will assume custody and control of OA's records at the conclusion of this Administration.

In seeking to enjoin the orderly transfer of OA's records to NARA, CREW asks this Court to take the extraordinary step of altering the status quo that has been in effect for nearly a year, and to do so in such a way as to disrupt the carefully constructed scheme that Congress created to balance the public's interest in processing the historical records with each President's constitutional right to control his records without interferences from the separate branches of government.  Where, as here, a movant seeks mandatory injunctive relief, *i.e.*, an injunction that "would alter, rather than preserve, the status quo . . . the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction."  *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997) (*quoting Phillip v. Fairfield Univ.,* 118 F.3d 131, 133 (2d Cir. 1997)), *aff'd*, 159 F.3d 636 (D.C. Cir 1998); *accord*, *Judicial Watch, Inc. v. Dep't of Commerce*, 501 F. Supp. 2d 83, 91 (D.D.C. 2007) ("[B]ecause the plaintiff seeks a mandatory injunction that would alter the status quo, the plaintiff must demonstrate beyond the familiar 4-part test for injunctive relief that he is 'clearly' entitled to the relief he seeks, or 'extreme or very serious damage will result.'"); *Nat'l Conference on Ministry to Armeds v. James*, 278 F. Supp. 2d 37, 43 (D.D.C. 2003).

4

As discussed below, CREW cannot meet the general standard for a stay pending appeal,

let alone the significantly higher standard required for the issuance of a mandatory injunction.

### A.    CREW Has Failed to Prove That it Is Certain to Suffer Irreparable Injury Without the Requested Mandatory Injunction

"[The D.C. Circuit] has set a high standard for irreparable injury.  First, the injury 'must

be both certain and great; it must be actual and not theoretical.'  The moving party must show

'[t]he injury complained of is of such *imminence* that there is a 'clear and present' need for

equitable relief to prevent irreparable harm.'  Second, the injury must be beyond remediation."

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (emphasis

in original) (quoting *Wisc. Gas Co.,* 758 F.2d at 674).  As the D.C. Circuit has explained, "[t]he

basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy

of legal remedies."  *Wisc. Gas Co.,* 758 F.2d at 674 (quoting *Sampson v. Murray,* 415 U.S. 61,

88 (1974)).  "'[T]he key word in this consideration is *irreparable.*  Mere injuries, however

substantial, in terms of money, time and energy necessarily expended in the absence of a stay are

not enough.  The possibility that adequate compensatory or other corrective relief will be

available at a later date, in the ordinary course of litigation weighs heavily against a claim of

irreparable harm.'"  *Wisc. Gas Co.,* 758 F.2d at 674 (quoting *Virginia Petroleum Jobbers Ass'n v.

FPC,* 259 F.2d at 925).

Importantly, the movant must "substantiate the claim that irreparable injury is 'likely' to

occur."  *Id.* (citing *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.,* 559

F.2d at 843 n. 3.).  "Bare allegations of what is likely to occur are of no value since the court

must decide whether the harm will *in fact* occur."  *Id.*  Rather, "[t]he movant must provide proof

that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Id.*  Thus, where the movant has premised its motion for stay "upon unsubstantiated and speculative allegations of [redressable] injury," the court must deny the motion for a stay. *Id.*

> **1.    CREW Cannot Show That the President or OA Will Likely Violate the Preservation Obligations Imposed by the PRA and Committed to by OA's Counsel**

CREW has utterly failed to meet the "high standard for irreparable injury" set by the D.C. Circuit. *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.  Despite OA's assurance that it will continue to preserve potentially responsive records in its custody and control until their transfer to NARA (*see* Ex. 1 to Pl's Mot.), CREW speculates that the President or OA will nonetheless destroy such records.  That is an extraordinary proposition given the preservation obligations the PRA imposes on the President and OA, and OA's commitment to continue preserving the records at issue in this case.  *See* 44 U.S.C. § 2203(a) (requiring the President to "take all such steps as may be necessary to assure that the activities, deliberations, decisions, and policies that reflect the performance of his constitutional, statutory, or other official or ceremonial duties are adequately documented and that such records are maintained as Presidential records"); *id.* at § 2203(b) (the PRA applies equally to "units or individuals in the Executive Office of the President the function of which is to advise and assist the President"); Ex. 1 to Pl's Mot.  Indeed, "during his term of office, the President may dispose of those of his Presidential records that no longer have administrative, historical, informational, or evidentiary value" if –

(1) the President obtains the views, in writing, of the Archivist

6

concerning the proposed disposal of such Presidential records; and

(2) the Archivist states that he does not intend to take any action
under subsection (e) of this section.

*Id.* at § 2203(c).  Subsection (e) in turn requires the Archivist to consult with Congress "with

respect to any proposed disposal of Presidential records whenever he considers that (1) these

particular records may be of special interest to the Congress; or (2) consultation with the

Congress regarding the disposal of these particular records is in the public interest."  *Id.* at

§ 2203(e).

CREW is correct that the PRA's preservation obligations are not judicially enforceable by

private parties.  But that does not support CREW's rank speculation that either the President or

OA will act contrary to law and intentionally violate the PRA.  CREW has pointed to nothing to

substantiate this claim other than vague references to "[t]he history of this administration" and

the familiar allegations about alleged missing emails, *see* Pl's Mot. at 5; Answer, ¶ 19.  The

history of this case shows, however, that CREW's persistent allegations of document destruction

by OA and the President have been no more than that.

In a motion for an immediate status conference filed in January 2008, CREW similarly

asserted that there was a "possibility that the White House destroyed records that are directly

responsive to CREW's FOIA requests."  Dkt. # 28 at 9.  After thoroughly reviewing CREW's

claim, this Court held that it "[did] not discern a basis for CREW's *unfounded speculation* that

documents responsive to its FOIA request have been destroyed."  Order of Jan. 25, 2008 at 3

(emphasis added).  This Court nevertheless entered a preservation order at that time, which OA

has faithfully followed.  Indeed, OA has assured CREW that it has preserved, and will continue

to preserve, potentially responsive records until their transfer to NARA.[2]

Given the complete absence of any evidence of wrongdoing, this Court must "presume that executive officials will act in good faith," *Armstrong v. EOP*, 1 F.3d 1274, 1293 (D.C. Cir. 1993), and that OA and the President "will faithfully adhere to [the PRA]." *Union of Concerned Scientists v. U.S. Regulatory Energy Commission,* 880 F.3d 552, 561 (D.C. Cir. 2006); *accord Comcast Corp. v. FCC*, 526 F.3d 763, 769 n.2 (D.C. Cir. 2008); *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1091 (D.C. Cir. 1992) (government entities are entitled to "a presumption of administrative regularity and good faith," and with no indication that [the government entity at issue] will act cavalierly or in bad faith, its assertions with respect to treatment of subpoenaed material should be accepted at face value."); *Citizens to Preserve Overton Park*, 401 U.S. 402, 415 (1971) (presumption of regularity for government action). In other words, CREW can hardly argue that it has met the D.C. Circuit's high standard for showing irreparable harm, which requires the movant to "provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Wisc. Gas Co.*, 758 F.2d at 674.

## 2. CREW Cannot Show that the Archivist Will Violate the Law

CREW likewise fails to satisfy this high standard when it asserts that the Archivist will refuse to return OA's records to OA if the Court of Appeals finds OA's records to be Federal,

---

[2]    CREW errs in arguing that *CREW v. EOP*, Civil No. 07-1707 (HHK/JMF), presents "comparable circumstances." Pl's Mot. at 5. There, Judge Kennedy entered a temporary restraining order requiring the EOP to maintain certain backup tapes pending litigation, rather than accepting a declaration from OA that such tapes were being preserved and could continued to be preserved. In that case, however, the order was directed at preserving the status quo. Here, by contrast, CREW seeks to alter the status quo by enjoining the President and OA from complying with the PRA.

rather than Presidential records. Under the PRA, upon the conclusion of a President's term of office, "the Archivist of the United States shall assume responsibility for the custody, control, and preservation of, and access to, the Presidential records of that President." 44 U.S.C. § 2203(f)(1). In other words, the Archivist will continue to preserve these records, subject to very limited exceptions likely inapplicable here. *See id.*, § 2203(f)(3) (the Archivist may dispose of Presidential records which he has appraised and determined not to have insufficient administrative, historical, informational, or evidentiary value to warrant their continue preservation, provided that the Archivist gives the public at least 60 days' notice prior to the proposed disposal).

CREW argues that it will suffer irreparable harm because once OA's records are transferred to NARA, they allegedly will not be available to the public for at least five years and may be restricted for up to twelve years.[3] This claim of irreparable harm has no merit. Of course, in the likely event that CREW does not prevail on appeal, the length of time that the Archivist will require to process and organize such records to make them available for public access would be irrelevant. If CREW prevails on appeal and the Court of Appeals finds OA to be subject to FOIA, then legal custody of the records will revert back to OA, given that OA's

---

[3] It is speculative that access to the records will be restricted for at least five years. Not only is the Archivist charged with "an affirmative duty to make such records available to the public as rapidly and completely as possible," 44 U.S.C. § 2203(f)(1), the PRA also specifically provides that Presidential records may be available *the earlier of* five years after the Archivist obtains custody of such record or "the date on which the Archivist completes the processing and organization of such records or integral file segment thereof," 44 U.S.C. § 2204(b)(2). Moreover, in order for Presidential records to be restricted for a longer period of time up to twelve years, the President must actually specify, prior to the conclusion of his term in office, the duration of which access shall be restricted. *Id.* § 2204(a). The records must also contain information within certain specified categories under § 2204(a).

records would be Federal, and not Presidential, records. *See* 44 U.S.C. § 2203(f)(1) (providing

that the Archivist will assume the custody and control of *"Presidential records"*) (emphasis

added). CREW inexplicably speculates that the Archivist may nevertheless refuse to follow the

D.C. Circuit's ruling and insist on retaining physical custody of the records. Should that happen,

CREW further speculates, there is nothing anyone can do to seek the return of the records. *See*

Pl's Mot. at 2, 6-7. And even further, CREW contends that even if the Archivist wanted to

return them, he would not be able to identify OA's records. *See id.* at 7.

      These highly speculative (and patently frivolous) allegations do not satisfy CREW's

heavy burden of "proof indicating that the harm is certain to occur." *Wisc. Gas Co.*, 758 F.2d at

674. CREW's argument is premised on layers of speculation starting with the outlandish

assertion that the Archivist would choose, inexplicably, to continue to deem OA's records to be

Presidential despite a D.C. Circuit ruling to the contrary. CREW's failure "to provide any

substantiation is a clear abuse of this court's time and resources." *Id.* Also, CREW is wrong that

there would be no recourse for the records' return. The PRA provides in 44 U.S.C. §2205(2)(A)

that "notwithstanding any restrictions on access imposed" by the PRA, and subject to any rights,

defenses, or privileges which the United States or any agency or person may invoke,

"Presidential records shall be made available . . . pursuant to subpoena or other judicial process

issued by a court of competent jurisdiction for the purposes of any civil or criminal investigation

or proceeding." 44 U.S.C. §2205(2)(A).

      CREW's speculation that the Archivist will not be able to readily locate OA's records for

their return is similarly unfounded, and assumes that OA will not properly label its records for

transition to NARA, and that NARA – whose business it is to preserve and archive records –

could not easily identify them.  Yet, as the Supreme Court has long held, government entities are

entitled to a presumption of regularity.  *See Citizens to Preserve Overton Park*, 401 U.S. at 415

(1971).  As the movant, CREW must "substantiate the claim that irreparable injury is 'likely' to

occur," *Wisc. Gas Co.,* 758 F.2d at 674 – *i.e.*, that the Archivist and his team of professionals

trained to organize and maintain records likely will not be able to find OA's records.  CREW's

claim that presumed delay in retrieval constitutes irreparable injury similarly fails since "mere

injuries, however substantial, in terms of . . . time and energy necessarily expended in the

absence of a stay are not enough."  *Id.* (quoting *Virginia Petroleum Jobbers Ass'n v. FPC,* 259

F.2d at 925).

In any event, contrary to CREW's suggestion, the Archivist need not be the one locating

the potentially responsive records.  If the records are determined to be Federal, and subject to

FOIA, the records would be returned to OA, which would then comply with CREW's FOIA

requests, including conducting any additional searches.  And, of course, even CREW agrees that

OA is not now required to conduct additional searches or otherwise act affirmatively on CREW's

FOIA requests.  *See* Pl's Mot. at 2.

CREW asserts that "no court has yet faced the situation looming here:  an upcoming

transition that will have the effect of placing beyond the parties' and the Court's control the

records that are at issue."  Pl's Mot. at 8.  But as discussed before, CREW is simply wrong that

once transferred, the records would be beyond the control of anyone but the Archivist.  *See* 44

U.S.C. § 2205(2)(A).  Moreover, there is precedent for transferring to NARA Presidential

records that are in issue in pending litigation at the end of an administration.  *See Alexander v.

FBI*, Civil Action Nos. 96-2123/97-1288, Order of January 19, 2001 (ordering transfer of certain

backup tapes to NARA subject to certain conditions to preserve the integrity of those tapes; and noting that it "ha[d] no reason not to trust that the career professional archivists who have these materials will allow any tampering or misuse") (attached as Exhibit 1).

CREW cites *Center for National Security Studies v. DOJ*, 217 F. Supp. 2d 58, 58 (D.D.C. 2002), for the proposition that "stays" are routinely granted in FOIA cases. But CREW's motion here does not involve a routine stay; it involves a mandatory injunction that, in extraordinary fashion, seeks to alter the status quo that OA is a PRA entity. Moreover, *Center for National Security Studies* is inapposite because the appeal in that case would have been rendered moot absent the stay. Specifically, the district court there ordered the Government to produce a list of the identities of all individuals detained in connection with the investigation of the September 11, 2001 terrorist attacks and a list of the identities of their attorneys. *Id.* The Government appealed and sought a stay pending appeal. Because disclosure of the names of the detainees and their lawyers would have effectively mooted any appeal, the court granted a stay pending appeal. *Id.* CREW faces no similar irreparable harm here. OA will continue to preserve its records pursuant to the PRA and to OA's written commitment to do so; thereafter, NARA will preserve the records.

Similarly inapposite is *Armstrong v. Bush*, 807 F. Supp. 816, 820 (D.D.C. 1992), in which the court issued a Temporary Restraining Order ("TRO") prohibiting the defendants from erasing certain backup tapes at the close of the Administration of President George H.W. Bush. That case does not help CREW because there, without the TRO, defendants admittedly would have continued to write over the backup tapes and erase various electronic records. *Id.* In other words, the public's right to access the subject records might have been irreparably lost. *Id.* The

same is not true here, where the current regime of preservation will remain in place.

Thus, CREW's motion falls far short of showing that it is certain to suffer irreparable harm absent the requested injunction. This failure alone requires the denial of CREW's motion. *See Wis. Gas Co.*, 758 F.2d at 674; *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). It follows, then, that CREW necessarily has failed to show that "extreme or very serious damage" will result absent the mandatory injunction. *Judicial Watch, Inc. v. Dep't of Commerce*, 501 F. Supp. 2d at 91.

**B.    An Injunction Preventing the Orderly Transition of Presidential Records Would Cause Significant Harm to the Executive and the Public Interest**

In contrast to the absence of any cognizable harm CREW might face without the mandatory injunction, the injunction would significantly harm the President and the public's interest in several respects. First, CREW's proposed injunction would constitute a serious intrusion on the President's management and control of his records during his term in office, which by Congressional and Constitutional design is not subject to judicial interference. As the D.C. Circuit has long recognized, in enacting the PRA, Congress was "keenly aware of the separation of powers concerns that were implicated by legislation regulating the conduct of the President's daily operations," and thus through the PRA, Congress sought to minimize outside interference to "ensure executive branch control over presidential records during the President's term of office." *Armstrong v. Bush*, 924 F.2d 287, 290 (D.C. Cir. 1991). An unnecessary mandatory injunction upsetting this carefully constructed scheme would therefore raise serious constitutional questions. Specifically, CREW's proposed injunction could force the President to transfer OA records to the custody and control of his successor's – in contrast to the

13

Congressionally mandated scheme.  In such a scenario, the President's decision concerning which of his records to provide to his successor – one of the most significant decisions a President must make with respect to his records – could be taken out of his hands entirely.

Second, an injunction requiring the next President to retain this President's records would severely impair this President's continued interest over his records after he leaves office. Indeed, the PRA recognizes that a former President retains significant interests in his records. For example, under the PRA, the President may specify durations, not to exceed twelve years, for which access shall be restricted with respect to information in a Presidential record that falls within one of the PRA's specified categories.  *See* 44 U.S.C. § 2204(a).  Many of the OA records subject to CREW's requested injunction might be eligible for restricted access under this statutory provision, but – here again – the fact that these records would be in the custody and control of the next Administration could make the provision inoperative, and the President could thereby lose the benefit of restricted access that the PRA provides.

NARA's regulations implementing the PRA also provide that "[t]he Archivist or his designee shall notify a former President or his designated representative(s) before any Presidential records of his Administration are disclosed."  36 C.F.R. § 1270.46(a).  Upon receiving this notification, a former President is entitled to raise all rights and privileges that he believes should preclude the disclosure of a Presidential record.  If the Archivist nevertheless determines that the record in question should be disclosed, in whole or in part, the Archivist shall notify the former President or his representative of this determination.  *Id.*, § 1270.46(c).  The PRA specifically gives a former President the right to initiate a court action asserting that the Archivist's determination regarding his records violates the former President's rights or

14

privileges.  44 U.S.C. § 2204(e).  All of these rights carefully balanced through the PRA and available to a former President could be lost if he is forced to leave his records behind.

Furthermore, issuance of the injunction would also harm the public interest, because, assuming affirmance of this Court's decision, the public's access to OA's records would be delayed.  As noted above, the Archivist has "an affirmative duty to make [Presidential] records available to the public as rapidly and completely as possible."  44 U.S.C. § 2203(f)(1).  Allowing the Archivist to take custody and control of the potentially responsive records now will allow public disclosure in due course in the terms prescribed by the PRA.  If, instead, the next Administration assumes custody and control of this President's records, the public's access would be significantly delayed, as the disclosure provisions of the PRA would be triggered only following the next Presidential transition.  In addition to this unwarranted delay in access, what are *in fact* the records of this Administration would likely be commingled with another President's records – even though the records, as historical matter, properly belong with other records from the current President.  Such a result would do real harm to the integrity of the archiving process and the public interest in a coherent record of prior Presidential administrations.

For these reasons, the harm to the incumbent President and to the public interest strongly weighs against issuance of the requested mandatory injunction.

## C.    CREW Has No Likelihood Of Success On The Merits

Finally, CREW is unlikely to succeed on the merits of its appeal, which further weighs against issuance of a mandatory injunction.  CREW faults this Court for allegedly "ignor[ing] or fail[ing] to adequately evaluate the wealth of evidence demonstrating the significant degree to

15

which OA *acts independently* of the president," Pl's Mot. at 10 (emphasis added). But this Court – after permitting discovery and the development of a full evidentiary record – specifically considered the nature of all of OA's activities, which are, at bottom, administrative functions, and found that OA does not exercise "substantial independent authority" in conducting those activities. *See* Memorandum Op. at 29. As this Court also noted, CREW's "artful turning of phrases" – *i.e.*, alternatively arguing that OA exercises "substantial independence," "sufficient independence, and "significant independence" – "does not alter the showing that it is required to make in order to establish that OA is an agency subject to the FOIA." *Id.* at 28. Specifically, this Court reached the conclusion that OA is not a FOIA agency only after applying two separate tests: the "substantial independent authority" or "sole function" standard used in *Soucie v. David*, 448 F.2d 1067, 1075 (D.C. Cir. 1971), and the three-factor test articulated in *Meyer v. Bush*, 981 F.2d 1288 (D.C. Cir. 1993).

CREW also argues that this Court's conclusion cannot be reconciled with a 1978 White House memorandum concluding that OA was subject to FOIA. This is so, according to CREW, because "OA has not identified any way in which its functions have changed significantly since its creation." Pl's Mot. at 10-11. As this Court correctly found, however, evidence of such a change "is by no means required because OA does not argue that its functions have recently changed and rendered it no longer an agency under the FOIA." Memorandum Op. at 38. Instead, as the Court noted, "OA argues that it was *never* subject to the FOIA and that its prior conclusion that it was subject to that statute was in error." *Id.* Under the D.C. Circuit's controlling precedent of *Armstrong v. EOP*, this Court agreed.

In addition, CREW argues that because this Court determined that OA is not

16

operationally close to the President, it erred in concluding that OA is not subject to FOIA. CREW is unlikely to prevail in this argument because the proximity factor under the *Meyer* test is merely a proxy to determine whether OA exercises "substantial independent authority." As the D.C. Circuit has noted, "[t]he closer an entity is to the President, the more it is like the White House staff, which solely advises and assists the President, and the less it is like an agency to which substantial independent authority has been delegated." *Armstrong*, 90 F.3d at 558. Given the Court's careful and well-supported conclusion that OA does not exercise "substantial independent authority," it is irrelevant whether OA is proximate to the President only on "a purely organizational level" or is otherwise sufficiently close to the President under D.C. Circuit precedent.

Finally, CREW argues that because OA performs administrative functions similar to agencies such as the General Services Administration and the Justice Management Division of the Department of Justice, OA must be considered an agency subject to FOIA. This argument is frivolous, because none of the support offices mentioned by CREW is a unit within the EOP that exists solely to advise and assist the President through the provision of unified administrative services to the various EOP components.

In sum, CREW is unlikely to succeed on the merits of its appeal. It can establish no harm, let alone extreme or very serious harm, absent the mandatory injunction, and issuance of such an injunction would work serious harm to the President and the public. Accordingly, since CREW can establish none of the factors supporting the extraordinary injunction it seeks here, its motion should be soundly denied.

## CONCLUSION

For all the foregoing reasons, CREW's motion should be denied.

Dated: June 26, 2008                          Respectfully submitted,

                                              GREGORY  G. KATSAS
                                              Acting Assistant Attorney General

                                              JEFFREY A. TAYLOR
                                              United States Attorney

                                              ELIZABETH J. SHAPIRO
                                              Assistant Branch Director

                                              _____/s/ Jean Lin_____
                                              JEAN LIN
                                              Federal Programs Branch, Civil Division
                                              United States Department of Justice
                                              20 Massachusetts Ave., N.W.
                                              Washington, D.C.  20530
                                              Tel: (202) 514-3716
                                              Fax: (202) 616-8407

                                              Attorneys for Defendant

18

**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARA LESLIE ALEXANDER, et al.,          )
                                         )
            Plaintiffs,                  )
                                         )
      v.                                 )    Civil Action Nos. 96-2123/97-1288
                                         )    (RCL) (Consolidated)
                                         )
FEDERAL BUREAU OF INVESTIGATION,         )
et al.,                                  )
                                         )         **FILED**
            Defendants.                  )
                                         )         JAN 1 9 2001
_____    )
                                              NANCY MAYER WHITTINGTON, CLERK
                                                   U.S. DISTRICT COURT

## ORDER

Defendant Executive Office of the President (EOP) is hereby authorized pursuant

to the Presidential Records Act, 44 U.S.C. §§ 2201-07, to release to the custody of the

National Archives and Records Administration (NARA), the following items described in

the March 16, 2000, April 3, 2000, November 7, 2000, and January 11, 2000 declarations

of Charles Easley in this action, and which have been kept in Mr. Easley's custody:

    1.  Backup tapes of e-mails that may not have entered into the Automated Records

Management System (ARMS) either because of configuration errors or because they were

sent to or from the Office of the Vice President;

    2.  Backup tapes containing archived hard-drive files of departed EOP employees

(reallocation tapes);

3. The Zip Disk containing e-mails of a search that Mr. Haas performed during 1998 that had been stored on the personal shared drive of Robert Haas, as well as any and all copies of the contents of the Zip Disk;

4. Printouts of e-mails to and from Monica Lewinsky believed to be the result of Mr. Haas's search; and

5. 50 backup tapes from the Quorum database.

Upon EOP's transfer of these materials to NARA, ~~Charles Easley is relieved of~~ Dr. Bruce Ambacher of any further responsibility for any of the above items. Dr. Ambacher shall, within 5 days of this date, submit an affidavit describing in detail the steps he has taken and is taking to assure the integrity of these materials. *

SO ORDERED.

Royce C. Lamberth
United States District Judge

Royce C. Lamberth    1/19/01

* The court will personally inspect and oversee this process, so there is no need at this time for appointment of a Special Master. The court has no reason not to trust that the career professional archivists who have these materials will allow any tampering or misuse. RCL