# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

    Plaintiff,

      v.

OFFICE OF ADMINISTRATION,

    Defendants.

Civil Action No. 07-964 (CKK)

## MEMORANDUM OPINION
(July 8, 2008)

Plaintiff, Citizens for Responsibility and Ethics in Washington ("CREW") brought the above-captioned Freedom of Information Act ("FOIA") action seeking documents that CREW asserts Defendant, the Office of Administration ("OA"), Executive Office of the President ("EOP"), assembled and prepared relating to the White House's alleged loss of EOP e-mail records. OA subsequently moved to dismiss this action for lack of subject matter jurisdiction on the grounds that it was not, as a matter of law, an agency subject to the FOIA, and on June 16, 2008, this Court issued a Memorandum Opinion and Order granting OA's motion to dismiss. The Court's 39-page Memorandum Opinion acknowledged that "[t]he question OA's Motion presents is a close one, and is not easily resolved by reference to the limited body of D.C. Circuit case law addressing the agency status of units within the EOP." *Citizens for Responsibility and Ethics in Washington v. Off. of Admin.*, Civil Action No. 07-964, Slip. Op. (D.D.C. Jun. 16, 2008) (hereinafter "Mem. Op.") at 2. Nevertheless, after a thorough review of the relevant case law and the evidence proffered by the parties, the Court concluded that OA is not an agency

subject to the FOIA, *see generally id.*, and noted that its conclusion "obviate[d] OA's obligation to comply with CREW's FOIA request," *id.* at 2.   The Court's conclusion that OA is not an entity subject to the FOIA was a strict legal one, based upon the relevant case law and the evidence proffered by the parties.   The Court was not called upon to–and in no way did–address the allegations underlying CREW's FOIA request regarding the alleged loss of White House e-mails.

CREW appealed this Court's June 16, 2008 Memorandum Opinion and Order, and has now brought a Motion for Stay Pending Appeal, requesting that the Court "stay its Order of June 16, 2008, to require defendant to retain all documents potentially responsive to CREW's two [FOIA] requests at issue pending the resolution of plaintiff's appeal."   CREW Mot. for Stay at 1. Pursuant to the expedited briefing schedule entered by the Court, OA has filed an Opposition to CREW's Motion, and CREW has file a Reply.   Much of the parties' briefing focuses upon potential harms that may befall either party at the conclusion of the current presidential administration, and the Court concludes below that it is premature to attempt to balance those harms at this point in time.   Instead, upon a searching review of the parties' briefs, the relevant legal authority, and the entire record herein, the Court shall GRANT-IN-PART and DENY-IN-PART CREW's [56] Motion for Stay Pending Appeal.   Specifically, in the Order accompanying this Memorandum Opinion, the Court shall order OA to preserve all records in its possession or under its custody or control that are potentially responsive to CREW's FOIA requests, and shall further order OA not to transfer any such records out of its custody or control without leave of this Court, pending the resolution of CREW's expedited appeal or January 5, 2009, whichever event is earlier.   If CREW's appeal has not been resolved by January 5, 2009, CREW may, at that

2

time, file a renewed motion for stay pending appeal.

## LEGAL STANDARDS

The factors the Court considers in determining whether a stay pending appeal is

warranted are:

> (1) the likelihood that the party seeking the stay will prevail on the merits of the
> appeal; (2) the likelihood that the moving party will be irreparably harmed absent
> a stay; (3) the prospect that others will be harmed if the Court grants the stay; and
> (4) the public interest in granting the stay.  To justify the granting of a stay, a
> movant need not always establish a high probability of success on the merits.
> Probability of success is inversely proportional to the degree of irreparable injury
> evidenced.  A stay may be granted with either a high probability of success and
> some injury, or *vice versa*.

*Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985); *Washington

Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977);

*Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958); *see also D.C.

Circuit Handbook of Practice and Internal Procedures* Part VIII(a) (2003).[1]

It is "the movant's obligation to justify the court's exercise of such an extraordinary

remedy."  *Cuomo*, 772 F.2d at 978; *see also Twelve John Does v. District of Columbia*, Civ. A.

No. 80-2136, 1988 WL 90106, at *1 (D.D.C. Aug. 4, 1988) ("[a]n indefinite stay pending appeal

is an extraordinary remedy, and is to be granted only after careful deliberation has persuaded the

Court of the necessity of the relief") (citing *Virginia Petroleum Jobbers*, 259 F.2d at 925).

Generally, a stay pending appeal "is preventative, or protective; it seeks to maintain the status

---

[1] "The test for a stay or injunction pending appeal is essentially the same" as the test for a
preliminary injunction, "although courts often recast the likelihood of success factor as requiring
only that the movant demonstrate a serious legal question on appeal where the balance of harms
favors a stay[.]" *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 193 & n.5 (D.D.C. 2005) (citing *Holiday
Tours*, 559 F.2d at 844 and *Cuomo*, 772 F.2d at 978).

quo pending a final determination of the merits of the suit." *Holiday Tours*, 559 F.2d at 844.

## DISCUSSION

As noted above, the Court's conclusion that OA is not an "agency" pursuant to the FOIA obviated OA's obligation to comply with CREW's FOIA request.  Mem. Op. at 2.  In addition, because "the coverage of the [Federal Records Act ("FRA")] is coextensive with the definition of 'agency' in the FOIA," the Court's conclusion affirmed the position OA had taken since August 2007 that its records were subject to the Presidential Records Act ("PRA"), rather than the FRA.  *Armstrong v. EOP*, 90 F.3d 553, 556 (D.C. Cir. 1996) ("no record is subject to both the FRA and the PRA").  Under the PRA, at the conclusion of President George W. Bush's second term of office, "the Archivist of the United States shall assume responsibility for the custody, control, and preservation of, and access to, [his] Presidential records," and shall "deposit all such Presidential records in a Presidential archival depository or another archival facility operated by the United States."  44 U.S.C. § 2203(f)(1)-(2).  It is this transition of records at the end of President Bush's second term of office that the parties are most concerned about.

For the duration of his term of office, President Bush must take all steps necessary to ensure that Presidential records are maintained as such.  *Id.* § 2203(a).  Nevertheless, the President may dispose of Presidential records "that no longer have administrative, historical, informational, or evidentiary value if -- (1) [he] obtains the views, in writing, of the Archivist concerning the proposed disposal of such Presidential records; and (2) the Archivist states that he does not intend to take any action under subsection (e) of this section."  *Id.* § 2003(c).  In turn, subsection (e) requires the Archivist to consult with Congress "with respect to any proposed disposal of Presidential records whenever [the Archivist] considers that -- (1) these particular

4

records may be of special interest to the Congress; or (2) consultation with the Congress regarding the disposal of these particular records is in the public interest." *Id.* § 2203(e). Further, if the Archivist notifies the President that he does intend to take action under subsection (e), the President may dispose of Presidential records if copies of the disposal schedule are submitted to Congress as required by the PRA. *Id.* § 2203(d).

While CREW's Motion seeks only one form of relief–an order requiring OA to retain all documents potentially responsive to CREW's FOIA requests pending the resolution of CREW's expedited appeal–the PRA and the parties' briefs make clear that such an order would have two very different consequences. During the remainder of President Bush's term of office, such an order would essentially extend this Court's January 25, 2008 Order, which required OA to "preserve all records, no matter how described, currently in its possession or under its custody or control, which are potentially responsive to CREW's April 16, 2007 and April 18, 2007 FOIA requests," and further ordered OA not to "transfer any potentially responsive records out of its custody or control without leave of this Court," Docket No. [32] (hereinafter the "Preservation Order"). Significantly, OA is not opposed to preserving the documents potentially responsive to CREW's FOIA requests for the remainder of President Bush's second term of office, but maintains that the assurances of its attorneys that such documents will be preserved should be sufficient to satisfy both CREW and the Court. OA Opp'n at 2. CREW is not satisfied with such assurances, and the Court addresses this issue below.

The parties are much more sharply divided with respect to the potential harms that might arise absent the stay CREW seeks (according to CREW), or as a result of such a stay (according to OA), at the conclusion of President Bush's second term of office, when his Presidential

records will be transferred to the National Archives and Records Administration ("NARA").

That transition, however, will not occur until at least January 20, 2009, when President Bush

leaves office, and it is well-settled that "[i]njunctive relief 'will not be granted against something

merely feared as liable to occur at some indefinite time.'" *Wisconsin Gas Company v. FERC*, 758

F.2d 669, 674 (D.C. Cir. 1985) (quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674

(1931)).  As such, the Court concludes that it is premature to consider the consequences that *may*

result from the transition between administrations that is still over six months away, and to

attempt to balance, at this time, the four factors relevant to CREW's request for a stay pending its

expedited appeal based on the potential future harms the parties raise.  Instead, the Court limits

its consideration of those factors below to evaluating the situation as it exists for the next six

months, i.e., while President Bush remains in office.  CREW has indicated that it intends to seek

expedition of its appeal before the D.C. Circuit, CREW Mem. at 6 n.1, and OA has indicated that

it does not oppose that request, OA Opp'n at 1 n.1.  In the event that CREW's expedited appeal

is nevertheless not resolved before January 5, 2009, and CREW determines that its request for a

stay pending appeal remains appropriate, CREW may file a renewed request with the Court

seeking such relief.

     A.     *CREW's Appeal Presents a Serious Legal Question*

Ordinarily, "[t]he first, and most important, hurdle which the petitioners must overcome

is the requirement that they present a strong likelihood of prevailing on the merits of their

appeal." *Am. Cetacean Soc. v. Baldridge*, 604 F. Supp. 1411, 1414 (D.D.C. 1985).  "Without

such a substantial indication of probable success, there would be no justification for the Court's

intrusion into the ordinary processes of administration and judicial review." *Virginia Petroleum*

6

*Jobbers*, 259 F.2d at 925.  CREW devotes a substantial portion of its memorandum in support of

its request for a stay pending appeal to arguments directed at its position that it is likely to prevail

on the merits of its appeal.  CREW Mem. at 9-12.  As OA correctly stresses, this Court's June

16, 2008 Memorandum Opinion was issued after CREW was permitted to conduct limited

discovery into the areas relevant to determining whether OA was an agency subject to the FOIA.

OA Opp'n at 16.  That Memorandum Opinion carefully considered all of the OA activities that

CREW brought to the Court's attention, and subjected OA's activities to two separate tests

suggested by D.C. Circuit case law for determining whether an EOP component is an agency

subject to the FOIA: the "substantial independent authority" or "sole function" test used in

*Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971), and the three-factor test articulated in *Meyer v.*

*Bush*, 981 F.2d 1288.  *See generally* Mem. Op.  Based upon this thorough analysis, the Court

ultimately concluded that OA does not exercise "substantial independent authority" in

conducting its activities, Mem. Op. at 20-30, and is not an agency under the three-factor *Meyer*

test, *id.* at 30-34.  CREW's motion for a stay pending appeal "offer[s] no new arguments in its

motion, but rather rehashes arguments that have been rejected . . . ."  *U.S. v. Judicial Watch, Inc.*,

241 F. Supp. 2d 15, 16 (D.D.C. 2003), *stay denied*, No. 03-5019, 2003 WL 1089413, at *1 (D.C.

Cir. Mar. 6, 2003).  As such, the Court cannot agree with CREW that there is a substantial

likelihood that it will prevail on the merits of its appeal.

Nevertheless, as the Court's June 16, 2008 Memorandum Opinion expressly recognized:

> The question OA's Motion presents is a close one, and is not easily resolved by
> reference to the limited body of D.C. Circuit case law addressing the agency status
> of units within the EOP.  Quite frankly, the parties' discovery in this action
> reveals that OA's functions, which are strictly administrative, in large part
> distinguish it from the EOP components previously considered by the D.C.

Circuit, which perform more substantive functions.

Mem. Op. at 2. Under D.C. Circuit precedent, to grant a stay pending appeal, a "court is not required to find that ultimate success by the movant is a mathematical probability, and indeed, [] may grant a stay even though its own approach may be contrary to the movant's view of the merits." *Holiday Tours*, 559 F.2d at 843. In particular, "[a]n order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public, and when denial of the order would inflict irreparable injury on the movant." *Id.* at 844. In such a situation, "[t]here is substantial equity, and need for judicial protection, whether or not movant has shown a mathematical probability of success." *Id.* The Court agrees with CREW that its appeal presents a "serious legal question," and therefore continues to consider whether the balance of the other factors relevant to CREW's request for a stay pending appeal favors the relief CREW seeks.

Before doing so, however, the Court pauses to address OA's contention that CREW's Motion for Stay Pending Appeal in fact seeks to upset–as opposed to maintain–the status quo. In support of this assertion, OA notes that it has been treating its records as Presidential records since August 2007 and argues that, as a result, CREW's request for a stay pending appeal actually asks "the Court to change the status quo that OA is a PRA entity." OA Opp'n at 2-4. OA is mistaken on two fronts. First, CREW's request for a stay pending appeal is not a motion for reconsideration, it does not ask this Court to revisit its conclusion that OA is not an agency subject to the FOIA, and therefore does not seek to alter OA's status under the PRA and/or FRA. Instead, it requests that, notwithstanding the fact that OA is subject to the PRA, the Court order OA to preserve the documents at issue in CREW's FOIA requests in order to ensure that CREW

8

may gain access to them if this Court's ruling is reversed on appeal.  Second, OA's measurement

of the status quo is incorrect.  As noted above, on January 25, 2008, this Court entered a

Preservation Order requiring OA to "preserve all records, no matter how described, currently in

its possession or under its custody or control, which are potentially responsive to CREW's April

16, 2007 and April 18, 2007 FOIA requests," and further ordering OA not to "transfer any

potentially responsive records out of its custody or control without leave of this Court," Docket

No. [32].  OA was operating under that Order until the Court's June 16, 2008 Memorandum

Opinion and Order released it from doing so.  As such, insofar as it relates to the remainder of

President Bush's second term of office, CREW's request for a stay pending appeal actually seeks

to reinstate the Preservation Order so as to ensure that CREW can obtain relief if it is successful

on appeal.  The Court therefore rejects OA's argument that CREW's request should be subject to

the "higher standard" applicable when a movant seeks a mandatory injunction, i.e., relief that

would "alter, rather than preserve, the status quo."  *See* OA Opp'n at 4 (quoting *Columbia Hosp.*

*for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997)).

    B.    *There is a Significant Possibility of Irreparable Harm Absent a Stay*

    "Under this Circuit's precedent, the harms to each party are tested for 'substantiality,

likelihood of occurrence, and adequacy of proof.'"  *Judicial Watch v. Nat'l Energy Policy Dev.*

*Group*, 230 F. Supp. 2d at 15 (quoting *Cuomo*, 772 F.2d at 976-77).  "The Court must consider

the significance of the change from the *status quo* which would arise in the absence of a stay, as

well as likelihood of occurrence of the claimed injury, when determining whether [parties] have

truly met their burden of demonstrating irreparable harm justifying imposition of a stay."  *Id.*  "A

party moving for a stay is required to demonstrate that the injury claimed is 'both certain and

great.'" *Cuomo*, 772 F.2d at 976 (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

As discussed above, it is premature for the Court to consider the parties' arguments regarding the harms that may arise from, or in the absence of, a stay if the OA records potentially responsive to CREW's FOIA requests are transferred to NARA at the conclusion of President Bush's second term of office. In addition, however, CREW convincingly argues that it will suffer irreparable harm if the records potentially responsive to its FOIA request are not preserved during the remainder of that term. As noted above, the PRA imposes obligations upon President Bush to maintain Presidential records during his term in office and to alert the Archivist and/or Congress if he plans to dispose of any Presidential records. *See* 44 U.S.C. § 2203(a), (c). Of course, the Court must–and does–"presume that executive officials will act in good faith," *Armstrong v. EOP*, 1 F.3d 1274, 1293 (D.C. Cir. 1993), and that both OA and the President will faithfully adhere to their duties under the PRA.

Significantly, however, although OA accepted and began processing CREW's FOIA requests, OA never completed its processing–and therefore did not identify and segregate all possible responsive records–because it concluded that OA was not, in fact, an agency subject to the FOIA. *See* CREW Reply at 6. As such, absent an order that OA preserve all such documents pending the resolution of CREW's appeal, it is possible that the President could, unwittingly, dispose of records that are potentially responsive to CREW's FOIA requests but that have not been identified as such, and which the President believes "no longer have administrative, historical, informational, or evidentiary value." 44 U.S.C. § 2203(c). Further, because "judicial review of the President's management of admittedly Presidential records is impliedly precluded

10

by the PRA," *Armstrong*, 1 F.3d at 1292, CREW would have absolutely no recourse in the event

that records potentially responsive to its FOIA requests were destroyed.  As such, it is clear that

CREW would suffer irreparable harm if it were to prevail on appeal but could not ultimately

access the documents responsive to its FOIA request because they had not been preserved by OA.

      C.      *Other Parties (Including OA) Will Not Be Harmed By the Granting of a Stay*

As noted above, when limited to the period of time remaining in President Bush's second

term in office, CREW's request for a stay pending appeal essentially seeks to extend the Court's

January 25, 2008 Preservation Order until CREW's appeal is resolved.  That relief would not

impose any additional obligations on OA.  Significantly, OA asserts that it has "faithfully

followed" the Preservation Order, and that it "has assured CREW that it has preserved, and will

continue to preserve, potentially responsive records until their transfer to NARA."  OA Opp'n at

8.  Although OA claims that a stay "would constitute a serious intrusion on the President's

management and control of his records during his term in office," OA Opp'n at 13, OA does not

explain how such an "intrusion" would occur and the Court cannot discern any "intrusion" that

would result from a stay where OA has purportedly already committed to preserving all

documents potentially responsive to CREW's FOIA requests.  The bulk of OA's arguments that

it would be harmed by the relief CREW seeks relate to the effect a stay might have on the

transfer of the current Administration's Presidential records to NARA at the conclusion of

President Bush's term of office.  As the Court has already explained, however, evaluating such

harms at this time is premature, and the Court therefore declines to do so.

In short, the Court finds that neither OA nor the President would be harmed by a Court

Order requiring it to preserve all documents potentially responsive to CREW's FOIA requests

and not to transfer such documents out of OA's custody or control during the remainder of President Bush's term of office, particularly given OA's assurances through counsel, that it will preserve all such documents until their transfer to NARA under the PRA. *See* OA Opp'n at 1.

The issue, then, is whether those assurances are sufficient, as OA insists they are, *id.*, to guard against the irreparable harm CREW fears. The Court concludes that they are not. The Court notes that OA has not offered the written assurance of an OA official (as opposed to an e-mail from counsel for OA to CREW) that the records potentially responsive to OA's FOIA requests will be preserved during the duration of the Bush Administration. Even if OA had done so, however, as Magistrate Judge John M. Facciola correctly observed in recommending that Judge Henry H. Kennedy of this court issue an Order (as he ultimately did) requiring EOP to maintain backup tapes of the allegedly lost White House e-mails, "a declaration does not have the force of an order. Unlike a court order, a declaration is not punishable by contempt." *CREW v. EOP*, Civil Action No. 07-1707, Report and Recommendation (D.D.C. Oct. 19, 2007) at 2 (attached as Exhibit 2 to CREW's Motion for Stay Pending Appeal). Similarly, OA's counsel are indeed officers of the court, *id.*, and again, the Court presumes that executive officials will act in good faith, *Armstrong v. EOP*, 1 F.3d at 1293. Nevertheless, the Court agrees with CREW that the assurances of OA's counsel do not have the force of a Court Order, and that violations of such assurances are not punishable by contempt. While the Court accepts OA's counsels' assurances that the documents responsive to CREW's FOIA requests will be preserved, absent a Court Order to that effect, CREW would have no recourse if they were not. As such, the Court finds that a Court Order is appropriate to guard against the grave harm CREW would face if it ultimately prevailed on appeal but could not access the records responsive to its FOIA requests.

D.      *The Public Interest Strongly Favors the Granting of a Stay*

The fourth and final factor to be considered by the Court is where the public interest lies. "The public interest is a uniquely important consideration in evaluating a request for [interim relief]." *Am. Cetacean Soc.*, 604 F. Supp. at 1416 (quoting *Nat'l Ass'n of Farmworkers Orgs. v. Marshall*, 628 F.2d 604, 616 (D.C. Cir. 1980)). Here, the Court finds that the public interest strongly favors the granting of a stay. As CREW correctly stresses, the "basic purpose of FOIA is to ensure an informed citizenry, vital to the function of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). If, on appeal, the D.C. Circuit concludes that OA is, in fact, an agency pursuant to the FOIA, the result will be that OA's "information is subject to disclosure, [and] belongs to all." *NARA v. Favish*, 541 U.S. 157, 172 (2004). As such, the public interest certainly favors ensuring that OA's records are preserved while the D.C. Circuit considers CREW's expedited appeal. OA's only arguments that the stay CREW seeks might harm the public interest relate to the potential consequences a stay could have on the transition of President Bush's Presidential records to NARA at the conclusion of his term in office. *See* OA Opp'n at 15. As it is premature to consider such arguments at this time, the Court easily concludes that the public interest favors granting the relief CREW seeks for a time certain.

In sum, the Court finds that–with respect to the period of time remaining in President Bush's second term–the instant case is one in which "[a]n order maintaining the status quo is appropriate [because] a serious legal question is present, [] little if any harm will befall other interests persons or the public and [] denial of the order would inflict irreparable injury on the movant." *Holiday Tours*, 559 F.2d at 844. As such, the Court shall issue an Order requiring OA

13

to preserve all records in its possession or under its custody or control that are potentially

responsive to CREW's FOIA requests, and further ordering OA not to transfer any such records

out of its custody or control without leave of this Court, pending the resolution of CREW's

expedited appeal or January 5, 2009, whichever event is earlier. If CREW's expedited appeal has

not been resolved by January 5, 2009, CREW may, at that time, file a renewed motion for stay

pending appeal that addresses the relevant factors in the context of the transition between

presidential administrations that will be impending at that point.

## CONCLUSION

Based upon the foregoing, the Court shall GRANT-IN-PART and DENY-IN-PART

CREW's [56] Motion for Stay Pending Appeal. As set forth in the Order accompanying this

Memorandum Opinion, the Court shall require OA to preserve all records in its possession or

under its custody or control that are potentially responsive to CREW's FOIA requests, and shall

further order OA not to transfer any such records out of its custody or control without leave of

this Court, pending the resolution of CREW's expedited appeal or January 5, 2009, whichever

event is earlier. If CREW's appeal has not been resolved by January 5, 2009, CREW may, at that

time, file a renewed motion for stay pending appeal that addresses the relevant factors in the

context of the transition between presidential administrations that will be impending at that point.

Date:   July 8, 2008

                                         /s/
                                    _____
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge

14