UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, <br><br> Plaintiff, <br><br> v. <br><br> OFFICE OF ADMINISTRATION, <br><br> Defendant. | Civil Action No. 07-964 (CKK) |

MEMORANDUM OPINION
(January 15, 2009)

Plaintiff, Citizens for Responsibility and Ethics in Washington ("CREW") brought the above-captioned Freedom of Information Act ("FOIA") action seeking documents that CREW asserts Defendant, the Office of Administration ("OA"), a unit within the Executive Office of the President ("EOP"), assembled and prepared relating to the White House's alleged loss of EOP e-mail records.  On June 16, 2008, this Court issued a Memorandum Opinion and Order granting OA's motion to dismiss this action for lack of subject matter jurisdiction on the grounds that, as a matter of law, it was not an agency subject to the FOIA.  *Citizens for Responsibility and Ethics in Washington v. Off. of Admin.*, 559 F. Supp. 2d 9, 11 (D.D.C. 2008) (CKK) (hereinafter "*CREW I*").

CREW subsequently appealed this Court's June 16, 2008 decision to the D.C. Circuit, and filed a Motion for Stay Pending Appeal before this Court, requesting that the Court "stay its Order of June 16, 2008, to require defendant to retain all documents potentially responsive to CREW's two [FOIA] requests at issue pending the resolution of plaintiff's appeal."  CREW's

Motion for Stay, Docket No. [56] at 1.  On July 8, 2008, this Court issued an Order and accompanying Memorandum Opinion granting-in-part and denying-in-part CREW's request for a stay pending appeal.  *Citizens for Responsibility and Ethics in Washington v. Off. of Admin.*, 565 F. Supp. 2d 23 (D.D.C. 2008) (CKK) (hereinafter "*Crew II*").  Although much of the parties' briefing on the Motion for Stay Pending Appeal focused on the potential harms that may befall either party at the conclusion of the current presidential administration, the Court concluded that it was premature to consider the consequences that *may* result from the transition between administrations that was, at that time, over six months away.  *Id.* at 27.  The Court therefore limited its consideration of CREW's request for stay to the situation as it existed while President George W. Bush remained in office.  *Id.*  As to that time period, the Court concluded that, although it could not agree with CREW that there is a substantial likelihood that CREW will prevail on the merits on appeal, "the instant case is one in which '[a]n order maintaining the status quo is appropriate [because] a serious legal question is present, [] little if any harm will befall other interested persons or the public and [] denial of the order would inflict irreparable harm on the movant.'"  *Id.* at 31 (internal citations omitted).  Accordingly, the Court ordered OA to "preserve all records, no matter how described, currently in its possession or under its custody or control, which are responsive to CREW's April 16, 2007 and April 18, 2007 FOIA requests, and [to] not transfer any potentially responsive records out of its custody or control without leave of this Court, *pending the resolution of CREW's expedited appeal or January 5, 2009, whichever event is earlier*."  *Id.* at 31 (emphasis added).  If CREW's expedited appeal had not been resolved by January 5, 2009, however, the Court provided that CREW may, at that time, file a renewed motion for stay pending appeal.  *Id.* at 31.

As of January 5, 2009, the D.C. Circuit had not yet resolved CREW's expedited appeal (nor had it yet done so as of the filing of this Memorandum Opinion), and, pursuant to this Court's July 8, 2008 Order, CREW filed a Renewed Motion for Stay Pending Appeal on January 6, 2009, (hereinafter "CREW's Motion"), that specifically addresses its request for a stay in the context of the pending transition between presidential administrations.  Pursuant to the expedited briefing schedule entered by the Court, OA filed an Opposition to CREW's Motion on January 12, 2009 (hereinafter "OA's Opposition"), and CREW filed a Reply later that same day (hereinafter "CREW's Reply").  Upon a searching review of the parties' briefs, the relevant legal authority, and the entire record herein, the Court shall GRANT CREW's [62] Renewed Motion for Stay Pending Appeal.

## LEGAL STANDARDS

The factors the Court considers in determining whether a stay pending appeal is warranted are:

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the Court grants the stay; and (4) the public interest in granting the stay.  To justify the granting of a stay, a movant need not always establish a high probability of success on the merits.  Probability of success is inversely proportional to the degree of irreparable injury evidenced.  A stay may be granted with either a high probability of success and some injury, or *vice versa*.

*Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (internal citations omitted) (emphasis in original); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958); *see also D.C. Circuit Handbook of Practice and Internal*

*Procedures* Part VIII(a) (2003).[1]  It is "the movant's obligation to justify the court's exercise of such an extraordinary remedy." *Cuomo*, 772 F.2d at 978.  Generally, a stay pending appeal "is preventative, or protective; it seeks to maintain the status quo pending a final determination of the merits of the suit." *Holiday Tours*, 559 F.2d at 844.

## DISCUSSION

As previously noted, the Court's conclusion that OA is not an "agency" pursuant to the FOIA obviated OA's obligation to comply with CREW's FOIA request. *Crew II*, 565 F. Supp. 2d at 26.  In addition, because "the coverage of the [Federal Records Act ("FRA")] is coextensive with the definition of 'agency' in the FOIA," the Court's conclusion affirmed the position OA had taken since August 2007 that its records were subject to the Presidential Records Act ("PRA"), rather than the FRA.  *See Armstrong v. EOP*, 90 F.3d 553, 556 (D.C. Cir. 1996) ("no record is subject to both the FRA and the PRA").  Under the PRA, at the conclusion of President Bush's second term of office, "the Archivist of the United States shall assume responsibility for the custody, control, and preservation of, and access to, [his] Presidential records," and shall "deposit all such Presidential records in a Presidential archival depository or another archival facility operated by the United States." 44 U.S.C. § 2203(f)(1)-(2).  It is this transition of records to the National Archives and Records Administration ("NARA") at the end of President Bush's second term of office with which the parties are concerned.

Under the terms of the Court's July 8, 2008 Order, OA was required (until the Order

---

[1] "The test for a stay or injunction pending appeal is essentially the same" as the test for a preliminary injunction, "although courts often recast the likelihood of success factor as requiring only that the movant demonstrate a serious legal question on appeal where the balance of harms favors a stay[.]" *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 193 & n.5 (D.D.C. 2005) (citing *Holiday Tours*, 559 F.2d at 844 and *Cuomo*, 772 F.2d at 978).

lapsed on January 5, 2009) to retain all documents potentially responsive to CREW's FOIA requests pending the resolution of CREW's expedited appeal and to ensure that any such potentially responsive documents were not transferred out of its custody or control without leave of this Court. *Crew II,* 565 F. Supp. 2d at 31-32. Significantly, OA has not been, nor is it currently, opposed to preserving those documents potentially responsive to CREW's FOIA requests. OA's Opp'n at 2, 5-6. To the contrary, OA represents to the Court that it has already identified and collected approximately 38 or 39 boxes of documents that it believes to be the universe of records potentially responsive to CREW's FOIA requests.[2] *Id.* at 5-6. OA further states that it "has properly labeled and segregated those 39 boxes for transfer to NARA, and NARA has agreed to keep those boxes segregated once they are transferred to NARA. NARA has further committed to store the OA boxes in the Washington, D.C. area under appropriate security, in a manner that will enable NARA and OA to readily retrieve them if necessary until this case is resolved. Morever, NARA has also agreed to 'promptly return these, and all other OA records to OA should it be determined that OA is an agency subject to the FOIA and/or the Federal Records Act.'" *Id.* at 6-7 (internal citations omitted). The parties sharply disagree, however, as to the potential harms that might arise absent an extension of the stay (according to CREW), or as a result of such an extension (according to OA), upon transfer of President Bush's records to NARA. OA maintains that the assurances of its attorneys that NARA will preserve and return the potentially responsive documents, if requested, should be sufficient to satisfy both

---

[2] As CREW points out in its Reply, the exhibits attached to OA's Opposition refer to "38 boxes" of documents, while the text of the Opposition itself refers to "39 boxes" of documents. *See* CREW's Reply at 3, n.1. It is therefore unclear whether there are 38 or 39 boxes at issue. The Court need not resolve this question, however, as it is not material to the matter now before the Court.

CREW and the Court. *See* OA's Opp'n at 2. OA therefore asserts that CREW would not be harmed by transfer of the documents to NARA and that extension of the stay is thus unnecessary. *See id.* CREW is not satisfied with such assurances, and the Court now turns to the question of whether an extension of the stay issued in its previous July 8, 2008 Order is appropriate.

          A.    *CREW's Appeal Presents a Serious Legal Question*

Ordinarily, "[t]he first, and most important, hurdle which the petitioners must overcome is the requirement that they present a strong likelihood of prevailing on the merits of their appeal." *Am. Cetacean Soc. v. Baldridge*, 604 F. Supp. 1411, 1414 (D.D.C. 1985). "Without such a substantial indication of probable success, there would be no justification for the Court's intrusion into the ordinary processes of administration and judicial review." *Virginia Petroleum Jobbers*, 259 F.2d at 925. Under D.C. Circuit precedent, however, a "court is not required to find that ultimate success by the movant is a mathematical probability, and indeed, [] may grant a stay even though its own approach may be contrary to the movant's view of the merits." *Holiday Tours*, 559 F.2d at 843. In particular, "[a]n order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public, and when denial of the order would inflict irreparable injury on the movant." *Id.* at 844. In such a situation, "[t]here is substantial equity, and need for judicial protection, whether or not movant has shown a mathematical probability of success." *Id.*

The Court need not dwell on this question, as it has previously found that CREW's appeal presents a "serious legal question." *Crew II*, 565 F. Supp. 2d at 27-28. As the Court explained in its July 8, 2008 Order, which discussion is fully incorporated herein, although the Court cannot agree with CREW that there is a substantial likelihood that it will prevail on the

merits of its appeal, the Court recognizes that the question of whether OA is an "agency" under the FOIA "is a close one, and is not easily resolved by reference to the limited body of D.C. Circuit case law addressing the agency status of units with the EOP." *Id.* at 28 (internal quotation marks omitted). Neither party has directed the Court to any intervening changes in law that may affect this conclusion. Therefore, the Court shall proceed directly to consider whether the balance of the other factors relevant to CREW's request for a stay pending appeal favors the relief CREW seeks.

Before doing so, however, the Court pauses to address OA's contention that CREW's Motion in fact seeks to upset—as opposed to maintain—the status quo and is in actuality requesting, not a stay, but the "'extraordinary and drastic'" remedy of an injunction. *See* OA's Opp'n at 2-3. OA's characterization of CREW's request is incorrect. As the Court has previously explained, *see Crew II*, 565 F. Supp. 2d at 28-29, on January 25, 2008, this Court entered a Preservation Order requiring OA to "preserve all records, no matter how described, currently in its possession or under its custody or control, which are potentially responsive to CREW's April 16, 2007 and April 18, 2007 FOIA requests," and further ordering OA not to "transfer any potentially responsive records out of its custody or control without leave of this Court," Docket No. [32]. OA was operating under that Order until the Court's June 16, 2008 Memorandum Opinion and Order released it from doing so, and has been again operating under that Order since it was effectively reinstated by the Court's July 8, 2008 Memorandum Opinion and Order. As OA fully concedes, it has, pursuant to the Court's Orders, already identified and segregated all documents it believes are potentially responsive to CREW's FOIA requests and is maintaining those documents in a segregated manner within OA's custody and control. As such,

7

CREW's renewed request for a stay pending appeal actually seeks to ensure the continued preservation of such records within the care and custody of OA so as to ensure that CREW can obtain relief if it is successful on appeal.  *See CREW II*, 565 F. Supp. 2d at 29-30 (rejecting similar argument that CREW's request should be subject to the "higher standard" applicable when a movant seeks a mandatory injunction).

      B.     *There is a Significant Possibility of Irreparable Harm Absent a Stay*

"Under this Circuit's precedent, the harms to each party are tested for 'substantiality, likelihood of occurrence, and adequacy of proof.'" *Judicial Watch v. Nat'l Energy Policy Dev. Group*, 230 F. Supp. 2d at 15 (quoting *Cuomo*, 772 F.2d at 976-77).  "The Court must consider the significance of the change from the *status quo* which would arise in the absence of a stay, as well as likelihood of occurrence of the claimed injury, when determining whether [parties] have truly met their burden of demonstrating irreparable harm justifying imposition of a stay." *Id.*  "A party moving for a stay is required to demonstrate that the injury claimed is 'both certain and great.'" *Cuomo*, 772 F.2d at 976 (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

CREW convincingly argues that it will suffer irreparable harm if the records potentially responsive to its FOIA requests are not preserved within the care and custody of OA pending resolution of CREW's appeal.  The Court agrees with CREW that "it is far from clear what, if any, relief the Court could issue" if the D.C. Circuit resolves CREW's appeal in CREW's favor, "given that neither NARA nor the Archivist is a party to this litigation" and therefore "cannot properly be the subject of a court order. . . ."  CREW's Mot. at 5-6, 9.  Two consequences flow directly from NARA's and the Archivist's status as non-parties to this lawsuit.  First, the Court is

without authority to order NARA or the Archivist to maintain and preserve all records potentially responsive to CREW's FOIA request. Although OA has assured the Court and CREW that NARA has agreed to maintain and preserve all documents identified and properly labeled as potentially responsive to CREW's FOIA requests, the Court is not persuaded that such assurances are sufficient. The Court notes that OA has not offered the written assurance of an OA or NARA official (as opposed to correspondence between counsel for OA to counsel for NARA) that the records potentially responsive to CREW's FOIA requests will be fully maintained and preserved. However, even if OA had done so, as the Court previously observed, "'a declaration does not have the force of an order. Unlike a court order, a declaration is not punishable by contempt.'" *CREW II*, 565 F. Supp. 2d at 30-31 (citing *CREW v. EOP*, Civil Action No. 07-1707, Report and Recommendation (D.D.C. Oct. 19, 2007) at 2). Although OA's counsel are indeed officers of the court, *id.*, and the Court presumes that executive officials will act in good faith, *Armstrong v. EOP*, 1 F.3d 1274, 1293 (D.C. Cir. 1993), the Court nevertheless agrees with CREW that, absent a court order punishable by contempt requiring the maintenance and preservation of the records here at issue, in the event CREW is successful on its appeal, it would have no recourse if the documents were not so maintained and preserved.

      Moreover, it is not clear that—absent a court order or binding stipulation—NARA or the Archivist may properly decline to process the records at issue for public access once the documents are in NARA's custody and control. As noted above, upon conclusion of a President's term of office, "the Archivist of the United States shall assume responsibility for the custody, control, and preservation of, and access to, the Presidential records of that President." 44 U.S.C. § 2203(f)(1). As further set out by the statute and implementing regulations, the

Archivist has "an affirmative duty to make such records available to the public." *Id.* Transfer of the documents to NARA therefore triggers certain obligations on the part of the Archivist to begin processing and organizing such documents in order to facilitate public access. For example, the Archivist is authorized, upon notice in the Federal Register, to "dispose of Presidential records which he has appraised and determined to have insufficient administrative, historical, information, or evidentiary value to warrant further preservation." 36 C.F.R. § 1270.32. Given NARA's non-party status, the Court is without the authority to order NARA *not* to begin that process as to the documents at issue in this case, a process which NARA is statutorily obligated to undertake. Again, the Court "presume[s] that executive officials will act in good faith," *Armstrong* 1 F.3d at 1293, and it is certainly not the Court's intent to impugn OA's representations that NARA has agreed to segregate and preserve the records at issue. But in taking control and custody of a President's records, it is NARA's express *duty* to process those records for public access "as rapidly and as completely as possible consistent with the provisions of [the PRA]." 44 U.S.C. § 2203(f)(1). OA has not directed the Court to any authority that NARA may decline to proceed with its statutory obligations as to any documents in its control and custody, including the records at issue here.

Second, even assuming NARA maintains and preserves the records at issue, as CREW emphasizes, the Court is without authority to order NARA or the Archivist to return those records to OA if the D.C. Circuit determines the documents are, in fact, subject to the FOIA or the FRA. *See* CREW's Mot. at 6. Again, the Court notes that OA has not offered the written assurance of an OA or NARA official (as opposed to correspondence between counsel for OA to counsel for NARA) that the records potentially responsive to CREW's FOIA requests will be

10

returned to OA in the event CREW succeeds on its appeal.  As above, although OA's counsel are indeed officers of the court, and the Court presumes that executive officials will act in good faith, the Court nevertheless agrees with CREW that, absent a court order punishable by contempt requiring the return of the records at issue to OA, in the event CREW is successful on its appeal, it would have no recourse if the documents were not returned.  As such, the Court finds that a court order requiring OA—the only party over which this Court has jurisdiction—to maintain the records at issue is appropriate to guard against the grave harm CREW would face if it ultimately prevailed on appeal but could not access all records responsive to its FOIA requests.

        C.        *Other Parties (Including OA) Will Not Be Harmed By the Granting of a Stay*

The Court is not convinced that an extension of its July 8, 2008 stay in this case will significantly harm the Executive, as OA alleges.  First, OA asserts that extending the stay in this matter "could force the President to leave OA's records to the custody and control of his successor," thereby stripping President Bush of his right to decide what, if any, of his records he provides to his successor.  OA's Opp'n at 13.  However, as CREW pointed out in its Motion, the Court may craft an order that limits access to the documents at issue, pending resolution of CREW's appeal, CREW's Mot. at 9 n.5—a suggestion that OA does not address in its briefing, *see* OA's Opp'n.  The Court therefore assumes that OA does not dispute that the Court may so modify the stay in this case to adequately address its concerns.

Second, OA argues that granting CREW's request "would severely impair [] President [Bush]'s continued interest in his records after he leaves office."  OA's Opp'n at 13.  Specifically, OA contends, without support, that requiring the documents at issue to be maintained within OA's, rather than NARA's, care and custody would effectively deny President

Bush certain rights provided under the PRA and its implementing regulations, such as: (a) the right to specify durations, not to exceed 12 years, for which access shall be restricted with respect to information in a Presidential record that falls within one of the PRA's specified categories, 44 U.S.C. § 2204(a); (b) the right to be notified before any Presidential records are disclosed, 36 C.F.R. § 1270.46; and (c) the right to initiate a court action asserting that the Archivist's determination as to certain records violates his rights or privileges, 44 U.S.C. § 2204(e). OA's Opp'n at 13-14. As an initial matter, OA does not provide any authority for its claim that OA's retention of the records pending resolution of CREW's appeal will somehow preclude President Bush from exercising any of the rights and privileges under the PRA, if the D.C. Circuit ultimately affirms that these records are subject to the PRA. More specifically, the Court is not persuaded that the particular rights delineated by OA in its briefing will be forfeited by extension of a stay in this case. For example, as for President Bush's right to specify durations for which access to certain records is restricted, the statute expressly provides that a President must do so "[p]rior to the conclusion of his term of office." 44 U.S.C. § 2204(a). It is therefore unclear how OA's retention of the documents *after* the conclusion of a President's term of office would impair this right. Similarly, the Court cannot discern how President Bush's right, pursuant to 36 C.F.R. § 1270.46, to receive notice prior to disclosure would be harmed, given that extension of a stay in this case would prevent disclosure of the documents at issue until CREW's appeal is resolved. Finally, OA's claim that retention of the documents in OA's custody somehow precludes President Bush from initiating a lawsuit to challenge a decision made by the Archivist, as provided under 44 U.S.C. § 2204(e), is likewise illogical and without support. Accordingly, despite OA's broad and conclusory allegations that extension of the Court's stay would "raise

serious constitutional issues," OA has not directed the Court to any specific, concrete harm (constitutional or otherwise) that would result from a further stay in this matter.

Importantly, the status of the documents at issue here—*i.e.*, those records identified by OA as potentially responsive to CREW's FOIA requests—has yet to be conclusively determined, pending resolution of CREW's appeal.[3] If the D.C. Circuit affirms that these records are subject to the PRA, the documents shall be automatically transferred from OA's possession to the control and custody of NARA, and all rights and privileges provided under the PRA shall inhere to those documents. If, however, the D.C. Circuit reverses this Court's June 16, 2008 Order finding OA is not an "agency" for purposes of FOIA (such that the documents are not PRA records), then OA must process the documents pursuant to CREW's FOIA requests. Under either scenario, President Bush's interest in his Presidential records is not harmed by an order continuing to require such documents be physically stored and maintained at OA.[4] By contrast, CREW's interest in accessing all documents responsive to its FOIA requests is irreparably harmed absent a stay, as discussed above, *supra* 8-11.

---

[3]Nor has OA represented to the Court that the President or his designee has already reviewed the documents to ascertain whether they are, in fact, properly classified as "Presidential records," as that term is defined in 44 U.S.C. § 2201(2).

[4]Nor is the Court alone in requiring Executive officials to collect, maintain and preserve records (including records that may potentially be subject to the PRA) from the outgoing administration and to store those records in their present location, despite the pending transition. *See, e.g.*, *CREW v. EOP, et al.,* Civil Action No. 07-1707, Order (D.D.C. Jan. 14, 2009) (HHK) (requiring EOP to collect and preserve certain emails that are the subject of pending lawsuit); Order (D.D.C. Jan. 15, 2009) (JMF) (clarifying that the emails, back-up tapes, and records at issue "shall remain in their present location" under the supervisory control of the Archivist). Although the Archivist was given supervisory custody of the documents in that case, the Court notes that NARA is a named defendant in that litigation, such that—unlike here—the court in *CREW v. EOP, et al.*, Civil Action No. 07-1707, has jurisdiction over NARA to issue and enforce orders concerning the preservation and maintenance of the records in that case.

        D.      *The Public Interest Strongly Favors the Granting of a Stay*

The fourth and final factor to be considered by the Court is where the public interest lies. "The public interest is a uniquely important consideration in evaluating a request for [interim relief]." *Am. Cetacean Soc.*, 604 F. Supp. at 1416 (quoting *Nat'l Ass'n of Farmworkers Orgs. v. Marshall*, 628 F.2d 604, 616 (D.C. Cir. 1980)). Here, as the Court previously found, public interest strongly favors the granting of a stay. *See CREW II*, 565 F. Supp. 2d at 31. As CREW correctly stresses, the "basic purpose of FOIA is to ensure an informed citizenry, vital to the function of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). If, on appeal, the D.C. Circuit concludes that OA is, in fact, an agency pursuant to the FOIA, the result will be that OA's "information is subject to disclosure, [and] belongs to all." *NARA v. Favish*, 541 U.S. 157, 172 (2004). As such, the public interest certainly favors ensuring that OA's records are preserved while the D.C. Circuit considers CREW's expedited appeal.

OA argues nonetheless that extension of a stay would in fact harm the public interest, as it may delay NARA's processing of the documents at issue and thus the public's access to them, if the D.C. Circuit finds in OA's favor on appeal. OA's Opp'n at 14. This argument is largely based on OA's unsupported claim that, if the records are kept in the custody and control of OA, the documents would be commingled with the records of the next administration and that they would not be transferred to NARA until the conclusion of the next President's term of office. *See id.* OA does not direct the Court to any authority proscribing the automatic transfer of the discrete set of records at issue here to NARA upon resolution of CREW's appeal. Moreover, given that the PRA provides that the Archivist may take up to five years to process Presidential

records for public access, the public has no expectation of immediate access to these records and any delay that may result from the extension of a stay in this particular instance is unlikely to cause significant harm.  Finally, the Court emphasizes that it will retain jurisdiction over OA to enforce the terms of the Court's Order extending the stay in this case and requiring OA to properly maintain and segregate the records at issue from those of the incoming administration.

## CONCLUSION

In sum, the Court finds that the instant case is one in which "[a]n order maintaining the status quo is appropriate [because] a serious legal question is present, [] little if any harm will befall other interested persons or the public and [] denial of the order would inflict irreparable injury on the movant." *Holiday Tours*, 559 F.2d at 844.  As such, the Court shall issue an Order reinstating the stay previously issued in its July 8, 2008 Order and which lapsed on January 5, 2009.  Such Order shall require OA to preserve all records in its possession or under its custody or control that are potentially responsive to CREW's FOIA requests, and shall further order OA not to transfer any such records out of its custody or control without leave of this Court, pending the resolution of CREW's expedited appeal.  In addition, the Order shall provide that OA is required to physically segregate such documents from the records of the incoming administration and shall authorize only the Chief Administrative Officer of OA, or his or her designee, to access the records for the sole purpose of ensuring the records are properly preserved and stored until the D.C. Circuit issues a ruling and mandate resolving CREW's appeal.  At that time, by court order, the Chief Administrative Officer, or his or her designee, shall process the records as required.  That is, unless otherwise required by court order, if the D.C. Circuit affirms that OA is not an "agency" under the FOIA, such that the records are subject to the PRA, "the Archivist of

the United States shall assume responsibility for the custody, control, and preservation of, and access to, the Presidential records of that President," as provided in the PRA, and OA shall transfer all such documents to the Archivist's custody.  If, however, the D.C. Circuit finds that OA is subject to the FOIA or the FRA, OA shall retain the records at issue in order to process CREW's FOIA requests.  Based upon the foregoing, the Court shall therefore GRANT CREW's [62] Renewed Motion for Stay Pending Appeal, as set forth in the Order accompanying this Memorandum Opinion.

Date:   January 15, 2009

                                               /s/
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge